IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

      Plaintiff,                                    No. CIV S-09-2445 JAM EFB

      vs.

SIERRA PACIFIC INDUSTRIES, et al.,

      Defendants.                     <u>ORDER</u>

         On October 7, 2010, Sierra Pacific Industries (hereafter "SPI") filed a motion to recuse the undersigned. The government submitted its opposition to the motion on October 27, 2010, and SPI submitted a reply brief on November 3, 2010. The matter was heard and submitted on November 10, 2010. For the reasons stated below, the motion for recusal is denied.

         Two weeks before SPI filed the recusal motion, the court had held a hearing on SPI's motion for additional discovery and the United States' motion for a protective order. SPI had asked for leave to depose thirty-seven fact witnesses and for leave to depose two witnesses for at least five days each. The court allowed ten extra depositions beyond the number that the parties had already agreed to, and allowed two days and four hours for each of the two witness depositions.

////

1  The court did not rule from the bench on the government's motion, which sought
2  sanctions for SPI's counsel's conduct in violating the no-contact rule of professional
3  responsibility, but took the matter under submission.  At the end of the hearing the undersigned
4  stated "I remain concerned . . . I have the same concerns now as I did when we began this
5  hearing . . . .  I'm going to hold you to [your] representation" that SPI would refrain from
6  engaging in improper contacts with government employees "during the time it takes me to get an
7  order out."  Transcript, Dckt. No. 85, at 62.
8  That hearing was held on September 22, 2010.  Fifteen days later, on October 7, 2010,
9  the undersigned's staff received a phone call from counsel for SPI stating that the undersigned
10 might want to refrain from issuing the order on the government's protective motion because SPI
11 would be filing a motion for recusal.  SPI filed its motion for recusal later that day.

## I. Parties' Arguments

13 SPI contends that it discovered on October 5, 2010 that when the undersigned was an
14 Assistant United States Attorney he represented the United States Forest Service in *Sierra*
15 *Nevada Forest Protection Campaign v. U.S. Forest Service*, 2:04-cv-2203 MCE GGH, 2005 WL
16 1366507 (E.D. Cal. May 26, 2005), *aff'd* 166 Fed. Appx. 923 (9th Cir. 2006) (hereafter "*Sierra*
17 *Nevada*").[1]  SPI contends that the case involved the Forest Service's implementation of the
18 Herger-Feinstein Quincy Library Group Act, which required the Forest Service to implement a
19 forest fire prevention pilot project on the land that SPI claims was burned in the Moonlight Fire.
20 ////

---

[1] SPI's counsel also asserts that "I learned for the first time on Tuesday, October 5, 2010, that . . . Judge Brennan frequently represented the United States Forest Service" and that based on this information research was done which led to the discovery of several cases in which the undersigned is listed as counsel of record for the government.  Warne Decl., Dckt. No. 84 at 3.  However, as described in some detail at oral argument, SPI and its general counsel, David Dun, were participants in several cases dating back to 1990 in which I, as an Assistant U.S. Attorney, represented the Forest Service.  Mr. Dun, a very experienced and capable attorney, and I had numerous interactions over the course of litigating those cases and it could not have been a surprise to SPI on October 5, 2010, that I previously represented the Forest Service in those cases in which SPI was a participant.

2

SPI states that it has raised as an affirmative defense in this action a claim that if the Forest Service had implemented the Act on the land that burned in the Moonlight fire its damages would have been reduced or eliminated.

The predicate of SPI's recusal motion is that the undersigned allegedly was the "lead attorney" in *Sierra Nevada* and necessarily acquired personal knowledge of disputed evidentiary facts concerning this proceeding.  Secondarily, SPI argues that because of the "lead attorney" designation the undersigned's impartiality might reasonably be questioned; that he may be called as a witness in this matter; and that he may have advised the Forest Service regarding issues that are disputed in this case.

The government argues that the undersigned did not actively represent the Forest Service in *Sierra Nevada*, but may have merely answered questions regarding local rules and customs within this district.  Moreover, the government argues, that case did not involve any specific facts that are at issue in this case, and mere knowledge of the subject matter that is at issue in a proceeding does not constitute personal knowledge of disputed evidentiary facts.

## II.     Governing Law

The applicable recusal statute, 28 U.S.C. § 455, provides as follows:

(a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

(2) Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;

(3) Where he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy . . . .

