IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. CIV S-09-2445 JAM EFB |
| vs. | |
| SIERRA PACIFIC INDUSTRIES, et al., | |
| Defendants. | <u>ORDER</u> |

This matter was before the court on September 22, 2010, for hearing on Sierra Pacific Industries' (hereafter "SPI") August 27, 2010 motion for discovery and the United States' August 25, 2010 motion for a protective order. Assistant U.S. Attorneys Kelli Taylor and Todd Pickles appeared on behalf of the plaintiff, the United States. Attorneys William Warne, Mike Thomas, Annie Amaral, and Meghan Baker appeared on behalf of defendant SPI. Attorney Richard Linkert appeared on behalf of the Walker defendants and related trusts.

**I.    SPI's Motion for Discovery Partially Granted**

For the reasons stated on the record, the motion for discovery was partially granted and partially denied. The court granted SPI two days and four hours to depose Joshua White and the same amount of time to depose Dave Reynolds. The court granted SPI an additional ten

////

depositions beyond the number of depositions the parties had already agreed upon,[1] as discussed at the hearing. That bench ruling is confirmed by this written order.

## II.   United States' Motion for Protective Order is Granted

Following extended oral argument, the court submitted for further consideration the United States' motion for a protective order. That motion is now granted.

The United States argues that an attorney for SPI, Michael Schaps, questioned Forest Service employees regarding matters SPI considers relevant to this litigation, and that this contact violated the rules of professional responsibility barring contact with represented parties. It is undisputed that Schaps did communicate with Forest Service employees, and that the communication occurred without notice to or consent from the attorneys representing the United States and without resort to the Federal Rules of Civil Procedure as they pertain to discovery. It is also undisputed that Schaps did not inform those employees that he was an attorney representing SPI in this pending litigation. However, SPI asserts that the communications were protected by the First Amendment and thus did not violate professional responsibility rules.

The United States seeks an order requiring counsel for SPI to produce a list of all of plaintiff's employees who have been contacted by SPI's counsel or persons acting at the direction of counsel, together with the dates of the contacts, and a description of what representations were made by counsel or counsel's agent(s) before the employees were questioned. The United States also requests that counsel for SPI be ordered to produce to the plaintiff the originals and all copies of all notes or other documents that concern or relate to the communications by plaintiff's employees and SPI's counsel and/or agents. The motion also seeks an order requiring SPI's counsel (including those acting on behalf of counsel) to inform any federal employee they contact in the course of this litigation that they are attorneys (or

---

[1] The United States had already agreed to 15 federal depositions, in addition to the 23 depositions that were scheduled or had been taken in state court, and three additional depositions that were to be taken as expert depositions.

representatives of attorneys) working on behalf of SPI in litigation brought by plaintiff against SPI involving the Moonlight Fire. Finally, the motion seeks an order precluding SPI from using information obtained by the ex parte communications with the Forest Service employees.

### A. The Parties' Arguments

The parties have described in the Joint Statement filed September 15, 2010 their respective versions of what occurred. Dckt No. 78 ("Jt. Stmt."). While their characterizations of the contacts in question are sharply at odds, certain key facts regarding the communications with the government's employees are not seriously disputed.

The parties agree that Schaps attended a Forest Service sponsored field trip to a fuel reduction project site on the Plumas National Forest. *Id.* at 2, 24. It is undisputed that the excursion was open to the public. The Unites States complains, however, that while on the field trip Schaps specifically questioned Forest Service employees about fuel breaks, fire severity, and what contract provisions the Forest Service requires for fire prevention in timber sale projects, and that he did so without disclosing that he was seeking information regarding pending litigation and that he was an attorney representing a party opposed to the government in that litigation. *Id.* at 4 (citing Tompkins, Garcia, Wood and Suihkonen Declarations). Had he made those disclosures, the government argues, the Forest Service employees could have sought legal counsel before engaging in the communications with and responding to questions by the government's opposing counsel. According to the government's employees, Schaps, again without disclosing his status as opposing counsel, also asked their opinions as to several hypothetical questions concerning these topics. The United States further contends that when the District Ranger specifically asked him if he was representing anyone, Schaps failed to disclose the fact that he was representing SPI in this litigation, and further failed to inform the employees

////

////

////

that he considered the issues he was inquiring about relevant to the pending litigation.[2] *Id.* at 4. The United States also asserts that Schaps used his iPhone to record parts of his discussions with the Forest Service employees. *Id.* at 4-5.

