1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   UNITED STATES OF AMERICA,

11            Plaintiff,                    No. CIV S-09-2445 KJM EFB

12      vs.

13   SIERRA PACIFIC INDUSTRIES, et al.,

14            Defendants.                   ORDER
                                    /
15

16        On June 6, 2011, Sierra Pacific Industries filed an amended motion for leave to take

17   additional depositions; for additional time for the depositions of Special Agent Diane Welton

18   and Battalion Chief Ron Heinbockel; to compel the production of Special Agent Marion

19   Matthews for the conclusion of her deposition; to compel production of documents; and to

20   compel supplemental responses and verifications to interrogatories.[1] Dckt. No. 214.

21        This motion is the eighth discovery motion brought by the parties in this case in the last

22   ten months. *See* Dckt. No. 68 (motion for protective order to bar improper ex parte contacts; to

23   preserve and produce evidence of ex parte contacts; and prohibit use of evidence obtained from

24   ex parte contacts); Dckt. No. 69 (motion for leave to take more than 10 depositions and take

25

26        [1] It appears that the latter two issues have now belatedly been resolved.

                                           1

depositions in excess of seven hours); Dckt. No. 86 (motion to compel personnel records and for sanctions); Dckt. No. 119 (motion to compel compliance with court order and production of documents, and sanctions); Dckt. No. 168 (motion to compel production of documents and answers to deposition questions); Dckt. No. 184 (request for discovery conference and stay of responding to defendants' written discovery); Dckt. No. 190 (motion for protective order).  A ninth discovery motion is currently set for hearing on July 13, 2011.  *See* Dckt. No. 217.  In addition, defendants have filed a motion to recuse the undersigned and three motions for reconsideration of the undersigned's rulings, all of which have been denied.  *See* Dckt. No. 83 (motion to recuse); Dckt. Nos. 102, 106, 142.

Some of the parties' motions have presented legitimate issues for judicial review.  Other motions have been an waste of the court's and counsel's time, at the unfortunate expense of their clients.  *See* Dckt. No. 152 (transcript of January 21, 2011 hearing where the undersigned stated: "I want to talk a little bit about further discovery in this matter, because it seems to me that this entire motion could have been eliminated with communication between counsel.  I think this motion is entire[ly] unnecessary.  When the government first filed its request for clarification back in December, it could have been very easily resolved at that time, and I don't know how to improve the communications between the parties in this case, but it's got to improve.  The fact that SPI was handed a bill for what I understand to be roughly $20,000 for this entirely unnecessary motion is dismaying to me . . . we can't continue this way").

It appears that the professional relationship between lead counsel for SPI and the United States has so degraded that the meet and confer process has been largely futile.  Deposition transcripts demonstrate a pattern of unprofessional and immature behavior.  Examples of this behavior include:

> [Witness:] ... And [I] may have talked–and I want to emphasize "may"--
> Ms. Taylor: Don't guess.  If you have a sense or if you know.
> ...
> Mr. Warne:  Please.  Ms. Taylor, your actions in this case from the start have been
> to suppress information.  We all know that.  Eventually your supervisors are

1  going to know that too.  But I have already told the witness what I'm entitled to
2  and your constant attempts to keep us from the truth are nauseating.

3  Heinbockel Dep., lodged June 15, 2011, at 77:7-19.

4  Mr. Warne:  Ms. Taylor, you're making hand gestures to your colleague.  I would
   appreciate it, because you're distracting me and the witness–
5  Ms. Taylor: It's just because you took your hands...and rubbed them across your
   eyes like you can't believe the answer you're getting.  Your frustration–I
6  appreciate you're frustrated.  It's coming out in nonverbal cues and it's
   inappropriate.
7  ...
   Mr. Warne: If I rub my eyes and you mimic me in the context of me rubbing my
8  eyes, you are doing a disservice to your position as an Assistant U.S. Attorney.  I
   would ask that you not mimic me when I engage in whatever gestures I do engage
9  in.  As a human being it is absurd.
   ...
10 Mr. Warne: You're embarrassing.
   Ms. Taylor: It's distracting and inappropriate, Mr. Warne.
11 Mr. Warne: You're wasting my time.
   Ms. Taylor: And I have asked you multiple times with this witness and with other
12 witnesses to please stop.
   Mr. Warne: I want you to write this.  You're embarrassing.

