DECLARATION OF TRACY L. WINSOR IN SUPPORT OF STATE
THIRD PARTIES' MOTION TO QUASH SUBPOENA AND FOR
PROTECTIVE ORDER; AND REGARDING MEET AND CONFER

# Exhibit "A"

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

        Plaintiff,               No. CIV S-09-2445 KJM EFB

    vs.

SIERRA PACIFIC INDUSTRIES, et al.,

        Defendants.            ORDER

_____/

      Defendant Sierra Pacific Industries, W.M. Beaty/ Landowner defendants, and Howells

defendants move to compel the United States to produce testimony and documents relating to

communications between two of the United States' designated expert witnesses, Joshua White

and Dave Reynolds, and attorneys for the United States and the California Department of

Forestry and Fire Protection ("CDF"). The parties appeared at a hearing before the undersigned

on April 28, 2011, and the matter was submitted.[1]  For the reasons given below, the motion to

---

[1] At the hearing, the parties also discussed the United States' April 22, 2011 request for a
discovery conference and request for a stay of responding to defendants' written discovery. As
memorialized in the court's May 5, 2011 order, the United States was granted additional time to
respond to some of defendants' discovery. The parties agreed to further meet and confer
regarding their discovery disputes, and to contact the undersigned's courtroom deputy if it
became necessary to schedule a discovery conference. The United States' request for a stay of
discovery was denied.

1

AGO 000001

1  compel is granted.

2  **I.   BACKGROUND**

3  This lawsuit concerns damages caused by the Moonlight Fire in September 2007. At the

4  time of the fire, White was a CDF employee and Reynolds was an employee of the United States

5  Forest Service. Dckt. No. 178-1 at 1. They investigated the fire and prepared an Origin and

6  Cause Report documenting their findings. *Id.* at 2. In 2010, the United States disclosed them as

7  testifying expert witnesses. *Id.* White and Reynolds were not retained experts, and they did not

8  prepare expert reports for this litigation for the purposes of Rule 26(a)(2)(B) of the Federal Rules

9  of Civil Procedure ("Fed. R. Civ. P."). *Id.*

10  The United States claims that communications between White and Reynolds and the

11  United States Attorneys' Office ("USAO") and the California Attorney General's Office

12  ("AGO") are work product and protected by the attorney-client privilege.[2] Therefore, the United

13  States instructed White and Reynolds not to answer deposition questions regarding conversations

14  that they had with attorneys from the USAO or the AGO, and refused to produce documents

15  reflecting communications between the experts and counsel.

16  Defendants do not dispute that the communications and documents in question were

17  initially privileged. Rather, they argue that by designating White and Reynolds as testifying

18  expert witnesses, the United States waived otherwise applicable privilege and work-product

19  protection for those communications and documents.

20  **II.   ANALYSIS**

21  **A.   The Applicable Federal Rule Was Recently Amended**

22  The Federal Rule governing expert witness disclosures was amended on December 1,

23  2010. The relevant changes here pertain to whether certain communications by counsel to an

24

25  [2] The USAO and the AGO have entered into a joint prosecution agreement. Defendants do not argue that otherwise applicable privileges are waived because of the disclosure of the
26  documents and communications at issue to CDF. Defs' Mot. to Compel at 9.

2

AGO 000002

1  expert witness who has been designated to testify at trial results in a waiver of any privilege or

2  work product protections as to the information communicated. Although perhaps an

3  oversimplification of the matter, and as explained in greater detail below, the rule amendments

4  effected a change as to the protection of communications with counsel and retained expert

5  witnesses. Under the old rule, there was little or no protection for what counsel said or provided

6  to a designated expert and such communications were generally discoverable. Under the new

7  rule, some communications can occur without waiving work product protection, but the rule

8  differentiates between experts who are required to provide reports and experts who are not. As

9  seen below, that distinction has relevance here.

10        The former version of the rule required an expert witness who was "retained or specially

11 employed to provide expert testimony in the case or one whose duties as the party's employee

12 regularly involve giving expert testimony" to provide a written report, containing, *inter alia*, the

13 "data or other information" considered by the witness in forming his or her opinion. *See* Fed. R.

14 Civ. P. 26(a)(2)(B) (effective until December 1, 2010). It did not discuss expert witnesses who

15 did not fall into these categories.

16        The new rule explicitly sets out different requirements for reporting experts and non-

17 reporting experts. Reporting experts (i.e., experts who are retained, specially employed, or

18 whose duties as a party employee include regularly giving testimony) must now reveal in their

19 reports only the "facts or data" they considered in forming their opinion, rather than "data or

20 other information." *See* Fed. R. Civ. P. 26(a)(2)(B) (effective December 1, 2010). Non-

21 reporting experts must disclose the subject matter of their testimony and a summary of the facts

22 and opinions they will testify to. Fed. R. Civ. P. 26(a)(2)(C). The new rule provides that draft

23 reports and disclosures for both reporting and non-reporting experts are protected and not

24 discoverable, and, significantly, it explicitly protects communications between a party's attorney

25 and reporting experts. Fed. R. Civ. P. 26(b)(4)(B), (C).

26 ////

AGO 000003

**B.    The New Rule Governs this Dispute**

Defendants contend that the old rule applies to this dispute, whereas the United States contends that the new rule applies.[3] The rule was amended on December 1, 2010.

The scheduling order in this case required the parties to disclose their experts by April 22, 2011. Dckt. No. 38. The United States disclosed White and Reynolds as expert witnesses early on August 30, 2010, and amended their disclosures on September 14, 2010. Dckt. No. 171, Ex. B, C. White and Reynolds' depositions were taken in March 2011. *Id.* at 4, Ex. F-H. Thus, the United States disclosed its experts before the amended rule took effect, but the depositions of the experts did not take place until after the amended rule took effect.

In its April 28, 2010 order adopting the amendments to the Federal Rules, the United States Supreme Court ordered that the changes "shall take effect on December 1, 2010, and shall govern all proceedings thereafter commenced, and, insofar as just and practicable, all proceedings then pending." This proceeding was already pending on December 1, 2010; therefore, the new rule applies to this dispute *unless* the result would be either unjust or impracticable.

Defendants argue that the "just and practicable" language has been interpreted by the Seventh Circuit to mean that a newly amended rule does not change the consequences of actions taken prior to the effective date. *See Diaz v. Shallbetter*, 984 F.2d 850, 853 (7th Cir. 1993) ("Amendments may or may not govern 'further proceedings' in pending cases. Neither the statute nor the Court's implementing language implies using an amendment to change the *consequences* of actions completed before [the effective date of the amended rule] . . . only . . . new acts in cases already on the docket ordinarily should conform to the new rules.") (emphasis in original). Defendants argue that the United States chose to disclose their expert witnesses before the effective date of the amended rule, and that the amended rule should not be

---

[3] Both parties argue that the motion to compel should be resolved in their favor regardless of whether the old or new rule applies.

4

1 applied to change the consequences of this action–that is, that privileges have been waived.

2 First, *Diaz* is not controlling authority. *See G.F. Co. v. Pan Ocean Shipping Co.*, 23 F.3d

3 1498, 1502 (9th Cir. 1994) (reaching a different conclusion regarding the applicability of an

4 amended rule in a factual context similar to the one in *Diaz*). Moreover, as discussed below,

5 applying the new rule does not change the outcome of this dispute. Whether the new rule or the

6 old rule is applied, by disclosing White and Reynolds as testifying expert witnesses, the United

7 States waived the otherwise applicable privilege. Under the facts of this case, the consequences

8 of the United States' expert witness designations are not changed by applying the amended rule.

9 Finally, even if applying the new rule changed the outcome of this dispute, the parties

10 have had ample notice of the provisions that would take effect under the new rules and should

11 have been able to prepare accordingly. As application of the new rule does not create unjust or

12 impracticable results here, it applies to this dispute.

13 **C.** **White and Reynolds are Non-Reporting Experts**

14 Both parties have argued that White and Reynolds should be considered non-reporting

15 expert witnesses, as the Federal Rules do not require them to prepare a written expert report. *See*

16 Fed. R. Civ. P. 26(a)(2)(B) ("*Witnesses who must provide a written report* . . . [include those

17 who are] retained or specially employed to provide expert testimony in the case or one whose

18 duties as the party's employee regularly involve giving expert testimony."). Although White and

19 Reynolds authored an investigative report on the cause and origin of the Moonlight Fire, the

20 United States has not provided Rule 26 expert reports for them.

21 White and Reynolds' testimony in this case will be limited to the knowledge and

22 opinions that they had formed at the time of their report. Pl.'s Br. at 2. Neither White nor

23 Reynolds has been retained by the United States. *Id.* The United States writes, "While their

24 opinions are contained in the Report of Investigation (which was attached to the expert

25 disclosure), these experts did not and were not required to produce a separate report under Rule

26 26(a)(2)(b) . . . . Therefore, these witnesses are properly considered non-reporting witnesses

5

1  ..." *Id.* at 3. Later in its brief, the United States declares that if the court grants this motion to
2  compel, it intends to "of course retain White and Reynolds for a nominal fee, thus making them
3  reporting experts." *Id.* at 15. Defendants argue that the United States has repeatedly asserted
4  that White and Reynolds are non-reporting experts, and that they should be estopped from
5  adopting a contrary position. Defs' Reply at 14.[4]

6        As noted above, White, a CDF employee, and Reynolds, a former USFS employee,
7  jointly investigated the cause and origin of the Moonlight Fire. They were present at the fire
8  scene on the day that the fire began and on multiple days thereafter. They are percipient
9  witnesses as well as expert witnesses who will testify both as to their percipient observations as
10  well as their opinions.

11        After the parties completed their briefing, and after the hearing on this motion, the Ninth
12  Circuit issued a decision in *Goodman v. Staples the Office Superstore*. The Ninth Circuit held
13  that when a treating physician is hired to render expert opinions that go beyond the usual scope
14  of a treating doctor's testimony, he "morphs" into the type of expert witness for whom an expert
15  report must be provided. 2011 WL 1651246, *1 (9th Cir. May 03, 2011). In *Goodman*, the
16  plaintiff disclosed her treating physicians as experts, but originally did not provide expert reports
17  for them. *Id.* at *2-3. Plaintiff had "specifically retained" the treating physicians to provide
18  expert testimony beyond the scope of the treatment rendered. *Id.* at *8. Plaintiff's counsel had
19  given the treating physicians information that they had not reviewed during the course of
20  treatment to aid them in forming their expert opinions. *Id.* The trial court limited the treating
21  physicians' testimony to opinions actually developed during the course of the doctors' treatment
22  of the plaintiff. *Id.* at *3. The Ninth Circuit affirmed, holding that a treating physician is only a
23  non-reporting witness to the extent that his expert opinions were formed during the course of

24

25        [4] The court will not address the United States' stated intention to retain the witnesses or
   whether such a change in designation would be permissible at this point, as it would be
26  speculative to do and the parties have not fully briefed the ramifications of such a change in
   designation.

6

1  treatment. *Id.* at \*8. Thus, as to those opinions an expert report was not required as a

2  prerequisite to the physician's opinion testimony at trial. However, plaintiff was required to

3  provide expert reports for the treating physicians' opinions that were outside of this scope. *Id*.

4  For opinions formed on the basis of information obtained by the physician other than in the

5  course of the treatment, the same rule applies as for any other expert and a report is required

6  setting forth the expert's opinions and the basis for those opinions. The distinguishing

7  characteristic between expert opinions that require a report and those that do not is whether the

8  opinion is based on information the expert witness acquired through percipient observations or

9  whether, as in the case of retained experts, the opinion is based on information provided by

10  others or in a manner other than by being a percipient witness to the events in issue.

11      Because the law regarding the "hybrid expert situation" was not settled in the Ninth

12  Circuit, the court applied the newly clarified rule prospectively, and allowed plaintiff a chance to

13  disclose expert reports for the treating physicians. *Id.*

14      Like the treating physicians in *Goodman*, White and Reynolds are hybrid percipient and

15  expert witnesses. But the physicians reviewed documents after they treated plaintiff for the

16  purpose of testifying regarding the causation of her injuries, and formed some of their expert

17  opinions after they had concluded their treatment of plaintiff. According to the United States,

18  White and Reynolds' testimony will be limited to the knowledge and opinions that they formed

19  at the time they drafted their report on the cause and origin of the Moonlight Fire. They will not

20  render any expert opinions save those that they had already formed at the time that they wrote

21  their investigative report. Moreover, the treating physicians in *Goodman* were retained as expert

22  witnesses, although they were apparently not paid until after the initial deadline for disclosing

23  expert witnesses, when they were retained to write reports for settlement purposes and for

24  rebuttal expert disclosures. Pl.'-Appellant's Opening Br., 2010 WL 3390207 \*34-35. White and

25  Reynolds have not been paid at any time for their expert opinions.

26  ////

7

1       Both parties have consistently agreed, both in their briefing and at the pre-motion

2   informal phone conference held with the undersigned, that White and Reynolds are non-

3   reporting experts. White and Reynolds will not offer any opinions that were formed after they

4   drafted their report summarizing their percipient investigation of the Moonlight Fire. The United

5   States has not paid White and Reynolds for their role as expert witnesses at any time. Therefore,

6   the recent holding in *Goodman* does not change White and Reynolds' categorization as non-

7   reporting expert witnesses. As White and Reynolds are properly categorized as non-reporting

8   expert witnesses, *Goodman*, which was published days after the parties had completed briefing

9   and the hearing was held, does not alter the analysis applicable here.

10      **D.**    **The Amended Rule Does Not Change the Common Law Regarding Waiver of Privilege for Non-Reporting Expert Witnesses**

11

12      As noted above, the newly amended Rule 26 explicitly protects communications between

13  a party's attorney and reporting experts. *See* Fed. R. Civ. P. 26(b)(4)(C) ("Rules 26(b)(3)(A) and

14  (B) protect communications between the party's attorney and any witness required to provide a

15  report under 26(a)(2)(B), regardless of the form of the communication," with certain exceptions).

16  But the rule is silent as to communications between a party's attorney and non-reporting experts.

17      However, the advisory committee notes state:

18      The protection is limited to communications between an expert witness required to provide a report under Rule 26(a)(2)(B) and the attorney for the party on whose

19      behalf the witness will be testifying, including any "preliminary" expert opinions . . . . The rule does not itself protect communications between counsel and other

20      expert witnesses, such as those for whom disclosure is required under Rule 26(a)(2)(C). The rule does not exclude protection under other doctrines, such as

21      privilege or independent development of the work-product doctrine.

22  2010 Advisory Committee Note to Fed. R. Civ. P. 26. Thus, the advisory committee notes

23  explain that the new rule does not provide protection for communications between non-reporting

24  experts and counsel, but does not disturb any existing protections.

25      The United States and defendants agree that the amended rule did not change the existing

26  law regarding non-reporting experts. However, both sides argue that the previously existing

AGO 000008

1   common law has always supported their position. Defendants contend that there has long been a
2   bright-line rule in the Ninth Circuit that disclosing any witness as a testifying expert waives all
3   privileges; however, none of the cases that they cite actually involved non-reporting experts. In
4   contrast, United States contends that the waiver rule never applied to non-reporting experts,
5   because such experts were never required to disclose the "data or other information" they
6   considered in forming their opinions. The United States cites no cases holding that the waiver
7   rule does not apply to non-reporting experts.

8        The minutes of the Civil Rules Advisory Committee meeting show that the committee
9   did not intend that communications between a party's counsel and non-reporting experts
10  generally be protected. The committee discussed and rejected the idea of protecting
11  communications with all non-reporting experts, and more specifically, with non-reporting party
12  employee experts. The committee found reasons to protect communications with some types of
13  non-reporting experts, but not others. The committee decided that it had not yet received
14  sufficient input regarding the advisability of protecting communications with any of the types of
15  non-reporting experts to risk codifying such protection.

16       At the committee's February meeting, it was suggested that the protection should be
17  extended to communications with all non-reporting experts, or alternatively, to experts who are
18  employed by a party but whose duties do not involve regularly giving expert testimony.
19  Minutes, Civil Rules Advisory Committee Meeting (February 2-3, 2009) p. 7. On the one hand,
20  it was argued that lawyers should be free to communicate with employee experts who do not
21  regularly give testimony as they are to communicate with those who are retained or specially
22  employed to give testimony. *Id.* On the other hand, employee experts often have fact
23  knowledge apart from their expert opinions. *Id.* Also, it was suggested that if communications
24  with all employee experts were protected, lawyers might abuse the rule by designating a former
25  employee as an expert witness. *Id.* at 8. It was further observed that the project was launched to
26  address a different concern–that is, the problems created by the 1993 amended rules allowing

9

1 discovery into reporting experts' communications with counsel. *Id.* at 8. All of the pre-

2 publication comments focused on these problems with outside experts. *Id.* at 7. The committee

3 concluded that this issue should be considered by a subcommittee. *Id.* at 8.

4      At the committee's April meeting, the issue was discussed further. Minutes, Civil Rules

5 Advisory Committee Meeting (April 20-21, 2009) p. 14-20. The subcommittee had decided not

6 to protect attorney communications with all non-reporting experts. *Id.* at 14. The subcommittee

7 also decided not to protect communications with employee experts, for fear of unintended

8 consequences. *Id.* at 20. Regarding the employee expert witnesses, the subcommittee was

9 concerned about line-drawing problems, and whether communications with in-house counsel,

10 former employees, and contract employees should be protected. *Id.* at 19. Moreover, a party's

11 employee might be an important fact witness as well as an expert witness, leading to "obvious

12 opportunities for mischief." *Id.* at 20. For example, if an employee engineer designed a product

13 that was the subject of a product liability case, it would be difficult to separate the engineer's

14 sense impressions leading up to the design of the product with his expert opinions at trial, and to

15 distinguish between attorney communications regarding the former from those regarding the

16 latter. *Id.* The committee did not want to protect communications of one party's lawyer with

17 "treating physicians, accident investigators, and the like." *Id.* at 14. (The committee also noted

18 that there were good arguments on both sides of the issue of protecting communications between

19 a plaintiff's attorney and a treating physician. *Id.* at 19.)

20      The minutes of the committee's May 2009 meeting reflect its final decision not to codify

21 protections for communications with employee experts:

22      . . . Both the Subcommittee and the Committee concluded that *the time has not yet
come to extend the protection for attorney expert communications beyond experts*

23 *required to give an (a)(2)(B) report*. The potential need for such protection was
not raised in the extensive discussions and meetings held before the invitation for

24 public comment on this question. There are reasonable grounds to believe that
broad discovery may be appropriate as to some "no-report" experts, such as

25 treating physicians who are readily available to one side but not the other.
Drafting an extension that applies only to expert employees of a party might be

26 tricky, and might seem to favor parties large enough to have on the regular

10

AGO 000010

1      payroll experts qualified to give testimony. Still more troubling, employee
     experts often will also be "fact" witnesses by virtue of involvement in the events
2      giving rise to the litigation. An employee expert, for example, may have
     participated in designing the product now claimed to embody a design defect.
3      Discovery limited to attorney-expert communications falling within the
     enumerated exceptions might not be adequate to show the ways in which the
4      expert's fact testimony may have been influenced.

