1  KAMALA D. HARRIS, State Bar No. 146672
   Attorney General of California
2  DENISE FERKICH HOFFMAN, State Bar No. 101671
   Supervising Deputy Attorney General
3  DANIEL M. FUCHS, State Bar No. 179033
   Deputy Attorneys General
4  G. LYNN THORPE, State Bar No. 112122
   Deputy Attorneys General
5  TRACY L. WINSOR, State Bar No. 186164
   Deputy Attorney General
6   1300 I Street, Suite 125
    P.O. Box 944255
7   Sacramento, CA 94244-2550
    Telephone:  (916) 324-5372
8   Fax:  (916) 327-2319
    E-mail:  tracy.winsor@doj.ca.gov
9  *Attorneys for third parties*
   *California Department of Forestry and Fire*
10 *Protection (CAL FIRE) and California Attorney*
   *General's Office*

11

12                 IN THE UNITED STATES DISTRICT COURT

13              FOR THE EASTERN DISTRICT OF CALIFORNIA

14

15

16

17 | | |
   |---|---|
   | **UNITED STATES OF AMERICA,** | Case No. 2:09-CV-02445-KJM-EFB |
   | Plaintiff, | **DECLARATION OF JOSHUA WHITE IN SUPPORT OF CALIFORNIA ATTORNEY GENERAL AND CAL FIRE'S MOTION TO QUASH SUBPOENA AND FOR PROTECTIVE ORDER** |
   | v. | |
   | **SIERRA PACIFIC INDUSTRIES, et al.,** | |
   | Defendant, | |
   | **AND RELATED CROSS-ACTIONS.** | Date:        August 31, 2011<br>Time:        10 a.m.<br>Courtroom: 24<br>Judge:      Honorable Magistrate   J.<br>                 Edmund F. Brennan |

26      I, JOSHUA WHITE, declare as follows:

27          1.      I am an employee of the California Department of Forestry and Fire Protection,

28 and I am a Deputy Chief.

                                            1

2.     I have personal knowledge of the facts set forth in this declaration, and if called as a witness I would and could testify competently to those facts.

3.     In 2007 I was employed by CAL FIRE as a Battalion Chief assigned to the prevention bureau in the Lassen Modoc Unit.  One of my responsibilities was investigating the origin and cause of wild land fires.  On September 3, 2007, I responded to and participated in the investigation of the Moonlight Fire.

4.     From September 3, 2007, to approximately September 17, 2007, together with the other investigators, I investigated the origin and cause of the fire, including but not limited to, collecting data and witness interviews.  During this time, the report writing process began, and I and my co-investigators documented various aspects of the investigation.  To the best of my recollection, around October 2007, the narrative portion of the report was more or less finished.  I continued to collect and add attachments to the case report after that.  To the best of my recollection, I submitted the report to CAL FIRE'S Northern Region Fire Prevention Office in January 2008.  At the time that I submitted my report to the region office in January 2008, I considered my origin and cause opinions and conclusions regarding the Moonlight Fire to be final.

5.     From September 3, 2007, to January 2008, while I was analyzing the origin and cause of the Moonlight Fire, and assembling the attachments to the report, as described above, I did so as part of my normal duties without the input of any attorney.

6.     Except for a possible correction of a typographical error in a name in the report, I did not make any changes to the origin and cause investigation report after January 2008.  My final origin and cause opinions and conclusions are contained in the written report I submitted to region in January 2008, and those opinions and conclusions have not changed since that time.  After submitting the report to region, I was not asked to make any changes to the report.  I was not asked to edit the report in any way, or to consider making any changes to the report.  While I am aware that the report was released later, in June 2009, the decision of whether and when to release the report was not up to me, and I was not involved in that decision.

7.     In addition to serving as an investigating officer for CAL FIRE regarding the Moonlight Fire, I also served as the case manager for the Moonlight Fire.  To the best of my

2

1  recollection, I became the case manager after I submitted the origin and cause investigation report

2  to the region office in January 2008.  The activities associated with being a case manager were

3  different and separate from my role as the case investigator.  As a case manager, I acted as the

4  department liaison with the California Attorney General's Office regarding the Moonlight Fire

5  incident.  I ensured that documentation related to the costs of suppressing the fire were completed

6  and submitted to the Office of the Attorney General in a timely manner.  I worked with other

7  individuals related to scheduling various items.  I drafted the letter of demand for the incident.  I

8  assisted the Office of the Attorney General in reviewing pleadings and preparing and responding

9  to written discovery.  I assisted the assigned Deputy Attorney General in preparing for and taking

10  depositions.

11     8.     As the Moonlight Fire case manager, I generated, received, and transmitted

12  documents that were not considered by me in my capacity as the origin and cause investigator for

13  the Moonlight Fire.  I interacted with Deputy Attorneys General for the purpose of assisting them

14  as requested with discovery and other items on an as-needed basis.  At the time that I was

15  interacting with these Deputies, my origin and cause opinions and conclusions were final.  As the

16  Moonlight Fire case manager, I did not draft, prepare, see, read, reviewed, reflect upon, consider,

17  or otherwise use any documents that were generated, received or transmitted by me in my

18  analysis of the origin and cause of the Moonlight Fire.

19     9.     More broadly speaking, because my origin and cause opinions and conclusions

20  were formed and final at the time I came into contact with the Office of the California Attorney

21  General, in my interactions with these Deputies, except for any documents which I have already

22  testified about in my federal and state depositions, I did not draft, prepare, see, read, review,

23  reflect upon, consider, or otherwise use any documents that were generated, received, or

24  transmitted by me to these Deputies, or from these Deputies, in my analysis of the origin and

25  cause of the Moonlight Fire.

26     10.     The communications on the Attorney General's privilege log with Florrie Gallo,

27  Kim Duffy, Michelle Lawrence, and Rodger Thompson regarding the Moonlight Fire, were made

28  in my capacity as a case manager.  These communications, and any attachments to them, were not

3

1   used, reviewed, read, generated, considered, or considered and rejected by me regarding my

2   origin and cause analysis of the Moonlight Fire.

3        11.     The communications on the Attorney General's privilege log with Jackalyn Dunkle

4   were made in my capacity as case manager and her supervisor as a Battalion Chief in the cost

5   recovery program in Sacramento. These communications, and any attachments to them, were not

6   used, reviewed, read, generated, considered, or considered and rejected by me regarding my

7   origin and cause analysis of the Moonlight Fire.

8        12.     The communications on the Attorney General's privilege log with Steven Yoshida

9   of the California Attorney General's Office, and Ruthann Andersen of the California Attorney

10  General's Office, regarding the Moonlight Fire were made in my capacity as case manager. These

11  communications, and any attachments to them, were not used, reviewed, read, generated,

12  considered, or considered and rejected by me regarding my origin and cause analysis of the

13  Moonlight Fire.

14       13.     The communications on the Attorney General's privilege log with Jay Neuman and

15  Chris Van Cor were made in my capacity as a case manager.  These communications, and any

16  attachments to them, were not used, reviewed, read, generated, considered, or considered and

17  rejected by me regarding my origin and cause analysis of the Moonlight Fire.

18       14.     The communications on the Attorney General's privilege log with Clare Frank and

19  Kim Spire, Robin Harrington, George Gonzalez, and Alan Carlson were received or sent by me in

20  my capacity as a case manager.  These communications, and any attachments to them, were not

21  used, reviewed, read, generated, considered, or considered and rejected by me regarding my

22  origin and cause analysis of the Moonlight Fire.

23       15.     The communications on the Attorney General's privilege log with Brad Lutts,

24  Mike Jarvis, and Janet Upton were regarding press inquiries.  These communications, and any

25  attachments to them, were not used, reviewed, read, generated, considered, or considered and

26  rejected by me regarding my origin and cause analysis of the Moonlight Fire.

27  / / /

28  / / /

4

1    16.    The communications on the Attorney General's privilege log with Bob Wright,

2  Joshua Iverson, Catherine Swann, Craig Endicott, Marion Matthews, Randy Gould, Diane Welton,

3  Bonnie Harrelson, and Rachel Birkey were made in my capacity as case manager.  These

4  communications, and any attachments to them, were not used, reviewed, read, generated,

5  considered, or considered and rejected by me regarding my origin and cause analysis of the

6  Moonlight Fire.

7    17.    Attached to this declaration is a true and correct copy of excerpts of deposition

8  testimony given by me in the matter of California Department of Forestry v. Howell, Plumas

9  County Superior Court Case No. CV09-00205 on May 17 and May 18, 2011.

10    I declare under the penalty of perjury under the laws of the State of California that the

11  foregoing is true and correct.  Executed on June/4, 2011, _____, at Sacramento,

12  California.

13

14    JOSHUA WHITE, Deputy Chief, CAL FIRE

15

16  SA2009309552
    31279580.doc

17

18

19

20

21

22

23

24

25

26

27

28

5

DECLARATION OF JOSHUA WHITE ISO MOTION TO QUASH AND FOR PROTECTIVE ORDER 2:09-CV-
02445-KJM-EFB

SUPERIOR COURT OF CALIFORNIA

COUNTY OF PLUMAS

--oOo--

CALIFORNIA DEPARTMENT OF

FORESTRY AND FIRE

PROTECTION,

      Plaintiff,

vs.                  No. CV09-00205

EUNICE HOWELL, d.b.a.

HOWELL'S FOREST HARVESTING

COMPANY, et al.,

      Defendants.

_____

AND RELATED CROSS-ACTIONS.

_____  /

**CERTIFIED TRANSCRIPT**

VIDEOTAPED DEPOSITION OF

JOSHUA WHITE

Volume 12 (Pages 3062 - 3357)

Tuesday, May 17, 2011

NOTICING ATTORNEY:  William R. Warne, Esq.

REPORTED BY:   LEIGH ANN OROZCO, CSR NO. 7607



**Marcus Deposition Reporting**
**www.marcusdepo.com**
**800-682-2323**

AGO.000226

CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION vs. EUNICE HOWELL
Joshua White, 05/17/2011

# SUPERIOR COURT OF CALIFORNIA

## COUNTY OF PLUMAS

--oOo--

CALIFORNIA DEPARTMENT OF

FORESTRY AND FIRE

PROTECTION,

     Plaintiff,

vs.                                    No. CV09-00205

EUNICE HOWELL, d.b.a.

HOWELL'S FOREST HARVESTING

COMPANY, et al.,

     Defendants.

_____

AND RELATED CROSS-ACTIONS.

_____ /

**CERTIFIED TRANSCRIPT**

### VIDEOTAPED DEPOSITION OF

### JOSHUA WHITE

Volume 12 (Pages 3062 - 3357)

Tuesday, May 17, 2011

NOTICING ATTORNEY:  William R. Warne, Esq.

REPORTED BY:  LEIGH ANN OROZCO, CSR NO. 7607

AGO 000227

CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION vs. EUNICE HOWELL
Joshua White, 05/17/2011

```
 1    APPEARANCES

 2    For the Plaintiff CALIFORNIA DEPARTMENT OF
      FORESTRY:
 3
             CALIFORNIA DEPARTMENT OF JUSTICE
 4           By:  Tracy L. Winsor, Deputy Attorney General
                  tracy.winsor@doj.ca.gov
 5           1300 I Street
             Sacramento, California 94244-2550
 6           (916) 324-5372

 7
      For the Plaintiff CALIFORNIA-ENGELS MINING COMPANY:
 8
             FARBER & FOOTE, LLP
 9           By:  Alexandra L. Foote, Esq.
                  footefarber@gmail.com
10           436 14th Street, Suite 1520
             Oakland, California 94611
11           (415) 271-0997

12
      For the Plaintiff RICHARD GUY, ET AL.:
13
             ANDERLINI & EMERICK, LLP
14           By:  Steven Goldstein, Esq. (Not Present)
             411 Borel Avenue, Suite 501
15           San Mateo, California 94402
             (650) 212-0001
16

17    For the Plaintiffs BRANDT, ET AL.:

18           HUBERT & YASUTAKE
             By:  Garry J. D. Hubert, Esq. (Not Present)
19                Ghubert@hy-litigators.com
             1320 Willow Pass Road, Suite 590
20           Concord, California 94520
             (925) 680-4266
21

22

23

24

25
```

