1

2

3

4

5

6

7

8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   UNITED STATES OF AMERICA,

11             Plaintiff,                    No. CIV S-09-2445 KJM EFB

12        vs.

13   SIERRA PACIFIC INDUSTRIES, et al.,

14             Defendants.                   <u>ORDER</u>
     _____/

15

16        This matter was before the court on September 7, 2011, for hearing on the California

17   Department of Forestry and Fire Protection ("CalFire") and the California Attorney General's

18   Office's motion for a protective order and to quash Sierra Pacific Industries' subpoena to the

19   California Attorney General.  Deputy Attorney General Tracy Winsor appeared on behalf of

20   third parties CalFire and the California Attorney General.  Bill Warne, Meghan Baker and

21   Michael Schaps of Downey Brand appeared on behalf of Sierra Pacific Industries.  Todd Pickles

22   and Kelli Taylor appeared for the United States.  For the reasons explained below, the motion is

23   granted in part and denied in part.

24   I.   <u>Factual Background</u>

25        This court previously held that the United States waived any applicable privileges and

26   protections pertaining to certain documents that may have or should have affected the opinions

1

of two of the United States' expert witnesses, Josh White and Dave Reynolds, who prepared the Origin and Cause report for the Moonlight Fire.  Dckt. No. 210.  The court ordered the United States to produce "all documents and communications that White and Reynolds considered, generated, saw, read, reviewed, and/or reflected upon in connection with their analysis of the Moonlight Fire."  *Id.* at 19.

The United States represented that it did not produce some of the documents because it did not have possession, custody or control over them as the documents were solely held by CalFire.  The court denied SPI's motion to compel as to these documents and noted that Sierra Pacific would have to subpoena the documents from the state.  *Id.* at 18.  Sierra Pacific issued a subpoena to the California Attorney General.  CalFire then filed this motion, asking for a protective order or to quash Sierra Pacific's subpoena for production of documents.[1]

The documents at issue pertain to the United States' experts White and Reynolds, who helped prepare the Origin and Cause report for the Moonlight Fire.  White was an investigating officer for CalFire with respect to the Moonlight Fire.  Dckt. No. 285 at 4.  After January 2008, when he had finished the Origin and Cause Report and submitted it to CalFire,[2] he became a case manager for the Moonlight Fire in the state court litigation.  Dckt. 285 at 10.  According to CalFire, he "generated, received, and transmitted documents he had not considered and did not consider in his capacity as the origin and cause investigator for the Moonlight Fire."  *Id.*

Sierra Pacific has deposed White for a total of 16 days in the state and federal actions.  *Id.*  CalFire represents that it has already produced "all documents that White read, reviewed, relied upon, generated, received, considered, or considered and rejected in undertaking his 2007 investigation and analysis of the Moonlight Fire, and in writing his report about that

---

[1] Although more than 200 documents were originally in dispute, through the meet and confer process the parties narrowed the documents at issue to approximately two dozen.  Dckt. No. 285 at 33.

[2] After January 2008, CalFire claims that White made no edits to the report other than correcting a typographical error.  Dckt. 285 at 9.

1  investigation and analysis." Dckt. No. 285 at 11.  The remaining documents that CalFire refuses

2  to produce were authored by White in his separate capacity as a Moonlight Fire case manager.

3  *Id.* at 11.

4  As for Reynolds, CalFire retained him as an expert consultant in the Moonlight Fire

5  litigation in August 2010.  *Id.*  The only documents in the possession of the California Attorney

6  General's office "that reflect communications with Reynolds are limited to contract documents,

7  invoices, and one scheduling logistics communication."  Dckt. No. 285 at 12.  Thus, there are no

8  documents pertaining to Reynolds that are presently in dispute.  However, CalFire is concerned

9  that Sierra Pacific will continue to serve subpoenas on the California Attorney General in the

10  future for work that Reynolds has not yet done.  *Id.*

11  II.   The Parties' Arguments

12  The court must determine whether under these circumstances, where CalFire and the

13  United States have entered into a joint prosecution agreement, but CalFire is not a party to this

14  case, documents stemming from CalFire's use of White as a case manager and a discovery

15  consultant and retention of Reynolds as a consultant must be produced, despite the documents'

16  privileged nature, because the United States has designated White and Reynolds as testifying

17  experts in this action.