3

1  Although a judge must recuse himself from any proceeding in which any of these criteria
2 apply, he or she must not simply recuse out of an abundance of caution when the facts do not
3 warrant recusal. Rather, there is an equally compelling obligation not to recuse where recusal in
4 not appropriate. *See United States v. Holland*, 519 F.3d 909, 912 (9th Cir. 2008) ("We are as
5 bound to recuse ourselves when the law and facts require as we are to hear cases when there is
6 no reasonable factual basis for recusal."). Furthermore, as discussed below, a motion to recuse
7 must be timely filed.

**III.    Analysis**

    **A.    Knowledge of Disputed Evidentiary Facts**

SPI argues that I should recuse myself because I have personal knowledge of disputed evidentiary facts concerning the proceeding. *See* 28 U.S.C. § 455(b)(1). The premise of its motion, that I necessarily acquired such knowledge because I was lead counsel for the Forest Service in a case involving the same evidentiary issues and facts as this case, namely *Sierra Nevada*, is mistaken. As discussed below, I was not lead counsel in the case and I had no significant role in its litigation. Categorically, I have no personal knowledge regarding the issues in that case.[2]

SPI has presented no evidence to support its contention about personal knowledge of evidentiary facts. Instead, SPI argues that because I represented the Forest Service in the *Sierra Nevada* case as a "lead attorney,"[3] it "reasonably presumes" that I advised the Forest Service regarding "whether to implement the [Herger-Feinstein] Act on the lands that would go on to

---

[2] In addition, SPI has not shown how that case involved evidentiary facts that are at issue in this case. However, the relevance of the *Sierra-Nevada* case is presumed for the purposes of this motion.

[3] The phrase "lead attorney" is misleading. As addressed at length in oral argument, each and every attorney on the court docket is listed as a "lead attorney." *See* Dckt. No. 84-1, Ex. A. This is true not only of that case but of cases which were pending in this district when the court converted from the ICMS electronic docketing to the current Case Management/Electronic Case Filing ("CM/ECF") system. Every attorney appearing on the docket was designated both "lead attorney" and "attorney to be noticed." As explained below, I neither worked on the case nor supervised the attorneys who did work on the case.

burn in the Moonlight fire" and that I was "privy to attorney-client communications regarding the basis of the Forest Service's decision not to do so." SPI's Mot. to Recuse, Dckt. No. 83, at 2. Based on that assumption, SPI contends that recusal is required because in the course of this proceeding I will have to rule on the scope of permissible discovery into the Forest Service's alleged failure to implement the Herger-Feinstein Act.

The government responds that I did not, in fact, actively represent the Forest Service in the *Sierra-Nevada* case. Rather, as shown by the government's declarations from three attorneys who actually did work on the case both in the district court and on appeal to the Ninth Circuit, it was not handled out of the U.S. Attorney's office. Instead, the case was staffed and litigated by the Environment and Natural Resources Division ("ENRD") of the U.S. Department of Justice in Washington D.C. Although U.S. Attorney Offices provide local logistical assistance to ENRD for cases pending in the various districts, the Department of Justice ENRD attorneys, not attorneys in the U.S. Attorney Offices, litigate those cases. Occasionally, some cases are co-litigated by the ENRD and an assigned Assistant U.S. Attorney. However, *Sierra Nevada Forest Protection Campaign v. U.S. Forest Service* was not such a case. Instead, ENRD retained responsibility for the case and the local U.S. Attorney's office had no significant role in it.

James Rosen, an attorney with the United States Department of Agriculture, Office of the General Counsel, declares that he was the agency counsel assigned to the *Sierra-Nevada* litigation. Gov't's Opp'n, Dckt. No. 87, Ex. 1 at 2. He declares that the case involved the Forest Service's "Meadow Valley Project," which did not involve any land that was later burned in the Moonlight Fire, and was in fact an hour's drive away. *Id.* He declares that attorneys from the Department of Justice's Environmental and Natural Resources Division in Washington D.C. defended the case; specifically, Brian Toth represented the Forest Service before the district court, and Lisa Jones handled the appeal before the Ninth Circuit. *Id.* Mr. Rosen declares that he was involved in all aspects of the litigation, and worked almost exclusively with Toth and Jones. *Id.* He declares that he does not recall working with me on the case, and that he is not