SPI argues that the Forest Service chose to organize the event and to invite the public, including a local news reporter. *Id.* at 24. SPI notes that the Forest Service identified the topics to be addressed and invited the public's input. *Id.* SPI contends that its attorney's participation in the event, including his conversations with Forest Service employees, was constitutionally protected activity under the First Amendment. SPI also asserts that its attorney was not required to reveal his status as counsel for SPI and that he was "unconstitutionally interrogated" when Forest Service employees asked him whether he represented anyone. *Id* at 24-25.

**B.  Applicable Legal Authority**

Local Rule 180(e) states that attorneys before this court must comply with the Rules of Professional Conduct of the State Bar of California (hereafter "California Rules").  Local Rule 180(e) further provides that in the absence of an applicable California standard, the Model code of Professional Responsibility of the American Bar Association may be considered as guidance.

Rule 2-100 of the California rules states: "[w]hile representing a client, a member shall not communicate directly or indirectly about the subject of the representation with a party the member knows to be represented by another lawyer in the matter, unless the member has the consent of the other lawyer."[3]

---

[2] The government alleges that Schaps made several false representations to Forest Service employees as to his status and whether he was representing anyone during the course of his discussions with and questioning of those employees. *Id*. at 3-4.  The government argues that these false statements violated the standards of professional conduct required by Local Rule 180(e), Cal. Bus. & Prof. Code § 6068(d) and ABA Model Rules 4.1(a) and 8.4(c).  Because the court grants the instant motion on grounds that the communications violated the no contact rule, the court does not address this issue.

[3] This prohibition includes contacts with employees of a represented party where the communication concerns material acts or omissions of the employee or may elicit statements that constitute an admission of the part of the organization. Rule 2-110(B)(2). As discussed below,

4

Rule 2-100(C)(1) contains a "public officer" exception to the no contact rule. According to a proposed, but not formally adopted, opinion by the state bar, the public officer exception allows for contact with a represented party or employee if the communication is with:

> a person whom a communication would be constitutionally protected by the First Amendment right to petition the government. Such a person would be one who, for example, has the authority to address, clarify or alter governmental policy; to correct a particular grievance; or to address or grant an exemption from regulation.

Proposed Formal Opinion Interim No. 98-0002. As the proposed opinion notes, the purpose for the exception is to recognize rights which already exist under the First Amendment.[4]

As noted above, the ABA Model Rules may be considered by this court as guidance in the absence of an applicable California standard. ABA Model Rule 4.2 is similar to California's no contact rule, as it also prohibits contact with represented parties (including government agencies and employees) except where the communication is protected under the First Amendment.[5]

The California and ABA rules, while very similar, do vary in their approach to determining whether a given communication with an unrepresented party is protected by the First Amendment right to petition government for a redress of grievances. The ABA rule focuses on the purpose for the communication as well as the level of authority of the government

---

this appears to be precisely the point of the contacts with the Forest Service personnel that occurred here.

[4] There is also an "otherwise authorized by law" exception to the no contact rule under 2-100(C)(3). This exception simply recognizes that communications protected by the First Amendment are not prohibited by the no contact rule. Paradoxically, SPI does not argue that the "authorized by law" exception applies. Jt. Stmt. at 37 n.15 ("Finally, the government's arguments regarding the applicability of Rule 2-100(C)(3)'s "otherwise authorized by law" exception are directed at a straw man. Sierra Pacific does not rely on this exception because Rule 2-100(C)(1)'s exceptions so clearly apply.") The court will not separately address the "authorized by law" exception, but notes that in this case, as First Amendment protection is at issue, the analysis would be similar to that of the "public officer" exception.

[5] The ABA rule protects a represented government entity from unconsented contacts by opposing counsel, but provides an exception to ensure the "right of access to government decision makers." ABA Formal Ethics Opinion 97-408.

1  official being contacted:

> Rule 4.2 permits a lawyer representing a private party in a controversy with the government to communicate about the matter with government *officials having authority* to take or to recommend action in the matter, provided that the *sole purpose* of the communication is to address a policy issue, including settling the controversy.

ABA Formal Ethics Opinion 97-408 (emphasis added). Even then, the ABA rule requires reasonable advance notice to the government's counsel. ABA Model Rule 4.2. Finally, the ABA rule is clear that "[i]n situations where the right to petition has no apparent applicability, either because of the position and authority of the officials sought to be contacted or because of the purpose of the proposed communication, Rule 4.2 prohibits communication without prior consent of government counsel."