13

14 Welton Dep., lodged June 15, 2011, at 234:21-236:1.

15 Mr. Warne: I don't understand your answer, Chief.  I'm asking a pretty particular
   question.
16 Witness: And I'm giving a very particular answer.
   Ms. Taylor: He has answered.
17 Mr. Warne: Stop interfering.
   Ms. Taylor: You know what, Mr. Warne...And I'm going to say this on the
18 record.  We had this issue yesterday with finger pointing and sighing and gestures
   and hands in heads.  And it's starting again this morning and it is not going to be
19 tolerated today.  The witness has the right to answer the question and not be
   treated in an inappropriate manner.  And I'm going to insist on it today from
20 everybody in this room.
   Mr. Warne: Calm down, Ms. Taylor.  You know that nobody in this room either
21 today or yesterday–and it will be supported by everybody on this side of the
   table–acted in any way that was inappropriate other than you.  And when you
22 acted in a way that was inappropriate, it was off the record.  Nobody here is
   engaged in anything other than trying to get information from a very important
23 witness.  And I will not be lectured by you, of all people, as to what is appropriate
   and what is not appropriate.  Now, if you would let me continue with my
24 examination, I would appreciate it very much.
   Ms. Taylor: I will let you continue with it if you do it in a professional manner
25 only.

26 ////

3

1    Witness: Mr. Warne, if I can interrupt?
     Mr. Warne: Hang on, Chief.  You are not the judge in this matter, ma'am, and you
2    have no right to act as if you are the judge.  You are an attorney engaged in all
     kinds of games with respect to not providing information timely, with respect to
3    submitting interrogatories that are false.  Don't sit here and lecture me about what
     is appropriate.  I'm not going to take that from you for a second.
4    Ms. Taylor: You know what, Mr. Warne, we will end this depo and call the judge
     and go over to the federal courthouse if you continue with the behavior...
5

6    Decl. of Kelli L. Taylor, Ex. 26, White Dep., at 3696:15-698:9.

7        Ms. Windsor: ...On a break in the state court deposition there was discussion that
         was overheard by this witness where people were saying his name, looking at the
8        Internet and laughing about something that you were observing on the Internet....I
         felt it was unbelievably inappropriate and rude.
9        ...

10       Witness: During the state court deposition Mr. Warne specifically said, "Go to
         google.  If you in quotes put 'Josh White,' end quote, type 'Cal Fire,' it's the
11       second link."  Everybody was gathered around a computer and there was much
         giggling and fanfare.  I was in here by myself without any counsel and I
12       recognized that in the future I couldn't come back in here without counsel
         present.
13

14   *Id.*, 700:8-701:4.

15       Mr. Warne: Okay.  And when you were out there, were you able to see what you
         would think would be the perimeter of the fire?
16       Mr. Elias: Object to the form of the question.  Lacks foundation.  Go ahead.
         Mr. Warne: How can that particular question lack foundation?  I mean I have
17       been actually putting up with this all day long.  I specifically asked this witness if,
         when she was out there, she could identify the perimeter of the fire.  There is
18       nothing about the question that is objectionable.
         Mr. Elias: You need a foundation before you can ask her if she can identify it.
19       Mr. Warne: You know, I don't want to take this all day.  I just let you go on but
         you are interfering with my right to take this witness's deposition.
20       Mr. Elias: Absolutely not.
         Mr. Warne: And you are also acting in a way that is completely inconsistent with
21       what I understand your obligations to be as an Assistant US Attorney.  I am
         simply attempting to get evidence in this case, as has been the case with every
22       defendant in this case since this case started.  And the amount of effort we've had
         to go through to simply have witnesses testify is astonishing.  This is a record of a
23       deposition.  Your constant objections, which are not well-founded, are going to be
         on tape.  When we play this witness' deposition to the jury, they are going to see
24       the fact that you are attempting to obstruct my efforts to take testimony from this
         witness.  I would ask that you refrain from making objections that are unfounded.
25       There is nothing about that particular question that lacks foundation.  I'm simply
         asking this witness that when she was out there on September 8, 2007 could you
26       identify for yourself what you considered to be the perimeter of the fire–

                                          4

1    Mr. Elias: And I state–
     Mr. Warne: Yes or no.
2    Mr. Elias: And I state for the record that that objection–that question lacks
     foundation.  I have objected succinctly to the form of the question throughout this
3    entire deposition and will continue to do so.  So I have stated the objection.  I
     have not instructed the witness not to answer the question.  If the witness can, the
4    witness can answer.
     Mr. Warne: You're engaging in speaking objections.
5    Mr. Elias: I'm actually responding to about three paragraphs of transcript that you
     just lodged towards me.

6

7    Matthews Dep., Lodged June 15, 2011, at 190:19-192:23.

8            There are other examples of unprofessional behavior in the copious collection of

9    deposition transcripts, letters and emails the parties have submitted to the court.[2]

10           The parties have not even managed to submit a single joint statement.  *Compare* Dckt.

11   No. 220 (Joint Statement filed by SPI) *with* Dckt. No. 218, Attach. A (Joint Statement filed by

12   United States of America).  Both sides argue that they were unfairly disadvantaged in the joint

13   statement drafting process.  Taylor declares:

14           SPI's first motion differs drastically from what it will apparently file with this
             court.  SPI has apparently removed two whole issues and drastically expanded on
15           the remaining matters.  SPI's tactics have deprived the United States of an
             opportunity to respond and what ultimately is filed is not a true joint statement.
16           SPI's attempts to blame the United States for these changes are disingenuous. The
             United States had provided the Matthews' privilege information previously and
17           confirmed that revised interrogatory responses would be provided before the
             amended notice of motion was filed to specifically include this issue. The United
18           States has had similar problems with SPI changing its joint statement in the past
             and requests that for any further discovery motions filed by SPI that this court
19           require it to file the motion at the time of the notice, that the United States
             respond seven days before the hearing, and that SPI get no reply.
20

21   Dckt. No. 218 at 1-2.  In contrast, SPI writes:

22           Sierra Pacific's brief was necessarily affected by the U.S.'s supplemental
             responses and subsequent opposition, which was sent the day before this Joint
23           Statement was due and in "VERY DRAFT" form....A comparison of the first and
             second drafts sent by the U.S., which the U.S. apparently sent before receiving
24           SPI's comments about the amended responses, shows that the U.S. had every

25   _____

26   [2] The court granted SPI additional time to take White's deposition.  It is dismaying to
     observe how some of the extra time was used.

5

1    intent of drastically changing its own brief regardless of what Sierra Pacific
2    included in its own...This is classic bad-faith and only supports a finding that the
     U.S. should be limited to its own initial brief, not SPI.

3    Dckt. No. 220 at 4.

4        The instant motion presents a variety of squabbles between the parties.  A cursory review

5    of the joint statements shows that the parties have not adequately met and conferred on some, if

6    not all, of the issues presented.  For example, the parties expect the court to referee their

7    disagreement over whether a witness' deposition should be reconvened for an additional 44

8    minutes, because government attorneys were ten minutes late for the deposition, SPI attorneys

9    would not agree to a short lunch break and took two approximately 15 minute breaks, and Mr.

10   Warne ended the deposition to leave at 5:45 for a "separate, previously scheduled engagement."[3]

11   Dckt. No. 220-1 at 7.

12       The parties appear to have expended more energy bickering than seriously attempting to

13   resolve their disputes, yet at least some of the attorneys seem to expect the court to serve as a go-

14   to referee for each of their spats.  *See, e.g.*, Matthews Dep. at 290:19-24 ("Ms. Taylor: ...this

15   deposition, if you end it today, as far as we are concerned, will be ended today....  Mr. Warne:

16   Well, you know, fortunately you are not the judge in this case.  We can take it up later");

17   Heinbockel Dep. at 86:2-87:5:

18       Mr. Warne: ...Ms. Taylor, I just want to let you know that I will be moving for a
         continuance of this deposition.  It's clear that we are not going to finish within 7
19       hours.  I have had to repeat on a number of occasions very clear questions to this
         witness.  He is clearly being evasive and he has been coached in such a way that
20       has caused him to seize up in this deposition in a way that is completely
         inappropriate.
21       Ms. Taylor: You know what, and I disagree with your characterization and your
         comments and your constant attacks.  That's what's inappropriate.
22       Mr. Warne: ...I'm having to sit here and waste all kinds of times [sic] repeating
         simple questions....I'm going to ask for more than 7 hours from Judge Brennan
23       and, if I have to, Judge Mueller because this is inappropriate.

24   ////

25

26       [3] The deposition transcript reveals that at the time, Mr. Warne asserted, "I've got a family
     waiting at home for me."  Matthews deposition, 290:3.

1   The parties have not adequately met and conferred regarding the issues raised in SPI's

2   motion.  The motion could be denied outright on this basis alone.  *See* Fed. R. Civ. P. 37(a)(1),

3   L.R. 251(b).  Instead, the court ORDERS that:

4       1.  The hearing on SPI's amended motion for discovery is continued to July 13, 2011 at

5   10:00 am in Courtroom No. 24.  *See* Dckt. No. 214.

6       2.  In the meantime, the parties must meet and confer in good faith in order to resolve the

7   issues raised in the motion.

8       3.  The parties' attorneys are ordered to meet in person in the undersigned's jury room to

9   discuss and resolve the issues presented.

10      4.  Before 4:30 pm on June 27, 2011, the attorneys shall contact the chambers of the

11  undersigned at (916) 930-4170 to schedule a time for the conference.

12      5.  The attorneys shall act professionally at all times and shall make all reasonable

13  compromises necessary to resolve their disputes.

14      6.  The attorneys shall make a good faith attempt to stipulate to any necessary additional

15  depositions.

16      7.  If after the meet and confer process the parties still have legitimate and not

17  insignificant discovery disputes, they shall file a revised joint statement no later than the close of

18  business on July 6, 2011.

19      8.  The revised joint statement shall consist of not more than ten double-spaced pages,

20  that is, five for each side.

21      9.  Failure to comply with this order may result in the imposition of sanctions.

22      10.  In the future, the parties shall meet and confer in good faith before filing any motion

23  in this case before the undersigned.  Failure to do so may result in the denial of the motion and/

24  or the imposition of sanctions.

25  DATED:  June 24, 2011.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

7