5 Report of the Civil Rules Advisory Committee (May 8, 2009, amended June 15, 2009), pp. 4-5

6 (emphasis added).

7      Thus, finding that there were certain circumstances under which broad discovery should

8 be allowed into a party attorney's communications with a non-reporting employee expert

9 witness, the committee refused to protect such communications in all cases. But the committee

10 did not intend that such communications with non-reporting expert witnesses be discoverable in

11 all cases.

12      It is clear that the amended rule neither created a protection for communications between

13 counsel and non-reporting experts witnesses, nor abrogated any existing protections for such

14 communications. As noted previously, there is no contention here that White and Reynolds are

15 reporting experts for purposes of the protections under the new rule.

16      **E.**     **Designating White and Reynolds as Expert Witnesses Waived Privileges**
            **and Protections**

17

18      As explained in the previous section, the 2010 amendments to rule 26 did not change the

19 law as to non-reporting experts. Accordingly, the law prior to the date of the amendment

20 determines whether the United States waived applicable protections by disclosing White and

21 Reynolds as expert witnesses.

22      Defendants argue that before the 2010 amendments courts in the Ninth Circuit followed a

23 bright-line rule that designating an individual as a "testifying expert" waives all otherwise

24 applicable privileges and protections of communications with and information provided to that

25 expert by counsel retaining the expert. *See* Def.'s Mot. to Compel at 7 (citing *In South Yuba*

26 *River Citizens League v. National Marine Fisheries Service*, 257 F.R.D. 607, 610 (E.D. Cal.

11

AGO 000011

1   2009) (explaining that "the work product rule does not protect materials, including attorney

2   opinion, considered by a testifying expert in formation of his opinions"); *Ass'n of Irritated*

3   *Residents v. Dairy*, 2008 WL 2509735, *1 (E.D. Cal. 2008) ("The majority view, and the better

4   view...is that all things communicated to the expert and considered by the expert in forming an

5   opinion must be disclosed even if it constitutes opinion otherwise protected as work product.");

6   *S.E.C. v. Reyes*, 2007 WL 963422, at *1, n.1 (N.D. Cal. 2007) (explaining that "courts have

7   overwhelmingly...imposed a 'bright-line rule' that all materials considered by a testifying expert,

8   including attorney work product, must be disclosed" and holding the same)).[5] Although several

9   of these cases use the term "testifying expert," which logically encompasses both reporting and

10  non-reporting experts, none of the cases defendants cite actually involved non-reporting experts

11  like White and Reynolds.

12      The United States agrees that there was a bright-line waiver rule within the Ninth Circuit

13  with respect to reporting testifying experts, but contends that rule never applied to non-reporting

14  testifying experts. The United States argues that the rationale for the waiver rule simply does not

15  apply to non-reporting experts, because the waiver of privilege stems from the 1993 amendments

16  to Rule 26. The 1993 amendments required parties to disclose the "data and other information"

17  that reporting experts considered in forming their opinions. Fed. R. Civ. P. 26(a)(2)(B)

18  (effective until December 1, 2010). The "data and other information" language was intended to

19  put a stop to arguments that materials given to testifying expert witnesses were privileged or

20  protected. *See* 1993 Advisory Committee Note to Fed. R. Civ. P. 26, sub. (B), par. (2). Thus,

21  argues the government, as the 1993 rule amendment only applied to reporting experts, there was

22  never any waiver of privilege with respect to non-reporting experts.

23      There is some support for the United States' position in the advisory committee's

24  meeting minutes for the 2010 revisions, which, as explained above, undid the effects of the 1993

25

26      [5] The Ninth Circuit itself has never addressed this issue.

12

1 amendments as to reporting expert witnesses. The 2010 committee minutes state:

> If we do not say anything about communications with employee witnesses, there
> may be a negative implication that they are not protected by work-product
> doctrine. This observation was met with the suggestion that before 1993, it would
> have been assumed that work-product protection applies to all attorney-expert
> communications. The 1993 Committee Note never purported to change that as to
> experts not required to make a Rule 26(a)(2)(B) report.

6 Minutes, Civil Rules Advisory Committee Meeting (April 20-21, 2009) p. 8. Apparently, at

7 least some members of the committee assumed that before the 1993 amendments all attorney-

8 expert communications were protected. While this may have been the case in some jurisdictions,

9 there is no support for that premise in the caselaw from courts within this circuit. Indeed, the

10 pre-1993 caselaw is to the contrary. Prior to the 1993 amendments, courts within the Ninth

11 Circuit had already found that communications with expert witnesses were discoverable. For

12 example, a Northern District of California case found that communications from counsel to a

13 testifying expert are discoverable to the extent that they relate to matters about which the expert

14 will testify. *Intermedics, Inc. v. Ventritex, Inc.*, 139 F.R.D. 384, 397 (N.D. Cal 1991). The court

15 reasoned that the trier of fact should be able to discover whether a testifying expert was actually

16 merely parroting the opinions of the party's lawyer. *Id.* ("We hope that the rule we adopt here

17 will enhance the reliability of the fact finding process and will promote public confidence in our

18 adjudicatory system"). *See also Mushroom Associates v. Monterey Mushrooms, Inc.*, 1992 WL

19 442898, *5 (N.D. Cal. 1992) (citing *Intermedics* and holding that documents an employee expert

20 had considered in forming his expert opinion were discoverable).

21      Before and after both the 1993 and 2010 rule amendments, courts within the Ninth

22 Circuit held that privileges and protections were waived for communications between a party's

23 attorney and a testifying expert. The United States cites no case from any time period within the

24 Ninth Circuit finding that the privilege was not waived in the case of a non-reporting yet

25 testifying expert. The United States does cite a recent New Jersey district court decision that

26 found that communications between a party's counsel and employee witnesses who had not yet

13

1    been designated as experts were not discoverable. *See Graco, Inc. v. PMC Global*, 2011 WL
2    666056 (D.N.J. February 14, 2011). In *Graco*, the plaintiff submitted employee affidavits
3    containing expert opinions in support of its motion for preliminary injunction and in opposition
4    to a motion for summary judgment. *Id.* at *1. Defendant brought a motion to compel discovery
5    of, among other things, communications between these employee witnesses and plaintiff's
6    counsel, arguing that plaintiff had waived protection by submitting these employees' expert
7    testimony to the court. *Id.* Even though plaintiff had not yet disclosed the employees as experts,
8    the court found that they were testifying experts given the reliance on the testimony in their
9    declarations. *Id.* at *13. Applying the 2010 amended rule, the court ordered disclosure of facts
10   and data relied on by the witnesses, including "communications with anyone other than Graco's
11   counsel about the opinions expressed . . . ." *Id.* at *12, *14. While the court did not order the
12   disclosure of communications between counsel and the testifying experts, the analytical basis for
13   that result is not explained. *Graco* discussed at length the text of the 2010 amended Rule 26 and
14   the advisory committee notes, but it engaged in little analysis in support of its conclusion.
15   Rather, after quoting the committee notes and stating general principles of attorney-client and
16   work product privilege law, *Graco* summarily concluded that the "Employee Opinion
17   Witnesses" were not required under Rule 26(a)(2) to submit written reports, and further that
18   Graco's counsel's communications with those witnesses were protected by attorney-client
19   privilege and were not discoverable. *Id.* *Graco* does not analyze the state of the caselaw prior to
20   the 2010 amendments as to whether communications by counsel with non-reporting or so-called
21   hybrid expert witnesses waived the privilege. Nor does *Graco* provide any persuasive reason for
22   rejecting the several district court opinions from within the Ninth Circuit that had clearly held at
23   the time that such communications were not protected and must be disclosed upon the
24   designation of the witness as a testifying expert. Thus, *Graco* (which is not controlling here)
25   provides little assistance to address the issue presented on this motion.
26   ////

AGO 000014

1       As explained in detail above, the advisory committee notes to the 2010 amendments to

2  Rule 26 show that the committee did not intend to either generally protect or generally not

3  protect communications between a party's counsel and non-reporting experts. Although the

4  committee considered protecting communications with non-reporting party employee experts, it

5  ultimately decided not to do so. The committee recognized that the term "non-reporting"

6  encompasses a varied class of experts who present unique policy considerations. For example,

7  party employees and former employees, in-house counsel, independent contractors, treating

8  physicians, and accident investigators might all be non-reporting expert witnesses.

9       Some of these non-reporting witnesses should not be treated differently than reporting

10  expert witnesses. For example, there is no immediately apparent policy reason to treat an

11  employee expert whose duties regularly involve giving expert testimony any differently than an

12  employee expert whose duties involve only intermittently giving expert testimony.

13       However, some non-reporting witnesses, such as treating physicians and accident

14  investigators, should be treated differently than reporting witnesses with respect to the

15  discoverability of their communications with counsel. *See* Minutes, Civil Rules Advisory

16  Committee Meeting (April 20-21, 2009) p. 14 ("The Committee did not want to protect

17  communications by one party's lawyer with treating physicians, accident investigators, and the

18  like. An employee expert, moreover, may be an important fact witness."). These type of

19  witnesses are hybrid fact and expert opinion witnesses. While it is desirable that any testifying

20  expert's opinion be untainted by attorneys' opinions and theories, it is even more important that

21  a witness who is testifying regarding his own personal knowledge of facts be unbiased.

22  Therefore, at least in some cases, discovery should be permitted into such witnesses'

23  communications with attorneys, in order to prevent, or at any rate expose, attorney-caused bias.

24       Given the facts of this particular dispute, counsel's communications with White and

25  Reynolds should not be protected. White and Reynolds are hybrid fact and expert witnesses. In

26  addition to being current and former employees, White and Reynolds have percipient knowledge

15

AGO 000015

1  of the facts at issue in this litigation. As two of the three primary investigators of the Moonlight

2  Fire, they have first-hand factual knowledge regarding the causes of the Moonlight Fire. If their

3  communications with counsel were protected, any potential biases in their testimony regarding

4  the causes of the fire would be shielded from the fact-finder.

5       The court declines to hold that designating an individual as a non-reporting expert

6  witness waives otherwise applicable privileges and protections in all cases, or even for all cases

7  involving non-reporting employee expert witnesses. But in this particular factual scenario, the

8  United States waived its privilege and work-product protection by disclosing White and

9  Reynolds as expert witnesses.

10       The United States argues that the foreseeable consequence of this ruling is that parties

11  will be forced into retaining their own employees as expert witnesses in order to prevent

12  discovery into their communications with these experts. If the analysis turns on whether the

13  expert is being paid, the United States argues, parties will buy privilege by retaining all of their

14  experts. But the analysis does not turn solely on whether an expert is being paid. As explained

15  above, some types of non-reporting experts should be treated the same as reporting experts for

16  the purpose of determining whether a party's communications with them are privileged. In

17  addition, the amended Rule 26 provides that communications between retained experts and

18  counsel are protected. The rule clearly does not itself provide protection for communications

19  between non-reporting experts and counsel. Although the United States may disagree with the

20  soundness of the policy behind the amended rule, the issue it raises is one caused by the rule

21  itself.

22       As for the United States' contention that it will protect its communications with White

23  and Reynolds by retaining them for a nominal fee, thus transforming them into reporting experts,

24  the court makes no ruling at this time on the permissibility or effect of such an action given the

25  history of this discovery dispute.

26  ////

16

AGO 000016

**F.    The Discovery At Issue**

The remaining question is specifically what documents and communications must be produced. Defendants seek all documents and communications that White and Reynolds drafted, prepared, saw, read, reviewed, reflected upon, considered and/or received any time after this litigation was instituted. Def.'s Mot. to Compel at 4. More specifically, defendants claim that they are entitled to question White and Reynolds regarding the substance of conversations they had with attorneys for the United States and CDF, and that they are entitled to specific documents listed on CDF's privilege log in a state court case over damages caused by the Moonlight Fire. *Id.* at 5-6.

The United States admits that well after Reynolds and White completed their investigation, the USAO communicated with Reynolds about his investigation. Pl.'s Br. at 3. The United States also admits that the USAO communicated with White in the presence of attorneys from the AGO in preparation for litigation. *Id.* at 3-4.

As for documents, the United States admits that documents reflecting communications between Reynolds and the USAO were created before and after litigation commenced. *Id.* at 4. The documents created before the litigation commenced are listed on the United States' privilege log. *Id.* The documents created after litigation commenced are not, as "those documents are assumed to be privileged." *Id.* One former Assistant U.S. Attorney may also have had written communications with White. *Id.* The United States asserts that most if not all of these written communications with Reynolds and White are "logistical in nature." *Id.* The United States further asserts that it does not have possession of "the majority" of the documents listed on CDF's privilege log, including communications between White and CDF attorneys or employees. *Id.*

The United States must produce all documents and communications that White and Reynolds considered–that is, generated, saw, read, reviewed, and/or reflected upon–in connection with their analysis of the Moonlight Fire, regardless of whether the documents ultimately affected their analysis. *See* Defs.' Mot. at 18-19 (citing *Western Resources Inc. v. Union Pacific Railroad*,

17

1  2002 WL 181494, *9 (D. Kan. January 31, 2002) (an expert considers materials if he "read or

2  reviewed the privileged materials before or in connection with formulating his or her opinion");

3  *Synthes Spine Co., L.P. v. Walden*, 232 F.R.D. 460, 464 (E.D. Pa. 2005) (party must produce

4  documents that expert "generated, reviewed, reflected upon, read, and/or used in formulating his

5  conclusions, even if these materials were ultimately rejected by [the] expert in reaching his

6  opinions")). To the extent that logistical communications fall within these categories, the United

7  States must produce them.

8      Of course, the United States need only produce documents within its possession, custody

9  or control. Fed. R. Civ. P. 34 (a). As noted above, the United States represents that it does not

10 have possession, custody or control over a number of the documents listed on CDF's privilege log

11 in a state court case. It does not have copies of these documents, and despite the United States'

12 joint prosecution agreement with CDF, CDF has refused to turn over copies of the documents. It

13 appears that defendants may have to subpoena the documents.

14     The United States argues that documents created and communications with White and

15 Reynolds after they had finished preparing their report are not discoverable. But such documents

16 and communications are indeed discoverable, even if they did not ultimately affect White and

17 Reynolds' analysis of the Moonlight Fire. *See, e.g., Colindres v. Quietflex Mfg.*, 228 F.R.D. 567

18 (S.D. Tex. 2005) ("information considered, but not relied upon, can be of great importance in

19 understanding and testing the validity of an expert's opinion"). Such documents and

20 communications may reveal that White and Reynolds did not alter their report even after being

21 given reason to do so, and therefore be of use in testing the validity of their opinions.

22     As discussed at the hearing, White and Reynolds may be re-deposed regarding their

23 communications with attorneys from the USAO and the AGO and the newly produced

24 documents. The depositions shall be limited to four hours each.

25 ////

26 ////

18

1 **III.    CONCLUSION**

2      The court finds that by designating White and Reynolds as non-reporting expert witnesses,

3 the United States waived otherwise applicable privilege and work-product protections.

4      Accordingly, it is hereby ORDERED that:

5      1. Defendants' motion to compel is granted.

6      2. Within 5 days of the date of this order, if the United States has not already done so

7 pursuant to the undersigned's oral ruling at the hearing, it shall produce all documents and

8 communications that White and Reynolds considered, generated, saw, read, reviewed, and/or

9 reflected upon in connection with their analysis of the Moonlight Fire.

10      3. White and Reynolds may be re-deposed regarding their communications with attorneys

11 from the USAO and the AGO and the newly produced documents for four hours each.

12 DATED: May 26, 2011.

19

AGO 000019

DECLARATION OF TRACY L. WINSOR IN SUPPORT OF STATE
THIRD PARTIES' MOTION TO QUASH SUBPOENA AND FOR
PROTECTIVE ORDER; AND REGARDING MEET AND CONFER

# Exhibit "B"

AO88 (Rev. 12/07) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT
### Eastern District of California

UNITED STATES OF AMERICA

V.

SIERRA PACIFIC INDUSTRIES, et al.

**SUBPOENA IN A CIVIL CASE**

Case Number: [1]
2:09-CV-02445-KJM-EFB

TO: Office of the Attorney General
    1300 "I" Street
    Sacramento, CA  95814-2919

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  |  |
|  | DATE AND TIME |
|  |  |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
See Attachment 1

| PLACE  Nationwide Legal | DATE AND TIME |
|---|---|
| 1301 H Street | 6/16/2011; 11:00 a.m. |
| Sacramento, CA |  |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rule of Civil Procedure 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| _Attorney for Defendant_ Sierra Pacific Industries | 5/31/2011 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
William R. Warne
Downey Brand LLP
621 Capitol Mall, 18th Fl., Sacramento, CA  95814   (916) 444-1000

(See Federal Rule of Civil Procedure 45(c), (d), and (e), on next page)

[1]
  If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/07)                                         **SUBPOENA IN A CIVIL CASE**

Martin Dean's
ESSENTIAL FORMS™

AO88 (Rev. 12/07) Subpoena in a Civil Case (Page 2)

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on

DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Federal Rule of Civil Procedure 45 (c), (d), and (e), as amended on December 1, 2007:

(c) PROTECTING A PERSON SUBJECT TO A SUBPOENA.
(1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction - which may include lost earnings and reasonable attorney's fees - on a party or attorney who fails to comply.
(2) Command to Produce Materials or Permit Inspection.
(A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises - or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.
(3) Quashing or Modifying a Subpoena.
(A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person - except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information;
(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial
(C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

(d) DUTIES IN RESPONDING TO A SUBPOENA.
(1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:
(A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
(D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
(2) Claiming Privilege or Protection.
(A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT.
The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of rule 45(c)(3)(A)(ii).