AGO 000228

CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION vs. EUNICE HOWELL
Joshua White, 05/17/2011

```
 1    APPEARANCES (Continued)

 2
      For the Defendant/Cross-Defendant SIERRA PACIFIC
 3    INDUSTRIES:

 4            DOWNEY BRAND, LLP
              By:   William R. Warne, Esq.
 5                  bwarne@downeybrand.com
                    Michael J. Thomas, Esq.
 6                  mthomas@downeybrand.com
                    Annie S. Amaral, Esq.
 7                  aamaral@downeybrand.com
              621 Capitol Mall, 18th Floor
 8            Sacramento, California 95814
              (916) 444-1000
 9

10            DUN & MARTINEK, LLP
              By:   David H. Dun, Esq. (Not Present)
11            2313 I Street
              P.O. Box 1266
12            Eureka, California 95501-4244
              (707) 442-3741
13

14    For the Defendants W.M. BEATY & ASSOCIATES and
      Landowner Defendants BROOKS WALKER, ET AL.:
15
              MATHENY SEARS LINKERT & JAIME, LLP
16            By:   Richard S. Linkert, Esq.
                    rlinkert@mathenysears.com
17            3638 American River Drive
              Sacramento, California 95864
18            (916) 978-3434

19
      For the Defendants EUNICE HOWELL, HOWELL'S FOREST
20    HARVESTING COMPANY, J.W. BUSH, KELLY CRISMON:

21            RUSHFORD & BONOTTO, LLP
              By:   Derek Van Deviver, Esq.
22                  dvandeviver@rushfordbonotto.com
              2277 Fair Oaks Boulevard, Suite 495
23            Sacramento, California 95825
              (916) 565-0590
24

25
```

AGO 000229

CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION vs. EUNICE HOWELL
Joshua White, 05/17/2011

```
1   APPEARANCES (Continued)

2   For the Cross-Defendant CATERPILLAR, INC.:

3         SEDGWICK LLP
          By:  Frederic F. Grannis, Esq.
4              Frederic.Grannis@sedgwicklaw.com
          801 South Figueroa Street, 19th Floor
5         Los Angeles, California 90017-5556
          (213) 426-6900
6

7   Also Present:

8         Sean McAleer, Videographer
          SACRAMENTO LEGAL VIDEO CENTER, INC.
9         3028 U Street
          Sacramento, California  95817
10        (916) 451-7600

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

AGO 000230

CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION vs. EUNICE HOWELL
Joshua White, 05/17/2011

```
 1                INDEX OF EXAMINATION

 2                                          PAGE

 3  RESUMED EXAMINATION BY MR. GRANNIS        3069

 4  EXAMINATION BY MS. WINSOR                 3164

 5  QUESTIONS MARKED                   NONE MARKED

 6  WITNESS' CHANGES OR CORRECTIONS           3355

 7  REPORTER'S CERTIFICATE                    3356

 8  WITNESS' LETTER                           3357

 9
                      --oOo--
10
                 INDEX OF EXHIBITS
11

12  Defendants'
    Exhibit     Description           Page
13  Ex 485      Photo BA; 1 page      3077

14  Ex 486      Photo BG, Bates
                CDFMO00328; 1 page    3080
15
    Ex 487      Photo BE, Bates
16              CDFMO00326; 1 page    3083

17  Ex 488      Photo; 1 page         3099

18  Ex 489      Photo BI, Bates
                CDFMO00330; 1 page    3107
19
    Ex 490      Photo; 1 page         3137
20