18  CalFire argues that Sierra Pacific's subpoena should be quashed because the documents

19  sought are privileged and work product, and that CalFire, as the holder of these privileges, has

20  done nothing to waive them.  CalFire further contends that Sierra Pacific's arguments are barred

21  by judicial estoppel, and that the subpoena "assumes too much and overreaches the Court's May

22  26, 2011, ruling."  Dckt. No. 285 at 7, 12.  Sierra Pacific argues that it is entitled to the

23  documents, as Fed. R. Civ. P. 26 creates a bright-line rule mandating disclosure of all documents

24  provided to testifying experts, and this trumps CalFire's privilege and work product claims, and

25  rebuts CalFire's other arguments.  *Id.* at 34-35.

26  ////

3

1   III.   <u>Rule 26 Trumps Privilege</u>

2       A.   <u>Existing Legal Standards</u>

3       The parties discuss several persuasive district court cases.  In *Bitler Investment Venture II*

4   *v. Marathon Ashland Petroleum*, 2007 WL 465444 (N.D. Ind. Feb. 7, 2007), one plaintiff

5   forwarded privileged documents to an expert witness without the knowledge or consent of the

6   other plaintiff or of the shared counsel for both plaintiffs.  The other plaintiff argued that the

7   documents should not be disclosed because both plaintiffs did not agree to the disclosure.  *Id.* at

8   *3.  The court rejected this argument and ordered that the documents be produced, finding:

9   "Because one of the purposes of disclosure under [an earlier case] is to assist opposing counsel

10  in uncovering all of the information that potentially influenced an expert's testimony, it makes

11  little difference whether the attorney or someone else provided the information and influenced

12  the expert's opinion." *Id.* at *4.  The court did not explicitly analyze whether the conduct of the

13  holder of the privilege was relevant, but did write that "counsel can easily protect genuine work

14  product by simply not divulging it to the expert . . . [and] instructing clients not to provide the

15  materials to the expert." *Id.* at *5.

16      *In re Commercial Money Center, Inc.*, 248 F.R.D. 532 (N.D. Ohio 2008), involved a

17  similar situation.  SafeCo and other Sureties entered into a joint-interest agreement and shared a

18  common consultant.  *Id.* at 535.  SafeCo disclosed the consultant as a testifying expert; the others

19  did not.  *Id.*  The other side sought discovery of all of the documents in the testifying expert's

20  file, including documents generated or reviewed by the expert witness in his role as a consultant

21  for the non-SafeCo Sureties.  *Id.*  The non-SafeCo Sureties argued that SafeCo could not waive

22  the privilege for all of them.  *Id.*  The court disagreed and ordered that the documents in the file

23  be produced.  *Id.*

24      The court's ruling was somewhat complicated.  First, the court noted that all of the

25  documents must be produced because the parties had entered into an Agreed Protocol which

26  provided that expert files must be produced.  *Id.* at 535.  Therefore, consistent with that protocol,

4

all of the documents in the expert's file had to be produced.  *Id.*  But next, the court wrote that it would "nonetheless analyze the documents under Rule 26, as it concludes that the vast majority of the documents must be produced under Rule 26 as well."  *Id.*

The court noted that Rule 26 required the disclosure of all documents given to testifying experts, and that "Rule 26 'trumps any assertion of work product or privilege.'"  *Id.* (internal citations omitted).  Next, the court disposed of the non-SafeCo Sureties' argument that the common interest doctrine protected the documents, because an unauthorized waiver by SafeCo did not operate as a waiver as to the non-SafeCo Sureties.  *Id.* at 536.  The court described this argument as seeking "an exception to the requirement of Rule 26 that a testifying expert disclose all information and data considered in forming the expert's opinion," and rejected the argument, writing:

> "Rule 26(a)(2)(B) 'trumps' any assertion of work product or privilege."  *Bitler*, 2007 WL 465444, at *3 (quoting *Karn*, 168 F.R.D. at 639).  Rule 26 contains no exception for documents provided to an expert by third parties.  Once an expert is designated, the expert must disclose all information and data considered in forming the expert's opinions. The Sixth Circuit requires that "all 'documents provided to a testifying expert' be disclosed."  *Reg'l Airport Auth.*, 460 F.3d at 715.  Moreover, in light of the purpose behind the disclosure requirement--to enable the opposing party to challenge the expert's opinions at trial--from whom the expert obtained the documents is simply not relevant.

*Id.* at 537.

The court went on to dispose of the non-SafeCo Sureties' argument that the documents need not be produced because they were reviewed by the expert solely in his role as a consultant for the non-SafeCo Sureties and did not relate to the opinions expressed in his expert report for SafeCo.  *Id.* at 538.  When an expert serves as both a litigation consultant and a testifying witness to the same party, the court noted, "an expert's proponent may still assert a privilege over such materials, but only over those materials generated or considered *uniquely* in the expert's role as consultant."  *Id.* (citing *S.E.C. v. Reyes,* 2007 WL 963422 at *2 (N.D. Cal. 2007)).  "If the line between consultant and witness is blurred, the dispute must be resolved in favor of the party seeking discovery."  *Id.*  The court noted that no precedent had applied this rule in a case where

1  an expert worked as a consultant for one party and as a witness for a different party, but held that

2  "under these circumstances," if the documents were related to the subject matter of the expert's

3  report, they should be produced.

4         The relevant circumstances that the court discussed included: SafeCo and the non-SafeCo

5  Sureties aligned their interests in obtaining the expert's consulting services; they shared him as a

6  consultant, and entered into an information sharing agreement with respect to his work; he was

7  not asked to keep, and did not keep, separate files for the work he did for SafeCo and the non-

8  SafeCo Sureties; and it was therefore reasonable to assume that the expert performed his work for

9  all of the Sureties jointly.  *Id.* at 538.  Relatedly, the Sureties had not met their burden of showing

10  that the documents at issue were generated or reviewed by the expert uniquely in his role as a

11  consultant.  *Id.* at 539.

12         The court addressed the non-SafeCo Sureties' argument that it would unfair to force them

13  to produce documents when only SafeCo had designated the expert to testify.  *Id.* at 541.  The

14  court wrote:

15         In invoking a "fairness" doctrine, the Sureties are asking the Court to balance the
          interests of the Sureties in withholding the documents against the interests of the
16         SafeCo Claimant Banks in obtaining them.  Even of [sic] the Court considered the
          equities in this case, the Sureties would not prevail. The Sureties created the
17         situation in which they now find themselves.  Moreover, the situation was
          forseeable and the Sureties could have taken steps to avoid it, but did not.  At the
18         time the Sureties entered into their Joint Information Sharing Agreement, they
          could have anticipated that one of them might later decide to designate Huhn as a
19         testifying expert.  They could have discussed the possibility and addressed it in the
          terms of the agreement so as to avoid the current situation.  They also could have
20         required Huhn to maintain separate files for the work he did for each of the
          Sureties individually, as well as a file for the work he did for the Sureties jointly.
21         They did neither.  Whatever hardship results from the instant circumstance, it is
          more fairly born by the parties who created the circumstance than by the SafeCo
22         Claimant Banks, who are entitled to the information under Rule 26.

23  *Id.* at 541.