5

1  aware of any substantive work that I did on the case.[4]  *Id.*

2  Brian Toth declares that he handled the defense of the *Sierra-Nevada* case in the district
3  court.  Dckt. No. 87, Ex. 2 at 2.  He declares that he was lead attorney on the case, and that it was
4  understood that ENRD was responsible for all aspects of the litigation.  *Id.*  It was a common
5  practice for an Assistant United States Attorney to be assigned to monitor cases that ENRD was
6  handling and be available for consultation on matters of local practice.  *Id.*  In essence, the
7  monitoring attorney serves as a local liaison for the ENRD but does not typically have a role in
8  handling the litigation.  *Id.*  I was the Assistant United States Attorney assigned to provide local
9  logistical assistance that might be needed.  *Id.*  Mr. Toth declares that he is not aware of any
10 substantive assistance that I provided in the litigation.  *Id.*  However, he notes that it is possible
11 that I could have provided him information about procedural matters concerning the Eastern
12 District of California.  *Id.*  Although he does not state a specific recall of me ever doing so, Mr.
13 Toth allows for the possibility that I may have reviewed final drafts of briefs before they were
14 filed.  *Id.*  He believes that I was also present in the public gallery during oral argument before
15 the District Court and discussed how the argument went.[5]  *Id.* at 2-3.

16 Lisa Jones, another ENRD attorney, declares that she was responsible for handling all
17 aspects of the appeal in the *Sierra-Nevada* case in the Ninth Circuit.  Dckt. No. 87, Ex. 3 at 2.
18 She declares that she worked primarily with James Rosen and Brian Toth.  *Id.*  She also declares
19 that it is the practice of the United States Attorney's Office of the Eastern District of California
20 to assign an Assistant United States Attorney to monitor cases that are handled by ENRD, and

---

[4] Given that I did not assist either Rosen or Toth with the case it is not at all surprising that Mr. Rosen has no recollection of ever working with me on it.

[5] As discussed below, I was not involved in writing or reviewing the briefs or arguing the case, and I had no role in conferring with or advising the Forest Service in the *Sierra-Nevada* case.  Indeed, upon reading SPI's recusal motion I had to read the Ninth Circuit and district court rulings in that case to become familiar with the specific issues that were litigated, and I had to examine the CM/ECF docket and pleadings to see who actually litigated it.  The speculation that I was involved in either advising the Forest Service in that action, or in drafting the briefs or arguing or preparing to argue the case is mistaken.

that I was assigned to do so with the *Sierra-Nevada* case while it was pending in the district court. *Id.* She declares that I did not provide any substantive assistance for the appeal. *Id.*

Although these affidavits submitted by the government are evidence of the extent of my participation in the *Sierra-Nevada* case, I will also set out in this order (as I did in the argument on the motion) the extent of my involvement in that case. When I was an Assistant United States Attorney I was assigned to provide local liaison assistance to ENRD on the *Sierra-Nevada* case. This is a role that the U.S. Attorney's Office referred to as a monitoring attorney. My role was to be available to the DOJ attorneys in Washington D.C. to answer questions about local practices and the Local Rules. I was not assigned to litigate the case and at no time did I provide any substantive assistance with the case. I did not write or assist in writing the briefs. I did not argue the case, or assist in doing so. And I did not advise or consult with the client agency regarding the case, nor did I assist in doing so. While my name and the United States Attorney appeared on the court docket, and apparently on the letterhead for the pleadings as a matter of customary practice by ENRD, I performed no substantive work on the case. Nor did I sign the briefs in the case.

Noting the "lead attorney" designation on the docket, SPI speculates in its motion that I must have advised the Forest Service on the implementation of a statute that SPI contends is in issue in this case, the Herger-Feinstein Act.[6] Dckt. No. 83 at 2. Again, SPI's assumption is mistaken. I did not advise the Forest Service on the implementation of the Herger-Feinstein Act, nor was I privy to any confidential or privileged discussions regarding its implementation. Moreover, I did not receive any confidential or privileged information from the Forest Service in the *Sierra-Nevada* case. All of the facts I know concerning the *Sierra-Nevada* case are from having read, after the fact, the Ninth Circuit's and district court's rulings, and from reviewing the
////

---

[6] The relevance of the Act to this case is far from clear to me but is assumed for purposes of this motion.

7

docket and district court record after this motion was filed.[7]

As I have no personal knowledge of disputed evidentiary facts concerning this proceeding, there is no basis for recusal under 28 U.S.C. 455(b)(1). Accordingly, SPI's motion to recuse on that basis is denied.