California's rule, at least as explained by the state bar's currently unadopted but proposed formal opinion No. 98-0002, discounts the importance of the purpose of the communication. Instead, the California rule focuses primarily on the level of the public official's authority. The analysis set out in the unadopted opinion would bar such questioning of a government employee where the employee lacked the authority to decide the matter or policy question addressed in the communication. The public officials at issue in the unadopted opinion were line police officers, and they were determined not to be of the requisite level of authority to be covered by the "public officer" exception of Cal. Rule 2-100(C).[6]

---

[6] Ignoring the purpose of the communication entirely is problematic. A focus solely on a public official's level of authority without regard to the purpose of the communication offers little assistance in determining the ultimate question of whether the communication is protected by the First Amendment. However, contrary to the suggestion in unadopted Opinion No. 98-0002, the emphasis that the California rule places on the public official's level of authority does not necessarily represent a different approach than the ABA rule. Where the level of authority falls below that necessary to address the policy issue presented, it may be possible to determine, as in the case of the line police officers, that the communication could not have implicated a First Amendment right to seek governmental redress. Otherwise stated, the fact that the purpose for the communication has nothing to do with the exercise of First Amendment rights can be inferred by the lack of authority of the official who was contacted.

Obviously, as both the ABA and California rules require, the government official must be one possessing the power to grant the remedy being sought by the contact. But it is the First

There are several policy reasons behind these rules.  *Mitton v. State Bar of Cal.* held that before any direct communication is made with the opposing party, consent of the opposing attorney is required because "[i]f a party's counsel is present when an opposing attorney communicates with a party, counsel can easily correct any element of error in the communication or correct the effect of the communication by calling attention to counteracting elements which may exist."  455 P.2d 753, 758 (1969).  Citing *Mitton*, the California Court of Appeals recognized that "one of the reasons for the ethical rule barring ex parte communication is to prevent injurious disclosures."  *Continental Ins. Co. v. Superior Court*, 32 Cal. App. 4th 94, 112 (1994).  The court explained:

> [A]n important reason why the ethical rules bar ex parte communication is because statements made by the uncounseled party to an opposing attorney might be offered against that party as admissions in court, thereby seriously damaging [the] case...."[T]he lawyer may be required to supervise the manner in which information is elicited to prevent his client from making statements which, through ambiguous use of language, may not accurately or fairly reflect the client's position."  Presence of the attorney at the interview allows counsel to perform properly her duty to ensure that her client's case is presented in the best possible light.
>
> Although these types of improvident disclosures may injure a corporation just as they may injure an individual, courts and commentators disagree as to the scope of the prohibition on ex parte contact with corporate employees justified by such dangers.

*Id.* at 112-13 (quoting Sinaiko, *Ex Parte Communication and the Corporate Adversary: A New Approach*, *supra*, 66 N.Y.U. L.Rev. 1456, 1471-1472; fns. omitted).

////

---

Amendment purpose of the communication that is protected.  Where the communication does not address matters implicating a request for governmental redress, the "redress" clause of the First Amendment is simply not implicated.  Thus, it is counterintuitive to suggest that communications for purposes having nothing to do with seeking governmental redress are nonetheless covered by the First Amendment's petition-for-redress clause merely because the public official happens to be a policy-making official.  However, as discussed below, this difference in approach between the ABA Formal Ethics Opinion 97-408 and Cal. Bar Committee of Professional Responsibility, Proposed Formal Opinion Interim No. 98-0002 is of no consequence here.

7

The Ninth Circuit has also recognized this policy purpose:

> Rule 2-100's prohibition against communicating with represented parties without the consent of their counsel is both widely accepted and of venerable heritage. The California rule tracks the language of Rule 4.2 of the American Bar Association's Model Rules of Professional Conduct, which in turn is nearly identical to its predecessor in the Model Code of Professional Responsibility, Disciplinary Rule 7-104(A)(1). A similar prohibition appears under Canon 9 of the ABA's Canons of Professional Ethics, which were promulgated in 1908. Not simply an American invention, the prohibition has roots which can be traced back to English common law. *See, e.g., In Re Oliver*, 2 Adm. & Eccl. 620, 622, 111 Eng.Rep. 239, 240 (1835) ("When it appeared that Mrs. Oliver had an attorney, to whom she referred, it was improper to obtain her signature, with no attorney present on her part. If this were permitted, a very impure, and often a fraudulent, practice would prevail.") (Lord Denman, C.J.). Today some version of the rule is in effect in all fifty American states.
>
> The rule against communicating with a represented party without the consent of that party's counsel shields a party's substantive interests against encroachment by opposing counsel and safeguards the relationship between the party and her attorney. . . . the trust necessary for a successful attorney-client relationship is eviscerated when the client is lured into clandestine meetings with the lawyer for the opposition. As a result, uncurbed communications with represented parties could have deleterious effects well beyond the context of the individual case, for our adversary system is premised upon functional lawyer-client relationships.