---

Martin Dean's
ESSENTIAL FORMS™

AGO 000021

**Attachment 1**
**Request for Production of Documents**
**Office of the California Attorney General**

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF CALIFORNIA
### Case No. 2:09-CV-02445-KJM-EFB

Defendant Sierra Pacific Industries requests that the appropriate custodian of records for the Office of the California Attorney General produce the documents described as follows in the form in which they are kept in the ordinary course of business, and/or in the form in which they were found in their normal filing places:

## DEFINITIONS

1.      "DOCUMENT" or "DOCUMENTS" means the originals, drafts, and any and all copies bearing notations or marks not found on the original or draft, of any and all written, printed, typed, electronic or otherwise recorded matter, however produced or reproduced, in whatever form, including, but not limited to, writings, typed or printed matter, microfilm, photographs, videotapes, maps, correspondence, letters, COMMUNICATIONS, interoffice COMMUNICATIONS, intra-office COMMUNICATIONS, diaries, calendars, memoranda, insurance policies, contracts, checks, statements of account, receipts, summaries, notes, minutes, papers, files, books, records, telegrams, messages, e-mails, telecopy transmissions, text messages, instant messages, voicemail messages, reports, tables, graphs, tape recordings, audio recordings, charts, logs, ledgers, surveys, studies, manuals, consultant or expert reports, resumes and curriculum vitae, exhibits, notices, instructions, minutes, purchase orders, invoices, receipts, financial records, accounting records, tax records, and accounting or tax work sheets. In addition, "DOCUMENT" or "DOCUMENTS" shall include all electronic media on which information has been stored or recorded, including, but not limited to, magnetic tapes, hard drives, disks, CD-ROMs, DVDs, and any other data compilations from which information can be obtained or translated.

2.      "COMMUNICATION" or "COMMUNICATIONS" refers to and includes, but is not limited to, all e-mails, letters, notes, discussions, pictures, presentations, drawings, plans, sketching, renderings, photographs, videotapes, telephone calls, telephone messages, recordings, or information which is/are exchanged, produced, generated, or received by any person or entity.

3.      "YOU" or "YOUR" shall mean the Office of the California Attorney General, including its agents and employees.

4.      "RELATING TO" or "RELATED TO" means concerning, referring to, describing, demonstrating, identifying, evidencing, constituting, containing, summarizing, supporting, contradicting or addressing in any way.

5.      "WHITE" shall mean California Department of Forestry and Fire Protection Deputy Chief Joshua White, who investigated the MOONLIGHT FIRE.

6.      "REYNOLDS" shall mean United States Forest Service Fire Prevention Technician Dave Reynolds, who investigated the MOONLIGHT FIRE.

1158114.1

**Attachment 1**
**Request for Production of Documents**
**Office of the California Attorney General**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**
**Case No. 2:09-CV-02445-KJM-EFB**

7.    "MOONLIGHT FIRE" shall mean the fire that allegedly started on September 3, 2007, in Plumas County.

8.    "PRIVILEGE LOG" shall mean the document titled "Cal Fire's Privilege Log To July 23, 2010 Document Production," attached hereto as Exhibit A.

## DOCUMENT REQUESTS

1.    All DOCUMENTS identified in the PRIVILEGE LOG authored, sent, received or reviewed by WHITE.

2.    All DOCUMENTS identified in the PRIVILEGE LOG authored, sent, received or reviewed by REYNOLDS.

3.    All COMMUNICATIONS in YOUR possession, custody, or control authored, sent, received or reviewed by WHITE from September 3, 2007, to the present, RELATED TO the MOONLIGHT FIRE.

4.    All COMMUNICATIONS in YOUR possession, custody, or control authored, sent, received or reviewed by REYNOLDS from September 3, 2007, to the present, RELATED TO the MOONLIGHT FIRE.

5.    All DOCUMENTS in YOUR possession, custody, or control from September 3, 2007, to the present that WHITE authored, drafted, prepared, saw, read, reviewed, reflected upon, considered and/or otherwise used in connection with his analysis of the MOONLIGHT FIRE.

6.    All DOCUMENTS in YOUR possession, custody, or control from September 3, 2007, to the present that REYNOLDS authored, drafted, prepared, saw, read, reviewed, reflected upon, considered and/or otherwise used in connection with his analysis of the MOONLIGHT FIRE.

# EXHIBIT A

AGO 000024

1   EDMUND G. BROWN JR.
    Attorney General of California
2   DENISE FERKICH HOFFMAN
    Supervising Deputy Attorney General
3   TRACY L. WINSOR
    Deputy Attorney General
4   State Bar No. 186164
    G. LYNN THORPE
5   Deputy Attorney General
    State Bar No. 112122
6     1300 I Street, Suite 125
    P.O. Box 944255
7   Sacramento, CA 94244-2550
    Telephone: (916) 324-5372
8   Fax:  (916) 327-2319
    E-mail:  tracy.winsor@doj.ca.gov
9
    *Attorneys for Plaintiff CAL FIRE*
10

11            SUPERIOR COURT OF THE STATE OF CALIFORNIA

12                      COUNTY OF PLUMAS

13

14

15

16  | California Department of Forestry and Fire | Case No. CV09-00205 |
    | Protection, | |
17  | | **CAL FIRE'S PRIVILEGE LOG TO JULY** |
    | Plaintiff, | **23, 2010 DOCUMENT PRODUCTION** |
18  | vs. | |
19  | | |
    | Eunice Howell, d.b.a. Howell's Forest | |
20  | Harvesting Company, ET AL. | |
21  | Defendants. | |

22

23

24

25

26

27

28

                                1

AGO 000025

*CAL FIRE v Eunice E. Howell et al.* (Plumas County Superior Court No. CV09-00205)
CAL FIRE's Privilege log to 7.23.10 document production

| Email # | Author | Recipients | Date | Type | Pages | Privilege |
|---|---|---|---|---|---|---|
| 1 | Tracy Winsor | Alan Carlson, Joshua White | 1-20-2010 | Email and attachment | 1 and attachment | Attorney-client privilege, attorney work product. |
| 2 | George Gonzalez | Joshua White | 1-5-2010 | Email | 2 | Attorney-client privilege, attorney work product. |
| 3 | George Gonzalez | Joshua White | 1-5-2010 | Email | 1 | Attorney-client privilege, attorney work product. |
| 4 | Tracy Winsor | Alan Carlson, Joshua White | 12-30-2009 | Email and attachment | 1 and attachment | Attorney-client privilege. |
| 5 | George Gonzalez | Joshua White | 12-29-2009 | Email | 1 | Attorney-client privilege, attorney work product. |
| 6 | Alan Carlson | Tracy Winsor, Joshua White | 12-29-2009 | Email | 1 | Attorney-client privilege, attorney work product. |
| 7 | Tracy Winsor | Joshua White, cc: Alan Carlson | 12-29-2009 | Email and attachments | 1 and attachments | Attorney-client privilege, attorney work product. |
| 8 | Tracy Winsor | Joshua White, cc: Alan Carlson | 11-30-2009 | Email and attachments | 1 and attachments | Attorney-client privilege. |
| 9 | Tracy Winsor | Joshua White | 11-18-2009 | Email and attachment | 1 and attachment | Attorney-client privilege. |
| 10 | Tracy | Joshua White | 11-17- | Email and | 1 and | Attorney-client privilege, attorney work product. |

1

CAL FIRE v Eunice E. Howell et al. (Plumas County Superior Court No. CV09-00205)
CAL FIRE's Privilege log to 7.23.10 document production

| Email # | Author | Recipients | Date | Type | Pages | Privilege |
|---|---|---|---|---|---|---|
| | Winsor | | 2009 | attachments | attachments | |
| 11 | Tracy Winsor | Joshua White | 11-9-2009 | Email and attachment | 1 and attachment | Attorney-client privilege. |
| 12 | Tracy Winsor | Joshua White | 10-25-2009 | Email and attachment | 1 and attachment | Attorney-client privilege, attorney work product |
| 13 | Tracy Winsor | Joshua White, cc: Alan Carlson | 10-22-2009 | Email and attachment | 1 and attachment | Attorney-client privilege. |
| 14 | Tracy Winsor | Joshua White, Kim Duffy, cc: Florrie Gallo | 10-22-2009 | Email | 2 | Attorney-client privilege, attorney work product. |
| 15 | Kim Duffy | Joshua White, cc: Florrie Gallo | 10-22-2009 | Email and attachment | 1 and attachment | Attorney-client privilege, attorney work product. |
| 16 | Michelle Lawrence | Florrie Gallo, cc: Joshua White | 10-21-2009 | Email | 6 | Attorney-client privilege, attorney work product. |
| 17 | Florrie Gallo | Joshua White | 10-20-2009 | Email | 6 | Attorney-client privilege, attorney work product. |
| 18 | Florrie Gallo | Michelle Lawrence, cc: | 10-20-2009 | Email | 6 | Attorney-client privilege, attorney work product. |

2

AGO 000027

*CAL FIRE v Eunice E. Howell et al.* (Plumas County Superior Court No. CV09-00205)
CAL FIRE's Privilege log to 7.23.10 document production

| Email # | Author | Recipients | Date | Type | Pages | Privilege |
|---------|--------|-----------|------|------|-------|-----------|
| | | Joshua White | | | | |
| 19 | Tracy Winsor | Joshua White | 10-20-2009 | Email | 6 | Attorney-client privilege, attorney work product. |
| 20 | Michelle Lawrence | Florrie Gallo, Joshua White | 10-20-2009 | Email and attachment | 4 and attachment | Attorney-client privilege, attorney work product. |
| 21 | Florrie Gallo | Joshua White, cc: Michelle Lawrence | 10-19-2009 | Email | 5 | Attorney-client privilege, attorney work product. |
| 22 | Jacalyn Dunkle | Michelle Lawrence, cc: Joshua White | 10-16-2009 | Email | 1 | Attorney work product. |
| 23 | Michelle Lawrence | Jacalyn Dunkle, cc: Joshua White | 10-16-2009 | Email | 1 | Attorney work product. |
| 24 | Tracy Winsor | Joshua White, cc: Alan Carlson | 10-15-2009 | Email and attachment | 1 and attachment | Attorney-client privilege. |
| 25 | Tracy Winsor | Joshua White | 10-14-2009 | Email and attachments | 1 and attachments | Attorney-client privilege. |
| 26 | Tracy Winsor | Joshua White | 10-14-2009 | Email and attachment | 1 and attachment | Attorney-client privilege, attorney work product. |

3

AGO 000028

*CAL FIRE v Eunice E. Howell et al.* (Plumas County Superior Court No. CV09-00205)
CAL FIRE's Privilege log to 7.23.10 document production

| Email # | Author | Recipients | Date | Type | Pages | Privilege |
|---|---|---|---|---|---|---|
| 27 | Tracy Winsor | Joshua White, cc: Alan Carlson | 10-14-2009 | Email and attachment | 1 and attachment | Attorney-client privilege. |
| 28 | Tracy Winsor | Joshua White | 10-14-2009 | Email | 1 | Attorney-client privilege. |
| 29 | Florrie Gallo | Joshua White | 10-6-2009 | Email | 4 | Attorney-client privilege. Attorney work product. |
| 30 | Tracy Winsor | Joshua White, cc: Alan Carlson | 10-6-2009 | Email and attachment | 1 and attachment | Attorney-client privilege. |
| 31 | Florrie Gallo | Joshua White, cc: Alan Carlson | 10-6-2009 | Email | 3 | Attorney-client privilege. Attorney work product. |
| 32 | E. Robert Wright | Tracy Winsor, Joshua White, Joshuaua Iverson | 10-5-2009 | Email and attachment | 2 and attachment | Attorney-client privilege, attorney work product, Joint prosecution privilege. |
| 33 | Tracy Winsor | E. Robert Wright, cc: Joshua White | 10-5-2009 | Email and attachment | 1 and attachment | Attorney-client privilege, attorney work product, Joint prosecution privilege. |
| 34 | Jacalyn Dunkle | Joshua White | 10-5-2009 | Email | 2 | Attorney work product. |

4

CAL FIRE v Eunice E. Howell et al. (Plumas County Superior Court No. CV09-00205)
CAL FIRE's Privilege log to 7.23.10 document production

| Email # | Author | Recipients | Date | Type | Pages | Privilege |
|---|---|---|---|---|---|---|
| 35 | Florrie Gallo | Jacalyn Dunkle, cc: Joshua White | 10-2-2009 | Email | 1 | Attorney work product. |
| 36 | Tracy Winsor | Joshua White | 9-25-2009 | Email and attachments | 1 and attachments | Attorney-client privilege.  Attorney work product. |
| 37 | Tracy Winsor | Joshua White | 9-21-2009 | Email and attachment | 1 and attachment | Attorney-client privilege.  Attorney work product. |
| 38 | Tracy Winsor | Joshua White | 9-14-2009 | Email and attachment | 1 and attachment | Attorney-client privilege. |
| 39 | Steven Yoshida | Joshua White, cc: Tracy Winsor | 9-9-2009 | Email and attachment | 1 and attachment | Attorney-client privilege. |
| 40 | Tracy Winsor | Joshua White | 9-9-2009 | Email | 2 | Attorney-client privilege. |
| 41 | Tracy Winsor | Alan Carlson, Joshua White | 8-26-2009 | Email and attachment | 1 and attachment | Attorney-client privilege. |
| 42 | Kim Duffy | Joshua White | 8-25-2009 | Email | 1 | Attorney work product. |
| 43 | Tracy Winsor | Joshua White | 8-24-2009 | Email | 1 | Attorney-client privilege. |
| 44 | Florrie Gallo | Michelle Lawrence, cc: Alan Carlson, | 8-24-2009 | Email | 4 | Attorney-client privilege.  Attorney work product |

5

AGO 000030

*CAL FIRE v Eunice E. Howell et al.* (Plumas County Superior Court No. CV09-00205)
CAL FIRE's Privilege log to 7.23.10 document production

| Email # | Author | Recipients | Date | Type | Pages | Privilege |
|---------|--------|-----------|------|------|-------|-----------|
| | | Joshua White | | | | |
| 45 | Florrie Gallo | Rodger Thompson, cc: Alan Carlson, Joshua White | 8-24-2009 | Email | 1 | Attorney work product. |
| 46 | Tracy Winsor | Joshua White | 8-23-2009 | Email | 1 | Attorney-client privilege.  Attorney work product. |
| 47 | Tracy Winsor | Alan Carlson, Joshua White | 8-20-2009 | Email | 1 | Attorney-client privilege.  Attorney work product. |
| 48 | Ruthann Andersen | Joshua White, cc: Tracy Winsor | 8-18-2009 | Email and attachment | 1 and attachment | Attorney-client privilege.  Attorney work product. |
| 49 | Alan Carlson | Tracy Winsor, Joshua White | 8-9-2009 | Email | 1 | Attorney-client privilege. |
| 50 | Tracy Winsor | Alan Carlson, Joshua White | 8-7-2009 | Email | 1 | Attorney-client privilege. |
| 51 | Tracy Winsor | Joshua White | 8-4-2009 | Email and attachment | 1 and attachment | Attorney-client privilege, attorney work product. |
| 52 | Tracy Winsor | Joshua White | 8-4-2009 | Email and attachments | 1 and attachments | Attorney-client privilege, attorney work product. |

6

AGO 000031

*CAL FIRE v Eunice E. Howell et al* (Plumas County Superior Court No. CV09-00205)
CAL FIRE's Privilege log to 7.23.10 document production

| Email # | Author | Recipients | Date | Type | Pages | Privilege |
|---|---|---|---|---|---|---|
| 53 | Tracy Winsor | Joshua White | 8-3-2009 | Email and attachments | 1 and attachments | Attorney-client privilege, attorney work product. |
| 54 | Tracy Winsor | Alan Carlson, Joshua White | 7-30-2009 | Email and attachment | 1 and attachment | Attorney-client privilege. |
| 55 | Tracy Winsor | Joshua White | 7-27-2009 | Email and attachment | 1 and attachment | Attorney-client privilege. |
| 56 | Tracy Winsor | Alan Carlson, cc: Joshua White | 7-20-2009 | Email | 2 | Attorney-client privilege, attorney work product. |
| 57 | Tracy Winsor | Alan Carlson, cc: Joshua White | 7-17-2009 | Email | 2 | Attorney-client privilege. |
| 58 | Alan Carlson | Tracy Winsor, cc: Joshua White | 7-17-2009 | Email and attachments | 1 and attachments | Attorney-client privilege. |
| 59 | Tracy Winsor | Joshua White | 7-12-2009 | Email | 1 | Attorney-client privilege, attorney work product. |
| 60 | Alan Carlson | Tracy Winsor, cc: Joshua White | 7-9-2009 | Email | 2 | Attorney-client privilege, attorney work product. |
| 61 | Tracy Winsor | Joshua White | 7-8-2009 | Email and attachments | 1 and attachments | Attorney-client privilege, attorney work product. |

7

*CAL FIRE v Eunice E. Howell et al.* (Plumas County Superior Court No. CV09-00205)
CAL FIRE's Privilege log to 7.23.10 document production

| Email # | Author | Recipients | Date | Type | Pages | Privilege |
|---|---|---|---|---|---|---|
| 62 | Florrie Gallo | Alan Carlson, cc: Joshua White | 7-3-2009 | Email | 1 | Attorney work product. |
| 63 | Joshua White | Jay Neuman | 7-1-2009 | Email and attachments | 2 and attachments | Attorney-client privilege, attorney work product. |
| 64 | Tracy Winsor | Joshua White | 7-1-2009 | Email and attachments | 2 and attachments | Attorney-client privilege, attorney work product. |
| 65 | Tracy Winsor | Joshua White | 7-1-2009 | Email | 2 | Attorney-client privilege. |
| 66 | Tracy Winsor | Joshua White, cc: Steven Yoshida | 7-1-2009 | Email | 1 | Attorney-client privilege. |
| 67 | Tracy Winsor | Joshua White | 7-1-2009 | Email and attachments | 1 and attachments | Attorney-client privilege. |
| 68 | Alan Carlson | Joshua White | 6-28-2009 | Email and attachment | 1 and attachment | Attorney work product. |
| 69 | Tracy Winsor | Joshua White | 6-11-2009 | Email and attachment | 1 and attachment | Attorney-client privilege, attorney work product. |
| 70 | Tracy Winsor | Joshua White | 6-11-2009 | Email and attachments | 1 and attachments | Attorney-client privilege, attorney work product. |
| 71 | Florrie | Alan Carlson, cc: Joshua | 5-15-2009 | Email | 1 | Attorney work product. |

8

*CAL FIRE v Eunice E. Howell et al.* (Plumas County Superior Court No. CV09-00205)
CAL FIRE's Privilege log to 7.23.10 document production

| Email # | Author | Recipients | Date | Type | Pages | Privilege |
|---|---|---|---|---|---|---|
| | Gallo | White | | | | |
| 72 | Tracy Winsor | Joshua White | 5-7-2009 | Email and attachments | 1 and attachments | Attorney-client privilege, attorney work product, Joint prosecution privilege. |
| 73 | Diane Welton | Joshua White, cc: Diane Welton | 5-4-2009 | Email | 2 | Attorney-client privilege, attorney work product, Evid. Code, §1040. Joint prosecution privilege. |
| 74 | Alan Carlson | Joshua White, Tracy Winsor | 5-1-2009 | Email | 1 | Attorney-client privilege, attorney work product. |
| 75 | Alan Carlson | Joshua White | 4-29-2009 | Email | 2 | Attorney work product, Evid. Code, § 1040. |
| 76 | Alan Carlson | Joshua White | 4-29-2009 | Email | 2 | Attorney work product, Evid. Code, § 1040. |
| 77 | Tracy Winsor | Joshua White | 4-23-2009 | Email and attachments | 1 and attachments | Attorney-client privilege. |
| 78 | E. Robert Wright | Joshua White | 4-17-2009 | Email | 2 | Attorney-client privilege, attorney work product, Evid. Code, §1040. Joint prosecution privilege. |
| 79 | E. Robert Wright | Joshua White, Craig Endicott, Marion Matthews | 4-16-2009 | Email | 1 | Attorney-client privilege, attorney work product, Evid. Code, §1040. Joint prosecution privilege. |