21

22

23                    --oOo--

24

25
```

AGO 000231

| | |
|---|---|
| 1 | BE IT REMEMBERED that on Tuesday, May 17, |
| 2 | 2011, at the hour of 8:19 a.m. of said day, at the |
| 3 | Law Offices of DOWNEY BRAND LLP, 621 Capitol Mall, |
| 4 | 18th Floor, Sacramento, California, before me, |
| 5 | LEIGH ANN OROZCO, Certified Shorthand Reporter |
| 6 | No. 7607, personally appeared JOSHUA WHITE, called as |
| 7 | a witness herein, who, having been duly sworn, was |
| 8 | thereupon examined and testified as follows: |
| 9 | --o0o-- |
| 10 | THE VIDEOGRAPHER:  My name is Sean McAleer.  08:18:53 |
| 11 | I will be videotaping this proceeding on behalf of |
| 12 | Sacramento Legal Video Center, Incorporated at |
| 13 | 3028 U Street in Sacramento, California. |
| 14 | The date is May 17th, 2011.  The time on the |
| 15 | video monitor is 8:19 a.m.  08:19:12 |
| 16 | Our location is 621 Capitol Mall, 18th |
| 17 | floor, in Sacramento, California. |
| 18 | We are here in matter of CDF versus Howell, |
| 19 | et al. |
| 20 | This is Volume Number 12 in the continued  08:19:31 |
| 21 | deposition of Josh White. |
| 22 | The noticing attorney is Bill Warne. |
| 23 | The court reporter is Leigh Ann Orozco of |
| 24 | Marcus Deposition Reporting. |
| 25 | This is a single-track recording.  08:19:45 |

AGO 000232

| | |
|---|---|
| 1 | Overlapping voices cannot be separated.  Private |
| 2 | discussions on the record will also be recorded. |
| 3 | Would counsel please identify yourselves, |
| 4 | your firms and those you represent. |
| 5 | MR. GRANNIS:  Fred Grannis, Sedgwick, for | 08:19:58 |
| 6 | cross-defendant Caterpillar, Inc. |
| 7 | MR. LINKERT:  Rick Linkert, Matheny Sears |
| 8 | Linkert & Jaime, representing W.M. Beaty and the |
| 9 | Walker family landowners. |
| 10 | MR. WARNE:  Bill Warne, Downey Brand, | 08:20:08 |
| 11 | representing SPI. |
| 12 | MR. VAN DEVIVER:  Derek Van Deviver of |
| 13 | Rushford & Bonotto, representing Howell defendants. |
| 14 | MS. FOOTE:  Alexandra Foote, Farber & Foote, |
| 15 | representing California-Engels Mining Company. | 08:20:18 |
| 16 | MS. WINSOR:  Deputy Attorney General Tracy |
| 17 | Winsor on behalf of plaintiff California Department |
| 18 | of Forestry and Fire Protection. |
| 19 | THE REPORTER:  Chief White, would you raise |
| 20 | your right hand, please? |
| 21 | Do you solemnly state that the testimony |
| 22 | you're about to give will be the truth, the whole |
| 23 | truth and nothing but the truth? |
| 24 | A.      I swear. |
| 25 | /// |

AGO 000233

| | | |
|---|---|---|
| 1 | Yesterday it was proposed to me that the | |
| 2 | transcripts of testimony from the investigators | |
| 3 | Welton and Reynolds as well as federal Forest Service | |
| 4 | employee Marion Matthews in addition to the | |
| 5 | transcripts of Chief White be used in -- I'm not sure | 10:44:11 |
| 6 | which cases, but I can only speak to my case.  And I | |
| 7 | have just proposed off the record that we continue to | |
| 8 | meet and confer about using those transcripts if the | |
| 9 | time that I've been allotted goes away.  And it's my | |
| 10 | understanding that offer has been refused as well. | 10:44:29 |
| 11 | So I'm going to proceed. | |
| 12 | MR. WARNE:  Just for the record, what I said | |
| 13 | is you just made a new offer.  I'm going to talk to | |
| 14 | co-counsel about it.  We'll use the lunch break to | |
| 15 | think about it.  I haven't said no.  I want to think | 10:44:42 |
| 16 | about it.  I might say no but I certainly want to | |
| 17 | talk to other people that might be affected by it and | |
| 18 | you made the offer two minutes ago. | |
| 19 | EXAMINATION BY MS. WINSOR | |
| 20 | Q.     Chief White, can you -- you have testified | 10:44:52 |
| 21 | about acting as a litigation case manager for the | |
| 22 | Office of the Attorney General.  Do you recall that | |
| 23 | discussion with defense counsel? | |
| 24 | A.     Yes.  I don't know if I would define it as a | |
| 25 | litigation case manager for the Office of the | 10:45:06 |

AGO 000234

| | | |
|---|---|---|
| 1 | Attorney General.  The case manager for Cal Fire | |
| 2 | working with the Attorney General's office. | |
| 3 | Q.        Thank you.   That's a perspective thing. | |
| 4 | So, your understanding was you were the case | |
| 5 | manager for Cal Fire; is that correct? | 10:45:18 |
| 6 | A.        That's correct. | |
| 7 | Q.        Okay.  And can you tell me what your | |
| 8 | understanding was of your role when you were case | |
| 9 | manager? | |
| 10 | A.        Well, the case manager primarily works as | 10:45:28 |
| 11 | the liaison with the Attorney General's office to | |
| 12 | assist with any of the discovery, interrogatories and | |
| 13 | provide that conduit into the Cal Fire department to | |
| 14 | get the information the Attorney General's office | |
| 15 | needs. | 10:45:50 |
| 16 | Q.        Okay.  And in your mind, was your role as | |
| 17 | case manager the same as your role as investigator on | |
| 18 | the fire? | |
| 19 | A.        Not at all. | |
| 20 | Q.        Okay.  And what was your understanding of | 10:45:58 |
| 21 | your function as the investigator for the fire? | |
| 22 | A.        Well, as an investigator for the fire, it's | |
| 23 | completely separate.  It's conduct the origin and | |
| 24 | cause investigation of the fire and then, as a case | |
| 25 | manager, essentially manage the case as necessary. | 10:46:14 |

AGO 000235

CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION vs. EUNICE HOWELL
Joshua White, 05/17/2011

| | | |
|---|---|---|
| 1 | Q. Do you know a person named Florie Gallo? | |
| 2 | A. Yes, I do. | |
| 3 | Q. Did you have reason to communicate with her | |
| 4 | in your capacity as case manager? | |
| 5 | A. Yes. | 10:46:28 |
| 6 | Q. Did you ever communicate with her about your | |
| 7 | origin and cause conclusions for any reason? | |
| 8 | A. No. | |
| 9 | Q. Did you ever consider anything that she ever | |
| 10 | sent to you or provided you with in any context as it | 10:46:37 |
| 11 | related to your origin and cause conclusions? | |
| 12 | A. No. | |
| 13 | Q. And why is that? | |
| 14 | A. Florie Gallo deals with the -- developing | |
| 15 | the cost packages and the ARC packages for the cost | 10:46:52 |
| 16 | of a fire. That is totally a separate issue from the | |
| 17 | origin and cause. | |
| 18 | Q. And same thing for anyone on her staff? | |
| 19 | A. That's correct. | |
| 20 | Q. I would like to get a better timeline in one | 10:47:06 |
| 21 | place about the -- some of the issues that have been | |
| 22 | gone over. Can you tell me -- just backing up. You | |
| 23 | investigated the fire in September. Can you tell me | |
| 24 | to the best of your recall when you formed the | |
| 25 | opinions to which you have testified in these many | 10:47:35 |

AGO 000236

CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION vs. EUNICE HOWELL
Joshua White, 05/17/2011

| | |
|---|---|
| 1 | days? |
| 2 | A.      Well, the opinions would have been formed |
| 3 | with the data that we had collected after -- I would |
| 4 | estimate after all of the interviews had been |
| 5 | conducted and the scene had been released. |
| 6 | Q.      Okay.  And then you wrote a report, correct? |
| 7 | A.      Correct. |
| 8 | Q.      And did you attempt to include all of your |
| 9 | existing opinions in that report? |
| 10 | A.      That's correct. |
| 11 | Q.      And you have testified at length about those |
| 12 | opinions, correct? |
| 13 | A.      Correct. |
| 14 | Q.      And are -- is it your sense that you formed |
| 15 | those opinions in 2007? |
| 16 | A.      Yes. |
| 17 |         MR. WARNE:  Objection.  Leading.  Lacks |
| 18 | foundation. |
| 19 | Q.      BY MS. WINSOR:  Let me ask it a different |
| 20 | way in light of the objection. |
| 21 |         When -- I believe you have just testified |
| 22 | that you did some work and you formed those opinions |
| 23 | in 2007.  Have I got that wrong? |
| 24 | A.      No, that's correct. |
| 25 | Q.      And from your perspective as the author or |

Time stamps:
10:47:53
10:48:10
10:48:21
10:48:28
10:48:42

AGO 000237

CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION vs. EUNICE HOWELL
Joshua White, 05/17/2011

| | | |
|---|---|---|
| 1 | co-author of the report in this case, when -- just | |
| 2 | from your side of it, when was it final as far as you | |
| 3 | were concerned?  When did you do your last work on | |
| 4 | that report? | |
| 5 | A.        I believe it would have been sometime in | 10:48:58 |
| 6 | January of 2008.  I think that there was some | |
| 7 | additional documents that needed -- that were added | |
| 8 | at the very end of the attachments section and I | |
| 9 | believe that Mr. Bauer's -- Ryan Bauer's name had | |
| 10 | been misspelled and I believe there was a correction | 10:49:14 |
| 11 | that was made to that. | |
| 12 | Q.        After that time, did anyone within Cal Fire | |
| 13 | ask you to edit your report? | |
| 14 | A.        No. | |
| 15 | Q.        I'll be broader than that.  After that time, | 10:49:23 |
| 16 | did anyone ever, without limitation, ask you to edit | |
| 17 | your report other than those minor issues that you | |
| 18 | have talked about and did you edit your report in any | |
| 19 | way at someone else's request? | |
| 20 | A.        No. | 10:49:39 |
| 21 | Q.        Did you -- were you asked to consider | |
| 22 | editing your report in any way at someone else's | |
| 23 | request? | |
| 24 | A.        No. | |
| 25 | Q.        Were you asked to make any changes to the | 10:49:44 |

AGO 000238

| | |
|---|---|
| 1 | report at someone else's request? |
| 2 | A.      No. |
| 3 | Q.      Were you asked to revisit and alter your |
| 4 | opinions in any way? |
| 5 | MR. WARNE:  Vague.  At any time? |
| 6 | Q.      BY MS. WINSOR:  Yeah, at any time.  At any |
| 7 | time.  Let me just -- without limitation. |
| 8 | A.      After -- |
| 9 | Q.      At any time, without limitation, has anyone |
| 10 | ever asked you to substantively change the opinions |
| 11 | that you formed about this fire? |
| 12 | A.      And printed in 2008?  I mean from the report |
| 13 | that it was submitted in 2008? |
| 14 | Q.      Okay.  We'll start with that. |
| 15 | A.      No. |
| 16 | Q.      Okay.  And then setting the report aside, |
| 17 | let me ask that question.  Just setting aside the |
| 18 | written.  At any point in time has anyone asked you |
| 19 | to revisit and reconsider and change the opinions |
| 20 | that you formed about this fire in any way? |
| 21 | MR. WARNE:  Objection.  Vague. |
| 22 | THE WITNESS:  I believe that we discussed |
| 23 | how Marion Matthews discussed broadening the general |
| 24 | origin area.  As far as changing that opinion, I |
| 25 | believe that discussion has been discussed. |

Time stamps:
- 10:49:55 (line 5)
- 10:50:06 (line 10)
- 10:50:19 (line 15)
- 10:50:38 (line 20)
- 10:50:58 (line 25)

AGO 000239

| | | |
|---|---|---|
| 1 | There was an e-mail when I sent the draft | |
| 2 | report to Chief Carlson to give him an update on the | |
| 3 | status of the investigation.  I believe that he | |
| 4 | provided me some additional documentation related to | |
| 5 | this type of cause of fire.  I don't believe that | 10:51:20 |
| 6 | that exchange ever attempted to get me to change my | |
| 7 | opinion or view in any way, no. | |
| 8 | Q.        BY MS. WINSOR:  Okay.  And you have | |
| 9 | discussed those two occurrences in your testimony | |
| 10 | already, correct? | 10:51:35 |
| 11 | A.        Correct. | |
| 12 | Q.        And setting aside those two occurrences, can | |
| 13 | you think of any other situation where verbally in | |
| 14 | writing in any manner anyone without limitation has | |
| 15 | asked you in any way to change your opinions about | 10:51:48 |
| 16 | this fire? | |
| 17 | MR. WARNE:  Including Dave Reynolds? | |
| 18 | Including Ms. Welton? | |
| 19 | MS. WINSOR:  Yes.  Well, if -- | |
| 20 | Q.        Just let's forget about things that are | 10:51:59 |
| 21 | already on the record at length.  Setting aside what | |
| 22 | you have already testified to, the record says what | |
| 23 | it says; okay? | |
| 24 | So setting aside, is there any instance that | |
| 25 | you haven't discussed in your testimony where any | 10:52:13 |

AGO 000240

CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION vs. EUNICE HOWELL
Joshua White, 05/17/2011

| | |
|---|---|
| 1 | individual asked you to change, alter, modify, |
| 2 | reconsider your opinions about this fire in any way |
| 3 | that you can think of? |
| 4 | MR. WARNE: Vague. Lacks foundation. |
| 5 | THE WITNESS: No, I cannot -- |
| 6 | MR. WARNE: Calls for a narrative. |
| 7 | THE WITNESS: I cannot think of any, no. |
| 8 | Q. BY MS. WINSOR: Okay. After you submitted |
| 9 | your report to region in or about the beginning of |
| 10 | 2008, were you at all involved in the decisions to |
| 11 | release that report? |
| 12 | A. No, I don't believe so. |
| 13 | Q. Did anyone within Cal Fire ask you whether |
| 14 | or not they should release your report? |
| 15 | A. I don't believe they would have asked me. I |
| 16 | believe that they would have talked to Chief Carlson |
| 17 | about that. |
| 18 | Q. Do you know whose decision it was to |
| 19 | ultimately release the report? |
| 20 | A. I think ultimately it was the Attorney |
| 21 | General's office. |
| 22 | Q. And were you involved in that decision? |
| 23 | A. Not in the decision, no. |
| 24 | Q. At any point in time in between January |
| 25 | of 2008 and the time that the report was released, |

Timestamps:
- 10:52:32 (line 5)
- 10:52:44 (line 10)
- 10:53:15 (line 15)
- 10:53:25 (line 20)
- 10:53:39 (line 25)

AGO 000241

| | | |
|---|---|---|
| 1 | can you think of any document, conversation, thing, | |
| 2 | matter that you drafted that you considered -- it's | |
| 3 | overbroad.  Let me start over. | |
| 4 | At any point in time between January 2008 | |
| 5 | and when the report was released -- and actually I | 10:54:10 |
| 6 | want to back it up. | |
| 7 | At any point in time -- I will put it at | |
| 8 | January.  At any point in time between January | |
| 9 | of 2008 and when your report was released, other than | |
| 10 | things that you have already testified to, was there | 10:54:43 |
| 11 | any -- can you identify any document, conversation, | |
| 12 | thing or anything that you considered that in any way | |
| 13 | modified your 2007 opinions regarding the fire? | |
| 14 | A.    Excuse me.  No. | |
| 15 | Q.    And other than what you have already | 10:55:27 |
| 16 | discussed in your testimony, which included the | |
| 17 | preparation of a fire scene diagram, did you prepare | |
| 18 | any documents that in any way modified, altered, | |
| 19 | affected in any way your preexisting opinions | |
| 20 | regarding the fire? | 10:55:50 |
| 21 | A.    No. | |
| 22 | Q.    Did you see anything that was shown to you | |
| 23 | by anyone that in any way modified or altered or | |
| 24 | changed in any way your preexisting opinions | |
| 25 | regarding the fire? | 10:56:10 |

AGO 000242

CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION vs. EUNICE HOWELL
Joshua White, 05/17/2011

| 1 | MR. WARNE:  Objection.  Vague.  Including |          |
|---|-------------------------------------------|----------|
| 2 | the new diagram? | |
| 3 | Q.      BY MS. WINSOR:  Well, I'm trying to get | |
| 4 | through this as quickly as possible.  So I want to be | |
| 5 | very clear that when I'm asking these questions that | 10:56:20 |
| 6 | there are things that you have already testified | |
| 7 | about that everybody has had a long time to ask you | |
| 8 | questions about.  So I'm setting that aside.  You | |
| 9 | have been shown a lot of things in deposition, right? | |
| 10 | A.      Correct. | 10:56:32 |