24         Finally, the court found that a certain category of documents that were reviewed by the

25  expert solely in his role as a consultant for SafeCo were unrelated to the subject matter of his

26  report, and therefore did not have to be produced under Rule 26 (although they did have to be

6

1    produced under the Agreed Protocol).  *Id.* at 541.

2        In sum, the court held that 1) Rule 26's disclosure requirements generally trumps claims

3    of privilege or work product protection, but 2) if an expert serves as both a litigation consultant

4    and a testifying witness to the same party, only "those materials generated or considered *uniquely*

5    in the expert's role as consultant," may still be undisclosed as privileged, and 3) even if the court

6    considered the equities of the facts of the case, the non-SafeCo Sureties would not prevail because

7    they had failed to take precautions to prevent this situation.

8        The *Reyes* case that *Commercial Money Center* cited is persuasive on the issue of the

9    "multiple hats" problem–that is, the discoverability of documents generated and reviewed by an

10   expert who serves as both a consultant and a testifying expert.  2007 WL 963422 at *1-*2.  *Reyes*

11   noted that courts generally held that where the same expert serves both as a testifying expert and

12   as a litigation consultant for the same party, only materials "generated or considered uniquely in

13   the expert's role as consultant" are discoverable.  *Id.* at *1.  *Reyes* concluded that the expert's

14   proponent could assert the work-product privilege only as to materials that did not pertain to the

15   subject matter on which his experts testified.  *Id.* at *2.  "Any ambiguity as to the role played by

16   the expert when reviewing or generating the documents should be resolved in favor of the party

17   seeking discovery."  *Id.* (citing *B.C.F. Oil Refining, Inc. v. Consol. Edison Co. of New York*, 171

18   F.R.D. 57, 61-62 (S.D.N.Y. 1997)).  Specifically, *Reyes* stated:

19           This Court finds that the appropriate test for disclosure is not what function the
             expert was ostensibly serving when he reviewed or generated the particular
20           documents in question.  Rather, the test must be whether the documents reviewed
             or generated by the expert could reasonably be viewed as germane to the subject
21           matter on which the expert has offered an opinion.

22   *Id.* at *2 n.2.

23       B.    Analysis

24       Although the United States and CalFire have entered into a joint prosecution agreement,

25   they have not jointly retained White or Reynolds as expert witnesses.  In this case, White and

26   Reynolds have dual capacities–they are non-retained, non-reporting experts for the United States

1   in this action, and they are also (at least thus far) non-testifying litigation consultants to CalFire in

2   pending state court litigation related to the same fire at issue in this case.

3        *Bitler* and *Commercial Money Center* both hold that the disclosure requirements of Rule

4   26 trump privilege and work product protections, regardless of who provided the documents to

5   the expert witness. *See Bitler*, 2007 WL 465444 at *4; *Commercial Money Center, Inc.*, 248

6   F.R.D. at 537.  The cases did not make any exceptions to this rule pertaining to the identity of the

7   holder of the privilege or whether the holder of the privilege had waived it through their conduct,

8   although both cases noted that the party disadvantaged by the ruling had failed to act diligently.

9   *See Bitler*, 2007 WL 465444 at *5 (noting that counsel in that case had failed to protect its work

10  product); *Commercial Money*, 248 F.R.D. at 541 (discussing the equities of the situation and

11  finding that the non-SafeCo Sureties were at fault for creating the situation).  Here, CalFire, who

12  is not a party to this action, is the holder of the privilege, and has not explicitly waived the

13  privilege by its conduct.  However, CalFire voluntarily entered into a joint prosecution agreement

14  with the United States, and is reaping the benefits of that arrangement.

15       Both *Commercial Money* and *Reyes* found that Rule 26 trumped all claims of privilege

16  even where the expert witness was acting in a dual role as a litigation consultant and as a

17  testifying expert.  *Reyes* announced that the test for whether the materials at issue were generated

18  or considered uniquely in the expert's role as a consultant, and therefore protected, was not "the

19  particular role ostensibly played" by the expert at the time the materials were generated or

20  reviewed, but whether the materials could reasonably be viewed as germane to the subject matter

21  on which the expert has offered an opinion.  2007 WL 963422 at *2 n.2.  The court finds the

22  reasoning of *Commercial Money Center* and *Reyes* persuasive and adopts that test here.

23       Following the test in *Commercial Money Center* and *Reyes*, the court must determine

24  whether the documents at issue here were generated or considered uniquely in White's role as a

25  consultant for CalFire, keeping in mind that if the line between consultant and witness is blurred,

26  ////

1  the documents must be produced.[3]  *Reyes* explains that the test to determine whether documents

2  are generated or considered uniquely in the role of a consultant is whether the documents

3  generated or reviewed by the expert could reasonably be viewed as germane to the subject matter

4  on which the expert has offered an opinion.

5          White, as a non-retained testifying expert for the United States in this case, has offered

6  opinions on the origin and cause of the Moonlight Fire.  He is also a current employee of CalFire,

7  and acted as a litigation consultant for CalFire in litigation pertaining to the Moonlight Fire.  His

8  origin and cause investigation lasted from September 3, 2007 until September 17, 2007; he

9  completed a draft of the report "around October 2007," and finally submitted the report in January

10  2008.  Dckt. No. 289 at 2.  White declares that at that time, his opinions regarding origin and

11  cause were final (with the possible exception of correcting a typographical error).  *Id.*  No

12  attorneys provided input regarding the preparation of the report.  *Id.*

13          After he completed and submitted the Origin and Cause report, in January 2008, White

14  became the "case manager" for the Moonlight Fire for CalFire.  *Id.* at 3.  He declares that his

15  duties as a "case manager were different and separate from my role as the case investigator."  *Id.*

16  As a case manager, he acted as CalFire's liaison with the California Attorney General's office.

17  *Id.*  He "ensured that the documentation related to the costs of suppressing the fire were

18  completed and submitted" to the AGO; helped with scheduling; drafted the letter of demand; and

19  served as a discovery consultant by helping the AGO in prepare written discovery and prepare for

20  depositions.  *Id.*

21          From these facts, it appears that at the time White generated or reviewed the documents at

22  issue, he was playing the role of a litigation consultant.  However, under *Reyes*, this is not the

23  controlling test.  Rather, the proper inquiry is whether the documents could reasonably be viewed

24  _____

25          [3] No documents generated or reviewed by Reynolds are currently in dispute.  The court
    does not analyze whether hypothetical documents that may be generated or reviewed in the
26  future need be produced.

1    as germane to White's opinions regarding the origin and cause of the Moonlight Fire.

2           Based on the court's review of the documents submitted for in camera review, many of the

3    documents meet this test and those documents must be produced.  However, documents numbered

4    53, 75, 76, 83, 154, and 156, as well as the documents titled, "Email from Josh White to Chris

5    Van Cor," and "Email from Alan Carlson to Joshua White and Mike Jarvis," could not reasonably

6    be viewed as germane to White's opinions on origin and cause, and need not be produced.  All of

7    the other documents submitted for in camera review could reasonably be viewed as germane to

8    origin and cause and must be produced.

9    IV.    Judicial Estoppel

10          CalFire argues that Sierra Pacific should be judicially estopped from arguing that the

11   documents could have influenced White's percipient expert opinions and conclusions about the

12   origin and cause of the Moonlight Fire.  Dckt. No. 285 at 15.  CalFire argues that Sierra Pacific

13   has advanced inconsistent arguments in the state and federal actions and are gaining an unfair

14   advantage by misleading at least one court.  *Id.*

15          Judicial estoppel prevents a party from prevailing on an argument in one phase of a case

16   and then relying on a contradictory argument to prevail in another phase.  *New Hampshire v.*

17   *Maine*, 532 U.S. 742, 749 (2001).  Factors relevant to determining whether a party should be

18   judicially estopped from advancing a position include: 1) the party's position is "clearly

19   inconsistent" with its earlier position; 2) the judicial acceptance of the party's second position

20   would create the "perception that either the first or the second court was misled;" and 3) the party

21   would derive an unfair advantage or impose an unfair detriment if not estopped.  *Id.* at 750.

22          Sierra Pacific did not advance inconsistent arguments in state court and in this court.  In

23   state court, when Sierra Pacific wanted to depose White in the percipient phase of the state court

24   cases, Sierra Pacific argued that White was a witness with percipient knowledge.  *See* Dckt. No.

25   288, Ex. D (stating that during the percipient witness deposition of White, Sierra Pacific would

26   not explore White's opinions formed after the litigation commenced, and that had not yet been

1   provided during expert discovery; and stating that Sierra Pacific wanted information about

2   White's first hand observations and investigation of the fire, which form the basis of the report

3   that he wrote before the cases were filed).  This is not inconsistent with Sierra Pacific's current

4   argument.  Sierra Pacific wanted to depose White as a percipient witness during the first phase of

5   discovery, and it promised to limit the deposition to those opinions which stemmed only from

6   White's percipient knowledge.  This does not mean that White never formed expert opinions with

7   the input of counsel, and it does not mean that Sierra Pacific is precluded from seeking documents

8   that may show how his expert opinions were influenced.

9          Accordingly, accepting Sierra Pacific's argument would not create a perception that either

10  the state court or this court was misled.  Neither would accepting Sierra Pacific's argument give

11  Sierra Pacific an unfair advantage or impose an unfair detriment on CalFire or the United States.

12  V.      Burdensomeness of the Subpoena

13         CalFire also argues that the subpoena is burdensome and overreaches the court's previous

14  ruling.  *See* Dckt. No. 285 at 15, 18.  But CalFire admits that there are only about two dozen

15  documents at issue, and CalFire has already submitted the documents for in camera review.

16  CalFire has already expended the effort to comply with the subpoena; clearly it is not unduly

17  burdensome.

18         CalFire also objects that the subpoena "assumes too much and overreaches the Court's

19  May 26, 2011, ruling."  *Id.*  CalFire notes that the court's previous ruling allowed discovery of

20  "documents and communications that White and Reynolds considered, generated, saw, read,

21  reviewed, and/or otherwise reflected upon in connection with their analysis of the Moonlight

22  Fire."  Dckt. No. 285 at 18.  But Sierra Pacific's subpoena asks for all documents authored, sent

23  or received by the experts relating to the Moonlight Fire, without reference to the "analysis" of

24  the Fire.  CalFire states that it has already produced all of the documents referred to in the court's

25  order, and it need not produce documents that the experts did not review in connection with their

26  analysis of the fire.

1      As the court has explained in the past, it is not enough for an expert to say that he did not

2  consider a document in his analysis of the fire.  Rather, the other side ought to be able to test an

3  expert's opinions against documents that he could have, but did not consider in his analysis.

4  Documents that are related to the fire, but were not considered by the experts in their analysis,

5  may be valuable for testing the reliability of the experts' opinions.  The distinction between "in

6  connection with their analysis of the Moonlight Fire" and "related to the Moonlight Fire" makes

7  little difference.

8  VII.   Conclusion

9      For the reasons explained above, it is hereby ORDERED that the California Attorney

10  General and CalFire's motion to quash Sierra Pacific's subpoena for the production of documents

11  is granted as to documents numbered 53, 75, 76, 83, 154, and 156, as well as the documents titled,

12  "Email from Josh White to Chris Van Cor," and "Email from Alan Carlson to Joshua White and

13  Mike Jarvis," and denied as to the rest of the documents submitted for in camera review.

14  CalFire's request for a protective order is denied.

15  DATED:  November 8, 2011.

16

17                                    EDMUND F. BRENNAN
                                     UNITED STATES MAGISTRATE JUDGE

18

19

20

21

22

23

24

25

26

12