**B. Appearance of Impropriety**

SPI also argues that I should recuse myself because my impartiality in this matter might reasonably be questioned. *See* 28 U.S.C. § 455(a). Recusal is required under section 455(a) "even when a judge lacks actual knowledge of the facts indicating his interest or bias in the case if a reasonable person, knowing all the circumstances, would expect that the judge would have actual knowledge." *United States v. Bosch*, 951 F.2d 1546, 1556 (9th Cir. 1991) (citing *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 860-61 (1988)). Thus, what matters under § 455(a) "is not the reality of bias or prejudice but its appearance." *Liteky v. United States*, 510 U.S. 540, 548 (1994). This inquiry is an objective one, made from the perspective of a reasonable person who is informed of all the surrounding facts and circumstances. *Microsoft Corp. v. United States*, 530 U.S. 1301, 1302 (2000). However, the reasonable person is not "hypersensitive or unduly suspicious," but is a "well-informed, thoughtful observer." *United States v. Holland*, 519 F.3d 909, 913 (9th Cir. 2008). Here, SPI does not fully explain its contention that my impartiality in this matter might reasonably be questioned, but states that I "represented the Forest Service regarding issues that are again disputed in this case" and argues that "along with the other facts discussed above," recusal is required under section 455(a). Dckt. No. 83 at 3. SPI's reply brief makes clear that this argument is premised on the docket sheet in *Sierra-Nevada* erroneously listing me as "lead attorney" for the government. Reply, Dckt. No. 88, at 2 ("[R]egardless of Judge Brennan's actual knowledge of disputed facts, his 'impartiality might reasonably be questioned' based on

---

[7] Each of those documents are matters of public record and subject to judicial notice. The rulings and docket for *Sierra-Nevada* are attached as exhibits to the Warne declaration.

information in the public record.")

First, as I have explained above, I did not advise the Forest Service regarding issues that are disputed in this case and the speculation to the contrary is mistaken. Second, SPI now knows this and is now aware that the docket sheet designation is wrong. A well-informed, thoughtful observer who was made aware of all of the surrounding facts and circumstances of my limited role as counsel in the *Sierra-Nevada* case would not reasonably question my impartiality in this matter. Such an observer would not reasonably assume that my limited local liaison role in the *Sierra-Nevada* case would have caused me to be biased in favor of the Forest Service in a separate action several years later involving a fire that had not occurred at the time that *Sierra-Nevada* was being litigated. A well-informed observer would know--as SPI does now-- that in the course of the *Sierra-Nevada* case I did not advise the Forest Service regarding whether or how to implement the Act that SPI contends is relevant, nor was I privy to confidential information on these topics.[8] Accordingly, SPI's assertion as an affirmative defense a lack of compliance with the Herger-Feinstein Act does not create a question as to my impartiality.

**C. Other Arguments**

SPI makes two more somewhat threadbare arguments for recusal. SPI argues that I "may have served as an advisor to the Forest Service regarding the 'merits of the particular case in

---

[8] In fairness to counsel for SPI, the docket sheet erroneously listed me as "lead attorney" and SPI appears to have made a number of incorrect assumptions based on that mistaken information. But, as discussed at oral argument, the designation "lead attorney" is from an attorney designation data field that was not in use by the Clerk's Office at the time to differentiate lead attorneys from attorneys who were simply designated to receive notice of orders and court filings. Rather, under the electronic docketing system being put in place at that time the default designation for all attorneys appearing on the letterhead of briefs or that were designated to receive copies of orders was both "lead attorney" and "attorney to be noticed." Thus, in thousands of cases multiple attorneys were listed as both "lead attorney" and "attorney to be noticed" for the same party, but the designation bears no relationship to who actually litigated the case.

Significantly here, SPI's mistaken belief in that regard has now been corrected. Thus, a well-informed observer having that additional information could not reasonably rely on the inaccurate docket designation to argue that I litigated a case that I did not. SPI now has the benefit of having learned from the attorneys who actually litigated the case, as well as from the undersigned, that in fact I had no significant role in the *Sierra-Nevada* case.

9

controversy' within the meaning of 455(b)(3)." Dckt. No. 83 at 3.  SPI then backpedals, stating that "[e]ven if this fact does not, strictly speaking, require recusal under section 455(b)(3)," it creates an appearance of impropriety under 455(a).  *Id.*  Section 455(b)(3) requires recusal where a judge "has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy."  Here, the "proceeding" or "the particular case in controversy" refer to the instant action, not the *Sierra-Nevada* case.  Accordingly, section 455(b)(3) has no application.

SPI also argues that I must recuse because I may be called as a witness in this case. Dckt. No. 83 at 3.  SPI offers no explanation for this curious assertion except that I "may be highly knowledgeable about the scope and significance of the legal challenges to the Herger-Feinstein Act implementation."  *Id.*  SPI appears to be implying that I might be called to testify in this case as an expert legal historian.  SPI has not attempted to explain why either party would call an expert legal historian to opine on the legal challenges of the Act's implementation. Neither has it attempted to explain why a party would call their presiding judge as such an expert rather than any number of other persons with similar expertise.

Thus, these arguments present no grounds for granting the recusal motion.