*United States v. Lopez*, 4 F.3d 1455, 1458-59 (9th Cir. 1993).

**C. Analysis**

It is undisputed that SPI's counsel, Schaps, communicated directly with employees of the Forest Service, that he knew that the Forest Service was represented by counsel in this litigation, and that he did not have the consent of counsel for the United States to engage in the communications.

Moreover, while it is not clear how the communications with the Forest Service employees related to the "subject of the representation," there is little doubt that Schaps' purpose in questioning the Forest Service employees was to obtain information and evidence to use in this litigation against the government.[7] SPI did not offer any other explanation for Schaps'

---

[7] Rather than dispute whether the communications related to the "subject of the representation," SPI argued at length in the context of this motion and its motion to take more and longer depositions than provided by Fed. R. Civ. P. 30(a)(2) and (d)(1) that the topics are

questioning the employees, either in their briefs or at oral argument, and his declaration is silent on the subject. It appears that the effort to gather relevant evidence was unsuccessful, as SPI's counsel has represented in a letter that "Schaps did not gather any evidence we intend to use." Dckt. No. 79, Ex. O to Warne Declaration (letter dated August 27, 2010 at 3). Nonetheless, counsel's letter clearly shows that Schaps was actively seeking information to use in the litigation. *See* discussion below. Moreover, SPI's counsel asserted at oral argument that the information it obtained by those communications is protected from disclosure to the government by the attorney work product privilege, thus implying that the information that Schaps gathered on the tour was for the purpose of litigation.

Thus, California Rule 2-100 was violated here unless the "public officer" exception of subsection (C)(1) applies. SPI strenuously argues that the exception applies because its attorney merely attended a tour that was open to the public. SPI discounts the fact that Schaps also questioned Forest Service employees about matters that at least SPI's counsel believes touch on issues in dispute in the pending litigation. Thus, Schaps states in his declaration that "I believed it was my right to attend the tour, which was open to the public, without providing information regarding my employment or clients." There can be little doubt that he had that right. The United States concedes as much. Jt. Stmt. at 11. But this statement stops short of addressing the more pressing issue raised by his contact with the plaintiff's employees. Those employees describe contacts that went well beyond attending a public information tour of a project site. One employee, Garcia, attests that Schaps "asked many questions of the Forest Service employees" on topics "includ[ing] fuel breaks and their potential effects on fire severity, and what types of contract provisions regarding fire precautions the Forest Service requires with respect to timber operators working in National Forests." Garcia Decl. ¶ 6. In questioning employee Garcia, Schaps continued his line of questions regarding "fuel breaks and fire severity,

---

relevant to the litigation and that its attorneys have a right to unfettered contact with the government's employees in question on these matters.

9

including asking [Garcia's] opinions about hypothetical situations involving fires and fuel breaks." *Id.* ¶ 7. Another employee, Tompkins, states in his declaration that he also was questioned by Schaps about fuel breaks and their potential effects on fire severity, and what contract provisions for fire precautions the Forest Service requires of timber operators working in National Forests. Tompkins Decl. ¶ 7. Tompkins also was asked for his opinions as to hypothetical questions involving fires and fuel breaks. *Id.* at ¶ 9. He also observed Schaps using his iPhone and believes some of the conversations were recorded on it. *Id.* at ¶ 8. Like Garcia, Tompkins was never informed that Schaps represented SPI in this pending litigation. *Id.* at ¶ 10.

As discussed above, it is clear that evidence gathering, not seeking governmental redress, was the point of Schaps' contacts. This point is underscored by the statement in SPI's counsel's letter that ". . . we have every intention of preserving all evidence gathered through our investigation of the Moonlight Fire, including any gathered as a result of contacts with government employees." Dckt. No. 79, Ex. O. The letter criticizes the government's objections to Schaps' ex parte communication with its employees, arguing that the objections amount to an improper interference with the discovery process. SPI's letter scolds the government for its objections as "searching for ways to limit discovery by the named defendants in order to increase your chances of prevailing . . . ." *Id.* at 4; Jt. Stmt. at 33. The letter clearly shows that Schaps' actions were not an exercise of a First Amendment right to seek redress of a particular grievance, but were rather an attempt to obtain evidence from these employees. This is consistent with SPI's argument that its counsel has a right to unfettered access to these employees.

There is little to support the characterization of Schaps' communications with the employees as an exercise of the right to petition a policy level government official for a change in policy or to redress a grievance. Rather, the facts show and the court finds that he was attempting to obtain information for use in the litigation that should have been pursued through counsel and through the Federal Rules of Civil Procedure governing discovery. SPI surely has the right to conduct discovery. But interviewing Forest Service employees, without notice to

10

government's counsel, on matters SPI considers part of its litigation with the government--even if not successful in obtaining relevant evidence--strikes at and, indeed questions the very policy purpose for the no contact rule.

To suggest that the "public official" exception to the rule permits unfettered access to the employees in question here, regardless of the purpose, carries the exception too far. SPI's counsel argues for an exception so broad that it eviscerates the rule by the mere presence of the government in the litigation. Absent an appropriate exercise of the First Amendment right to seek governmental redress of a grievance(s) or to decide or address a particular issue before the official being contacted, these exceptions have no application here. There is nothing in Schaps' declaration, or the declarations of the government employees he contacted that supports a conclusion that he was communicating with them as part of a request for governmental redress. Nor do they support a conclusion that he was communicating with a policy-making official or persons with authority to change a policy or grant some specific request for redress that Schaps was presenting. Therefore, the exception of Rule 2-100(C)(1) can have no application here. Rather, the evidence together with SPI's own arguments demonstrate that, apart from simply attending the tour, Schaps also questioned certain Forest Service personnel, and while doing so was engaged in an attempt to discover and gather evidence and statements from those employees for use in this litigation. He did so without the consent of the government's counsel and without disclosing either the litigation or his status as opposing counsel in that litigation.[8]

Although ABA Rule 4.2 is not necessarily controlling here, that rule was violated as well. Unconsented questioning of an opposing party's employees on matters that counsel has reason to believe are at issue in the pending litigation is barred under ABA Rule 4.2 unless the sole purpose of the communication is to exercise a constitutional right of access to officials having

---

[8] The court accepts the explanation in Schaps' declaration that he believed he had a First Amendment right to attend the tour. But his declaration fails to address or even dispute the government employees' accounts of the key communications and questioning by Schaps.

11

the authority to act upon or decide the policy matter being presented. In addition, advance notice to the government's counsel is required.

Thus, under either Cal. Rule 2-100, or the rule that its language tracks,[9] Rule 4.2, the communications with the employees here were prohibited.

**D. Conclusion**

SPI's counsel's communication with the Forest Service employees violated California Rule 2-100. Accordingly, the court grants the United States' motion and orders as follows.

Within seven days from the date of this order, SPI must identify all federal employees contacted without the knowledge of counsel for the United States in this matter to date, as well as the dates and circumstances of each contact, and produce originals and copies of all recordings or documents relating to such communications. Recordings and documents containing such information that are stored on Schaps' iPhone or other electronic devices must be accurately copied and produced to the government in electronic format. Upon confirmation from the government that it has received the duplicate copies in a useable electronic format those files shall be deleted from the iPhone or other devices and SPI and its counsel shall not retain copies. SPI shall submit a sworn declaration attesting that all such electronic recordings and documents have been produced and then deleted.

The court accepts SPI's specific representation in the August 27, 2010 Warne letter (appended to the Warne Declaration, Dckt. No. 79, Ex. O at 3) that SPI does not intend to use "any evidence" gathered by Schaps from these disputed contacts. Consistent with that representation, SPI shall be barred from using information obtained through such contacts in this litigation. Likewise, the court accepts SPI counsel's representation that counsel will "identify [their] relationship to Sierra Pacific and involvement in this litigation before seeking out and interviewing particular government employees about issue related to the Moonlight Fire. [And]

---

[9] *See United States v. Lopez*, 4 F.3d at 1458.

12

1  . . . to notice the deposition of control group federal employees if and when [counsel] wish to ask
2  them questions." Jt. Stmt. at 33, 42 (quoting August 27, 2010 Warne letter). Counsel must hold
3  themselves to that representation and must not engage in such contact in the future.
4      SO ORDERED.
5  DATED: November 15, 2010.

        EDMUND F. BRENNAN
        UNITED STATES MAGISTRATE JUDGE