9

CAL FIRE v Eunice E. Howell et al (Plumas County Superior Court No. CV09-00205)
CAL FIRE's Privilege log to 7.23.10 document production

| Email # | Author | Recipients | Date | Type | Pages | Privilege |
|---------|--------|-----------|------|------|-------|-----------|
| 80 | Tracy Winsor | Joshua White | 4-9-2009 | Email | 2 | Attorney-client privilege, attorney work product. |
| 81 | Tracy Winsor | Joshua White, cc: Jeffrey Reusch | 4-7-2009 | Email | 1 | Attorney-client privilege. |
| 82 | Tracy Winsor | Joshua White | 4-6-2009 | Email | 1 | Attorney-client privilege.  Attorney work product. |
| 83 | Clare Frank | Joshua White | 3-18-2009 | Email | 1 | Attorney-client privilege, attorney work product, Evid. Code, § 1040. |
| 84 | Joshua White | Kim Spire, cc: Clare Frank | 3-18-2009 | Email and attachments | 1 and attachments | Attorney-client privilege, attorney work product, Evid. Code, § 1040. |
| 85 | E. Robert Wright | Joshua White | 8-14-2009 | Email | 1 | Attorney-client privilege, attorney work product, Evid. Code, §1040.  Joint prosecution privilege. |
| 86 | Diane Welton | Joshua White | 5-5-2009 | Email | 1 | Attorney work product, Evid. Code, §1040, joint prosecution privilege. |
| 87 | Diane Welton | [expert name omitted] cc: Joshua White, Randy Gould, Diane Welton | 3-26-2009 | Email | 4 | Attorney work product, Evid. Code, §1040, joint prosecution privilege. |
| 88 | [expert name | Diane Welton, cc: Diane Welton, | 3-26-2009 | Email | 5 | Attorney work product, Evid. Code, §1040, joint prosecution privilege. |

10

CAL FIRE v Eunice E. Howell et al. (Plumas County Superior Court No. CV09-00205)
CAL FIRE's Privilege log to 7.23.10 document production

| Email # | Author | Recipients | Date | Type | Pages | Privilege |
|---|---|---|---|---|---|---|
| | omitted] | Joshua White, Randy Gould | | | | |
| 89 | Diane Welton | [expert name omitted], cc: Randy Gould, Joshua White, Diane Welton | 3-26-2009 | Email | 3 | Attorney work product, Evid. Code, §1040, Joint prosecution privilege. |
| 90 | Diane Welton | Joshua White, cc: Diane Welton | 3-25-2009 | Email | 1 | Attorney work product, Evid. Code, §1040, Joint prosecution privilege. |
| 91 | Diane Welton | Joshua White | 3-10-2009 | Email | 1 | Attorney work product, Evid. Code, §1040, Joint prosecution privilege. |
| 92 | Diane Welton | Joshua White | 11-22-2008 | Email | 4 | Attorney work product, Evid. Code, §1040, Joint prosecution privilege. |
| 93 | Joshua White | Diane Welton, cc: Joshua White | 11-17-2008 | Email | 3 | Attorney work product, Evid. Code, §1040, Joint prosecution privilege. |
| 94 | [expert name omitted] | Joshua White, cc: Bonnie Harrelson, Diane Welton | 10-10-2008 | Email | 3 | Attorney work product, Evid. Code, §1040, Joint prosecution privilege. |
| 95 | [expert name | Diane Welton, cc: Bonnie Harrelson, | 10-10-2008 | Email | 2 | Attorney work product, Evid. Code, §1040, Joint prosecution privilege. |

-11-

*CAL FIRE v Eunice E. Howell et al.* (Plumas County Superior Court No. CV09-00205)
CAL FIRE's Privilege log to 7.23.10 document production

| Email # | Author | Recipients | Date | Type | Pages | Privilege |
|---------|--------|-----------|------|------|-------|-----------|
| 96 | [omitted] | Diane Welton, Joshua White | | | | |
| | Diane Welton | Joshua White, cc: [expert name omitted], Diane Welton, Bonnie Harrelson | 10-10-2008 | Email | 1 | Attorney work product, Evid. Code, §1040. Joint prosecution privilege. |
| 97 | Diane Welton | Joshua White | 9-30-2008 | Email | 1 | Attorney-client privilege, attorney work product, Evid. Code, § 1040, Joint prosecution privilege. |
| 98 | Marion Matthews | Diane Welton, cc: Diane Welton, E. Robert Wright, Joshua White Rachel Birkey | 9-22-2008 | Email | 2 | Attorney-client privilege, attorney work product, Evid. Code, § 1040, Joint prosecution privilege. |
| 99 | Diane Welton | Marion Matthews, Joshua White, E. Robert Wright, cc: Diane Welton, Rachel Birkey | 9-22-2008 | Email | 1 | Attorney-client privilege, attorney work product, Evid. Code, § 1040, Joint prosecution privilege. |

12

AGO 000037

*CAL FIRE v. Eunice E. Howell et al.* (Plumas County Superior Court No. CV09-00205)
CAL FIRE's Privilege log to 7.23.10 document production

| Email # | Author | Recipients | Date | Type | Pages | Privilege |
|---|---|---|---|---|---|---|
| 100 | Diane Welton | Joshua White | 9-19-2008 | Email | 4 | Attorney work product, Evid. Code, § 1040, Joint prosecution privilege. |
| 101 | Diane Welton | Joshua White, cc: Diane Welton | 9-19-2008 | Email | 3 | Attorney work product, Evid. Code, § 1040, Joint prosecution privilege. |
| 102 | Diane Welton | E. Robert Wright, Joshua White, cc: Diane Welton, Marion Matthews | 9-14-2008 | Email | 1 | Attorney work product, Evid. Code, § 1040, Joint prosecution privilege. |
| 103 | Mike Jarvis | Joshua White, Alan Carlson, Robin Harrington | 2-13-2008 | Email | 4 | Attorney-client privilege. |
| 104 | Mike Jarvis | Joshua White | 2-13-2008 | Email | 1 | Attorney-client privilege. |
| 105 | Tom Hoffman | Joshua White, cc: Alan Carlson, Frank Goddard | 10-1-2007 | Email | 2 | Attorney work product. |
| 106 | Tom Hoffman | Joshua White, cc: Alan Carlson, | 9-26-2007 | Email | 1 | Attorney work product. |

13

AGO 000038

CAL FIRE v Eunice E. Howell et al. (Plumas County Superior Court No. CV09-00205)
CAL FIRE's Privilege log to 7.23.10 document production

| Email # | Author | Recipients | Date | Type | Pages | Privilege |
|---------|--------|-----------|------|------|-------|-----------|
| | | Frank Goddard | | | | |
| 107 | Mike Jarvis | Brad Lutts, Joshua White | 2-18-2008 | Email | 2 | Attorney-client privilege. |
| 108 | Alan Carlson | Janet Upton, Joshua White | 7-17-2009 | Email | 3 | Attorney-client privilege. |
| 109 | Janet Upton | Alan Carlson, Joshua White | 7-17-2009 | Email | 3 | Attorney-client privilege. |
| 110 | Janet Upton | Joshua White | 7-17-2009 | Email | 4 | Attorney-client privilege. |
| 111 | Tom Hoffman | Alan Carlson, cc: Joshua White | 9-6-2007 | Email | 1 | Attorney work product. |
| 112 | Joshua White | Tracy Winsor | 11-17-2009 | Email | 3 | Attorney-client privilege, attorney work product. |
| 113 | Joshua White | Tracy Winsor | 11-17-2009 | Email | 2 | Attorney-client privilege, attorney work product. |
| 114 | Joshua White | Kim Duffy, cc: Florrie Gallo, Tracy Winsor | 10-22-2009 | Email | 2 | Attorney-client privilege, attorney work product. |

14

CAL FIRE v Eunice E. Howell et al. (Plumas County Superior Court No. CV09-00205)
CAL FIRE's Privilege log to 7.23.10 document production

| Email # | Author | Recipients | Date | Type | Pages | Privilege |
|---------|--------|-----------|------|------|-------|-----------|
| 115 | JoshuaWhite | Tracy Winsor | 10-22-2009 | Email and attachment | 2 and attachment | Attorney-client privilege, attorney work product. |
| 116 | Joshua White | Florrie Gallo | 10-20-2009 | Email | 7 | Attorney work product. |
| 117 | Joshua White | Florrie Gallo | 10-20-2009 | Email and attachment | 6 and attachment | Attorney work product. |
| 118 | Joshua White | Tracy Winsor | 10-20-2009 | Email and attachment | 6 and attachment | Attorney-client privilege, attorney work product |
| 119 | Joshua White | Michelle Lawrence, cc: Florrie Gallo | 10-20-2009 | Email | 6 | Attorney work product. |
| 120 | Joshua White | Tracy Winsor | 10-19-2009 | Email | 5 | Attorney-client privilege, attorney work product. |
| 121 | Joshua White | Florrie Gallo, cc: Tracy Winsor | 10-19-2009 | Email | 4 | Attorney-client privilege, attorney work product. |
| 122 | Joshua White | Tracy Winsor | 10-14-2009 | Email | 1 | Attorney-client privilege. |
| 123 | Joshua White | Florrie Gallo | 10-6-2009 | Email | 3 | Attorney work product. |
| 124 | Joshua | Tracy Winsor | 10-5-2009 | Email | 3 | Attorney-client privilege. |

AGO 000040

*CAL FIRE v Eunice E. Howell et al.* (Plumas County Superior Court No. CV09-00205)
CAL FIRE's Privilege log to 7.23.10 document production

| Email #. | Author | Recipients | Date | Type | Pages | Privilege |
|---|---|---|---|---|---|---|
| | White | | | | | |
| 125 | Joshua White | Tracy Winsor | 10-5-2009 | Email | 2 | Attorney-client privilege. |
| 126 | Joshua White | Alan Carlson | 9-23-2009 | Email | 2 | Attorney work product. |
| 127 | Joshua White | Jacalyn Dunkle | 9-23-2009 | Email | 1 | Attorney work product. |
| 128 | Joshua White | Rodger Thompson | 9-21-2009 | Email | 1 | Attorney work product. |
| 129 | Joshua White | Tracy Winsor | 9-21-2009 | Email | 1 | Attorney-client privilege.  Attorney work product. |
| 130 | Joshua White | Tracy Winsor | 9-8-209 | Email | 1 | Attorney-client privilege. |
| 131 | Joshua White | Kim Duffy | 8-25-2009 | Email | 1 | Attorney work product. |
| 132 | Joshua White | Tracy Winsor | 8-24-2009 | Email | 4 | Attorney-client privilege, attorney work product. |
| 133 | Joshua White | Tracy Winsor | 8-24-2009 | Email and attachment | 2 and attachment | Attorney-client privilege. |
| 134 | Joshua | Tracy Winsor | 8-24-2009 | Email and | 2 and | Attorney-client privilege, attorney work product. |

16

AGO 000041

CAL FIRE v Eunice E. Howell et al. (Plumas County Superior Court No. CV09-00205)
CAL FIRE's Privilege log to 7.23.10 document production

| Email # | Author | Recipients | Date | Type | Pages | Privilege |
|---|---|---|---|---|---|---|
| | White | | | attachments | attachments | |
| 135 | Joshua White | Tracy Winsor | 8-4-2009 | Email and attachment | 1 and attachment | Attorney-client privilege, attorney work product. |
| 136 | Joshua White | Tracy Winsor | 8-3-2009 | Email | 4 | Attorney-client privilege, attorney work product. |
| 137 | Joshua White | Tracy Winsor | 8-3-2009 | Email | 3 | Attorney-client privilege, attorney work product. |
| 138 | Joshua White | Tracy Winsor | 8-2-2009 | Email and attachment | 2 | Attorney-client privilege, attorney work product. |
| 139 | Joshua White | Alan Carlson | 7-17-2009 | Email | 3 | Attorney-client privilege. |
| 140 | Joshua White | Tracy Winsor | 7-16-2009 | Email | 2 | Attorney-client privilege. |
| 141 | Joshua White | Janet Upton | 7-16-2009 | Email | 2 | Attorney-client privilege. |
| 142 | Joshua White | Diane Welton | 7-13-2009 | Email | 1 | Attorney-client privilege, attorney work product, joint prosecution privilege. |
| 143 | Joshua White | Tracy Winsor | 7-12-2009 | Email | 2 | Attorney-client privilege, attorney work product |
| 144 | Joshua | Tracy Winsor | 7-12-2009 | Email and | 1 and | Attorney-client privilege, attorney work product. |

17

*CAL FIRE v Eunice E. Howell et al.* (Plumas County Superior Court No. CV09-00205)
CAL FIRE's Privilege log to 7.23.10 document production

| Email # | Author | Recipients | Date | Type | Pages | Privilege |
|---|---|---|---|---|---|---|
| | White | | | attachments | attachments | |
| 145 | Joshua White | Tracy Winsor | 7-1-2009 | Email | 3 | Attorney-client privilege. |
| 146 | Joshua White | Tracy Winsor | 7-1-2009 | Email | 2 | Attorney-client privilege. |
| 147 | Joshua White | Tracy Winsor | 5-20-2009 | Email | 1 | Attorney-client privilege, attorney work product. |
| 148 | Joshua White | Tracy Winsor | 5-6-2009 | Email | 1 | Attorney-client privilege. |
| 149 | Joshua White | Diane Welton | 5-4-2009 | Email | 2 | Attorney-client privilege, attorney work product, Evid Code, § 1040, Joint prosecution privilege. |
| 150 | Joshua White | Alan Carlson | 4-16-2009 | Email | 1 | Attorney-client privilege, attorney work product, Evid Code, §1040. |
| 151 | Joshua White | Diane Welton | 4-15-2009 | Email | 5 | Attorney-client privilege, attorney work product, Evid Code, § 1040, Joint prosecution privilege. |
| 152 | Joshua White | Tracy Winsor | 4-9-2009 | Email | 3 | Attorney-client privilege, attorney work product. |
| 153 | Joshua White | Tracy Winsor | 4-9-2009 | Email | 2 | Attorney-client privilege, attorney work product. |
| 154 | Joshua | Tracy Winsor | 4-6-2009 | Email and | 2 and | Attorney-client privilege, attorney work product. |

18

AGO 000043

CAL FIRE v Eunice E. Howell et al. (Plumas County Superior Court No. CV09-00205)
CAL FIRE's Privilege log to 7.23.10 document production

| Email # | Author | Recipients | Date | Type | Pages | Privilege |
|---|---|---|---|---|---|---|
| | White | | | attachment | attachment | |
| 155 | Joshua White | mike@cole451.com | 3-25-2009 | Email | 1 | Evid. Code, §1040, joint prosecution privilege, attorney work product. |
| 156 | Joshua White | Alan Carlson | 3-17-2009 | Email and attachment | 1 and attachment | Attorney-client privilege, Attorney work product, Evid. Code, §1040. |
| 157 | Joshua White | Alan Carlson | 3-17-2009 | Email and attachments | 1 and attachments | Attorney-client privilege, Attorney work product, Evid. Code, §1040. |
| 158 | Joshua White | Janet Upton | 7-17-2009 | Email | 4 | Attorney-client privilege. |
| 159 | Alan Carlson | Joshua White | 7-17-2009 | Email | 1 | Attorney-client privilege. |
| Bates # | Author | Recipients | Date | Type | Pages | Privilege |
| WHITE 005481 | Joshuaua White | Chris Van Cor | 9-08-09 | Email | Partial redaction | Attorney-client privilege. |
| WHITE 005482 | Joshuaua White | Alan Carlson | 7-17-2009 | Email | Partial redaction | Attorney-client privilege. |
| WHITE | Alan Carlson | Joshua White, | 4-20-2008 | Email | Partial redaction | Attorney-client privilege. |

19

AGO 000044

CAL FIRE v Eunice E. Howell et al. (Plumas County Superior Court No. CV09-00205)
CAL FIRE's Privilege log to 7.23.10 document production

| Email # | Author | Recipients | Date | Type | Pages | Privilege |
|---|---|---|---|---|---|---|
| 005486 | | Mike Jarvis | | | | |
| WHITE 005488 | Alan Carlson | Bill Shultz Joshua White | 10-11-2007 | Email | Partial redaction | Attorney-client privilege. |
| WHITE 005489 | Joshua White | Corey Ferguson | 9-24-2007 | Email | Partial redaction. | Attorney-client privilege.  Joint prosecution privilege. |
| | | | | | | |

SA2009309552
31063959.doc

20

AGO 000045

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:    *Calif. Dept. of Forestry and Fire Protection v. Eunice Howell, et al.*
              Plumas County Superior Court, Case No. CV09-00205

I declare: I am employed in the Office of the Attorney General, which is the office of a member
of the California State Bar, at which member's direction this service is made. I am 18 years of
age or older and not a party to this matter. I am familiar with the business practice at the Office
of the Attorney General for collection and processing of correspondence for mailing with the
United States Postal Service. In accordance with that practice, correspondence placed in the
internal mail collection system at the Office of the Attorney General is deposited with the United
States Postal Service that same day in the ordinary course of business.

On **July 27, 2010**, I served the attached **CAL FIRE'S PRIVILEGE LOG TO JULY 23, 1010,
DOCUMENT PRODUCTION** by placing a true copy thereof enclosed in a sealed envelope via
United States Mail at Sacramento, California, addressed as follows:

Phil Bonotto, Esq.
Derek Van Deviver, Esq.
Rushford & Bonotto, LLP
2277 Fair Oaks Boulevard, Suite 495
Sacramento, CA 95825
*Counsel for defendants Eunice Howell,*
*Howells Forest Harvesting, JW Bush, Kelly*
*Crismon*

William R. Warne, Esq.
Annie Amaral, Esq.
Downey Brand LLP
621 Capitol Mall, 18th Floor
Sacramento, CA 95814
*Counsel for defendant Sierra Pacific*
*Industries, Inc.*

Richard S. Linkert, Esq.
Katherine Underwood, Esq.
Matheny Sears Linkert & Jaime, LLP
3638 American River Drive
Sacramento, CA 95864
*Counsel for defendants WM Beaty &*
*Associates and Landowner Defendants*
*(Brooks Walker et al.)*

Alexandra Foote, Esq.
Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, CA 94607-4036
*Counsel for related-case plaintiff CA Engels*
*Mining Co.*

Michael S. Morse, Esq.
Morse & Associates
2300 Contra Costa Boulevard, Suite 285
Pleasant Hill, CA 94523
*Counsel for related-case plaintiff Grange*
*Insurance Association*

Merrill G. Emerick, Esq.
Anderlini & Emerick LLP
411 Borel Avenue, Suite 501
San Mateo, CA 94402
*Counsel for related-case plaintiffs Richard*
*Guy et al.*

Frederick Grannis, Esq.
Sedgwick, Detert, Moran & Arnold LLP
801 South Figueroa Street, 19th Floor
Los Angeles, CA 90017-5556
*Counsel for cross-defendant Caterpillar, Inc.*

**Kelli L. Taylor, Assistant U.S. Attorney**
**Todd Pickles, Assistant U.S. Attorney**
**United States Attorney's Office**
**501 I Street, Suite 10-100**
**Sacramento, CA  95814**
*Counsel for related-case plaintiff United*
*States*

I declare under penalty of perjury under the laws of the State of California the foregoing is true
and correct and that this declaration was executed on **July 27, 2010**, at Sacramento, California.

| Ruthann Andersen | |
| --- | --- |
| Declarant | Signature |

9A2009300552

1

## PROOF OF SERVICE

2       I am a resident of the State of California, over the age of eighteen years, and not a party to
the within action. My business address is Downey Brand LLP, 621 Capitol Mall, 18th Floor,
3   Sacramento, California, 95814. On May 31, 2011, I served the within document(s):

4

### SUBPOENA IN A CIVIL CASE RE OFFICE OF THE ATTORNEY GENERAL

5

6   ☐   **BY FAX:** by transmitting via facsimile the document(s) listed above to the fax
number(s) set forth below on this date before 5:00 p.m.

7   ☐   **BY PERSONAL DELIVERY:** by causing personal delivery by _____
of the document(s) listed above to the person(s) at the address(es) set forth below.
8   ☐   **BY HAND:** by personally delivering the document(s) listed above to the person(s)
at the address(es) set forth below.

9

10  ☒   **BY MAIL:** by placing the document(s) listed above in a sealed envelope with
postage thereon fully prepaid, in the United States mail at Sacramento, California
addressed as set forth below.

11

12  ☐   **VIA ELECTRONIC MAIL :** by transmitting via electronic mail the document(s)
listed above to the electronic email addresses noted below on this date before 5:00
p.m.

13

14  ☐   **BY OVERNIGHT MAIL:** by causing document(s) to be picked up by an
overnight delivery service co5mpany for delivery to the addressee(s) on the next
business day.

15

16

17      I am readily familiar with the firm's practice of collection and processing correspondence
for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same
18  day with postage thereon fully prepaid in the ordinary course of business. I am aware that on
motion of the party served, service is presumed invalid if postal cancellation date or postage
19  meter date is more than one day after date of deposit for mailing in affidavit.

20      I declare that I am employed in the office of a member of the bar of this court at whose
direction the service was made.

21      Executed on May 31, 2011, at Sacramento, California.

22

23

24                                                     _____
                                                              Linda Puzar
25

26

27

28

1044754.2

PROOF OF SERVICE

AGO 000048

**LIST OF PARTIES SERVED:**

Kelli L. Taylor
Todd A. Pickles
Richard M. Elias
Eric A. Overby
U.S. Attorney Office
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2702
Facsimile: (916) 554-2900
Email: Kelli.L.Taylor@usdoj.gov
Todd.Pickles@usdoj.gov
eric.overby@usdoj.gov

*Attorney for Plaintiff,*
*United States of America*

Jeff Moulton
Rachel A. Birkey
Office of the General Counsel
United States Department of Agriculture
33 New Montgomery Street, 17th Floor
San Francisco, CA 94105
Telephone: (415) 744-3011
Facsimile: (415) 744-3170

*Attorney for Plaintiff,*
*United States of America*

Richard S. Linkert, Esq.
Katherine E. Underwood, Esq.
Matheny Sears Linkert & Jaime, LLP
3638 American River Drive
Sacramento, CA 95864
Telephone: (916) 978-3420
Facsimile: (916) 978-3430
Email: rlinkert@mathenysears.com
kunderwood@mathenysears.com

*Attorney for Beaty/Walker Defendants*

Phillip R. Bonotto
Rushford & Bonotto, LLP
2277 Fair Oaks Blvd., Suite 495
Sacramento, CA 95825
Telephone: (916) 565-0590
Facsimile: (916) 565-0599
Email: Pbonotto@rushfordbonotto.com

*Attorney for Howell Defendants*

Frederic Grannis
Steven D. Di Saia
Sedgwick LLP
801 South Figueroa Street, 19th Floor
Los Angeles, CA 90017-5556
Telephone: (213) 426-6900
Facsimile: (213) 426-6921
Email:
Frederic.grannis@sedgwicklaw.com
Steve.disaia@sedgwicklaw.com

*Attorney for Caterpillar, Inc.*

1044754.2

DOWNEY BRAND LLP

AGO 000049

# DEPARTMENT OF JUSTICE
## Civil Service of Process Cover Sheet
**Please circle one:** SAC SF OAK SD FRESNO

5/31/11

Date Received

| Case Name: | |
|---|---|
| United States of America v. Sierra Pacific Industries | |
| County: USDC - Eastern Cali | Court No.: 2:09-CV-02445-JM |

| Document(s) served: | ☐ Summons and Complaint/Cross Complaint | ☐ Writ of Mandate and Complaint for Declaratory Relief |
|---|---|---|
| | ☐ Case Management Conference Memo | ☒ Other (please list): |
| | ☐ Case Management Statement | Cal Fire's Privilege Log |
| | ☐ Notice of Deposition | to July 23, 2010 Document |
| | ☐ Civil Case Cover Sheet | Production |
| | ☐ Statement of Damages | |
| | ☐ Order to File Case Management Statement | |
| | ☐ Alternative Dispute Resolution Policy Statement | |
| | ☒ ~~Deposition~~ Subpoena for Production of Business Records | |
| | ☐ Notice of Consumer or Employee and Objection and check for $15.00 | |
| | ☐ Notice of Assignment & Case Management Conference | |

| Process Server's Name: | |
|---|---|
| Name of Company: (Include business name, address, and telephone number) | **Nationwide Legal Inc.**<br>**1301 H Street, Suite 1**<br>**Sacramento, CA 95814** |
| Receptionist/ Security Signature: | |

### FOR SERVICE DEPUTY'S USE ONLY

| Forwarded to: 1530-5 OR -10 | Sara Russell, Denise Hoffman, Lynn Thorpe. | RECEIVED MAY 3 1 2011 | Date Forwarded: 6/1/11 |
|---|---|---|---|
| Name of Service Deputy, section, and telephone number: | Cece Velez, EPAY 324-7559 | | |

NOTES: Regarding Underlying Matter CA Dept. of Forestry & Fire Protection, #A20009309755, DAG Lynn Thorpe

The attached document(s) appear(s) to be the responsibility of your section; if they are **not**, please return them to the service deputy named above, noting the section to which they are to be directed.

(Rev. 5/2004)

DECLARATION OF TRACY L. WINSOR IN SUPPORT OF STATE
THIRD PARTIES' MOTION TO QUASH SUBPOENA AND FOR
PROTECTIVE ORDER; AND REGARDING MEET AND CONFER

# Exhibit "C"

1   EDMUND G. BROWN JR.
    Attorney General of California
2   DENISE FERKICH-HOFFMAN
    Supervising Deputy Attorney General
3   TRACY L. WINSOR
    Deputy Attorney General
4   State Bar No. 186164
      1300 I Street, Suite 125
5   P.O. Box 944255
    Sacramento, CA 94244-2550
6   Telephone: (916) 324-5372
    Fax: (916) 327-2319
7   E-mail: tracy.winsor@doj.ca.gov
    *Attorneys for Plaintiff CAL FIRE*

ENDORSED
Plumas Superior Court

FEB - 1 2010

DEBORAH NORSE,
Clerk of the Court
By ____P. Marchetti____
        Deputy Clerk

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                          COUNTY OF PLUMAS

10

11

12

13   CALIFORNIA DEPARTMENT OF FORESTRY AND       No. CV09-00205
     FIRE PROTECTION,
14                                               SECOND AMENDED COMPLAINT FOR
                                     Plaintiff,  FIRE SUPPRESSION, INVESTIGATION,
15                                               AUDITING, AND LITIGATION FEES
                    v.                           AND COSTS
16
                                                 [Exempt from filing fees pursuant to
17   EUNICE E. HOWELL, INDIVIDUALLY AND          Government Code section 6103. Code of
     DOING BUSINESS AS HOWELL'S FOREST           Civil Procedure section 446 requires
18   HARVESTING; KELLY CRISMON, AN               verification of the answer to this
     INDIVIDUAL; JW BUSH, AN INDIVIDUAL;         complaint.]
19   SIERRA PACIFIC INDUSTRIES, A
     CORPORATION; W.M. BEATY & ASSOCIATES,
20   INC., A CORPORATION; ANN MCKEEVER
     HATCH, AS TRUSTEE OF THE HATCH 1987
21   REVOCABLE TRUST, RICHARD L. GREENE, AS
     TRUSTEE OF THE HATCH IRREVOCABLE
22   TRUST U/A DTD. 12/29/92, BROOKS WALKER,
     JR., AS TRUSTEE OF THE DELLA WALKER
23   VAN LOBEN SELS TRUST FOR THE ISSUE OF
     BROOKS WALKER, JR. U/A DTD. 10/26/89,
24   AND THE BROOKS WALKER, JR. REVOCABLE
     TRUST U/A DTD. 12/4/96, JOHN C. WALKER,
25   INDIVIDUALLY AND AS TRUSTEE OF THE
     DELLA WALKER VAN LOBEN SELS TRUST
26   FOR THE ISSUE OF JOHN C. WALKER, U/A
     DTD. 12/21/89, KIRBY WALKER, AN
27   INDIVIDUAL, JENNIFER WALKER,
     INDIVIDUALLY AND AS TRUSTEE FOR THE
28   MAX WALKER SILVERMAN TRUST, U/A DTD.

AGO 000051

1  5/5/93, AND THE EMMA WALKER SILVERMAN
   TRUST, U/A DTD. 12/6/94, LINDSEY WALKER,
2  ALSO KNOWN AS LINDSEY WALKER-
   SILVERMAN, INDIVIDUALLY AND AS TRUSTEE
3  OF THE REILLY HUDSON KEENAN TRUST, U/A
   DTD. 12/18/91, AND THE MADISON FLANDERS
4  KEENAN TRUST, U/A DTD. 12/18/91,
   WELLINGTON S. HENDERSON, JR., AS
5  TRUSTEE OF THE HENDERSON REVOCABLE
   TRUST U/A DTD. 3/9/93, CHARLES C.
6  HENDERSON, AS TRUSTEE OF THE CHARLES C.
   AND KIRSTEN HENDERSON REVOCABLE
7  TRUST U/A DTD. 1/3/97, JAMES A.
   HENDERSON, AN INDIVIDUAL, JOAN H.
8  HENDERSON, AN INDIVIDUAL, ELENA D.
   HENDERSON, AN INDIVIDUAL, MARK W.
9  HENDERSON, AS TRUSTEE OF THE MARK W.
   HENDERSON REVOCABLE TRUST, U/A DTD.
10 8/30/93, BROOKS WALKER, III,
   INDIVIDUALLY AND AS TRUSTEE OF THE
11 MYLES WALKER DANIELSEN TRUST, U/A
   DTD. 12/18/91, THE CLAYTON BROOKS
12 DANIELSEN TRUST, U/A DTD. 12/18/91, THE
   BENJAMIN WALKER BURLOCK TRUST, U/A
13 DTD. 6/27/94, AND THE MARGARET
   CHARLOTTE BURLOCK TRUST, U/A DTD.
14 11/3/97: LESLIE WALKER, INDIVIDUALLY AND
   AS TRUSTEE OF THE BROOKS THOMAS
15 WALKER TRUST, U/A DTD. 9/20/00, AND THE
   DELLA GRACE WALKER TRUST, U/A, DTD.
16 12/6/04. AND DOES 23 TO 50,

17                                 Defendants.

18

19    The California Department of Forestry and Fire Protection (Plaintiff or CAL FIRE) alleges

20  as follows:

21                                **INTRODUCTION**

22    1.    By way of this action, CAL FIRE seeks to recover $ 8,441,309.99 (eight million,

23  four hundred forty-one thousand, three hundred nine dollars and ninety-nine cents) in fire

24  suppression, investigation, administrative, and accounting costs arising from the September 3,

25  2007, "Moonlight Fire," and prejudgment interest on the money owed.  (Health & Saf. Code, §§

26  13009, 13009.1: Civ. Code, § 3287.)  The Moonlight Fire originated from equipment operation

27  associated with the Cooks Creek Timber Sale in Plumas County, located in Shasta Forests 7 and

28  123, Township 27 North, Range 10 East, as more fully described below.  The fire burned

2

AGO 000052

1   approximately 64,997 acres before being contained by CAL FIRE and the United States Forest

2   Service.

### PARTIES

### PLAINTIFF

5   2.   CAL FIRE is a state agency created within the California Natural Resources Agency.

6   (Pub. Resources Code, § 701.) CAL FIRE is charged with "the fire protection, fire prevention,

7   maintenance, and enhancement of the state's forest, range, and brushland resources, contract fire

8   protection, associated emergency services . . .," "[m]aintaining an integrated staff to accomplish

9   fire protection [and] fire prevention . . ." and with "[e]nforcing forest and fire laws. . . ." (Pub.

10  Resources Code, §§ 713, 714.)

### DEFENDANTS

### LANDOWNERS

13  3.   CAL FIRE alleges, on information and belief, that in September 2007, the property

14  underlying the area of operations for the Cooks Creek Timber Sale in Plumas County, located in

15  Shasta Forests 7 and 123, at Township 27 North, Range 10 East (Timber Harvesting Plan No. 2-

16  05-161-PLU(2), hereafter referred to as the Cooks Creek THP), was owned by an ownership

17  group of numerous individuals and trusts, each of whom holds a percentage ownership interest.

18  Brooks Walker III, an individual, held a percentage interest in the property. In addition, the

19  following trusts held a percentage interest in that same property: (1) the Myles Walker Danielsen

20  Trust; (2) the Clayton Brooks Danielsen Trust; (3) the Brooks Thomas Walker Trust; and (4) the

21  Della Grace Walker Trust. Brooks Walker III is the trustee of trusts 1 and 2, and Leslie Walker is

22  the trustee of trusts 3 and 4, above. The Cooks Creek THP listed Brooks Walker, et al., as one of

23  the timberland owners of record.

24  4.   In addition to the individuals and entities identified above, the individuals and entities

25  in paragraphs 5-26, below, are alleged to have been percentage owners in the property underlying

26  the Cooks Creek THP in September 2007, and at all times relevant to this complaint.

27  5.   On the filing of the complaint, plaintiff, CAL FIRE, not knowing the true name of the

28  defendant, and having designated defendant in the complaint by the fictitious name of Doe 1, and

3

having discovered the true name of Doe 1 to be Ann McKeever Hatch, as Trustee of the Hatch 1987 Revocable Trust, hereby amends the complaint by inserting the true name in place of the fictitious name wherever it appears in the complaint.

6.    On the filing of the complaint, plaintiff, CAL FIRE, not knowing the true name of the defendant, and having designated defendant in the complaint by the fictitious name of Doe 2, and having discovered the true name of Doe 2 to be Richard L. Greene, as Trustee of the Hatch Irrevocable Trust, U/A dtd. 12/29/92, hereby amends the complaint by inserting the true name in place of the fictitious name wherever it appears in the complaint.

7.    On the filing of the complaint, plaintiff, CAL FIRE, not knowing the true name of the defendant, and having designated defendant in the complaint by the fictitious name of Doe 3, and having discovered the true name of Doe 3 to be Brooks Walker Jr., as Trustee of the Della Walker Van Loben Sels Trust for the issue of Brooks Walker, Jr. U/A dtd. 10/26/89, hereby amends the complaint by inserting the true name in place of the fictitious name wherever it appears in the complaint.

8.    On the filing of the complaint, plaintiff, CAL FIRE, not knowing the true name of the defendant, and having designated defendant in the complaint by the fictitious name of Doe 4, and having discovered the true name of Doe 4 to be Brooks Walker, Jr., as Trustee of the Brooks Walker, Jr. Revocable Trust U/A dtd. 12/4/96, hereby amends the complaint by inserting the true name in place of the fictitious name wherever it appears in the complaint.

9.    On the filing of the complaint, plaintiff, CAL FIRE, not knowing the true name of the defendant, and having designated defendant in the complaint by the fictitious name of Doe 5, and having discovered the true name of Doe 5 to be John C. Walker, as Trustee of the Della Walker Van Loben Sels Trust for the Issue of John C. Walker, U/A dtd. 12/21/89, hereby amends the complaint by inserting the true name in place of the fictitious name wherever it appears in the complaint.

10.    On the filing of the complaint, plaintiff, CAL FIRE, not knowing the true name of the defendant, and having designated defendant in the complaint by the fictitious name of Doe 6, and having discovered the true name of Doe 6 to be John C. Walker, as an individual, hereby amends

4

AGO 000054

1  the complaint by inserting the true name in place of the fictitious name wherever it appears in the

2  complaint.

3      11.    On the filing of the complaint, plaintiff, CAL FIRE, not knowing the true name of the

4  defendant, and having designated defendant in the complaint by the fictitious name of Doe 7, and

5  having discovered the true name of Doe 7 to be Kirby Walker, as an individual, hereby amends

6  the complaint by inserting the true name in place of the fictitious name wherever it appears in the

7  complaint.

8      12.    On the filing of the complaint, plaintiff, CAL FIRE, not knowing the true name of the

9  defendant, and having designated defendant in the complaint by the fictitious name of Doe 8, and

10  having discovered the true name of Doe 8 to be Leslie Walker, as an individual, hereby amends

11  the complaint by inserting the true name in place of the fictitious name wherever it appears in the

12  complaint.

13      13.    On the filing of the complaint, plaintiff, CAL FIRE, not knowing the true name of the

14  defendant, and having designated defendant in the complaint by the fictitious name of Doe 9, and

15  having discovered the true name of Doe 9 to be Jennifer Walker, as an individual, hereby amends

16  the complaint by inserting the true name in place of the fictitious name wherever it appears in the

17  complaint.

18      14.    On the filing of the complaint, plaintiff, CAL FIRE, not knowing the true name of the

19  defendant, and having designated defendant in the complaint by the fictitious name of Doe 10,

20  and having discovered the true name of Doe 10 to be Jennifer Walker, as Trustee of the Max

21  Walker Silverman Trust, U/A, dated 5/5/93, hereby amends the complaint by inserting the true

22  name in place of the fictitious name wherever it appears in the complaint.

23      15.    On the filing of the complaint, plaintiff, CAL FIRE, not knowing the true name of the

24  defendant, and having designated defendant in the complaint by the fictitious name of Doe 11,

25  and having discovered the true name of Doe 11 to be Jennifer Walker, as Trustee of the Emma

26  Walker Silverman Trust, U/A dated 12/6/94, hereby amends the complaint by inserting the true

27  name in place of the fictitious name wherever it appears in the complaint.

28

5

AGO 000055

16.     On the filing of the complaint, plaintiff, CAL FIRE, not knowing the true name of the defendant, and having designated defendant in the complaint by the fictitious name of Doe 12, and having discovered the true name of Doe 12 to be Lindsey Walker, a.k.a. Lindsey Walker-Silverman, as an individual, hereby amends the complaint by inserting the true name in place of the fictitious name wherever it appears in the complaint.

17.     On the filing of the complaint, plaintiff, CAL FIRE, not knowing the true name of the defendant, and having designated defendant in the complaint by the fictitious name of Doe 13, and having discovered the true name of Doe 13 to be Lindsey Walker-Silverman, as Trustee of the Reilly Hudson Keenan Trust, U/A, dated 12/18/91, hereby amends the complaint by inserting the true name in place of the fictitious name wherever it appears in the complaint.

18.     On the filing of the complaint, plaintiff, CAL FIRE, not knowing the true name of the defendant, and having designated defendant in the complaint by the fictitious name of Doe 14, and having discovered the true name of Doe 14 to be Lindsey Walker-Silverman, as Trustee of the Madison Flanders Keenan Trust, U/A dated 12/18/91, hereby amends the complaint by inserting the true name in place of the fictitious name wherever it appears in the complaint.

19.     On the filing of the complaint, plaintiff, CAL FIRE, not knowing the true name of the defendant, and having designated defendant in the complaint by the fictitious name of Doe 15, and having discovered the true name of Doe 15 to be Wellington S. Henderson, Jr., as Trustee of the Henderson Revocable Trust, U/A, dated 3/9/93, hereby amends the complaint by inserting the true name in place of the fictitious name wherever it appears in the complaint.

20.     On the filing of the complaint, plaintiff, CAL FIRE, not knowing the true name of the defendant, and having designated defendant in the complaint by the fictitious name of Doe 16, and having discovered the true name of Doe 16 to be Charles C. Henderson, as Trustee of the Charles C. and Kirsten Henderson Revocable Trust U/A dated 1/3/97, hereby amends the complaint by inserting the true name in place of the fictitious name wherever it appears in the complaint.

21.     On the filing of the complaint, plaintiff, CAL FIRE, not knowing the true name of the defendant, and having designated defendant in the complaint by the fictitious name of Doe 17,

6

AGO 000056

1    and having discovered the true name of Doe 17 to be James A. Henderson, as an individual,

2    hereby amends the complaint by inserting the true name in place of the fictitious name wherever

3    it appears in the complaint.

4         22.    On the filing of the complaint, plaintiff, CAL FIRE, not knowing the true name of the

5    defendant, and having designated defendant in the complaint by the fictitious name of Doe 18,

6    and having discovered the true name of Doe 18 to be Joan H. Henderson, as an individual, hereby

7    amends the complaint by inserting the true name in place of the fictitious name wherever it

8    appears in the complaint.

9         23.    On the filing of the complaint, plaintiff, CAL FIRE, not knowing the true name of the

10   defendant, and having designated defendant in the complaint by the fictitious name of Doe 19,

11   and having discovered the true name of Doe 19 to be Elena D. Henderson, as an individual,

12   hereby amends the complaint by inserting the true name in place of the fictitious name wherever

13   it appears in the complaint.

14        24.    On the filing of the complaint, plaintiff, CAL FIRE, not knowing the true name of the

15   defendant, and having designated defendant in the complaint by the fictitious name of Doe 20,

16   and having discovered the true name of Doe 20 to be Mark W. Henderson, as Trustee of the Mark

17   W. Henderson Revocable Trust, U/A dated 8/30/93, hereby amends the complaint by inserting the

18   true name in place of the fictitious name wherever it appears in the complaint.

19        25.    On the filing of the complaint, plaintiff, CAL FIRE, not knowing the true name of the

20   defendant, and having designated defendant in the complaint by the fictitious name of Doe 21,

21   and having discovered the true name of Doe 21 to be Brooks Walker III, as Trustee of the

22   Benjamin Walker Burlock Trust, U/A dated 6/27/94, hereby amends the complaint by inserting

23   the true name in place of the fictitious name wherever it appears in the complaint.

24        25.    On the filing of the complaint, plaintiff, CAL FIRE, not knowing the true name of the

25   defendant, and having designated defendant in the complaint by the fictitious name of Doe 22,

26   and having discovered the true name of Doe 22 to be Brooks Walker III, as Trustee of the

27   Margaret Charlotte Burlock Trust, U/A dated 11/3/97, hereby amends the complaint by inserting

28   the true name in place of the fictitious name wherever it appears in the complaint.

7

AGO 000057

27.  The individuals and entities described in Paragraphs 3-26, above, will be referred to collectively in this complaint as the LANDOWNER DEFENDANTS.

### PROPERTY MANAGER

28.  CAL FIRE alleges, on information and belief, that W.M. Beaty and Associates, Inc. (BEATY) is a corporation that does business, among other venues, in Plumas County, California. BEATY's address is P.O. Box 990898, Redding, California.  Prior to and in September 2007, BEATY managed the property underlying the Cooks Creek THP on behalf of the LANDOWNER DEFENDANTS.  BEATY prepared and submitted the Cooks Creek THP to CAL FIRE as the agent of the LANDOWNER DEFENDANTS.  BEATY sold the standing timber to be harvested under the Cooks Creek THP on behalf of the LANDOWNER DEFENDANTS.

### TIMBER PURCHASER

29.  CAL FIRE alleges, on information and belief, that defendant Sierra Pacific Industries (SIERRA PACIFIC) is a corporation that does business, among other venues, in Plumas County, California. SIERRA PACIFIC'S address is 19794 Riverside Avenue, Anderson, California. SIERRA PACIFIC purchased the standing timber to be harvested under the Cooks Creek THP from the LANDOWNER DEFENDANTS and hired the licensed timber operator to harvest the timber.

### LICENSED TIMBER OPERATOR

30.  CAL FIRE alleges, on information and belief, that defendant Eunice E. Howell is an individual who resides in Shasta County, California.  Eunice E. Howell does business as a California licensed timber operator, (license no. # A-7550), under the business name Howell's Forest Harvesting.  Eunice E. Howell and Howell's Forest Harvesting will hereafter be referred to collectively as HOWELL.  Sierra Pacific hired and BEATY and LANDOWNER DEFENDANTS consented to the hiring of HOWELL as the LTO for a portion of the timber to be harvested under the Cooks Creek THP, including portions of the timber to be harvested under the Moonville Timber Sale and the Cooks Creek Timber Sale.

8

31. CAL FIRE alleges, on information and belief, that defendant Kelly Crismon (CRISMON) is an individual who resides in Shasta County, California. On September 3, 2007, CRISMON was an employee of HOWELL who was operating the equipment that kindled the Moonlight Fire, as more fully described below.

32. CAL FIRE alleges, on information and belief, that defendant J W Bush (BUSH) is an individual who resides in Shasta County, California. On September 3, 2007, Bush was an employee of HOWELL who was operating equipment in the vicinity of the area of origin of the Moonlight Fire, as more fully described below. BUSH failed to perform a diligent ground inspection within the first two hours of cessation of operations and failed to have adequate communication available to report any fire that might be detected as required by law and by the Cooks Creek THP fire plan.

33. The true names and capacities of defendants Does 23 to 50, inclusive, whether corporate, individual, or otherwise, are unknown to CAL FIRE, which therefore sues such defendants by fictitious names. CAL FIRE will seek leave of court to amend this complaint to show their true names and capacities when they have been ascertained. The Doe defendants, and each of them, are connected to and responsible for the acts complained of herein.

34. CAL FIRE alleges, on information and belief, that at all times relevant herein, each of the defendants was the agent and/or employee of, and/or engaged in a joint venture with, each of the remaining defendants, and in doing the acts alleged herein, was acting within the scope of such agency, employment, or joint venture.

35. All defendants herein are persons as that term is defined in Public Resources Code section 4101 and Health and Safety Code section 19.

**VENUE**

36. Venue in Plumas County is appropriate pursuant to Code of Civil Procedure sections 395 and 395.5. The fire occurred in Plumas County, giving rise to the obligations and liability herein alleged against all defendants.

9

## GENERAL ALLEGATIONS

## BACKGROUND

37.  CAL FIRE alleges, on information and belief, that before September 3, 2007, the LANDOWNER DEFENDANTS purchased or otherwise acquired possessory interests in timberland property situated in Lassen and Plumas Counties, California, in Shasta Forests 7 and 123. More specifically, the property is situated in Sections 2-5, 8-10, and 14-16, of Township 27 North, Range 10 East, Mount Diablo Meridian (the timberland property).

38.  CAL FIRE alleges, on information and belief, that before September 3, 2007, the LANDOWNER DEFENDANTS hired BEATY to manage the timberland property.  In that capacity, BEATY acted as the agent for the LANDOWNER DEFENDANTS.  Accordingly, all actions and inactions of BEATY described in this complaint are alleged to have been done equally by, or on behalf of, the LANDOWNER DEFENDANTS.

39.  CAL FIRE alleges, on information and belief, that BEATY's timberland property management responsibilities included but were not limited to fire planning and prevention.

## THE COOKS CREEK THP

40.  CAL FIRE alleges, on information and belief, that in 2005, BEATY's registered professional forester (RPF) John Van Duyn (Van Duyn) prepared and submitted the Cooks Creek THP to CAL FIRE on behalf of the LANDOWNER DEFENDANTS.  The Cooks Creek THP governed the harvest of standing timber on portions of the timberland property.

41.  The Cooks Creek THP identifies the following individuals and entities in the following capacities: (1) the plan submitter was BEATY; (2) the timberland owners of record were Brooks Walker, et al. and Red River Forests Partnership; and (3) the timber owners of record were Brooks Walker, et al.

10

42.   In the Cooks Creek THP, BEATY, through Van Duyn, represented that:

"As the employer of the RPF who prepared the plan, W.M. Beaty & Associates, Inc. is fully aware of all the THP responsibilities identified in 14 CCR 1035 concerning this plan. W.M. Beaty & Associates, Inc. is retained by the timberland owner under a Management Services contract addressing all aspects of timber management including compliance with all pertinent regulations. As agent for the timberland owners, W.M. Beaty & Associates, Inc. accepts for the owners, all responsibilities identified in 14 CCR 1035." (Cooks Creek THP at p. 3.)

Van Duyn also stated:

"I have the authority and responsibility for the preparation of this THP and have been retained to provide professional advice throughout the timber operations. I, any other RPF or supervised designee, under the direction of W.M. Beaty & Associates Inc. shall be present in the logging area at a sufficient frequency to know the progress of operations and advise the LTO and timberland owner. I or any other RPF, under the direction of W.M. Beaty & Associates Inc. has the authority to amend the THP on behalf of the submitter, supervise timber marking, [and] identify watercourse and lake protection zones or other activities. THP implementation, compliance, and satisfactory completion are the responsibility of the LTO through contractual agreement. Notification of commencement of operations will also be the responsibility of the LTO as allowed in 1035.4." (*Ibid.*)

43.   Title 14, California Code of Regulations section 1035 is located in the California Forest Practice Rules. That section provides, subject to exceptions that did not apply regarding the Cooks Creek THP, that:

"The plan submitter, or successor in interest, shall:

[¶

(d)   (1) Retain an RPF who is available to provide professional advice to the LTO and timberland owner upon request throughout active timber operations regarding the following:

(A) the plan,

(B) the Forest Practice Rules;

(C) other associated regulations pertaining to timber operations.

22.   CAL FIRE filed the Cooks Creek THP in November 2005 and approved it in February 2007.

### THE TIMBER SALE

44   CAL FIRE alleges, on information and belief, that after the Cooks Creek THP was approved, BEATY negotiated one or more timber sales involving timber to be harvested under

11

1   the Cooks Creek THP. These sales included the Moonville Timber Sale and the Cooks Creek

2   Timber Sale.

3       45.   CAL FIRE alleges, on information and belief, that SIERRA PACIFIC purchased the

4   timber that was to be harvested under the Cooks Creek timber sale.

5                           **PRE-HARVEST ACTIVITIES**

6       46.   CAL FIRE alleges, on information and belief, that Defendants hired HOWELL to

7   serve as the LTO for a portion of the Cooks Creek THP. In the alternative, SIERRA PACIFIC

8   hired, and BEATY and LANDOWNER DEFENDANTS consented to, the hiring of HOWELL as

9   the LTO for a portion of the timber to be harvested under the Cooks Creek THP, including

10   portions of the timber to be harvested under the Moonville Timber Sale and the Cooks Creek

11   Timber Sale.

12       47.   CAL FIRE alleges, on information and belief, that on May 30, 2007, HOWELL

13   executec a Licensed Timber Operator Responsibility Acknowledgement for the Cooks Creek

14   THP that stated, in relevant part, that HOWELL agreed to comply with all provisions of the

15   Zberg-Nejedly Forest Practice Act (Pub. Resources Code, § 4511 et seq.) and Forest Practice

16   Rules (Cal. Code Regs., tit. 14, § 895.1 et seq.) as well as the Cooks Creek THP. The

17   Acknowledgement also required HOWELL to: "[p]rovide the RPF responsible for professional

18   advice throughout the operations the name, address, and phone number of an on-site contact

19   employee authorized by [HOWELL] to receive RPF advice," and to "[k]eep the RPF responsible

20   for professional advice throughout the timber operations advised of the status of timber operation

21   activity." The RPF for the Cooks Creek THP was Van Duyn.

22       48   In May 2007, BEATY, through Van Duyn, notified CAL FIRE that HOWELL would

23   be the licensed timber operator for a portion of the Cooks Creek THP, including the Moonville

24   Timber Sale. In June 2007, BEATY, through Van Duyn, notified CAL FIRE that HOWELL

25   would be the licensed timber operator for a portion of the Cooks Creek THP including the Cooks

26   Creek Timber Sale. HOWELL's area of responsibility, as indicated by the maps submitted by

27   BEATY to CAL FIRE, included portions of sections 4-5, 8-10, and 16 of Township 27 N, R 10 E,

28   Mount Diablo Meridian.

12

1    49.  CAL FIRE alleges, on information and belief, that prior to commencement of timber

2    harvesting under the Cooks Creek THP, representatives of BEATY, SIERRA PACIFIC, and

3    HOWELL attended a pre-operational meeting.  At the meeting, participants discussed, among

4    other items, the fire plan for the Cooks Creek THP.

5                          **THE FIRE PLANS**

6    50.  CAL FIRE alleges, on information and belief, that BEATY's 2007 fire plan was

7    applicable to LTO activities under the Cooks Creek THP.

8    51    BEATY's 2007 fire plan stated, in relevant part:

9    (D)(3) As conditions warrant, at his discretion, [BEATY's] . . . District Forester and
10   district personnel under his supervision are available for fire patrol, detection, line
     reconnaissance, suppression, etc.

11   . [¶]

12   (5)  As in the past, we wish to be notified as soon as possible if any or all of the
     following situations exist:
13

14   a)     Prompt notification of fires on or threatening lands managed by Beaty. . . .

15   [¶]

16   c)     Prompt notification of predicted extreme fire weather and resultant high fire
     hazard periods so that all timber operators working on our managed lands may be
17   cautioned and apprised of any special actions which must be taken.

18   (E)    (1)  It is the responsibility of each Licensed Timber Operator (LTO) to file a
     plan which details the personnel and equipment available for fire suppression, and the
     timing of the operation.  [BEATY] . . . District Foresters will ensure that a fire plan
19   has been filed prior to start of operations and that it remains current while the timber
     sale is active.  Fire equipment inspections will be made and spot-checked as
20   necessary.  As in the past, major portions of all tracts and most logging operations
     will be flown daily by an appropriate air patrol . . . .  However, upon daily completion
21   of felling operations, the LTO will provide for a walking patrol of that day's work
     area and will remain in said work area for at least thirty (30) minutes after felling
22   operations have been completed.

23   [¶]

24   (4)    The LTO shall [sic] a written plan of forest fire organization at least 10 days
     prior to the commencement of any operations.  The plan . . . . [] shall include
25   provisions for:

26   [¶]

27   b)     Assignment of specific duties and responsibilities to individual key
     personnel.

28

52.   CAL FIRE alleges, on information and belief, that SIERRA PACIFIC's 2007 Lassen District Fire Plan Fire Suppression Resource Inventory (SIERRA PACIFIC's 2007 Fire Plan) applied to LTO activities under the Cooks Creek THP.

53.   CAL FIRE alleges, on information and belief, that SIERRA PACIFIC's 2007 Fire Plan required LTOs to notify SIERRA PACIFIC if a fire occurred within the area covered by the plan. (SIERRA PACIFIC's 2007 Fire Plan, p. 1.)

54.   CAL FIRE alleges, on information and belief, that SIERRA PACIFIC's 2007 Fire Plan stated in relevant part that, if a fire occurred within the area covered by the plan, the responsibility of SIERRA PACIFIC was as follows: "The District Manager is responsible for fire prevention and suppression activities. It is the duty of the District Manager, District Patrolman, or District Foresters to coordinate all fire suppression activities of SPI and Company contractors, with those agencies (public and private) on all fires whether they are SPI responsibility or not." (*Ibid.*)

55.   CAL FIRE alleges, on information and belief, that SIERRA PACIFIC's 2007 Fire Plan stated that LTOs "shall conduct a diligent ground inspection within the first two hours following the cessation of felling, yarding, brush clearing, ripping, chipping, and loading operations each day during designated fire season." (*Id.* at p. 3.)

56.   CAL FIRE alleges, on information and belief, that SIERRA PACIFIC's 2007 Fire Plan further provided that SIERRA PACIFIC's District Manager retained the right to declare "'HOOT OWL' restrictions based on very high or extreme fire weather conditions. . . . During such periods, all use of falling saws, tracked equipment, . . . ripping, [and] clearing. . . will be suspended at 1:00 P.M. . . . ." And it also stated that when 'HOOT OWL' restrictions . . . [were] imposed, the District Manager . . . [was] responsible for timely notification of each contractor affected and . . . [would] keep a record describing the reason for such decision. . . . ." (*Id.* at p. 18.)

57   CAL FIRE alleges, on information and belief, that SIERRA PACIFIC's 2007 Fire Plan said, regarding fire inspections, that "[r]andom fire inspections will be conducted by a SPI representative on each operation. The attached Fire Protection Checklist will be used to conduct

14

fire inspections.  A copy of this checklist will be given to the Contractor.  The Company will place a copy in the THP/Contractor file.  Any deficiencies will be corrected immediately."  (*Id.* at p. 21.)

58.  CAL FIRE alleges, on information and belief, that at the pre-operational meeting for the Cooks Creek THP, BEATY supplied the fire plan paperwork for the Cooks Creek THP, and HOWELL completed and submitted it.

59.  CAL FIRE alleges, on information and belief, that the timber operator's fire protection plan for the Cooks Creek THP submitted by HOWELL to CAL FIRE stated "siderod Damon Baker . . . will be responsible for detection, control, & suppression of fire in logging areas.  Loader operator Russ DeMarce will be on site around the . . . fire watch."  That document further provided that "daily fire inspection will be done by siderod Damon Baker & Russ after work & in evenings."  (Cooks Creek THP Timber Operator's Fire Protection Plan for HOWELLS, p. 2.)

60.  CAL FIRE alleges, on information and belief, that as part of the fire plan for the Cooks Creek THP, Eunice Howell was supposed to monitor the Remote Automated Weather Station (RAWS) via computer and, when fire conditions warranted, place a call to the logging foreman to advise him to shut down operations.

**REQUIREMENT TO INSPECT FOR FIRE AFTER CESSATION OF OPERATIONS**

61.  In 2007, at the time of the Moonlight Fire, Title 14, California Code of Regulations section 938.8, provided:

> [t]he timber operator or his/her agent shall conduct a diligent aerial or ground inspection within the first two hours after cessation of felling, yarding, or loading operations each day during the dry period when fire is likely to spread.  The person conducting the inspection shall have adequate communication available for prompt reporting of any fire that may be detected.

**OTHER FIRES KINDLED BY HOWELLS**

62.  CAL FIRE alleges, on information and belief, that prior to and after the September 3, 2007, Moonlight Fire that is the basis of this complaint, HOWELLS negligently kindled three other equipment-caused fires as more fully described below.

15

**THE JUNE 21, 2007, GREENS FIRE**

63. CAL FIRE alleges, on information and belief, that on June 21, 2007, HOWELL kindled what is now known as the Greens Fire. That fire occurred during harvesting operations for the Moonville Timber Sale in the vicinity of Moonlight Pass in Plumas County.

64. CAL FIRE alleges, on information and belief, that the United States Forest Service investigated the Greens Fire and concluded that the cause of that fire was HOWELL skidder operators operating tracked equipment in a rocky area with dry forest fuels and fallen timber; the bulldozer tracks hit a rock and kindled a fire.

65. CAL FIRE alleges, on information and belief, that on the day of the Greens Fire, two HOWELL employees were using tracked equipment in the general area of origin of the Greens Fire. That day, HOWELL employees were using the same piece of equipment (VIN No. 4NS00150) that CAL FIRE later concluded was involved in the kindling and escape of the Moonlight Fire, as more fully described below.

66. CAL FIRE alleges, on information and belief, that on the day of the GREENS fire, United States Forest Service investigators interviewed HOWELL feller foreman Dale Stocks (Stocks). Stocks stated that the HOWELL crew had shut down for the day when the Greens Fire was discovered. Stocks also said that HOWELL had no fire patrol in the area to check for possible fires; rather, the crew was relying on the afternoon air patrol.

**THE AUGUST 17, 2007, LYMAN FIRE**

67. CAL FIRE alleges, on information and belief, that on August 17, 2007, HOWELL kindled what is now known as the Lyman Fire. On that date, HOWELL employee Robert Brown (Brown) was using a tracked bulldozer to drag rippers through the ground to loosen up the soil.

68. On the date of the Lyman Fire, a "Red Flag Warning" was in effect for extreme fire conditions.

69. Brown told CAL FIRE investigators that on the day of the Lyman Fire, when he ceased working at approximately 1:00 p.m., he did not walk the area of operation, rather, he positioned his vehicle above the landing to observe the area for about 30 to 45 minutes then

1   headed home. A short time later he received a phone call advising him of the fire and returned to

2   the area

3       70.   CAL FIRE alleges, on information and belief, that on the day of the Lyman Fire,

4   SIERRA PACIFIC forester Dennis Garretson drove to the fire location. Garretson informed CAL

5   FIRE'S investigators that he told his supervisor, Mike Mitzel, about the Lyman Fire. Garretson

6   took CAL FIRE'S investigator to the area where he first saw the fire. This area showed

7   significant signs of equipment use and disturbance of vegetation, soil, and rocks. The general

8   area of origin of the Lyman Fire was rocky and the rocks in that area were broken and scraped.

9                     **THE SEPTEMBER 18, 2007, SHEEP FIRE**

10      71.   CAL FIRE alleges, on information and belief, that on September 17, 2007, HOWELL

11  kindled what is now known as the September 18, 2007, Sheep Fire. This fire occurred near Sheep

12  Camp Spring south of Ponderosa Sky Ranch in Tehama County.

13      72.   CAL FIRE alleges, on information and belief, that on September 17, 2007, HOWELL

14  employee Robert Brown (Brown) was using the same tracked bulldozer that kindled the Lyman

15  Fire to drag rippers through the ground to loosen up the soil. Brown told CAL FIRE'S

16  investigator that he finished working for the day at 4:15 p.m. After concluding operations, he left

17  the job site and went home. On September 18, 2007, when he returned in the morning at 6:15

18  a.m.. he found a small fire burning in the slash.

19      73.   Brown told CAL FIRE'S investigator that after discovering the fire, he cut a fire line

20  and then drove to an area where he could get cell phone service and called 911. He also notified

21  Sierra Pacific regarding the existence of the Sheep Fire.

22      74.   CAL FIRE'S investigator concluded the cause of the fire was bulldozer tracks or

23  rippers contacting rocks. A piece of ferrous metal or spark from the struck rocks landed in dry

24  slash and smoldered until morning. The CAL FIRE investigation report noted the "lack of

25  extensive foot patrol over the entire area" as a contributing factor to the kindling and escape of

26  the Lyman and Sheep Fires. (Sheep Fire investigation report, p. 4.)

27

28

                                            17

## THE SEPTEMBER 3, 2007, MOONLIGHT FIRE

75.   On September 3, 2007, HOWELL kindled a fourth fire, the "Moonlight Fire," that is the subject of this lawsuit. The allegations of the following paragraphs are regarding events on September 3, 2007, unless otherwise noted.

76.   CAL FIRE alleges, on information and belief, that BUSH and CRISMON were operating their bulldozers uphill from road 3130 in Section 9 of Township 27 North, Range 10 East, Mount Diablo Meridian. The acreage where they were working is encompassed by Plumas County Assessor's parcel number 004-020-005. This property was within the timberland property described in paragraphs 3 and 37, above, and was governed by the Cooks Creek THP.

77.   CAL FIRE alleges, on information and belief, that BUSH and CRISMON were operating bulldozers to install water bars on the skid trails for the portion of the Cooks Creek THP involving Cooks Creek timber sale. Water bars are berms or mounds designed to control erosion. Skid trails are trails that are cleared of obstacles and debris and used, among other things, to access timber for harvest and removal.

78.   CAL FIRE alleges, on information and belief, that as they installed water bars, BUSH and CRISMON first yarded any logs that needed to be skidded out.

79.   CAL FIRE alleges, on information and belief, that CRISMON's bulldozer was the same vehicle that kindled the Greens Fire in June 2007.

80.   CAL FIRE alleges, on information and belief, that there was no foreman/siderod on-site.

81.   CAL FIRE alleges, on information and belief, that Damon Baker and Russ DeMarce were not on-site.

82.   CAL FIRE alleges, on information and belief, that Eunice Howell was not monitoring the RAWS via computer and did not call BUSH or CRISMON regarding fire conditions. Similarly, SIERRA PACIFIC did not notify BUSH or CRISMON regarding fire conditions.

83.   CAL FIRE alleges, on information and belief, that there was no cellular phone reception in the area that BUSH and CRISMON were working.

18

84. The terrain where BUSH and CRISMON were operating their bulldozers was forested and the ground was uneven, sloping, and rocky. The forest floor alongside the skid trails was covered by pine needles and heavy fuels such as tree branches, logs, and logging residue.

85. CAL FIRE alleges, on information and belief, that BUSH and CRISMON stopped work early, around 1:00 p.m., because of fire danger due to weather conditions. The temperature was 79 degrees, relative humidity was 13 percent, and winds were gusting up to 20 miles per hour from the south.

86. CAL FIRE alleges, on information and belief, that CRISMON yarded several logs on his way to the landing before ceasing operations for the day.

87. CAL FIRE alleges, on information and belief, that CRISMON and BUSH parked their bulldozers and left.

88. Neither CRISMON nor BUSH performed the inspection required by California Code of Regulations, title 14, section 938.8 (the fire watch).

89. BUSH stated to CAL FIRE'S investigators that when he left, he intended to get his cell phone and something to drink and return to the area of operations to perform the fire watch.

90. CRISMON stated to United States Forest Service and CAL FIRE investigators, on September 3 and 4, 2007, that Baker normally performs the fire watch, but because it was Labor Day, only BUSH and CRISMON were working. CRISMON said BUSH was going to do the fire watch. CRISMON also said that he believed when BUSH left he planned to get a chain saw and his personal vehicle to harvest firewood at the area of operations.

91. CAL FIRE alleges, on information and belief, that BUSH was driving back towards the area of operations when he saw the Moonlight Fire.

92. CAL FIRE alleges, on information and belief, that, after seeing the fire, BUSH drove approximately 1.7 miles to Moonlight Pass to direct fire suppression resources into the fire. By the time he reported the fire it had already been detected by the United States Forest Service from the Red Rock Lookout.

93. The treads of a bulldozer are commonly referred to as grousers. Inside the general area of origin of the Moonlight Fire was a skid trail with evidence of recent bulldozer activity

19

AGO 000069

1  including grouser tracks and water bars. The grouser tracks showed that a bulldozer drove across
2  rocks in the area of origin. There were numerous rock strikes and at least six broken rocks in this
3  area. The grouser tracks were in line with the rock strikes and two of the strikes indicated the
4  bulldozer blade may have contacted a rock or rocks.

5      94.   CAL FIRE alleges, on information and belief, that the specific area of origin of the
6  Moonlight Fire was where CRISMON had been working earlier in the day.

7      95.   CAL FIRE recovered ferrous material near the struck rocks in the specific area of
8  origin of the Moonlight Fire.

9      96.   The Moonlight Fire resulted from the grousers or striker plate of CRISMON's
10  bulldozer contacting rocks in the fire's area of origin. The contact resulted in superheated
11.  particles of ferrous alloy from the bulldozer coming into contact with dry fuels and kindling the
12  fire.

13      97.   On September 7, 2007, HOWELL employee Ryan Bauer told CAL FIRE'S
14  investigators that BUSH and CRISMON told him a bulldozer caused the fire and that they must
15  have kicked up a spark and started the fire.

16      98.   In or about September and October 2007, HOWELL's owner, Eunice Howell, and
17  HOWELL's foreman, Bill Dietrich, separately admitted in telephone calls with a property owner
18  whose property burned in the Moonlight Fire, that HOWELLS equipment caused the Moonlight
19  Fire.

20      99.   The Moonlight Fire smoldered for more than an hour in the dry fuel bed until it
21  entered into the free-burning stage and produced enough smoke to be identified by the Red Rock
22  Lookout

23      100.  CAL FIRE alleges, on information and belief, that Sugarpine Aviators was asked to
24  fly an air patrol on Labor Day, the day of the Moonlight Fire, due to the potential for fires arising
25  from recreational activities, hunting, and lightning.

26      101.  On September 17, 2007, Sugarpine Aviators pilot Herschel Beail (Beail) told a United
27  States Forest Service investigator that he was the pilot that flew an air patrol on September 3,
28  2007. Beail said he was flying by himself; because it was a holiday, he did not know anyone was

AGO 000070

1  working in any of the logging operations.  Beail said BEATY wanted him to fly on the holiday

2  due to recreation use and high fire conditions.

3      102.  The facts stated in this paragraph are alleged on information and belief.  The

4  Moonlight Fire was caused by defendants' negligent maintenance, operation, and use of the

5  bulldozer as described more specifically above.

6      103.  In addressing the Moonlight Fire, CAL FIRE incurred $ 8,441,309.99 (eight million,

7  four hundred forty-one thousand, three hundred nine dollars and ninety-nine cents) in fire

8  suppression, investigative, accounting, and administrative costs.  As of the time of filing this

9  complaint, CAL FIRE has incurred and will continue to incur additional administrative,

10 collection, and litigation costs as a result of the Moonlight Fire and having to pursue this

11 collection action against defendants.

12     104.  Health and Safety Code section 13009 provides in part that:

13     (a) Any person (1) who negligently, or in violation of the law, sets a fire, allows a fire
       to be set, or allows a fire kindled or attended by him or her to escape onto any public
14     or private property, . . . is liable for the fire suppression costs incurred in fighting the
       fire and for the cost of providing rescue or emergency medical services and those
15     costs shall be a charge against that person.  The charge shall constitute a debt of that
       person, and is collectible by the person, or by the federal, state, county, public, or
16     private agency, incurring those costs in the same manner as in the case of an
       obligation under a contract, expressed or implied.
17

18     105.  Health and Safety Code section 13009.1 provides in part that:

19     (a) Any person (1) who negligently, or in violation of the law, sets a fire, allows a fire
       to be set, or allows a fire kindled or attended by him or her to escape onto any public
20     or private property, . . . is liable for both of the following:

21     (1) The cost of investigating and making any reports with respect to the fire.

22     (2) The costs relating to accounting for that fire and the collection of any funds
       pursuant to Section 13009, including, but not limited to, the administrative costs of
23     operating a fire suppression cost recovery program.  The liability imposed pursuant to
       this paragraph is limited to the actual amount expended which is attributable to the
24     fire.

25

26     106.  Pursuant to Health and Safety Code sections 13009 and 13009.1, the fire suppression,

27 investigative, administrative, accounting, and collection costs incurred by CAL FIRE are

28

                                         21

1  collectible in the same manner as in the case of an obligation under a contract, expressed or

2  implied.

3      107.  The facts stated in this paragraph are alleged on information and belief.  As a direct,

4  foreseeable, and proximate consequence of the negligence and violations of law described in this

5  complaint, the Moonlight Fire burned approximately 64,997 acres of vegetation before being

6  contained.

7      108.  As a direct, foreseeable, and proximate consequence of the Moonlight Fire, CAL

8  FIRE, acting by and through its fire suppression resources, duly incurred reasonable costs in the

9  sum of $ 8,441,309.99 (eight million, four hundred forty-one thousand, three hundred nine dollars

10  and ninety-nine cents) to suppress the Moonlight Fire, and for investigative, administrative,

11  accounting, and collection activities.  Neither the whole nor any part of said sum has been paid by

12  defendants and the whole amount of said sum plus interest as allowed by law remains due, owing,

13  and payable from defendants to CAL FIRE.

14      109.  CAL FIRE is entitled to recover its fire suppression, investigative, administrative,

15  accounting, and collection costs arising from the Moonlight Fire pursuant to Health and Safety

16  Code sections 13009 and 13009.1.

17      110.  The Attorney General is entitled to recover all costs of investigating and prosecuting

18  this action, including expert fees and costs, pursuant to Code of Civil Procedure section 1021.8.

19

20                          **FIRST CAUSE OF ACTION**

21          **(By plaintiff CAL FIRE against all Defendants –
            violation of the law -- Pub. Resources Code § 4422)**

22      111.  CAL FIRE re-alleges and incorporates herein by reference each and every matter,

23  fact, and allegation contained in paragraphs 1 through 110, inclusive, of this complaint and makes

24  the same a part hereof as though fully set forth herein at length.

25

26

27

28

                                    22

AGO 000072

112.  Public Resources Code section 4422 provides:

. A person shall not do any of the following:

(b) Allow any fire kindled or attended by him to escape from his control or to spread to the land of any person other than from the land from which the fire originated.

113.  Defendants violated Public Resources Code sections 4422 by kindling the Moonlight Fire and allowing it to escape their control.

114.  Defendants violated Public Resources Code sections 4422 by allowing the Moonlight Fire to spread to the land of others.

## SECOND CAUSE OF ACTION
### (By plaintiff CAL FIRE against all Defendants – violation of the law – Cal. Code Regs, tit. 14, § 938.8.)

115.  CAL FIRE re-alleges and incorporates herein by reference each and every matter, fact, and allegation contained in paragraphs 1 through 114, inclusive, of this complaint and makes the same a part hereof as though fully set forth herein at length.

116.  CAL FIRE alleges, on information and belief, that harvesting timber in Plumas County in August and September presents a high risk of fire and a unique and heightened danger to the persons and property of third parties.  The fire watch requirement was drafted to prevent and detect fires before they escape.

117.  CAL FIRE alleges, on information and belief, that SIERRA PACIFIC, LANDOWNER DEFENDANTS, BEATY, and Does 23 to 50 retained sufficient control over the activities of HOWELL that they assumed a duty to ensure an adequate fire watch occurred.

118.  CAL FIRE alleges, on information and belief, that all defendants knew that HOWELL was involved in at least two fires prior to the Moonlight Fire, as more fully described above, and that those fires were equipment-caused fires.

23

19. CAL FIRE alleges, on information and belief, that, based on the circumstances described above, that if a diligent inspection for a fire had occurred as required by the Forest Practice Rules, the fire could have been identified and contained by initial attack resources.

20. Defendants violated Title 14, California Code of Regulations, section 938.8 because they did not perform a diligent fire watch, or any fire watch at all, and that failure was a direct, foreseeable, and proximate cause or was a substantial contributing factor in the kindling and escape of the Moonlight Fire.

121. Defendants violated Title 14, California Code of Regulations, section 938.8, because, when there is no cell phone reception, a cell phone is not an adequate method to promptly notify others in the event of fire, and that violation was a direct, foreseeable, and proximate cause or was a substantial contributing factor in the kindling and escape of the Moonlight Fire.

### THIRD CAUSE OF ACTION
### (General negligence -- against all Defendants)

122. CAL FIRE re-alleges and incorporates herein by reference each and every matter, fact, and allegation contained in paragraphs 1 through 121, inclusive, of this complaint and makes the same a part hereof as though fully set forth herein at length.

123. Defendants, and each of them, knew or should have known of the danger created by the use of equipment associated with timber operations when fire danger is high. Defendants, and each of them, owed the public and CAL FIRE a duty to exercise reasonable care in the management, maintenance, operation, and use of their property, equipment and work site. Defendants breached that duty by engaging in the careless conduct, actions, and inactions described in this complaint.

124. Public Resources Code section 4435 provides:

> If any fire originates from the operation or use of any engine, machine, barbecue, incinerator, railroad rolling stock, chimney, or any other device which may kindle a fire, the occurrence of the fire is prima facie evidence of negligence in the maintenance, operation, or use of such engine, machine, barbecue, incinerator, railroad rolling stock, chimney, or other device.

24

1    125.   CAL FIRE alleges, on information and belief, that the bulldozer operated by

2    CRISMON was a device which can kindle a fire.

3    126.   CAL FIRE alleges, on information and belief, that the Moonlight Fire originated

4    from Defendants' negligent maintenance, operation, use of the bulldozer operated by CRISMON

5    on the day of the Moonlight Fire. Accordingly, Public Resources Code section 4435 shifts the

6    burden to defendants to show they were not negligent.

7    127.   Defendants' negligence as alleged above was a direct, foreseeable, and proximate

8    cause or was a substantial contributing factor in the kindling and escape of the Moonlight Fire

9    and that negligence harmed CAL FIRE as alleged herein.

10                            **FOURTH CAUSE OF ACTION**
11    **(Negligent management and use of property – against BEATY, LANDOWNER
      DEFENDANTS, and Does 23-50)**

12    128.   CAL FIRE re-alleges and incorporates herein by reference each and every matter,

13    fact, and allegation contained in paragraphs 1 through 127, inclusive, of this complaint and makes

14    the same a part hereof as though fully set forth herein at length.

15    129.   CAL FIRE alleges, on information and belief, that the LANDOWNER

16    DEFENDANTS, BEATY, and Does 23-50 used and managed the timberland property in a

17    manner that created an unreasonable risk of harm to the persons and property of others.

18    130.   CAL FIRE alleges, on information and belief, that the LANDOWNER

19    DEFENDANTS, BEATY, and Does 23-50 knew, or, in the exercise of reasonable diligence,

20    should have known, about the two prior fires kindled by HOWELL.

21    131.   CAL FIRE alleges, on information and belief, that, given the prior fires, the time

22    of year, and the weather conditions, allowing HOWELL to operate on the timberland property

23    created an extreme danger of fire and a corresponding risk of injury to the persons and property of

24    others.

25

26

27

28

AGO 000073

132.   CAL FIRE alleges, on information and belief, that the LANDOWNER DEFENDANTS, BEATY, and Does 23-50 had a duty to exercise sufficient care and skill in the management of the timberland property so as not to cause injury to third parties. (Civ. Code, § 1714. subd. (a).) LANDOWNER DEFENDANTS, BEATY, and Does 23-50 breached that duty by engaging in the careless conduct, actions, and inactions described in this complaint, and that breach was a direct, foreseeable, and proximate cause or was a substantial contributing factor in the kindling and escape of the Moonlight Fire and harmed CAL FIRE as alleged herein.

33.   CAL FIRE alleges, on information and belief, that the LANDOWNER DEFENDANTS, BEATY, and Does 23-50 had a duty to exercise sufficient care and skill in the management of the timberland property so as not to cause or create a substantial and unreasonable interference with the use and enjoyment of the property of others.   CAL FIRE alleges that the LANDOWNER DEFENDANTS, BEATY, and Does 23-50, by engaging in the careless conduct, actions, and inactions described in this complaint, consented to, allowed, caused, and created an extreme fire hazard and, subsequently, the Moonlight Fire, amounting to a public nuisance which CAL FIRE responded to and abated.  That nuisance is further evidence of defendants' negligence. Under Health and Safety Code sections 13009 and 13009.1, defendants' negligence was a direct, direct, foreseeable, and proximate cause or was a substantial contributing factor in the kindling and escape of the Moonlight Fire and harmed CAL FIRE as alleged herein.

134.   CAL FIRE alleges, on information and belief, that the LANDOWNER DEFENDANTS, BEATY, and Does 23-50 had the ability and duty to exercise reasonable care to control the conduct of HOWELL so as to prevent HOWELL from creating an unreasonable risk of harm to third parties. LANDOWNER DEFENDANTS, BEATY, and Does 23-50 breached that duty by engaging in the careless conduct, actions, and inactions described in this complaint, and that breach was a direct, foreseeable, and proximate cause or was a substantial contributing factor in the kindling and escape of the Moonlight Fire and harmed CAL FIRE as alleged herein.

AGO 000076

## FIFTH CAUSE OF ACTION

### (Negligent supervision and inspection – against SIERRA PACIFIC, BEATY, LANDOWNER DEFENDANTS, HOWELL, and Does 23 to 50)

135.   CAL FIRE re-alleges and incorporates herein by reference each and every matter, fact, and allegation contained in paragraphs 1 through 134, inclusive, of this complaint and makes the same a part hereof as though fully set forth herein at length.

136.   CAL FIRE alleges, on information and belief, that LANDOWNER DEFENDANTS, SIERRA PACIFIC, BEATY, and Does 23 to 50 assumed a duty to supervise and inspect the operations, actions, and inactions of HOWELL, BUSH, and CRISMON.

137.   CAL FIRE alleges, on information and belief, that HOWELL had a duty to supervise and inspect the operations, actions, and inactions of BUSH and CRISMON.

138.   CAL FIRE alleges, on information and belief, that the negligent failure of the LANDOWNER DEFENDANTS, SIERRA PACIFIC, BEATY, and Does 23 to 50 to supervise and inspect the activities of HOWELL, BUSH and CRISMON directly, foreseeably, and proximately caused or was a substantial contributing factor in the kindling and escape of the Moonlight Fire and harmed CAL FIRE as alleged herein.

139.   CAL FIRE alleges, on information and belief, that the negligent failure of HOWELL to supervise and inspect the activities of BUSH and CRISMON directly, foreseeably, and proximately caused or was a substantial contributing factor in the kindling and escape of the Moonlight Fire and harmed CAL FIRE as alleged herein.

## SIXTH CAUSE OF ACTION

### (Negligence: Peculiar Risk – against SIERRA PACIFIC and Does 23-50)

140.   CAL FIRE re-alleges and incorporates herein by reference each and every matter, fact, and allegation contained in paragraphs 1 through 139, inclusive, of this complaint and makes the same a part hereof as though fully set forth herein at length.

141.   CAL FIRE alleges, on information and belief, that SIERRA PACIFIC and Does 23-50, in hiring HOWELL, recognized that the work contracted to be performed was likely to create, during its progress, a peculiar or special risk of harm to others such as CAL FIRE and

27

1  adjacent landowners unless special precautions were taken, because SIERRA PACIFIC and Does

2  23-50 provided for such precautions its contract with HOWELL and in SIERRA PACIFIC's 2007

3  Fire Plan. SIERRA PACIFIC and Does 23-50 thus knew that HOWELL's operations under the

4  Cooks Creek THP, including operating bulldozers and other equipment associated with timber

5  harvesting operations on the timberland property presented an extreme risk of fire given the time

6  of year of the harvest, the potential for fire-enhancing weather conditions, and the lay of the land

7  including topography, forest fuels, logging debris, and other vegetation. SIERRA PACIFIC and

8  Does 23-50 failed to ensure that HOWELL complied with applicable fire safety laws and

9  regulations and applicable fire plans. This conduct, action, and inaction was a direct, foreseeable,

10  and proximate cause or was a substantial contributing factor in the kindling and escape of the

11  Moonlight Fire.

## SEVENTH CAUSE OF ACTION

### (Negligent hiring – against SIERRA PACIFIC and Does 23-50)

14      142.    CAL FIRE re-alleges and incorporates herein by reference each and every matter,

15  fact, and allegation contained in paragraphs 1 through 141, inclusive, of this complaint and makes

16  the same a part hereof as though fully set forth herein at length.

17      143.    CAL FIRE alleges, on information and belief, that conducting timber operations

18  on the timberland property under the conditions present at or about the time of the Moonlight Fire

19  was work which involved a risk of harm to third parties unless it was skillfully and carefully

20  done.

21      144.    CAL FIRE alleges, on information and belief, that SIERRA PACIFIC and Does

22  23-50, had a duty to exercise reasonable care to hire a competent and careful timber operator.

23      145.    CAL FIRE alleges, on information and belief, that a careful and competent timber

24  operator means an operator who possesses the knowledge, skill, experience, and available

25  equipment to do the work which the operator was employed to do without creating unreasonable

26  risk of injury to others, and who also possesses the personal characteristics which are equally

27  necessary.

28

28

Second Amended Complaint for Fire Suppression, Investigation,
Auditing, and Litigation Fees and Costs (CV09-00205)
AGO 000078

1    146.   CAL FIRE alleges, on information and belief, that SIERRA PACIFIC and Does

2    23-50, knew or should have known that HOWELL kindled two prior equipment-caused fires and

3    that in each instance HOWELL failed to perform a diligent fire watch as required by law and

4    regulations. Accordingly, SIERRA PACIFIC and Does 23-50 knew, or in the exercise of

5    reasonable care should have known, that HOWELL was unfit to perform the job that it was hired

6    to perform and that the performance of this job involved a risk of harm to others.  Accordingly,

7    SIERRA PACIFIC and Does 23-50 breached its/their duty to hire a careful and competent timber

8    operator, and that breach was a direct, foreseeable, and proximate cause or was a substantial

9    contributing factor in the kindling and escape of the Moonlight Fire, and harmed CAL FIRE as

10   alleged herein.

11                               **EIGHTH CAUSE OF ACTION**

12              **(By plaintiff CAL FIRE against all Defendants – Money Owed)**

13   147.   CAL FIRE re-alleges and incorporates herein by reference each and every matter,

14   fact, and allegation contained in paragraphs 1 through 146, inclusive, of this complaint and makes

15   the same a part hereof as though fully set forth herein at length.

16   148.  Defendants are indebted to CAL FIRE and owe CAL FIRE the sum of $ 8,441,309.99

17   (eight million, four hundred forty-one thousand, three hundred nine dollars and ninety-nine cents)

18   for fire suppression, investigative, administrative, accounting, and collection activities performed

19   by CAL FIRE for defendants.  CAL FIRE sent defendants letters of demand for payment.

20   149.  Defendants have not made payment, and the whole of the $ 8,441,309.99 (eight

21   million, four hundred forty-one thousand, three hundred nine dollars and ninety-nine cents) owed

22   remains due and unpaid.

23                               **NINTH CAUSE OF ACTION**

24              **(By plaintiff CAL FIRE against all Defendants -- Injunction)**

25   150.   CAL FIRE re-alleges and incorporates herein by reference each and every matter,

26   fact and allegation contained in paragraphs 1 through 149, inclusive, of this complaint and makes

27   the same a part hereof with the same force and effect as though fully set forth herein.

28

                                          29

151.  Civil Code Section 3422 provides, in pertinent part, that:

Except where otherwise provided by this title, a final injunction may be granted to prevent the breach of an obligation existing in favor of the applicant:

1. Where pecuniary compensation would not afford adequate relief;

2. Where it would be extremely difficult to ascertain the amount of compensation which would afford adequate relief;

3. Where the restraint is necessary to prevent a multiplicity of judicial proceedings; or.

4. Where the obligation arises from a trust.

152.  Defendants owe the public and CAL FIRE a duty to refrain from managing, maintaining, using, or operating their equipment and/or property in a manner likely to damage or harm the persons or property of others or to kindle or allow the kindling or escape of wildland fires.

153.  On information and belief, it is the practice of Defendants to operate or to cause or allow others to operate bulldozers and other equipment used for timber operations negligently and in violation of law, namely, without performing a diligent fire watch as required by law and responsible management of property, as alleged more fully throughout this complaint.

154.  Upon information and belief, Defendants have not indicated an intention to rescind said practices.

155.  Defendants' conduct of managing, using, or operating their equipment and and/or property in a manner likely to damage or harm the persons or property of others and to kindle or allow the kindling or escape of wildland fires, and failing to perform a diligent fire watch, as alleged more fully throughout this complaint, unless and until enjoined and restrained by order of this Court, will cause great and irreparable injury to CAL FIRE.  Defendants' conduct, actions, and inactions alleged throughout this complaint will continue to impede CAL FIRE'S statutory authority to prevent fires, threaten serious harm and risk of injury and death to CAL FIRE'S firefighting equipment and personnel, and result in similar future incidents requiring CAL FIRE'S fire-fighting intervention.

AGO 000080

1    156.   CAL FIRE has no adequate remedy at law for the injuries threatened, as the

2    Defendants' continuing wrongful conduct inhibits and prevents CAL FIRE from being able to

3    fully implement its statutory authority to prevent fires and will require CAL FIRE to repeatedly

4    respond to suppress fires that are kindled, allowed to be kindled, or allowed to escape by

5    Defendants, placing CAL FIRE personnel and equipment in jeopardy and requiring it to return to

6    this Court for monetary relief caused by conduct that can be prevented by an injunction from this

7    Court restraining Defendants.

8         Accordingly, CAL FIRE asks this Court to issue a final injunction against Defendants, as

9    follows:

10        (a)    for any timber operations conducted by or on behalf of Defendants, or on their

11   property, require Defendants to perform a diligent fire watch as required by the then-applicable

12   version of Title 14, California Code of Regulations section 938.8 or any successor to that

13   regulation; and

14        (b)    order defendants, for a period of five years, to create on their own staff a fire

15   prevention and education position, and require the duties of that person to include but not be

16   limited to ensuring performance of an adequate fire watch as required by Title 14, California

17   Code of Regulations section 938.8 and any successor to that regulation, or, in the alternative,

18   require Defendants to designate specified persons already on their staff to perform the fire watch,

19   provide training for those persons regarding how to perform a diligent fire watch, and require

20   Defendants to ensure that one of the specifically trained persons is present to perform a diligent

21   fire watch within the requisite time after cessation of operations or as otherwise required by

22   applicable law; and

23        (c)    CAL FIRE asks the Court to grant such other equitable terms to enjoin the

24   Defendants' conduct as are reasonable according to proof at trial.

25                              **PRAYER FOR RELIEF**

26        WHEREFORE, CAL FIRE prays for judgment against defendants, and each of them, as

27   follows:

28

31

1.      For the sum of $ 8,441,309.99 (eight million, four hundred forty-one thousand, three hundred nine dollars and ninety-nine cents) for fire suppression, investigation, administrative, accounting, and collection costs associated with the Moonlight Fire.

2.      For interest on the sum of $ 8,441,309.99 (eight million, four hundred forty-one thousand, three hundred nine dollars and ninety-nine cents) at the rate allowed by law since the date of CAL FIRE'S letter of demand for payment of said amount.

3.      For any additional costs of investigating and making reports with respect to the Moonlight Fire as provided in Health and Safety Code section 13009.1, subdivision (a)(1).

4.      For any additional administrative, accounting and collection costs attributable to the Moonlight Fire as provided in Health and Safety Code section 13009.1, subdivision (a)(2).

5.      For all costs of investigating and prosecuting this action, including expert fees, reasonable attorney's fees, and costs as provided in Code of Civil Procedure section 1021.8.

6.      For a final injunction against Defendants, as follows:

       (a)      for any timber operations conducted by or on behalf of Defendants, or on their property, require Defendants to perform a diligent fire watch as required by the then-applicable version of Title 14, California Code of Regulations section 938.8 and any successor to that regulation; and

       (b)      order defendants, for a period of five years, to create on their own staff a fire prevention and education position, and require the duties of that person to include but not be limited to ensuring performance of an adequate fire watch as required by Title 14, California Code of Regulations section 938.8 and any successor to that regulation, or, in the alternative, require Defendants to designate specified persons already on their staff to perform the fire watch, provide training for those persons regarding how to perform a diligent fire watch, and require Defendants to ensure that one of the specifically trained persons is present to perform a diligent fire watch within the requisite time after cessation of operations or as otherwise required by applicable law; and

32

1          (c)    CAL FIRE asks the Court to grant such other equitable terms to enjoin

2     Defendants' conduct as are reasonable according to proof at trial.

3

4     Dated: January 20, 2010.                         Respectfully Submitted,

5
                                                       EDMUND G. BROWN JR.
6                                                      Attorney General of California
                                                       DENISE FERKICH HOFFMAN
7                                                      Supervising Deputy Attorney General

8

9

10                                                     TRACY L. WINSOR
                                                       Deputy Attorney General
11                                                     *Attorneys for Plaintiff*
                                                       *CAL FIRE*
12
      SA2009309552
13    30935643 doc

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                          33

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:   *Calif. Dept. of Forestry and Fire Protection v. Eunice Howell, et al.*
Plumas County Superior Court, Case No. CV09-00205

I declare: I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On January 28, 2010, I served the attached   **SECOND AMENDED COMPLAINT FOR FIRE SUPPRESSION, INVESTIGATION, AUDITING, AND LITIGATION FEES AND COSTS** by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States Mail at Sacramento, California, addressed as follows:

**Derek Van Deviver, Esq.**
**Rushford & Bonotto, LLP**
**2277 Fair Oaks Boulevard, Suite 495**
**Sacramento, CA 95825**

**William R. Warne, Esq.**
**Downey Brand LLP**
**621 Capitol Mall, 18th Floor**
**Sacramento, CA 95814**

**Richard S. Linkert, Esq.**
**Matheny Sears Linkert & Long, LLP**
**P.O. Box 13711**
**Sacramento, CA 95853-4711**

**E. Robert Wright, Assistant U.S. Attorney**
**United States Attorney's Office**
**501 I Street, Suite 10-100**
**Sacramento, CA 95814**

**Alexandra Foote, Esq.**
**Wendel, Rosen, Black & Dean LLP**
**1111 Broadway, 24th Floor**
**Oakland, CA 94607-4036**

**Michael S. Morse, Esq.**
**Morse & Associates**
**2300 Contra Costa Boulevard, Suite 285**
**Pleasant Hill, CA 94523**

**Merrill G. Emerick, Esq.**
**Anderlini & Emerick LLP**
**411 Borel Avenue, Suite 501**
**San Mateo, CA 94402**

**Frederick Grannis, Esq.**
**Sedgwick, Detert, Moran & Arnold LLP**
**801 South Figueroa Street, 19th Floor**
**Los Angeles, CA 90017-5556**

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on January 28, 2010, at Sacramento, CA.

_____
Ruthann Andersen
Declarant

_____
Signature

SA2009303450

AGO 000084