| 11 | Q.      Okay.  So setting aside anything that you | |
| 12 | have seen and testified to already in deposition, is | |
| 13 | there any other thing, document, photograph, map, | |
| 14 | diagram, anything that you can think of that you have | |
| 15 | seen that changed, altered or modified your | 10:56:49 |
| 16 | preexisting opinions? | |
| 17 | MR. WARNE:  Objection.  Overbroad.  Vague. | |
| 18 | Are we including the scene diagram that was created | |
| 19 | in February of 2011? | |
| 20 | MS. WINSOR:  I think, yes, I have included | 10:57:01 |
| 21 | that.  Now it's vague.  He has already testified | |
| 22 | about that and I am assuming you are going to ask him | |
| 23 | some questions about that.  You can ask him whatever | |
| 24 | you want about that; okay? | |
| 25 | Q.      Other than what's been testified to in | 10:57:14 |

AGO 000243

| | | |
|---|---|---|
| 1 | deposition these many days, is there anything else | |
| 2 | that you haven't discussed that you saw that | |
| 3 | modified, altered, caused you to reconsider, that you | |
| 4 | saw and rejected in any way in -- regarding your | |
| 5 | analysis of the Moonlight fire? | 10:57:37 |
| 6 | MR. WARNE: Objection. Vague. | |
| 7 | MR. GRANNIS: Compound. | |
| 8 | THE WITNESS: Not that I can think of, no. | |
| 9 | Q. BY MS. WINSOR: Okay. Same question. | |
| 10 | Anything that you read that -- for all these | 10:57:48 |
| 11 | questions I'm not talking about you have already | |
| 12 | testified in deposition. Is there anything that you | |
| 13 | have not discussed in your deposition that you read | |
| 14 | since you formed your opinions that has not been | |
| 15 | discussed in deposition that you considered, that you | 10:58:10 |
| 16 | relied upon, that you considered and rejected, that | |
| 17 | modified, that altered, that caused you to question | |
| 18 | in any way your preexisting opinions that you can | |
| 19 | think of? | |
| 20 | MR. GRANNIS: Objection. Vague. Compound. | 10:58:32 |
| 21 | THE WITNESS: No. | |
| 22 | Q. BY MS. WINSOR: Same thing regarding any | |
| 23 | matter that you reviewed. And I'm not going to | |
| 24 | repeat the list. | |
| 25 | MR. GRANNIS: Same objections. | 10:58:43 |

AGO 000244

CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION vs. EUNICE HOWELL
Joshua White, 05/17/2011

| | |
|---|---|
| 1 | Q.      BY MS. WINSOR:  I'm not sure, there is not a |
| 2 | big distinction between read and reviewed.  So forget |
| 3 | that.  I withdraw the question. |
| 4 | Okay.  Who is Mike Jarvis? |
| 5 | A.      Mike Jarvis was the communications director | 10:59:09 |
| 6 | for Cal Fire. |
| 7 | Q.      And who is Janet Upton? |
| 8 | A.      Janet Upton I believe worked for Mike |
| 9 | Jarvis.  Currently she has taken the role that Mike |
| 10 | Jarvis vacated since 2007. | 10:59:27 |
| 11 | Q.      And can you think of any reason that you |
| 12 | would have had to communicate with those individuals |
| 13 | regarding the Moonlight fire? |
| 14 | A.      I believe that they were both brought in -- |
| 15 | or at least I remember specifically Mike Jarvis in | 10:59:40 |
| 16 | relation to dealing with some media matters. |
| 17 | Q.      And can you think of any document that you |
| 18 | prepared and sent to those people or that was |
| 19 | prepared and sent by those people to you that you -- |
| 20 | that you read, reviewed, reflected upon, considered, | 11:00:04 |
| 21 | rejected or used in connection with your analysis of |
| 22 | the Moonlight fire? |
| 23 | A.      No. |
| 24 | Q.      Would you have had a reason to consider in |
| 25 | your analysis of the origin and cause of the | 11:00:22 |

AGO 000245

| | | | |
|---|---|---|---|
| 1 | Moonlight fire something that was being told to you | |
| 2 | by Janet Upton or Mike Jarvis? | |
| 3 | A. | No. | |
| 4 | Q. | They are not fire investigators? | |
| 5 | A. | No, they are not. | 11:00:37 |
| 6 | Q. | Nor is Florie Gallo? | |
| 7 | A. | No. | |
| 8 | Q. | Nor is any of her staff? | |
| 9 | A. | No. | |
| 10 | Q. | Those people are not relevant to your origin | 11:00:42 |
| 11 | and cause analysis as far as you are concerned? | |
| 12 | A. | That's correct. | |
| 13 | Q. | Who is Jacalyn Dunkle? | |
| 14 | A. | Jacalyn Dunkle is an employee of Cal Fire | |
| 15 | that works in Sacramento. | 11:01:05 |
| 16 | Q. | What reason, if any, would you have had a | |
| 17 | reason to communicate with her in your career? | |
| 18 | A. | In my career or as it's related to the | |
| 19 | Moonlight fire? | |
| 20 | Q. | In your career. | 11:01:15 |
| 21 | A. | Jacalyn worked for me when I was the | |
| 22 | battalion chief in the civil cost recovery, when I | |
| 23 | was a battalion chief. | |
| 24 | Q. | Did you consider anything that Jacalyn | |
| 25 | Dunkle said, wrote, provided to you in your analysis | 11:01:30 |

| | |
|---|---|
| 1 | of the Moonlight fire? |
| 2 | A.    No. |
| 3 | Q.    In the reverse, did you ever write anything |
| 4 | and send it to Jacalyn Dunkle that you prepared that |
| 5 | was relevant somehow to your analysis of the |
| 6 | Moonlight fire? |
| 7 | A.    No. |
| 8 | Q.    Would you have had a reason to communicate |
| 9 | with her regarding your origin and cause opinions in |
| 10 | the Moonlight fire? |
| 11 | A.    No, I don't believe so. |
| 12 | Q.    Who is Jay Neuman? |
| 13 | A.    Jay Neuman is a fire captain in the |
| 14 | Lassen-Modoc Unit that at some point started working |
| 15 | in the prevention bureau.  I don't believe he worked |
| 16 | in the prevention bureau in 2007. |
| 17 | Q.    Did you communicate for any reason with Jay |
| 18 | Neuman regarding your analysis of the Moonlight fire? |
| 19 | A.    No, I don't believe so. |
| 20 | Q.    Did you ever send him any e-mails about your |
| 21 | origin and cause analysis of the Moonlight fire? |
| 22 | A.    No, I don't believe so.  I don't remember. |
| 23 | Q.    Did he send you any that you can think of? |
| 24 | A.    Not that I can remember. |
| 25 | Q.    Let me limit it to 2009.  In 2009 would you |

Time stamps:
11:01:40 (line 5)
11:01:54 (line 10)
11:02:27 (line 15)
11:02:44 (line 20)
11:02:58 (line 25)

AGO 000247

CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION vs. EUNICE HOWELL
Joshua White, 05/17/2011

| | |
|---|---|
| 1 | have had a reason to communicate with Jay Neuman | |
| 2 | regarding your investigatory analysis of the | |
| 3 | Moonlight fire? | |
| 4 | A.     No, I don't believe so. | |
| 5 | Q.     Can you think -- as you sit here, can you | 11:03:12 |
| 6 | think of any document that you would have considered | |
| 7 | or considered and rejected in any way that was | |
| 8 | created by Jay Neuman -- that is a bad question.  I | |
| 9 | withdraw it. | |
| 10 |      As you sit here, can you recall any | 11:03:34 |
| 11 | communication, whether it was verbal or written, with | |
| 12 | Jay Neuman that in any way impacted your origin and | |
| 13 | cause investigatory analysis of the Moonlight fire? | |
| 14 | A.     No. | |
| 15 | Q.     Same question regarding Kim Spire.  Who is | 11:04:08 |
| 16 | Kim Spire, if you know? | |
| 17 | A.     I'm not sure of her title.  She works in the | |
| 18 | Cal Fire legal office. | |
| 19 | Q.     Is she an attorney?  Clerical? | |
| 20 | A.     I'm not sure. | 11:04:27 |
| 21 | Q.     Okay.  To your recollection, have you ever | |
| 22 | communicated with Kim Spire in any way regarding your | |
| 23 | investigatory analysis of the Moonlight fire for any | |
| 24 | reason? | |
| 25 | A.     No, I don't believe so. | 11:04:44 |

AGO 000248

CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION vs. EUNICE HOWELL
Joshua White, 05/17/2011

| | | |
|---|---|---|
| 1 | Q. Have you ever -- and you have already | |
| 2 | identified who Claire Frank is. To your | |
| 3 | recollection, have you ever communicated with Claire | |
| 4 | Frank regarding your origin and cause investigatory | |
| 5 | analysis of the Moonlight fire? | 11:05:00 |
| 6 | A. Not my analysis. I think that we may have | |
| 7 | had discussions of the final determination for | |
| 8 | tracking purposes in the Civil Cost Recovery Program. | |
| 9 | Q. Can you think of any instance where you | |
| 10 | created a document that you sent to Claire Frank that | 11:05:19 |
| 11 | contained anything that was somehow considered, | |
| 12 | reviewed, reflected upon, used, rejected in any way | |
| 13 | regarding your analysis of the origin and cause | |
| 14 | investigation for the Moonlight fire? | |
| 15 | A. No. | 11:05:43 |
| 16 | MR. WARNE: Objection. It's vague. Lacks | |
| 17 | foundation. | |
| 18 | Q. BY MS. WINSOR: Same thing running the other | |
| 19 | way. Have you ever prepared a document that you sent | |
| 20 | to Claire Frank that contained any words, ideas, | 11:05:51 |
| 21 | thoughts that you can think of that had any | |
| 22 | bearing -- let me start over. I have already made a | |
| 23 | mess of it. | |
| 24 | Have you ever sent Claire Frank a | |
| 25 | communication that was something that you drafted in | 11:06:13 |

AGO 000249

| 1 | connection with your origin and cause analysis of the | |
|---|---|---|
| 2 | Moonlight fire? | |
| 3 | MR. WARNE: Objection. Vague. | |
| 4 | THE WITNESS: I don't remember. | |
| 5 | Q. BY MS. WINSOR: Okay. Can you think of -- | 11:06:34 |
| 6 | you can't think of any documents that you may have | |
| 7 | sent her that you prepared in connection with your | |
| 8 | analysis of the Moonlight fire? And by that I mean | |
| 9 | your origin and cause analysis of the Moonlight fire | |
| 10 | that you may have sent to Claire Frank? | 11:06:54 |
| 11 | A. Not that I can recall. But for purposes of | |
| 12 | tracking fires in the civil cost program, there may | |
| 13 | be, you know, a question related to what caused this | |
| 14 | fire, an identification of what the cause was. | |
| 15 | Q. Okay. Other than that -- and what would | 11:07:17 |
| 16 | have been the purpose of that, just to put it in -- | |
| 17 | what would have been the purpose of sending her that | |
| 18 | information? | |
| 19 | A. It just would have been a tracking of all of | |
| 20 | the fires that were in the civil arena as part of the | 11:07:41 |
| 21 | program and when I was working in the civil cost | |
| 22 | program in Sacramento. Again, that wouldn't have | |
| 23 | been from an investigative stage. It would have just | |
| 24 | been part of my everyday duties regarding the | |
| 25 | Moonlight fire as well as any other fire that was in | 11:08:00 |

AGO 000250

| | | |
|---|---|---|
| 1 | the civil cost -- in the civil arena. | |
| 2 | Q.       So you're saying that that type of | |
| 3 | information would have been something that you would | |
| 4 | have generated while you were working for Chief | |
| 5 | Franks in Sacramento? | 11:08:16 |
| 6 | MR. WARNE:  Objection.  It's not what he | |
| 7 | said.  You are leading the witness.  This is your | |
| 8 | witness, Ms. Winsor, and I have got to object to the | |
| 9 | form if you are leading him in these questions.  He | |
| 10 | is your witness. | 11:08:26 |
| 11 | MS. WINSOR:  I understand your objection and | |
| 12 | I'll try to repackage it.  I'm trying not to.  I'm | |
| 13 | trying to understand his answer. | |
| 14 | Q.       When would you have done that? | |
| 15 | A.       When I was working for Chief Frank in | 11:08:35 |
| 16 | Sacramento there is a need to track all of the | |
| 17 | different fires on a statewide basis related to those | |
| 18 | in the civil cost arena and so the Moonlight would | |
| 19 | have been one. | |
| 20 | Q.       And you would have done that well after you | 11:08:55 |
| 21 | formed your opinions regarding the Moonlight fire? | |
| 22 | A.       Yes. | |
| 23 | Q.       And would preparing that information for | |
| 24 | Chief Frank be something that you reflected upon or | |
| 25 | reviewed or considered or used in your testimony that | 11:09:12 |

AGO 000251

| | |
|---|---|
| 1 | you have given in this case? |
| 2 | MR. WARNE:  Objection.  The question is |
| 3 | leading. |
| 4 | THE WITNESS:  Not at all. |
| 5 | Q.      BY MS. WINSOR:  Let me just ask that |
| 6 | globally, same question for anything you did in your |
| 7 | capacity as a case manager.  Would documents that you |
| 8 | either generated and sent to others or that others |
| 9 | generated and sent to you in your capacity as a case |
| 10 | manager have been anything that you reviewed, |
| 11 | reflected upon, considered, rejected, used in any way |
| 12 | in giving your testimony in this matter? |
| 13 | MR. WARNE:  Vague. |
| 14 | THE WITNESS:  No. |
| 15 | MR. WARNE:  Overbroad. |
| 16 | Q.      BY MS. WINSOR:  So as I understand it, the |
| 17 | case manager function and investigator function were |
| 18 | separate in your mind? |
| 19 | MR. GRANNIS:  Leading. |
| 20 | THE WITNESS:  That's correct. |
| 21 | Q.      BY MS. WINSOR:  Were they? |
| 22 | A.      Yes, they were separate. |
| 23 | Q.      And were the documents that you generated as |
| 24 | an investigator in that capacity separate and |
| 25 | distinct from anything that you may have generated in |

- Line 5: 11:09:39
- Line 10: 11:09:58
- Line 15: 11:10:12
- Line 20: 11:10:22
- Line 25: 11:10:33

AGO 000252

CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION vs. EUNICE HOWELL
Joshua White, 05/17/2011

| 1 | your capacity as a case manager? | |
|---|---|---|
| 2 | MR. GRANNIS:  Vague and overbroad. | |
| 3 | THE WITNESS:  Yes. | |
| 4 | Q.      BY MS. WINSOR:  Was the timing of the | |
| 5 | release of the report your decision to make? | 11:10:51 |
| 6 | A.      No. | |
| 7 | Q.      At any point prior to the release of the | |
| 8 | report were you asked to discuss with anyone whether | |
| 9 | or not to release it? | |
| 10 | A.      Yes, I believe so. | 11:11:14 |
| 11 | Q.      Who? | |
| 12 | A.      Well, there was some communication early on | |
| 13 | as far as whether Cal Fire was going to be releasing | |
| 14 | the report or if the US Forest Service was going to | |
| 15 | be releasing the report.  And at some point it was my | 11:11:29 |
| 16 | understanding that the US Forest Service was | |
| 17 | ultimately responsible and they were going to be | |
| 18 | releasing the report. | |
| 19 | Q.      Okay.  Do you know who ultimately made the | |
| 20 | decision to release it and why? | 11:11:48 |
| 21 | A.      I don't believe the Forest Service released | |
| 22 | the report prior to the Attorney General's office | |
| 23 | releasing the report. | |
| 24 | Q.      So it was released by counsel for Cal Fire | |
| 25 | as far as you know? | 11:12:01 |

AGO 000253

SUPERIOR COURT OF CALIFORNIA

COUNTY OF PLUMAS

--oOo--

CALIFORNIA DEPARTMENT OF

FORESTRY AND FIRE

PROTECTION,

     Plaintiff,

vs.                     No. CV09-00205

EUNICE HOWELL, d.b.a.

HOWELL'S FOREST HARVESTING

COMPANY, et al.,

     Defendants.

_____

AND RELATED CROSS-ACTIONS.

_____  /

**CERTIFIED TRANSCRIPT**

VIDEOTAPED DEPOSITION OF

JOSHUA WHITE

Volume 13 (Pages 3358 - 3718)

Wednesday, May 18, 2011

NOTICING ATTORNEY:   William R. Warne, Esq.

REPORTED BY:   LEIGH ANN OROZCO, CSR NO. 7607



**Marcus Deposition Reporting**
**www.marcusdepo.com**
**800-682-2323**

AGO 000254

SUPERIOR COURT OF CALIFORNIA

COUNTY OF PLUMAS

--oOo--

CALIFORNIA DEPARTMENT OF

FORESTRY AND FIRE

PROTECTION,

     Plaintiff,

vs.                      No. CV09-00205

EUNICE HOWELL, d.b.a.

HOWELL'S FOREST HARVESTING

COMPANY, et al.,

     Defendants.

_____

AND RELATED CROSS-ACTIONS.

_____ /

**CERTIFIED TRANSCRIPT**

VIDEOTAPED DEPOSITION OF

JOSHUA WHITE

Volume 13 (Pages 3358 - 3718)

Wednesday, May 18, 2011

NOTICING ATTORNEY:   William R. Warne, Esq.

REPORTED BY:   LEIGH ANN OROZCO, CSR NO. 7607

AGO 000255

CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION vs. EUNICE HOWELL
Joshua White, 05/18/2011

```
1    APPEARANCES

2    For the Plaintiff CALIFORNIA DEPARTMENT OF
     FORESTRY:
3
             CALIFORNIA DEPARTMENT OF JUSTICE
4            By:   Tracy L. Winsor, Deputy Attorney General
                   tracy.winsor@doj.ca.gov
5            1300 I Street
             Sacramento, California 94244-2550
6            (916) 324-5372

7
     For the Plaintiff CALIFORNIA-ENGELS MINING COMPANY:
8
             FARBER & FOOTE, LLP
9            By:   Alexandra L. Foote, Esq.
                   footefarber@gmail.com
10           436 14th Street, Suite 1520
             Oakland, California 94611
11           (415) 271-0997

12
     For the Plaintiff RICHARD GUY, ET AL.:
13
             ANDERLINI & EMERICK, LLP
14           By:   Steven Goldstein, Esq.  (Not Present)
             411 Borel Avenue, Suite 501
15           San Mateo, California 94402
             (650) 212-0001
16

17   For the Plaintiffs BRANDT, ET AL.:

18           HUBERT & YASUTAKE
             By:   Garry J. D. Hubert, Esq.  (Not Present)
19                 Ghubert@hy-litigators.com
             1320 Willow Pass Road, Suite 590
20           Concord, California 94520
             (925) 680-4266
21

22

23

24

25
```

AGO 000256

```
 1   APPEARANCES (Continued)

 2
     For the Defendant/Cross-Defendant SIERRA PACIFIC
 3   INDUSTRIES:

 4           DOWNEY BRAND, LLP
             By:  William R. Warne, Esq.
 5                bwarne@downeybrand.com
                  Michael J. Thomas, Esq.
 6                mthomas@downeybrand.com
                  Annie S. Amaral, Esq.
 7                aamaral@downeybrand.com
             621 Capitol Mall, 18th Floor
 8           Sacramento, California 95814
             (916) 444-1000
 9

10           DUN & MARTINEK, LLP
             By:  David H. Dun, Esq. (Not Present)
11           2313 I Street
             P.O. Box 1266
12           Eureka, California 95501-4244
             (707) 442-3741
13

14   For the Defendants W.M. BEATY & ASSOCIATES and
     Landowner Defendants BROOKS WALKER, ET AL.:
15
             MATHENY SEARS LINKERT & JAIME, LLP
16           By:  Richard S. Linkert, Esq.
                  rlinkert@mathenysears.com
17           3638 American River Drive
             Sacramento, California 95864
18           (916) 978-3434

19
     For the Defendants EUNICE HOWELL, HOWELL'S FOREST
20   HARVESTING COMPANY, J.W. BUSH, KELLY CRISMON:

21           RUSHFORD & BONOTTO, LLP
             By:  Phillip R. Bonotto, Esq.
22                pbonotto@rushfordbonotto.com
                  Derek Van Deviver, Esq.
23                dvandeviver@rushfordbonotto.com
             2277 Fair Oaks Boulevard, Suite 495
24           Sacramento, California 95825
             (916) 565-0590
25
```

AGO 000257

CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION vs. EUNICE HOWELL
Joshua White, 05/18/2011

```
 1   APPEARANCES (Continued)

 2   For the Cross-Defendant CATERPILLAR, INC.:
          (Via Teleconference/Webstreaming)
 3        SEDGWICK LLP
          By:   Matthew Stein, Esq.
 4              matthew.stein@sedgwicklaw.com
          801 South Figueroa Street, 19th Floor
 5        Los Angeles, California 90017-5556
          (213) 426-6900
 6

 7   Also Present:

 8        Dina Marcus, CSR

 9        Sean McAleer, Videographer
          SACRAMENTO LEGAL VIDEO CENTER, INC.
10        3028 U Street
          Sacramento, California  95817
11        (916) 451-7600

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

AGO 000258

CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION vs. EUNICE HOWELL
Joshua White, 05/18/2011

```
1                    INDEX OF EXAMINATION

2                                                     PAGE

3    RESUMED EXAMINATION BY MS. WINSOR                3366

4    FURTHER EXAMINATION BY MR. WARNE                 3406

5    QUESTIONS MARKED                          NONE MARKED

6    WITNESS' CHANGES OR CORRECTIONS                  3716

7    REPORTER'S CERTIFICATE                           3717

8    WITNESS' LETTER                                  3718

9

10                       --oOo--

11                   INDEX OF EXHIBITS

12
     Defendants'
13   Exhibit      Description                  Page
     Ex 491       Wildland Fire
14                Investigation
                  Sketch/Diagram, Bates
15                US000058; 1 page             3412

16   Ex 492       Document entitled "9400
                  Law Enforcement
17                Procedures Handbook";
                  4 pages                      3490
18
     Ex 493       Wildland Fire
19                Investigation Origin &
                  Cause Report (Amesbury),
20                Bates CDFMO024826-30127;
                  127 pages                    3562
21
     Ex 494       Wildland Fire Origin and
22                Cause Determination
                  FI-210 Instructor Guide
23                September 2005, Bates
                  CDFMO021896-022179;
24                284 pages                    3620

25
```

AGO 000259

CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION vs. EUNICE HOWELL
Joshua White, 05/18/2011

```
 1                    EXHIBITS (Continued)

 2     Defendants'                           Page
       Exhibit      Description
 3     Ex 495       Incident Report, Bates
                    US000051; 1 page          3668
 4
       Ex 496       Scene diagram; 1 page     3670
 5
       Ex 497       Scene diagram; 1 page     3670
 6
       Ex 498       Excerpt from NFPA 2004
 7                  Edition; 2 pages          3692

 8     Ex 499       Document entitled
                    "Scientific Protocols for
 9                  Fire Investigation" by
                    John J. Lentini; 2 pages  3696
10
       Ex 500       Excerpt from Kirk's Fire
11                  Investigation Sixth
                    Edition; 2 pages          3703
12
       Ex 501       Wildland Fire
13                  Investigation Origin &
                    Cause (Greens), Bates
14                  US000247-000266; 20 pages 3706

15

16                  MARKED PROCEEDINGS

17                    PAGE - LINE

18                    3587    11
                      3611    24
19

20          INSTRUCTION TO WITNESS NOT TO ANSWER

21                    PAGE - LINE

22                    3582    19
                      3585     8
23                    3619    14
                      3619    17
24                    3665     5

25                    --o0o--
```

AGO 000260

```
1        BE IT REMEMBERED that on Wednesday, May 18,
2    2011, at the hour of 9:03 a.m. of said day, at the
3    Law Offices of DOWNEY BRAND, LLP, 621 Capitol Mall,
4    18th Floor, Sacramento, California, before me,
5    LEIGH ANN OROZCO, Certified Shorthand Reporter
6    No. 7607, personally appeared JOSHUA WHITE, called as
7    a witness herein, who, having been duly sworn, was
8    thereupon examined and testified as follows:
9                        --o0o--
10       THE VIDEOGRAPHER:  My name is Sean McAleer.      09:02:30
11   I will be videotaping this proceeding on behalf of
12   Sacramento Legal Video Center, Incorporated at
13   3028 U Street in Sacramento, California.
14       The date is May 18th, 2011.  The time on the
15   video monitor is 9:03 a.m.                           09:02:48
16       Our location is 621 Capitol Mall, the 18th
17   floor, in Sacramento, California.
18       We are here in matter of CDF versus Howell,
19   et al.
20       This is Volume Number 13 in the continued       09:03:07
21   deposition of Josh White.
22       The noticing attorney is Bill Warne.
23       The court reporter is Leigh Ann Orozco of
24   Marcus Deposition Reporting,
25       This is a single-track recording.               09:03:21
```

AGO 000261

CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION vs. EUNICE HOWELL
Joshua White, 05/18/2011

| | | |
|---|---|---|
| 1 | Overlapping voices cannot be separated.  Private | |
| 2 | discussions on the record will also be recorded. | |
| 3 | Would counsel please identify yourselves, | |
| 4 | your firms and those you represent. | |
| 5 | MS. WINSOR:  Deputy Attorney General Tracy | 09:03:34 |
| 6 | Winsor on behalf of plaintiff California Department | |
| 7 | of Forestry and Fire Protection. | |
| 8 | MS. AMARAL:  Annie Amaral from Downey Brand, | |
| 9 | representing defendant Sierra Pacific. | |
| 10 | MR. LINKERT:  Rick Linkert, Matheny Sears | 09:03:45 |
| 11 | Linkert & Jaime, representing W.M. Beaty and the | |
| 12 | Walker family landowners. | |
| 13 | MR. WARNE:  Bill Warne, Downey Brand, | |
| 14 | representing SPI. | |
| 15 | MR. VAN DEVIVER:  Derek Van Deviver of | 09:03:55 |
| 16 | Rushford & Bonotto, representing the Howell | |
| 17 | defendants. | |
| 18 | MR. BONOTTO:  Phil Bonotto of Rushford & | |
| 19 | Bonotto, representing the Howell defendants. | |
| 20 | MS. FOOTE:  Alexandra Foote, Farber & Foote, | 09:04:02 |
| 21 | representing California-Engels Mining Company. | |
| 22 | THE REPORTER:  Mr. Stein, on the phone? | |
| 23 | MR. STEIN:  Matthew Stein, Sedgwick, | |
| 24 | Caterpillar, Inc. | |
| 25 | MS. WINSOR:  Good morning, Matt. | 09:04:14 |

AGO 000262

| | | |
|---|---|---|
| 1 | MR. STEIN:  Hi. | |
| 2 | THE REPORTER:  Chief White, would you raise | |
| 3 | your right hand, please? | |
| 4 | Do you solemnly state that the testimony | |
| 5 | you're about to give will be the truth, the whole | |
| 6 | truth and nothing but the truth? | |
| 7 | THE WITNESS:  I swear. | |
| 8 | RESUMED EXAMINATION BY MS. WINSOR | |
| 9 | Q.      Chief White, if you could please turn to | |
| 10 | Page 689 of Volume 3 of your federal court testimony | 09:04:28 |
| 11 | given on March 9th, 2011.  Are you with me? | |
| 12 | A.      I am. | |
| 13 | Q.      Can you turn to Line 19 and read your | |
| 14 | answer, please? | |
| 15 | A.      "I believe it's in reference there to the | 09:04:40 |
| 16 | scientific method, to follow the scientific method." | |
| 17 | Q.      And the question:  "'A set of standardized | |
| 18 | methods, procedures and practices that have been | |
| 19 | peer-reviewed and have general'" -- "'received | |
| 20 | general acceptance by the profession.'  That is what | 09:04:53 |
| 21 | it's talking about, correct?" | |
| 22 | "Ms. Taylor:  It calls for a legal | |
| 23 | conclusion." | |
| 24 | And Mr. Warne's question:  "You are the | |
| 25 | instructor, sir.  Tell me.  That's what it is talking | 09:05:02 |

AGO 000263

CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION vs. EUNICE HOWELL
Joshua White, 05/18/2011

| | |
|---|---|
| 1 | Q.      Okay.  And was there ever any doubt in your |
| 2 | mind in 2007 that the tracks in the spur trail were |
| 3 | made by Mr. Crismon's dozer? |
| 4 | A.      No. |
| 5 | Q.      Chief White, I'm going to put this down for | 09:16:37 |
| 6 | a moment.  When is the last time that you can recall |
| 7 | communicating with Chief George Gonzalez regarding |
| 8 | your -- in your capacity as an investigator regarding |
| 9 | your origin and cause investigation? |
| 10 | A.      It would have been either when he was | 09:17:47 |
| 11 | leaving the assignment back in September, early |
| 12 | September or shortly thereafter but I don't remember. |
| 13 | Q.      And since that time have -- in terms of |
| 14 | communicating with Chief Gonzalez, if you |
| 15 | communicated with him after that time would -- let me | 09:18:04 |
| 16 | start over. |
| 17 |         So as I understand it, you just stated that |
| 18 | the last time you communicated with him regarding the |
| 19 | investigation in your origin and cause analysis was |
| 20 | in September of 2007; is that correct? | 09:18:23 |
| 21 | A.      That's correct. |
| 22 | Q.      Okay.  And since that time has there been |
| 23 | any conversation that you have had with Chief |
| 24 | Gonzalez that you reflected upon, considered, |
| 25 | considered and rejected, used in any way regarding | 09:18:42 |

AGO 000264

| | |
|---|---|
| 1 | your analysis of the origin and cause of the |
| 2 | Moonlight fire? |
| 3 |     MS. AMARAL:  Objection.  Overbroad and |
| 4 | compound. |
| 5 |     THE WITNESS:  No, not that I can think of. |
| 6 | Q.    BY MS. WINSOR:  Okay.  Have you sent Chief |
| 7 | Gonzalez any documents that you prepared that you |
| 8 | read, reviewed, reflected upon, considered, |
| 9 | considered and rejected or used in your analysis of |
| 10 | the origin and cause investigation of the Moonlight |
| 11 | fire in any way? |
| 12 |     MS. AMARAL:  Compound.  Vague. |
| 13 |     THE WITNESS:  No, not that I can think of. |
| 14 | Q.    BY MS. WINSOR:  Same question for your |
| 15 | testimony.  Any documents from you to Chief White |
| 16 | [sic] that would meet any of those criteria? |
| 17 |     MS. AMARAL:  Compound and vague. |
| 18 |     THE WITNESS:  To Chief Gonzalez? |
| 19 | Q.    BY MS. WINSOR:  Yeah.  I'm sorry.  Any |
| 20 | documents that you, Chief White, prepared that you |
| 21 | sent to George Gonzalez that you would have -- that |
| 22 | you read, reviewed, reflected upon, considered, |
| 23 | considered and rejected or used or saw and considered |
| 24 | in some way in giving your testimony in either the |
| 25 | state or the federal proceedings? |

Time stamps:
09:18:53
09:19:11
09:19:21
09:19:30
09:19:51

AGO 000265

CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION vs. EUNICE HOWELL
Joshua White, 05/18/2011

```
 1              MS. AMARAL:  Compound.  Vague.
 2              THE WITNESS:  No.
 3    Q.        BY MS. WINSOR:  Any documents -- are there
 4    any documents that you can think of other than -- and
 5    again, this is -- I want to make sure this is clear    09:20:01
 6    because you have been showed a draft supplemental
 7    that was prepared by Chief Gonzalez.  Do you recall
 8    that?
 9    A.        Yes.
10              MS. AMARAL:  Vague.                           09:20:09
11    Q.        BY MS. WINSOR:  So I want to set that aside
12    and I want you to put aside anything that you have
13    already testified about regarding those documents and
14    anything that you have been shown in your deposition.
15              Other than anything that you have been shown  09:20:24
16    in your deposition and testified about already, can
17    you think of any document created by Chief Gonzalez
18    that you read, reviewed, reflected upon, considered,
19    considered and rejected, used in any way regarding
20    your origin and cause investigation and analysis of    09:20:47
21    the Moonlight fire?
22              MS. AMARAL:  Vague.  Compound.  Overbroad.
23    Calls for speculation.
24              THE WITNESS:  No.
25    Q.        BY MS. WINSOR:  Same question regarding your  09:20:56
```

AGO 000266

CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION vs. EUNICE HOWELL
Joshua White, 05/18/2011

| | |
|---|---|
| 1 | testimony in either the state or federal proceedings? |
| 2 | MS. AMARAL:  Same objections. |
| 3 | Q.      BY MS. WINSOR:  Please let me know if you |
| 4 | don't understand the question. |
| 5 | A.      Have I discussed any of my testimony with |
| 6 | Mr. Gonzalez? |
| 7 | Q.      I'll just do the whole question.  Can you |
| 8 | think of any document prepared by Chief Gonzalez |
| 9 | other than something you have already testified about |
| 10 | that you saw and considered, read, reviewed, |
| 11 | reflected upon, considered and rejected or used in |
| 12 | your -- in formulating your thoughts for your |
| 13 | testimony that you gave in the state or federal |
| 14 | proceedings? |
| 15 | A.      No. |
| 16 | MS. AMARAL:  Same objections. |
| 17 | Q.      BY MS. WINSOR:  Okay.  Chief Carlson.  When |
| 18 | is the last time that you can recall speaking to |
| 19 | Chief Carlson about your -- well, let me do it this |
| 20 | way.  Let me back up and say you submitted your |
| 21 | report to Chief Carlson for his review in 2007, |
| 22 | correct? |
| 23 | A.      Yes. |
| 24 | Q.      And we've seen an e-mail about that, |
| 25 | correct? |

Time stamps: 09:21:03 (line 5), 09:21:16 (line 10), 09:21:35 (line 15), 09:21:58 (line 20)

CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION vs. EUNICE HOWELL
Joshua White, 05/18/2011

```
 1   A.        Correct.
 2   Q.        Okay.  And after that point do you recall
 3   discussing your report substantively with Chief
 4   Carlson again after that point?
 5            MS. AMARAL:  Vague.                              09:22:24
 6   Q.        BY MS. WINSOR:  In the sense of him giving
 7   you some feedback on it and making comments on it?
 8            MS. AMARAL:  Vague as to time.  Overbroad.
 9            THE WITNESS:  Outside of the presence of
10   counsel?                                                  09:22:37
11   Q.        BY MS. WINSOR:  Right.
12   A.        No.
13   Q.        And did Chief Carlson ever ask you ever,
14   without limitation, to make any changes to your
15   report?                                                   09:22:54
16   A.        I think in that e-mail he had made some
17   corrections.  I can't specifically remember if they
18   were grammar or -- I can't remember specifically what
19   he had mentioned in the report to either add or seek
20   out additional information.  And he provided some         09:23:15
21   additional information related to studies and
22   publications related to metal particles starting
23   fires.
24   Q.        Okay.  And after you submitted the report to
25   region, did Chief Carlson ask you to visit or change      09:23:32
```

AGO 000268

CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION vs. EUNICE HOWELL
Joshua White, 05/18/2011

| | |
|---|---|
| 1 | or do anything to your report in any way? |
| 2 | A.      No, not that I can remember. |
| 3 | Q.      Okay.  And setting aside what you've already |
| 4 | testified to, any conversations or communications |
| 5 | with Chief Carlson that you have already testified |
| 6 | to, have there been any conversations with Chief |
| 7 | White that you reflected upon -- say it again.  Chief |
| 8 | Carlson.  Let me start over.  I'm so sorry. |
| 9 |         Setting aside what you have already |
| 10 | testified to, have you had any interactions with |
| 11 | Chief Carlson at any time that caused you to stop and |
| 12 | question your own opinions? |
| 13 | A.      No. |
| 14 | Q.      Have you had any communications with Chief |
| 15 | Carlson where you considered changing your opinions |
| 16 | in any way? |
| 17 | A.      No. |
| 18 | Q.      Okay.  Have you had any conversations with |
| 19 | Chief Carlson that you reflected upon and considered |
| 20 | and rejected in forming your analysis and opinions |
| 21 | regarding the Moonlight fire? |
| 22 |         MS. AMARAL:  Vague.  Overbroad.  Compound. |
| 23 |         THE WITNESS:  No. |
| 24 | Q.      BY MS. WINSOR:  Have you had any |
| 25 | conversations with Chief Carlson where you -- other |

09:23:55

09:24:14

09:24:37

09:24:50

09:25:01

AGO 000269

| | |
|---|---|
| 1  than -- again, other than what you have already | |
| 2  testified to, where you used some information that he | |
| 3  provided you in formulating your thinking and your | |
| 4  analysis of the origin and cause investigation of the | |
| 5  Moonlight fire? | 09:25:22 |
| 6         MS. AMARAL:  Same objections. | |
| 7         THE WITNESS:  No. | |
| 8  Q.     BY MS. WINSOR:  And other than anything you | |
| 9  may have already testified to or been shown in | |
| 10  deposition, and that would be inclusive of the fire | 09:25:35 |
| 11  scene diagrams, can you think of any document that | |
| 12  you prepared and sent to Chief Carlson that you saw, | |
| 13  read, reviewed, reflected upon, considered, | |
| 14  considered and rejected or used in forming your | |
| 15  opinions and analysis regarding the origin and cause | 09:26:02 |
| 16  investigation of the Moonlight fire? | |
| 17         MS. AMARAL:  Vague.  Overbroad and compound. | |
| 18  Calls for speculation. | |
| 19         THE WITNESS:  No, not that I can think of, | |
| 20  no. | 09:26:13 |
| 21  Q.     BY MS. WINSOR:  Okay.  And in reverse, other | |
| 22  than anything that you have already testified to, | |
| 23  inclusive of the fire scene diagram, can you think of | |
| 24  any document that Chief Carlson prepared and sent to | |
| 25  you that you read, reviewed, reflected upon, | 09:26:42 |

AGO 000270

| | | |
|---|---|---|
| 1 | considered, considered and rejected or used in your | |
| 2 | forming your opinions and analysis of the origin and | |
| 3 | cause investigation of the Moonlight fire? | |
| 4 | MS. AMARAL:  Same objections. | |
| 5 | THE WITNESS:  The only thing that I can -- I | 09:27:01 |
| 6 | think I've already testified to it regarding that | |
| 7 | e-mail that he sent regarding other studies and | |
| 8 | publications that I believe he sent in September | |
| 9 | of 2007.  No, I can't think of any other documents. | |
| 10 | Q.      BY MS. WINSOR:  Okay.  And it's my | 09:27:14 |
| 11 | understanding at some point that you may have been | |
| 12 | advised by Chief Carlson about a contact by defense | |
| 13 | counsel about a bottle.  Do you recall being told | |
| 14 | that? | |
| 15 | A.      Yes. | 09:27:26 |
| 16 | Q.      Okay.  Did hearing -- tell me what you | |
| 17 | recall about that. | |
| 18 | A.      It was my understanding that he was | |
| 19 | contacted and told that a bottle was found on the | |
| 20 | hillside near the origin of the Moonlight fire. | 09:27:40 |
| 21 | Q.      So defense counsels' attorneys contacted | |
| 22 | Chief Carlson regarding the bottle? | |
| 23 | A.      That's my understanding. | |
| 24 | Q.      And did hearing that there was a bottle | |
| 25 | found on the site, is that something that you viewed, | 09:27:53 |

AGO 000271

CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION vs. EUNICE HOWELL
Joshua White, 05/18/2011

| | |
|---|---|
| 1 | reflected upon, considered, considered and rejected |
| 2 | or used in forming your opinions and analysis |
| 3 | regarding the origin and cause of the Moonlight fire? |
| 4 | A.      No. |
| 5 | Q.      Do you know who Michelle Lawrence is? |
| 6 | A.      The name sounds familiar.  I can't place the |
| 7 | person. |
| 8 | Q.      If I told you that she is clerical staff in |
| 9 | region, with that representation and I want to ask |
| 10 | you would you have any -- have had any reason to |
| 11 | discuss with the clerical staff in the northern |
| 12 | region office your origin and cause opinions and |
| 13 | conclusions regarding the Moonlight fire? |
| 14 | A.      No. |
| 15 | Q.      And can you think of any member of the |
| 16 | clerical staff in the northern region office whose -- |
| 17 | where there was a document that you either sent it to |
| 18 | them or they sent it to you where you would have |
| 19 | reflected upon, considered, considered and rejected, |
| 20 | reviewed or used that document in analyzing the |
| 21 | origin and cause of the Moonlight fire in any way? |
| 22 | A.      No. |
| 23 | Q.      And why is that? |
| 24 | A.      Because all of those -- any documents that I |
| 25 | would have been working with clerical staff at the |

Timestamps (right margin):
- 09:28:18 (line 5)
- 09:28:32 (line 10)
- 09:28:45 (line 15)
- 09:29:03 (line 20)
- 09:29:16 (line 25)

AGO 000272

1   northern region would have been related to the ARC

2   package or the preparation of the costs associated

3   with the Moonlight fire.

4   Q.      And that would have been in your role as the

5   case manager, right?                                        09:29:30

6   A.      Correct.

7   Q.      And did you even review the ARC package

8   documents to inform yourself of what was in them?

9   A.      I may have looked at the cover sheet.

10  Florie Gallo was responsible for the review.  And          09:29:46

11  once I would receive it from Florie, I would consider

12  it complete and thorough at that time.

13  Q.      So those ARC package documents and the

14  supporting documentation is not anything that you

15  would have used, considered, considered and rejected,       09:30:04

16  reflected upon, reviewed or even read for any reason

17  relating to your origin and cause opinions and

18  conclusions, correct?

19          MR. WARNE:  Hang on a second.  Are you

20  reading or is that -- were you reading something            09:30:20

21  there?

22          MS. WINSOR:  You can answer the question.

23          MR. WARNE:  No, you can't.  I'm going to get

24  my objection on before we get an answer.  Were you

25  reading or was that a question?                             09:30:28

AGO 000273

| | |
|---|---|
| 1 | MS. WINSOR: I don't have to answer your |
| 2 | questions, Mr. Warne. |
| 3 | MR. WARNE: Oh, please. |
| 4 | Leigh Ann, was that a question or was she |
| 5 | reading from something? 09:30:35 |
| 6 | THE REPORTER: I believe it was a question, |
| 7 | Mr. Warne. |
| 8 | MR. WARNE: Objection. The question is |
| 9 | leading. Compound. Lacks foundation. |
| 10 | MS. WINSOR: Can I have the question read 09:30:44 |
| 11 | back, please? |
| 12 | THE REPORTER: "So those ARC package |
| 13 | documents and the supporting documentation is not |
| 14 | anything that you would have used, considered, |
| 15 | considered and rejected, reflected upon, reviewed or |
| 16 | even read for any reason relating to your origin and |
| 17 | cause opinions and conclusions, correct?" |
| 18 | MR. WARNE: Objection. The question is |
| 19 | leading. It's compound. It lacks foundation. |
| 20 | MS. WINSOR: Sir, the record has been read 09:31:07 |
| 21 | back. I would ask that you table your objections |
| 22 | pursuant to the stipulation. |
| 23 | MR. WARNE: I don't recall such a |
| 24 | stipulation. Since we have had some concern in terms |
| 25 | of what that was you were doing, in light of the fact 09:31:16 |

AGO 000274

CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION vs. EUNICE HOWELL
Joshua White, 05/18/2011

| 1 | you asked her to read the question back, I'm going to |
|---|---|
| 2 | state my objections. |
| 3 | Q.      BY MS. WINSOR:  Go ahead and answer the |
| 4 | question. |
| 5 | A.      That's correct. |
| 6 | Q.      Okay.  Do you know who Steven Yoshida is? |
| 7 | A.      I believe he works for the Attorney |
| 8 | General's office. |
| 9 | Q.      Have you ever communicated with Steven |
| 10 | Yoshida regarding your origin and cause opinion |
| 11 | conclusions for any reason? |
| 12 | A.      No, I don't believe so. |
| 13 | Q.      Would you have had a reason to do that? |
| 14 | A.      No. |
| 15 | Q.      If I represent to you that he is a legal |
| 16 | analyst, would that confirm your conclusions? |
| 17 | A.      Yes. |
| 18 | MR. WARNE:  Objection.  That lacks |
| 19 | foundation. |
| 20 | Q.      BY MS. WINSOR:  Who is Kim Duffy? |
| 21 | A.      Kim Duffy is clerical staff that works in |
| 22 | Florie Gallo's shop. |
| 23 | MS. AMARAL:  Works where? |
| 24 | THE WITNESS:  Works in the Civil Cost |
| 25 | Recovery Program in the northern region for Florie |

Time stamps:
- 09:31:24 (line 5)
- 09:31:36 (line 10)
- 09:31:47 (line 15)
- 09:32:02 (line 20)
- 09:32:14 (line 25)

AGO 000275

| 1  | Gallo. | |
|----|--------|--|
| 2  | Q.       BY MS. WINSOR:  So she falls in the category | |
| 3  | of clerical staff within the northern region, | |
| 4  | correct? | |
| 5  | A.       Correct. | 09:32:23 |
| 6  | Q.       Who is Roger Thompson? | |
| 7  | A.       Roger Thompson is a retired staff chief that | |
| 8  | worked out of Sacramento. | |
| 9  | Q.       Okay.  And what was his function? | |
| 10 | A.       I don't remember his specific title.  He | 09:32:32 |
| 11 | worked with contracts and negotiating with other | |
| 12 | agencies for the cost, the cost sharing of fires. | |
| 13 | Q.       In 2009 do you have any knowledge of whether | |
| 14 | he was a fire investigator? | |
| 15 | A.       It's not my knowledge that he was a fire | 09:32:52 |
| 16 | investigator. | |
| 17 | Q.       In 2009 do you have any reason to think he | |
| 18 | would have had anything to do with your origin and | |
| 19 | cause opinions and conclusions regarding the | |
| 20 | Moonlight fire? | 09:33:02 |
| 21 | A.       No. | |
| 22 | Q.       Did you ever prepare a document that you | |
| 23 | saw, read, reviewed, reflected upon, considered, | |
| 24 | considered and rejected or used in your origin and | |
| 25 | cause analysis regarding your opinions and | 09:33:13 |

AGO 000276

CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION vs. EUNICE HOWELL
Joshua White, 05/18/2011

| | | |
|---|---|---|
| 1 | conclusions for the Moonlight fire that you sent to | |
| 2 | Roger Thompson at any time? | |
| 3 | A.       No. | |
| 4 | Q.       Same thing in reverse.  Did Roger Thompson | |
| 5 | prepare a document that you saw, read, reviewed, | 09:33:24 |
| 6 | reflected upon, considered, considered and rejected | |
| 7 | or used regarding your origin and cause opinions and | |
| 8 | conclusions for the Moonlight fire? | |
| 9 | A.       No. | |
| 10 | Q.       Okay.  And just to do belt and suspenders. | 09:33:36 |
| 11 | For Roger Thompson, Michelle Lawrence, Kim Duffy, | |
| 12 | Steven Yoshida, I have that same question regarding | |
| 13 | your testimony.  In giving your testimony were | |
| 14 | there -- regarding any of those people, were there | |
| 15 | any documents that you saw, read, reviewed, reflected | 09:33:59 |
| 16 | upon, considered, considered and rejected or used in | |
| 17 | giving your testimony that were sent to you by any of | |
| 18 | those people? | |
| 19 | A.       No. | |
| 20 | Q.       Same question in reverse.  Any documents | 09:34:12 |
| 21 | that you sent to any of those people that -- in | |
| 22 | giving your testimony that you read, saw, reviewed, | |
| 23 | reviewed, reflected upon, considered, considered and | |
| 24 | rejected or used? | |
| 25 | A.       No. | 09:34:26 |

AGO 000277

CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION vs. EUNICE HOWELL
Joshua White, 05/18/2011

| | | |
|---|---|---|
| 1 | Q.       Would you have had a reason to do that as to | |
| 2 | any of those people? | |
| 3 | A.       No. | |
| 4 | MR. WARNE:  Objection.  Vague. | |
| 5 | Q.       BY MS. WINSOR:  I believe we already covered | 09:34:39 |
| 6 | Jay Neuman yesterday, correct? | |
| 7 | A.       I believe so, yes. | |
| 8 | Q.       Okay.  Just belt and suspenders.  For your | |
| 9 | testimony that you gave in either the state or | |
| 10 | federal proceedings, can you think of any document | 09:34:49 |
| 11 | prepared by you and sent to Jay Neuman or prepared by | |
| 12 | Jay Neuman and sent to you that you saw, read, | |
| 13 | reviewed, reflected upon, considered, considered and | |
| 14 | rejected or used in giving your testimony in either | |
| 15 | the state or federal proceedings? | 09:35:07 |
| 16 | A.       No. | |
| 17 | Q.       Do you know who Jeff Reisch is? | |
| 18 | A.       No, the name doesn't ring a bell. | |
| 19 | Q.       If I represent to you that he is a Deputy | |
| 20 | Attorney General at the California Attorney General's | 09:35:26 |
| 21 | office, would that ring any bells? | |
| 22 | A.       Vaguely. | |
| 23 | Q.       Have you ever had any contact with that | |
| 24 | person regarding the Moonlight fire? | |
| 25 | Well, let me withdraw the question. | 09:35:41 |

AGO 000278

```
1            Can you think -- well, I'll withdraw the
2     question.  Basically -- we'll cross that bridge when
3     we come to it.  I'll let them cross that bridge.
4            I'm going to ask you regarding -- we already
5     covered Kim Spire and Clare Frank but I'm going to do      09:36:07
6     belt and suspenders.  Regarding Kim Spire and Clare
7     Frank, can you think of any document other than -- I
8     think we are clear on this but let me just do it
9     again.
10           For Kim Spire and Clare Frank, can you think       09:36:21
11    of any document that either they drafted and sent to
12    you or you drafted and sent to them that you saw,
13    read, reviewed, reflected upon, considered,
14    considered and rejected or used in any way in forming
15    your opinions and conclusions for your analysis of       09:36:38
16    the Moonlight fire?
17           MR. WARNE:  Objection.
18           THE WITNESS:  No.
19           MR. WARNE:  Vague.
20    Q.     BY MS. WINSOR:  Did you even know Clare           09:36:43
21    Frank in 2007?
22    A.     No.
23    Q.     Did you know Kim Spire in 2007?
24    A.     I may have heard the name but, no, I didn't
25    know her.                                                09:36:52
```

| | |
|---|---|
| 1 | Q.       Did you have any contact with either of |
| 2 | those people in 2007 regarding the Moonlight fire? |
| 3 | A.       No. |
| 4 | Q.       Okay.  In giving your testimony in this |
| 5 | matter, can you think of any document that was sent |
| 6 | to you by Clare Frank or that you -- sent to you by |
| 7 | Clare Frank or Kim Spire or that you sent to Kim |
| 8 | Spire or Clare Frank that you saw, read, reviewed, |
| 9 | reflected upon, considered, considered and rejected |
| 10 | or used in giving your testimony in the state or |
| 11 | federal proceedings? |
| 12 | MR. WARNE:  Objection.  Vague. |
| 13 | THE WITNESS:  No. |
| 14 | Q.       BY MS. WINSOR:  Would you have had any |
| 15 | reason to do that? |
| 16 | MR. WARNE:  Objection.  Vague. |
| 17 | Q.       BY MS. WINSOR:  To look at any document |
| 18 | generated by either of those persons for giving your |
| 19 | testimony? |
| 20 | MR. WARNE:  Objection.  Vague.  Calls for |
| 21 | speculation.  Overbroad. |
| 22 | THE WITNESS:  No. |
| 23 | Q.       BY MS. WINSOR:  Were either of those people, |
| 24 | to your knowledge, knowledgeable regarding the origin |
| 25 | and cause investigation of the Moonlight fire? |

Timestamps:
09:37:02 (line 5)
09:37:19 (line 10)
09:37:26 (line 15)
09:37:33 (line 20)
09:37:43 (line 25)

AGO 000280

CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION vs. EUNICE HOWELL
Joshua White, 05/18/2011

| | | |
|---|---|---|
| 1 | MR. WARNE:  Objection.  Lacks foundation. | |
| 2 | Calls for speculation.  Overbroad.  Argumentative. | |
| 3 | THE WITNESS:  No. | |
| 4 | Q.      BY MS. WINSOR:  And again belt and | |
| 5 | suspenders regarding -- who is Robin Harrington? | 09:38:35 |
| 6 | MR. WARNE:  Objection to the phrase "belt | |
| 7 | and suspenders."  It's vague.  The question is | |
| 8 | overbroad.  Calls for speculation. | |
| 9 | Q.      BY MS. WINSOR:  Who is Robin Harrington? | |
| 10 | A.      Robin Harrington is one of the counsel for | 09:38:48 |
| 11 | Cal Fire. | |
| 12 | Q.      And regarding Robin Harrington -- and, | |
| 13 | actually, was Robin Harrington somebody you ever | |
| 14 | consulted for advice regarding the Moonlight fire for | |
| 15 | any reason not -- I'm talking about your origin and | 09:39:08 |
| 16 | cause investigation. | |
| 17 | MR. WARNE:  Objection.  Vague. | |
| 18 | THE WITNESS:  No, not that I can remember at | |
| 19 | all. | |
| 20 | Q.      BY MS. WINSOR:  Okay.  And regarding Mike | 09:39:14 |
| 21 | Jarvis and Janet Upton, can you think of any document | |
| 22 | that you prepared and sent to them or that they | |
| 23 | prepared and sent to you that you saw, read, | |
| 24 | reviewed, reflected upon, considered, considered and | |
| 25 | rejected or used regarding your giving your testimony | 09:39:35 |

AGO 000281

CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION vs. EUNICE HOWELL
Joshua White, 05/18/2011

| | |
|---|---|
| 1 | in -- |
| 2 |         MR. WARNE:  Objection. |
| 3 | Q.     BY MS. WINSOR:  -- the state or federal |
| 4 | proceedings in this matter? |
| 5 |         MR. WARNE:  Excuse me.  Objection.  The |
| 6 | question is vague.  It's overbroad. |
| 7 |         THE WITNESS:  No. |
| 8 | Q.     BY MS. WINSOR:  Would you have had a reason |
| 9 | to do that? |
| 10 |         MR. WARNE:  Objection.  Calls for |
| 11 | speculation. |
| 12 |         THE WITNESS:  No. |
| 13 | Q.     BY MS. WINSOR:  Have any communications |
| 14 | that -- what would have been the context of any |
| 15 | communications that you would have had with those |
| 16 | people? |
| 17 | A.     It would have had to do with dealing with |
| 18 | the media. |
| 19 | Q.     And did either of those people ever provide |
| 20 | you at any point in time any information that you |
| 21 | saw, read, reviewed, reflected upon, considered, |
| 22 | rejected or used in forming your origin and cause |
| 23 | opinions and conclusions regarding the Moonlight |
| 24 | fire? |
| 25 |         MR. WARNE:  Objection.  Vague.  Overbroad. |

09:39:43
09:39:49
09:39:58
09:40:14
09:40:29

AGO 000282

CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION vs. EUNICE HOWELL
Joshua White, 05/18/2011

| | |
|---|---|
| 1 | THE WITNESS: No. | |
| 2 | Q. BY MS. WINSOR: What about Tom Hoffman, who | |
| 3 | is that? | |
| 4 | A. Tom Hoffman was a staff chief in the fire | |
| 5 | prevention out of Sacramento. | 09:40:40 |
| 6 | Q. And what reason would you have had to -- if | |
| 7 | any, to communicate with him regarding the Moonlight | |
| 8 | fire? | |
| 9 | A. I believe he was my contact for requesting | |
| 10 | Dr. Hendrickson. | 09:40:51 |
| 11 | Q. Okay. Can you think of -- oh, actually, | |
| 12 | never mind. I'm sorry. Never mind. | |
| 13 | So, would you have ever had any other reason | |
| 14 | to communicate with him regarding the Moonlight fire? | |
| 15 | A. No, I don't believe so. | 09:41:09 |
| 16 | Q. And I'm saying now without limitation as to | |
| 17 | time. Just at any point in time have you ever | |
| 18 | communicated with that person about anything about | |
| 19 | the Moonlight fire other than Dr. Hendrickson that | |
| 20 | you can think of? | 09:41:26 |
| 21 | A. No. | |
| 22 | Q. Can you think of any documents -- as you sit | |
| 23 | here, are there any documents that you ever prepared | |
| 24 | and sent to Brad Lutts regarding the Moonlight fire? | |
| 25 | MR. WARNE: Vague. | 09:42:10 |

AGO 000283

CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION vs. EUNICE HOWELL
Joshua White, 05/18/2011

| | | |
|---|---|---|
| 1 | Q.     BY MS. WINSOR:  I'll bracket the time frame. | |
| 2 | After January of 2008 can you think of any documents | |
| 3 | regard -- and let me start over. | |
| 4 | After 2008, can you think of any documents | |
| 5 | that were prepared by you and sent to Brad Lutts or | 09:42:25 |
| 6 | prepared by Brad Lutts and sent to you that you saw, | |
| 7 | read, reviewed, reflected upon, considered, | |
| 8 | considered and rejected or used in forming your | |
| 9 | opinions and your analysis regarding the Moonlight | |
| 10 | fire origin and cause investigation? | 09:42:47 |
| 11 | MR. WARNE:  Vague. | |
| 12 | THE WITNESS:  No. | |
| 13 | Q.     BY MS. WINSOR:  As of January 2008, would | |
| 14 | you consider your opinions to be in any hypothetical | |
| 15 | state?  Were they in a final state?  What state were | 09:43:04 |
| 16 | your opinions in after the point when you turned that | |
| 17 | report in in January of 2008? | |
| 18 | MR. WARNE:  Objection.  Vague. | |
| 19 | THE WITNESS:  They were in a final state. | |
| 20 | Q.     BY MS. WINSOR:  Have they changed at all | 09:43:14 |
| 21 | since January of 2008 for any reason? | |
| 22 | A.     No. | |
| 23 | Q.     Have you given testimony in the state or | |
| 24 | federal proceedings that contained the -- as you know | |
| 25 | it, your -- all of your opinions and conclusions? | 09:43:26 |

AGO 000284

| | |
|---|---|
| 1 | And by that I'm not meaning to limit -- I withdraw |
| 2 | that question.  Never mind. |
| 3 | Have you -- can you think of anything that |
| 4 | you saw, read, reviewed, reflected upon, considered, |
| 5 | considered and rejected or used that hasn't been | 09:43:44 |
| 6 | explored in the many days of deposition testimony or |
| 7 | identified in your report that relates to your |
| 8 | opinions and conclusions and analysis of the |
| 9 | Moonlight fire? |
| 10 | MR. WARNE:  Objection.  Overbroad.  Vague. | 09:44:02 |
| 11 | MS. WINSOR:  It probably is. |
| 12 | THE WITNESS:  I can't think of anything. |
| 13 | Q.    BY MS. WINSOR:  Not as you sit here? |
| 14 | A.    Not as I sit here. |
| 15 | Q.    Okay.  Jacalyn Dunkle.  Again, to the extent | 09:44:16 |
| 16 | we haven't covered it, would you have had any reason |
| 17 | to consider, read, review, reflect upon, consider or |
| 18 | reject or use anything, any document, any idea that |
| 19 | was either conveyed from you to her or from her to |
| 20 | you in giving your testimony in the state or federal | 09:44:56 |
| 21 | proceedings? |
| 22 | A.    No. |
| 23 | Q.    Have you ever, to your knowledge, |
| 24 | communicated with Jacalyn Dunkle regarding anything |
| 25 | relating to your origin and cause opinions and | 09:45:10 |

AGO 000285

| | |
|---|---|
| 1 | conclusions regarding the Moonlight fire? |
| 2 | MR. WARNE: Objection. Vague. Overbroad. |
| 3 | THE WITNESS: Jacalyn Dunkle worked for me |
| 4 | in the Civil Cost Recovery Program. And so when I |
| 5 | was assigned to Sacramento as the battalion chief in |
| 6 | the Civil Cost Recovery Program, when we were |
| 7 | developing a list of all the current cases that Cal |
| 8 | Fire was involved in and the Moonlight fire would |
| 9 | have been one of those cases that we included. But I |
| 10 | don't know -- I don't believe that there was anything |
| 11 | as to my opinions and conclusions in that context. |
| 12 | Q. BY MS. WINSOR: Okay. And any of those |
| 13 | documents that you were generating that you just |
| 14 | mentioned, what were those documents? What was it? |
| 15 | A. I believe it was a spreadsheet. I'm not |
| 16 | sure. |
| 17 | Q. Is that spreadsheet something that you saw, |
| 18 | read, reviewed, reflected upon, considered, |
| 19 | considered and rejected or used in giving your |
| 20 | testimony in the state or federal proceedings? |
| 21 | A. No. |
| 22 | Q. Did you do any of those things with that |
| 23 | spreadsheet in forming your opinions and analysis |
| 24 | regarding the Moonlight fire investigation? |
| 25 | A. No. |

Time stamps: 09:45:24, 09:45:45, 09:46:05, 09:46:15, 09:46:29

| | | |
|---|---|---|
| 1 | MR. WARNE: Overbroad. Vague. | |
| 2 | Q. BY MS. WINSOR: Who is Chris Van Cor? | |
| 3 | A. Chris Van Cor is a fire captain specialist | |
| 4 | now assigned to the Lassen-Modoc Unit fire prevention | |
| 5 | bureau. | 09:46:44 |
| 6 | Q. Okay. And in 2009 would you have had any | |
| 7 | reason to communicate with Chris Van Cor regarding | |
| 8 | the origin and cause opinions and conclusions about | |
| 9 | the Moonlight fire? | |
| 10 | A. No, I don't believe so. | 09:46:56 |
| 11 | Q. Did you believe you did that in 2009? | |
| 12 | A. No, I don't think so. | |
| 13 | Q. Can you think of any documents that were | |
| 14 | prepared by you and sent to Chris Van Cor or vice | |
| 15 | versa, sent by him to you, that you saw, read, | 09:47:08 |
| 16 | reviewed, reflected upon, considered, considered and | |
| 17 | rejected or used in giving your state or federal | |
| 18 | testimony in these cases? | |
| 19 | MR. WARNE: Objection. Vague. | |
| 20 | THE WITNESS: No. | 09:47:18 |
| 21 | Q. BY MS. WINSOR: Would you have had a reason | |
| 22 | to look at a document from him in giving your | |
| 23 | testimony? | |
| 24 | A. No. | |
| 25 | MR. WARNE: Objection. Vague. Overbroad. | 09:47:25 |

AGO 000287

| 1 | Q. | BY MS. WINSOR:  Can you think of any |
|---|----|--------------------------------------|

1  Q.        BY MS. WINSOR:  Can you think of any
2  document, without limitation as to time, that has
3  ever been generated by Chris Van Cor that you used,
4  saw, read, reviewed, reflected upon, considered,
5  considered and rejected or used in forming your          09:47:38
6  opinions and analysis regarding the Moonlight fire?
7  A.        No.
8  Q.        Who is Bill Schultz?
9  A.        Bill Schultz is a forester I believe
10 assigned out of the northern region.                     09:47:53
11 Q.        Okay.  Have you ever communicated with Bill
12 Schultz regarding the Moonlight fire?
13 A.        No, I believe that was just in relation to
14 Mr. Butler.
15 Q.        Okay.  Can you think of any document          09:48:15
16 prepared by Bill Schultz and sent to you or prepared
17 by you and sent to Bill Schultz that you saw, read,
18 reviewed, reflected upon, considered, considered and
19 rejected or used regarding forming your opinions and
20 analysis for the Moonlight fire?                         09:48:29
21 A.        No.
22 Q.        Same questions.  Can you think of any
23 document prepared by you and sent to Bill Schultz,
24 prepared by Bill Schultz and sent to you, that you
25 saw, read, reviewed, reflected upon, considered,         09:48:41

AGO 000288

| | | |
|---|---|---|
| 1 | considered and rejected or used in giving your state | |
| 2 | or federal testimony in this matter? | |
| 3 | A.        No. | |
| 4 | MR. WARNE:  Objection.  Vague.  Overbroad. | |
| 5 | Q.        BY MS. WINSOR:  Who is Cory Ferguson, if you | 09:48:50 |
| 6 | know? | |
| 7 | A.        I don't know. | |
| 8 | Q.        Can you recall ever talking to a person | |
| 9 | named Cory Ferguson about the Moonlight fire for any | |
| 10 | reason? | 09:49:05 |
| 11 | A.        I'm not sure. | |
| 12 | Q.        Okay.  Who is Monty Messenger? | |
| 13 | A.        Monty Messenger is a battalion chief that | |
| 14 | works for Cal Fire. | |
| 15 | Q.        Did you have any contact with Monty | 09:49:25 |
| 16 | Messenger in 2007 regarding the Moonlight fire? | |
| 17 | A.        No. | |
| 18 | Q.        Did you ever speak to Monty Messenger at any | |
| 19 | point in time prior to January of 2008 regarding the | |
| 20 | Moonlight fire? | 09:49:37 |
| 21 | A.        No, not that I can remember. | |
| 22 | Q.        Has anything that Monty Messenger has said | |
| 23 | to you at any point in time had any role in your | |
| 24 | forming your opinions, analysis or conclusions | |
| 25 | regarding the origin and cause investigation for the | 09:49:56 |

AGO 000289

| | | |
|---|---|---|
| 1 | Moonlight fire? | |
| 2 | A.      No. | |
| 3 | Q.      Have you ever prepared a document and sent | |
| 4 | it to Mr. Messenger or had him prepare a document and | |
| 5 | send it to you that -- where you saw, read, reviewed, | 09:50:05 |
| 6 | reflected upon, considered, considered and rejected | |
| 7 | or used that document in forming your opinions and | |
| 8 | conclusions and analysis regarding the Moonlight | |
| 9 | fire? | |
| 10 | MR. WARNE:  Objection.  Vague.  Overbroad. | 09:50:20 |
| 11 | THE WITNESS:  No. | |
| 12 | Q.      BY MS. WINSOR:  Same questions.  Is there | |
| 13 | any document that Mr. Messenger prepared and sent to | |
| 14 | you or that you prepared and sent to him that you | |
| 15 | saw, read, reviewed, reflected upon, considered, | 09:50:31 |
| 16 | considered and rejected or used in giving your state | |
| 17 | or federal testimony in this matter? | |
| 18 | MR. WARNE:  Same objections. | |
| 19 | THE WITNESS:  No. | |
| 20 | Q.      BY MS. WINSOR:  All right.  In between | 09:50:41 |
| 21 | January of 2008 and June of 2009, can you think of | |
| 22 | any document that you saw, read, reviewed reflected | |
| 23 | upon, considered, considered and rejected or used | |
| 24 | that in any way -- and again, I'm saying that other | |
| 25 | than things that you may have testified to.  I know | 09:51:01 |

AGO 000290

CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION vs. EUNICE HOWELL
Joshua White, 05/18/2011

| | | |
|---|---|---|
| 1 | this is a broad question.  I'm just asking can you | |
| 2 | think of anything as you sit here that changed, | |
| 3 | altered or modified your opinions that you formed | |
| 4 | prior to January of 2008? | |
| 5 | MR. WARNE:  Objection.  The question is | 09:51:16 |
| 6 | vague. | |
| 7 | THE WITNESS:  No. | |
| 8 | MR. WARNE:  It's overbroad. | |
| 9 | Q.        BY MS. WINSOR:  Has anyone pressured you to | |
| 10 | change your opinions? | 09:51:21 |
| 11 | A.        No. | |
| 12 | MR. WARNE:  Same objection. | |
| 13 | Q.        BY MS. WINSOR:  Other than defense counsel? | |
| 14 | A.        No. | |
| 15 | MR. WARNE:  Same objections again. | 09:51:26 |
| 16 | MS. WINSOR:  Chief White, I'm -- I have no | |
| 17 | further questions.  I think I have four minutes left | |
| 18 | and I'll turn it back -- I'm going to use that four | |
| 19 | minutes to take a little break. | |
| 20 | THE VIDEOGRAPHER:  We are going off the | 09:51:41 |
| 21 | record at 9:51 a.m. | |
| 22 | (Recess taken.) | |
| 23 | (Dina Marcus now present.) | |
| 24 | THE VIDEOGRAPHER:  We are back on the record | |
| 25 | at 10:02 a.m. | 10:02:12 |

AGO 000291