**D.  Duty Not to Recuse and Timing**

Two weeks before SPI filed the recusal motion I heard and partially denied SPI's discovery motion.  I also heard and gave some indication of my leanings on the government's motion for a protective order that called into question the propriety of certain contacts by an attorney for SPI with Forest Service employees.  The arguments were spirited and counsel for SPI was quite pointed in his disagreement with the ruling as to the discovery matter.  In light of the fact that this motion followed soon after that hearing, I am obliged to weigh carefully my obligation not to recuse in the absence of a legitimate reason to do so.  While I do not consider this a close call, SPI has argued that in a close call the court should err on the side of recusal.

10

Yet a compelling countervailing concern in this case is the timing of the recusal motion as it intersects with the court's duty not to recuse lightly. *United States v. Snyder*, 235 F.3d 42, 45 (1st Cir. 2000) ("[J]udges are not to recuse themselves lightly under § 455(a)"); *In re U.S.*, 441 F.3d 44, 67 (1st Cir. 2006) ("The trial judge has a duty not to recuse himself or herself if there is no objective basis for recusal"). Several Circuits have admonished that "[t]here is as much obligation for a judge not to recuse when there is no occasion for him to do so as there is for him to do so when there is." *See Himan v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987). The Ninth Circuit has explained a judge's obligation to sit on assigned cases as follows:

> We begin with the general proposition that, in the absence of a legitimate reason to recuse himself, "a judge should participate in cases assigned." This proposition is derived from the "judicial Power" with which we are vested. See U.S. Const. art. III, § 1. It is reflected in our oath, by which we have obligated ourselves to "faithfully and impartially discharge and perform [our] duties" and to "administer justice without respect to persons, and do equal right to the poor and to the rich." 28 U.S.C. § 453. Without this proposition, we could recuse ourselves for any reason or no reason at all; we could pick and choose our cases, abandoning those that we find difficult, distasteful, inconvenient or just plain boring. Our mythic Justice, represented by a blindfolded figure wielding a balance and a sword, hears all cases coming before her, giving no preference-whether in priority or result-to the station or economic status of such persons.

*Holland*, 519 F.3d at 912 (internal citations omitted).

The obligation not to recuse is perhaps at its highest when the motion has been brought after the party seeking recusal has sustained an adverse ruling in the course of the action. "Granting a motion to recuse many months after an action has been filed wastes judicial resources and encourages manipulation of the judicial process." *Willner v. University of Kansas*, 848 F.2d 1023, 1029 (10th Cir. 1988). *See also In re Int'l Business Machines Corp.*, 618 F.2d 923, 932-33 (2d Cir. 1980); *Apple v. Jewish Hosp. and Medical Center*, 829 F.2d 326 (2d Cir. 1987) (although § 455 does not contain an explicit timeliness requirement, timeliness has been read into the section); *Singer v. Wadman*, 745 F.2d 606, 608 (10th Cir. 1984) (recusal motion was untimely where it was filed a year after the complaint was filed and after the appellants had suffered some adverse rulings on interlocutory matters).

Simply stated, a judge must take care not to recuse out of an abundance of caution when it appears that a party may be seeking recusal out of dissatisfaction after sustaining adverse rulings.  As the First Circuit has explained:

> . . . an appellate court has no wish to encourage strategic moves by a disgruntled party to remove a judge whose rulings the party dislikes. '[T]he disqualification decision must reflect not only the need to secure public confidence through proceedings that appear impartial, but also the need to prevent parties from too easily obtaining the disqualification of a judge, thereby potentially manipulating the system for strategic reasons, perhaps to obtain a judge more to their liking.'

*In re U.S.*, 441 F.3d 44, 67 (1st Cir. 2006) (quoting *In re Allied-Signal Inc.*, 891 F.2d 967, 970 (1st Cir. 1989)).

### IV. Conclusion

Given the timing and history of this recusal motion, coming as it did on the heels of a hearing in which SPI's motion was partially denied and I gave some indication that I was inclined to rule in the government's favor on their motion for a protective order, I have carefully considered my obligation not to recuse where there is no clear basis to do so.  While it is possible that I may have provided nominal logistical support to the ENRD attorneys who litigated the *Sierra-Nevada* case for the government, I have no personal knowledge of disputed evidentiary facts in this proceeding.  Moreover, with the information that has been provided to SPI, a well-informed observer would be aware of my lack of personal knowledge of disputed evidentiary facts and would therefore not question my impartiality in this matter.  There are no other grounds for recusal under section 455.  Accordingly, SPI's motion to recuse is hereby denied.

SO ORDERED.

DATED: November 15, 2010.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE