IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

            Plaintiff,

       v.

SIERRA PACIFIC INDUSTRIES; et al.,

            Defendants.

_____/

NO. CIV S-09-2445 KJM-EFB

<u>ORDER</u>

       This matter comes before the court on the motion for summary judgment filed by Sierra Pacific Industries ("SPI") and Eunice Howell and Howell's Forest Harvesting (together, "Howell"). (ECF 417.)  The motion was heard on April 12, 2012; Kelli Taylor, Richard Elias and Glen Dorgan appeared for plaintiff; William Warne, Annie Amaral, Meghan Baker, Michael Schaps and Michael Thomas appeared for SPI; Derek Van Deviver appeared for Howell; Richard Linkert appeared for W.M. Beaty and Associates, Inc. ("Beaty"); and Steven Ragland appeared for the defendant Landowners.[1]

_____

[1] Landowners refers to the following defendants: Anne McKeever Hatch, individually and as trustee of the Hatch 1987 Revocable Trust, Richard L. Greene, individually and as trustee of the Hatch Irrevocable Trust, Brooks Walker, Jr., individually and as trustee of the Brooks Walker, Jr. Revocable Trust and the Della Walker Van Loben Sels Trust for the Issue of Brooks Walker, Jr., Brooks Walker III, individually and as trustee of the Clayton Brooks Danielsen Trust, the Myles Walker Danielsen Trust, the Margaret Charlotte Burlock Trust, and the

1    For the following reasons, SPI and Howell's motion is hereby denied in part and

2    granted in part.

3    I.  PROCEDURAL HISTORY

4    The Moonlight Fire ignited on September 3, 2007.  (Defs.' Reply to Pl.'s

5    Statement of Undisputed Facts ¶ 1, ECF 450 (hereinafter "ECF 450").)

6    Plaintiff filed the original complaint in this case on August 31, 2009.  (ECF 1.)

7    On May 26, 2010, plaintiff filed the operative second amended complaint against defendants

8    SPI, Beaty, Howell and Landowners.  (ECF 53 ¶¶ 5-8.)  The second amended complaint alleges

9    seven causes of action: 1) negligence against all defendants; 2) liability under the Fire Liability

10   Law, California Health & Safety Code §§ 13007-13009.1 & Civil Code §§ 3287 & 3288 against

11   all defendants; 3) negligence and negligence per se under 14 Cal. Code Regs. § 938.8 & the Fire

12   Protection Plan against all defendants; 4) trespass by fire against all defendants; 5) negligent

13   supervision against SPI, Beaty, Landowners and Eunice Howell; 6) negligent hiring against SPI,

14   Beaty and Landowners; and 7) interest and penalties against all defendants.  (*Id.*)

15   Beaty and Landowners filed their answers to the second amended complaint on

16   June 10, 2010 (ECF 54 & 55 respectively); SPI and Howell filed their answers to the second

17   amended complaint on June 15, 2010 (ECF 56 & 57 respectively).

18   SPI and Howell (together, for purposes of this order, "defendants") filed the

19   present motion for summary judgment on February 29, 2012.  (ECF 417.)  Plaintiff filed its

20

21   Benjamin Walker Burlock Trust, Leslie Walker, individually and as trustee of the Brooks
     Thomas Walker Trust, the Susie Kate Walker Trust, and the Della Grace Walker Trust,
22   Wellington Smith Henderson, Jr., individually and as trustee of the Henderson Revocable Trust,
     Elena D. Henderson, Mark W. Henderson, individually and as trustee of the Mark W. Henderson
23   Revocable Trust, John C. Walker, individually and as trustee of the Della Walker Van Loben
     Sels Trust for the Issue of John C. Walker, James A. Henderson, Charles C. Henderson,
24   individually and as trustee of the Charles C. and Kirsten Henderson Revocable Trust, Joan H.
     Henderson, Jennifer Walker, individually and as trustee of the Emma Walker Silverman Trust
25   and the Max Walker Silverman Trust, Kirby Walker, Lindsey Walker (a.k.a. Lindsey Walker-
     Silverman), individually and as trustee of the Reilly Hudson Keenan Trust and the Madison
26   Flanders Keenan Trust.

1    opposition on March 28, 2012.[2]  (ECF 434.)  Defendants filed their reply on April 5, 2012.  (ECF

2    449.)

3    II.   ANALYSIS

4          A.      Evidentiary Objections[3]

5                  Defendants ask the court to strike plaintiff's separate statement for violating

6    Local Rule 260 (mistakenly referred to as Rule 206), Federal Rule of Civil Procedure 11, and 28

7    U.S.C. § 1927.  (ECF 450.)  Defendants contend plaintiff's "undisputed facts" are in fact "hotly

8    disputed."  The same can be said of defendants' statement.  This request is denied.

9                  Defendants object to the Declaration of Joshua White, current Deputy Chief for

10   the California Department of Forestry and Fire Protection who was a lead investigator of the

11   Moonlight Fire, as a sham affidavit.  (*See* ECF 450 at ¶ 32.)  "The general rule in the Ninth

12   Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior

13   deposition testimony."  *Nelson v. City of Davis*, 571 F.3d 924, 927 (9th Cir. 2009) (internal

14   quotation omitted).  This rule "should be applied with caution."  *Van Asdale v. Int'l Game Tech.*,

15   577 F.3d 989, 998 (9th Cir. 2009) (internal quotation omitted).  The sham affidavit rule "does

16   not apply to every instance when a later affidavit contradicts deposition testimony."  *Kennedy v.*

17   *Allied Mut. Ins. Co.*, 952 F.2d 262, 267 (9th Cir. 1991).  Before applying the sham affidavit rule,

18   "the district court must make a factual determination that the contradiction was actually a

19   'sham.'"  *Id.*  "[T]he inconsistency between a party's deposition testimony and affidavit must be

20   clear and unambiguous to justify striking the affidavit."  *Van Asdale*, 577 F.3d at 989-99.  The

21   /////

22

23          [2] In their reply, defendants asked the court to strike plaintiff's amended opposition
     because it was filed a day late.  (Reply at 1 n.1.)  At hearing, plaintiff's counsel explained the
24   only amendment to the timely filed opposition was the table of contents; defense counsel stated
     it had no objection to the court's considering the amended table of contents.  (Hearing Transcript
25   at 50:12-20, ECF 463.)  Accordingly, defendants' request to strike is denied.

26          [3] The court addresses only objections to that evidence on which it relies.

1  court will not strike the White Declaration in whole; rather, it will follow the Ninth Circuit's

2  guidance with respect to individual facts the court relies on here.

3          Defendants also object in particular to the portions of the White Declaration in

4  which White makes statements regarding what Kelly Crismon, the Howell employee operating

5  the bulldozer that allegedly ignited the Moonlight Fire, told him as hearsay and lacking

6  foundation.  (*See* ECF 450 ¶ 32.)  "Only admissible evidence may be considered in ruling on a

7  motion for summary judgment."  *Collier v. Turner Indus. Group, L.L.C.*, 797 F. Supp. 2d 1029,

8  1039 (D. Idaho 2011) (citations omitted).  These statements are admissible as party admissions

9  as to Howell.  FED. R. EVID. 801(d)(2); *cf. Fenner v. Dependable Trucking Co.*, 716 F.2d 598

10 (9th Cir. 1983); *see also Hughes v. United States*, 953 F.2d 531, 543 (9th Cir. 1992) ("[T]he facts

11 underlying the affidavit must be of a type that would be admissible as evidence . . . .").  SPI and

12 Howell's relationship is discussed below at pages 10-13.   As will be discussed, Howell's status

13 in relation to SPI is a triable question of fact; in any event, "a finding that a speaker is an

14 independent contractor does not preclude a finding that the speaker is also an agent for some

15 purposes."  *United States v. Bonds*, 608 F.3d 495, 505 (9th Cir. 2010) (emphasis omitted).

16 Howell and, by extension, its employees can be agents of SPI for purposes of Rule 801(d)(2)(D)

17 where there is "evidence [SPI, as principal] directed or controlled any of [Howell's] activities."

18 *Collier*, 797 F. Supp. 2d at 1040 (internal quotation omitted).  On summary judgment, all

19 inferences are drawn in favor of the nonmoving party.  Accordingly, Crismon's statements to

20 White are admissible for purposes of deciding the pending motion; this "does not mean the

21 opinion is admissible at trial." *Collier*, 797 F. Supp. 2d at 1041.

22          Defendants object to other portions of the White Declaration as being based on

23 speculation and lacking foundation.  (*See* ECF 450 ¶ 30.)  The court will address such objections

24 as necessary below, but defendants' general objection to the White Declaration on these grounds

25 is overruled.

26 /////

1  Defendants' objections to the admissibility of Exhibits H, V and AA of the Elias

2  Declaration based on lack of foundation are overruled.  (ECF 450 ¶¶ 105, 127 and 118.)  It is

3  well established that "[a] document which lacks a proper foundation to authenticate it cannot be

4  used to support a motion for summary judgment."  *Hal Roach Studios, Inc. v. Richard Feiner &*

5  *Co.*, 896 F.2d 1542, 1551 (9th Cir. 1989).  The Elias Declaration states Exhibit H "is a copy of

6  selected excerpts from the deposition of Damon Baker testifying as a corporate representative

7  under Rule 30(b)(6)," Exhibit V "is a copy of selected excerpts of the deposition of Edward

8  Murphy testifying as a corporate representative for Sierra Pacific under Rule 30(b)(6)," and

9  Exhibit AA is "a copy of selected excerpts from the deposition of John Forno, a Sierra Pacific

10  forester."  (Elias Decl. ¶¶ 3, 17 and 22.)  Each exhibit "identifies the names of the deponent and

11  the action and includes the reporter's certification that the deposition is a true record of the

12  testimony of the deponent."  *Orr v. Bank of Am.*, 285 F.3d 764, 774 (9th Cir. 2002).

13  Accordingly, the depositions do not lack foundation.  Defendants' objections to Exhibit H based

14  on hearsay and lack of foundation are also overruled for the same reasons the objections to

15  Crismon's statements to White were overruled: the testimony of Baker, Howell's designated

16  representative, as to what Forno, SPI's forester, told him is not hearsay but a party admission.

17  The court notes that defendants do not dispute the fact of what was said for purposes of this

18  motion.  (ECF 450 ¶ 105.)

19  Defendants also object to many of plaintiff's proffered facts by claiming they lack

20  foundation.  (*See, e.g.*, ECF 450 ¶ 101.)  "On summary judgment, evidence need not be in a form

21  that is admissible at trial. [citation] Accordingly, as long as a party submits evidence, which,

22  regardless of its form, may be admissible at trial, it may be considered on summary judgment."

23  *Collins v. Mendoza-Powers*, No. 1:06-CV-1608-AWI-GSA, 2009 Dist. LEXIS 13468, at *15 n.4

24  (E.D. Cal. Feb. 23, 2009).  Defendants' lack of foundation objections are overruled, unless

25  otherwise stated below.

26  /////

Defendants also object to much of plaintiff's proffered evidence as being immaterial.  (*See, e.g.*, ECF 450 ¶ 74.)  The court is only concerned here with issues of material fact; accordingly, if the court has considered a fact, the court has deemed it to be material.  This objection will not be addressed on a fact-by-fact basis.

B.      Standard

A court will grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The "threshold inquiry" is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).[4]

The moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The burden then shifts to the nonmoving party, which "must establish that there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986).  In carrying their burdens, both parties must "[cite] to particular parts of materials in the record [or show] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support that fact." FED. R. CIV. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[the nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts").  Moreover, "the requirement is that there be no *genuine* issue of *material* fact . . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247-48 (emphasis in original).

---

[4] Rule 56 was amended, effective December 1, 2010.  However,  it is appropriate to rely on cases decided before the amendment took effect, as "[t]he standard for granting summary judgment remains unchanged." FED. R. CIV. P. 56, Notes of Advisory Comm. on 2010 amendments.

In deciding a motion for summary judgment, the court draws all inferences and views all evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008).   "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

C.    Application

1.    Negligence Per Se

"To state a cause of action under the negligence per se doctrine, the plaintiff must plead four elements: (1) the defendant violated a statute or regulation, (2) the violation caused the plaintiff's injury, (3) the injury resulted from the kind of occurrence the statute or regulation was designed to prevent, and (4) the plaintiff was a member of the class of persons the statute or regulation was intended to protect."  *Alejo v. City of Alhambra*, 75 Cal. App. 4th 1180, 1184-85 (1999) (citing CAL. EVID. CODE § 669).  Plaintiff pled defendants violated 14 California Code of Regulations § 938.8(a)[5] (Second Am. Compl. ¶¶ 40-45), which provides: "The timber operator or his/her agent shall conduct a diligent aerial or ground inspection within the first 2 hours after cessation of felling, yarding, or loading operations each day during the dry period when fire is likely to spread. The person conducting the inspection shall have adequate communication available for prompt reporting of any fire that may be detected."

Defendants contend that plaintiff cannot establish negligence per se in accordance with 14 California Code of Regulations § 938.8 because the regulation applies only to "felling, yarding, or loading," whereas plaintiff is attempting to establish negligence per se in Howell's building of water bars.  (Mot. at 3, ECF 417-1.)  Defendants explain, "although the U.S. argues

---

[5] Plaintiff originally pled negligence per se through violation of Howell's Fire Protection Plan as well.  Defendants in their motion contend that negligence per se cannot be established using the plan.  (Mot. at 9.)  Plaintiff has abandoned this argument by not addressing it in its opposition.

1    that the scant yarding Crismon performed on September 3rd triggered section 938.8's fire watch

2    requirement, the government does not contend that Crismon started the Moonlight Fire by

3    yarding. On the contrary, the government contends that Crismon started the fire when his dozer

4    struck a rock while being used to build water bars. . . . It is axiomatic that the violation of a

5    regulation constitutes negligence per se only if the violation causes the plaintiff's harm." (Reply

6    at 5 (emphasis omitted).)  Defendants further contend that were plaintiff to rely upon Crismon's

7    yarding, which he finished before 10 a.m., he satisfied all associated fire watch requirements.

8    (Mot. at 3.)

9           Plaintiff contends that § 938.8's inspection requirement was triggered by

10   Crismon's yarding activities and that its injuries were proximately caused by the fire's growth

11   resulting from defendants' alleged failure to inspect in violation thereof.[6]  (Opp'n at 17.)

12   Specifically, Crismon yarded logs on the portion of the trail where the fire started and did not

13   conduct the diligent inspection required by § 938.8.  (*Id.* at 17.)  Plaintiff also disputes that there

14   was any inspection at all, aerial or otherwise.  (*Id.* at 19.)

15          There is a genuine question of material fact as to whether § 938.8 was triggered

16   by Crismon's activities.  Plaintiff contends that on September 3, 2007, Bush and Crismon were

17   using bulldozers to both build water bars and yard logs and that Crismon engaged in these

18   activities in the area where the fire originated.  (ECF 450 ¶ 32; White Decl. ¶¶ 22-23; Elias

19   Decl., Ex. G, Crismon Dep. at 664:1-14.)  Defendants dispute the contention that Crismon

20   yarded logs in the origin area in the afternoon of September 3, 2007, contending instead that

21   Crismon testified that any yarding in the origin area occurred before 10:00 a.m.  (Warne Decl.,

22

23          [6] Defendants contend incorrectly that the proximate cause requirement of California
     Evidence Code § 669(a)(2) requires that the fire have been caused by the activity that triggered
     § 938.8's inspection requirements.  (*See* Reply at 5.)  Negligence per se requires that the injury

24   be proximately caused by the violation; here, plaintiff contends that its injury was caused by
     defendants' "failure to detect, control, and suppress the Moonlight Fire before it spread to

25   National Forest System lands," resulting from their violation of § 938.8's inspection
     requirement.  (Second Am. Compl. ¶¶ 42-43.)  There is no requirement that the activity which

26   triggered the applicability of § 938.8 have caused the fire.

1   Ex. 17, Crismon Dep. at 239:2-8.)  In paragraphs 22 and 23 of his declaration, White states that

2   he and Reynolds hiked with Crismon to the origin area; Crismon told him he had operated his

3   bulldozer in that specific area on September 3, 2007 and that he yarded logs from that area to

4   another area at about 12:45 p.m.  (*See* ECF 450 ¶ 32.)  Defendants have not cited to anything in

5   the record that would indicate White's statement is a sham.  *See Orr*, 285 F.3d at 775 ("'Judges

6   need not paw over the files without assistance from the parties.'" (quoting *Huey v. UPS, Inc.*,

7   165 F.3d 1084, 1085 (7th Cir. 1999)).  Plaintiff further alleges that "Crismon ignited the

8   Moonlight Fire at about 12:15 p.m. when the grouser tracks or blade of his bulldozer struck a

9   rock, creating sparks and hot metal fragments that ignited the surrounding dry, fine fuels."  (ECF

10  450 ¶ 30; White Decl. ¶¶ 5, 46, and 47.)  Defendants dispute that the fire was ignited at 12:15

11  p.m. and by Crismon's bulldozer striking a rock.  (ECF 450 ¶ 30.)  On this record there is a

12  genuine dispute of material fact.  It is not for the court to weigh the disputed evidence at this

13  stage; rather, "[t]hese determinations are within the province of the factfinder at trial."  *Nelson*,

14  571 F.3d at 928 (internal quotation omitted).

15          Whether a § 938.8 compliant fire watch occurred also is genuinely disputed.

16  Plaintiff contends there was neither a ground nor an aerial inspection.  (Opp'n at 19-20.)

17  Defendants contend they had until 3:00 p.m. to fulfill § 938.8's fire watch requirements and they

18  in fact did; specifically, defendants' aerial fire patrol noticed and began investigating a

19  suspicious haze before 2:24 p.m. and Bush attempted to return to the worksite within two hours,

20  at which time he spotted the fire.  (Mot. at 7-8.)  Here, the court must draw all inferences in favor

21  of the nonmoving party.  Accordingly, the court accepts for purposes of this analysis that

22  Crismon and Bush ceased operations by 1:00 p.m.  It is undisputed that no ground inspection

23  occurred, diligent or otherwise.  (*See* Mot. at 8; Opp'n at 19.)  Rather, while Bush attempted to

24  return to the site, he was unable to; therefore, no inspection occurred.  *See* 14 Cal. Code Regs. §

25  938.8 ("The timber operator or his/her agent shall conduct a diligent aerial or ground inspection

26  within the first 2 hours after cessation of felling, yarding, or loading operations each day during

9

the dry period when fire is likely to spread.").  Whether an aerial inspection occurred is disputed.
Plaintiff contends that despite the fact that an air patrol spotted the fire, it did not satisfy § 938.8
because the air patrol did not know there was an active logging operation occurring and was not
scheduled to fly over the area where Crismon and Bush were working until 5:00 p.m.  (Opp'n at
20.)  Rather, "[a] diligent aerial inspection would have required the pilot to know about the
logging activities and to flyover the specific area specifically looking for signs of incipient fire
there."  (*Id.*)  Defendants contend it is undisputed the air patrol was diligent by virtue of the fact
that it spotted the fire.  (Reply at 7.)  "Diligent" is defined as "careful; attentive; persistent in
doing something."  BLACK'S LAW DICTIONARY (9th ed. 2009).  Conduct is not diligent simply
because it achieved a desired result.  Whether or not the aerial inspection relied upon by
defendants complied with § 938.8 is a question of fact for the jury to determine at trial.  *See
DiRosa v. Showa Denko K.K.*, 44 Cal. App. 4th 799, 805-06 (1996) (whether defendants violated
a regulation such as § 938.8 is a question for the trier of fact ).

        Defendants' motion for summary judgment is denied as to negligence per se.

        2.    Negligent Hiring[7] and Supervision

        Defendants contend that SPI has hired Howell annually since 1989 to conduct
logging operations; Howell did not have any known State Forest Practice violations, nor had it
ever been accused of starting a fire.  (Mot. at 12.)  Defendants also contend that SPI had no duty
to supervise Howell because Howell was an independent contractor.  (*Id.* at 14.)  Defendants
further contend that, even if SPI had assumed a duty to supervise Howell, the three fires[8] that
would have alerted SPI to Howell's alleged ineptness had not occurred or were still being

       [7] Plaintiff has withdrawn its claim for negligent hiring (Defs.' Response to Pl.'s Reply to
Defs.' Statement of Undisputed Facts ¶ 57, ECF 451 (hereinafter "ECF 451"); accordingly,
defendants' motion for summary judgment as to this claim is denied as moot.

       [8] The Greens Fire occurred on June 21, 2007; the Lyman Fire occurred on August 17,
2007; and the Sheep Fire occurred on September 18, 2007.  (Opp'n at 22-23; First Am. Compl.
¶ 18.)  Plaintiff has abandoned its reliance on the Sheep Fire as support for this claim by not
referencing it in its opposition.

1    investigated at the time of the Moonlight Fire.  (*Id.* at 18.)  Furthermore, plaintiff has not shown

2    that SPI's failure to supervise was the proximate cause of the Moonlight Fire.  (*Id.*)

3            Plaintiff contends SPI is liable for negligent supervision of Howell, as SPI

4    exercised control over Howell's operations; Howell was SPI's agent.  (Opp'n at 21, 23; *see also*

5    Second Am. Compl. ¶¶ 10, 12.)  In spite of its control, SPI did not address Howell's deficiencies

6    following the two fires involving Howell's operations, which occurred before the Moonlight

7    Fire.  (Mot. at 22.)  Plaintiff contends that "Sierra Pacific's argument that it was not on notice of

8    the Greens and Lyman fires because Forest Service investigation reports were not issued until

9    after the Moonlight Fire is preposterous. Bush admitted that he caused the Greens Fire, and

10   Howell's and Beaty understood the same. Likewise, Howell's knew the Lyman Fire was caused

11   by an operations rock strike the day after it happened."  (*Id.* at 25.)

12           Whether one is an independent contractor or an agent is a question of fact.

13   *Estrada v. FedEx Ground Package Sys., Inc.*, 154 Cal. App. 4th 1, 11 (2007).  "[T]here is no

14   shorthand formula or magic phrase that can be applied to find [whether Howell is an agent or

15   independent contractor], but all of the incidents of the relationship must be assessed and weighed

16   with no one factor being decisive."  *Nat'l Labor Relations Bd. v. United Ins. Co.*, 390 U.S. 254,

17   258 (1968).  Factors to be considered in determining whether one is an agent include: "(a) the

18   extent of control which, by the agreement, the master may exercise over the details of the work;

19   (b) whether or not the one employed is engaged in a distinct occupation or business; (c) the kind

20   of occupation, with reference to whether, in the locality, the work is usually done under the

21   direction of the employer or by a specialist without supervision; (d) the skill required in the

22   particular occupation; (e) whether the employer or the workman supplies the instrumentalities,

23   tools, and the place of work for the person doing the work; (f) the length of time for which the

24   person is employed; (g) the method of payment, whether by the time or by the job; (h) whether

25   or not the work is a part of the regular business of the employer; (i) whether or not the parties

26   believe they are creating the relation of master and servant; and (j) whether the principal is or is

11

1    not in business." *Toyota Motor Sales U.S.A. v. Superior Court*, 220 Cal. App. 3d 864, 874-75

2    (1990) (quotation omitted).  "The right to control the means by which the work is accomplished

3    is clearly the most significant test of the employment relationship . . . ." *Tieberg v.*

4    *Unemployment Ins. Appeals Bd.*, 2 Cal. 3d 943, 950 (1970); *see also Carnation Co. v. Nat'l*

5    *Labor Relations Bd.*, 429 F.2d 1130, 1134 (9th Cir. 1970) ("It is the right and not the exercise of

6    control which is the determining element." (quotation omitted)).  "An independent contractor is

7    one who renders service in the course of an independent employment or occupation, following

8    his employer's desires only as to the results of the work, and not as to the means whereby it is to

9    be accomplished." *McDonald v. Shell Oil Co.*, 44 Cal. 2d 785, 788 (1955).  "One of the means

10   of ascertaining whether or not this right to control exists is the determination of whether or not, if

11   instructions were given, they would have to be obeyed." *Toyota Motor Sales*, 220 Cal. App. 3d

12   at 875 (quotation omitted).

13           "[SPI] may retain a broad general power of supervision and control as to the

14   results of the work so as to insure satisfactory performance of the independent contract –

15   including the right to inspect, the right to stop the work, the right to make suggestions or

16   recommendations as to details of the work, the right to prescribe alterations or deviations in the

17   work – without changing the relationship from that of owner and independent contractor or the

18   duties arising from that relationship." *McDonald*, 44 Cal. 2d at 790 (internal citations omitted).

19   Defendants have presented evidence that SPI does not own logging equipment or conduct its

20   own logging operations, Howell is a licensed timber operator, SPI hired Howell under a term

21   contract, the Logging Agreement provided that Howell would provide its own labor, equipment,

22   and materials, and SPI paid Howell by volume of timber harvested.  (ECF 451 ¶¶ 21, 26, 34, and

23   35.)  However, plaintiff has presented sufficient evidence of SPI's right to control the means by

24   which Howell accomplished its work to raise a genuine question of fact as to whether Howell

25   was an agent.  Specifically, plaintiff provides a copy of the 2007 Logging Agreement between

26   SPI and Howell, which includes a "logging specification" section that provides: "Contractor

1  shall be held responsible for failure on the part of Contractor, or any of its employees, agents, or

2  assigns, to comply with all instructions from Company or Company's agents and all terms,

3  conditions, and provisions of the Documents." (ECF 450 ¶ 101; Elias Decl. ¶ 20, Ex. Y,[9]

4  Logging Agreement at 4, ECF 443-4.)  Moreover, plaintiff has presented evidence showing SPI

5  could shut down Howell's operations if it believed Howell was not operating in a fire-safe

6  manner. (ECF 450 ¶ 105; Elias Decl. ¶ 3, Ex. H, Baker Dep. at 154:23-155:2,[10] ECF 441-2.)  In

7  addition, plaintiff has presented evidence that an SPI representative visited the work site once a

8  week to "make sure that Howell's was operating in a fire-safe manner," check equipment,

9  materials, take broken fire equipment to get it fixed, and ensure that "the fire team was fully

10 equipped and ready to address fire issues." (ECF 450 ¶ 104; Elias Decl. at 3, Ex. H, Baker Dep.

11 at 155:7-15, 156:2-157:19,[11] ECF 441-2.)

12         Plaintiff also contends defendants are liable under the theory of retained control.

13 (Opp'n at 25-27.) This theory provides:

> 'One who entrusts the work to an independent contractor, but who
> retains the control of any part of the work, is subject to liability for
> the physical harm to others for whose safety the employer owes a
> duty to exercise reasonable care, which is caused by his failure to
> exercise control with reasonable care. . . . He may retain only the
> power to direct the order in which the work shall be done or to

---

[9] Defendants object to this fact, contending that Exhibit Y to the Elias Declaration is not authenticated and lacks foundation. (ECF 450 ¶ 101.)  This objection is overruled.  This document has been authenticated by defendants in connection with the present motion.  (Warne Decl., ¶ 6, Ex. 4, Logging Agreement.)  *See Orr*, 285 F.3d at 776 ("[W]hen a document has been authenticated by a party, the requirement of authenticity is satisfied as to that document with regards to all parties . . . .").

[10] Defendants' materiality objection to the admissibility of this testimony is overruled.

[11] Defendants' objections based on immateriality, lack of foundation, and hearsay are overruled.  Defendants' objection that this testimony is not established, disputed, and immaterial is also overruled; this evidence stands for the proposition for which it is being cited. Defendants' objection based on vagueness and ambiguity is overruled as well.  While the cited questions do not refer to the work site in question by name, it is clear from prior testimony that this line of questioning is in reference to the Cooks Creek timber sale, involving the tract of land relevant to the present case.  (*See* Elias Decl. ¶ 3, Ex. H., Baker Dep. at 151:25-152:3, 155:23-154:1; Second Am. Compl. ¶ 9.)

13

forbid its being done in a manner likely to be dangerous to himself or others. Such a supervisorial control may not subject him to liability under the principles of Agency, but he may be liable . . . unless he exercises his supervisory control with reasonable care so as to prevent the work which he has ordered to be done from causing injury to others.'

*Yanez v. United States*, 63 F.3d 870, 874-75 (9th Cir. 1995) (quoting Restatement (Second) of Torts § 414).  Defendants object to plaintiff's reliance on this theory.  (Reply at 4.)  It is well-established that "the issues on summary judgment are framed by the complaint. Indeed, the issues in the complaint guide the parties during discovery and put the defendant on notice of what evidence is necessary to defend against the allegations. For these reasons, a plaintiff cannot oppose summary judgment based on a new theory of liability because it would essentially blind side the defendant with a new legal issue after the bulk of discovery has likely been completed." *Ortiz v. Lopez*, 668 F. Supp. 2d 1072, 1082 (E.D. Cal. 2010) (citing *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292-93 (9th Cir. 2000)).  Here, plaintiff pled that SPI "regularly and consistently supervised and inspected Howell's timber harvest activities . . . including its fire safety and prevention activities," "negligently supervised, inspected, and exercised control over the fire protection activities of Howell," "Defendants are responsible for all costs and damages caused by their negligence and the negligence of their contractors," and "Defendants . . . allowed a fire ignited by them or their employees, agents, or contractor to escape . . . ."  (Second Am. Compl. ¶¶ 12, 21, 33, and 47.)  The record demonstrates that much discovery explored the issue of SPI's control (or lack thereof) over Howell's fire safety procedures.  (*See, e.g.,* Baker Dep.)  Accordingly, defendants were on notice of this alternative theory were Howell found to be an independent contractor.  *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (the "short and plain statement" required by Fed. R. Civ. P. 8(a)(2) "need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests'" (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation omitted)).

/////

1    Furthermore, defendants had notice of plaintiff's negligent retention claim.  (*See*

2    Second Am. Compl. ¶ 21.)  However, defendants were not put on notice of plaintiff's theory

3    based on SPI's possession of the land.  Accordingly, plaintiff may not rely on this theory here.

4         Having found that plaintiff's negligent supervision claim can survive summary

5    judgment because a reasonable jury could find SPI had a duty to supervise Howell, the court

6    turns to SPI's contention that it was not on notice of Howell's alleged unfitness.  The Greens fire

7    occurred on June 21, 2007 and the Lyman fire occurred on August 17, 2007.  (ECF 451 ¶¶ 44

8    and 48.)  The Greens Fire ignited on Landowner defendants' property in an area where Howell

9    had been skidding.  (ECF 450 ¶ 111; Elias Decl. ¶ 21, Ex. Z, Howell's Response to Request for

10   Admission No. 604,[12] ECF 443-5.)  Bush stated that he ignited the Greens Fire when his

11   bulldozer struck a rock.  (ECF 450 ¶ 113; White Decl. ¶ 56,[13] ECF 437.)  An SPI employee

12   learned about the Greens fire approximately two weeks after it occurred.  (ECF 450 ¶ 118; Elias

13   Decl. ¶ 22, Ex. AA, Forno Dep. at 77:23-82:21, ECF 443-6.)  The Lyman Fire occurred "in the

14   middle of an open area on Sierra Pacific land that Howell was preparing for planting."  (ECF 451

15   ¶ 48.)  SPI learned of the Lyman Fire on the day of its occurrence.  (ECF 450 ¶ 127; Elias Decl.

16   ¶ 17, Ex. V, Murphy Dep. at 288:16-289:21, ECF 443.)  Based on this evidence, plaintiff has

17   shown there is a genuine issue of material fact regarding whether SPI knew of these two prior

18   fires and Howell's connection to them and failed to act on this information to ensure Howell met

19   fire safety standards going forward.  *See Yanez*, 63 F.3d at 874-75.

20        Defendants' motion for summary judgment is denied as to negligent supervision.

21   /////

22   _____

23        [12] Defendants object to the admissibility of this evidence based on immateriality, hearsay, and lack of foundation.  These objections are overruled.  This exhibit is a nonhearsay party

24   admission.

25        [13] Defendants object to the admissibility of this evidence based on immateriality and hearsay within hearsay, and state that there is conflicting testimony and the White Declaration is

26   a sham affidavit.  These objections are overruled for reasons discussed in the objections to evidence section above.  The jury will weigh the conflicting testimony at trial.

3.      Common Law Negligence

Defendants maintain that expert testimony is required to prove the standard of care in professional negligence cases.  (Mot. at 20.)  Specifically, defendants contend that "a layperson does need an expert to explain the risks associated with logging operations and the precautions that are reasonable to take in light of those risks."  (Reply at 9.)   However, regardless of whether Howell's and SPI's employees and agents were "professionals," defendants have not shown there is a claim for "professional negligence" before this court. Plaintiff pleads a number of negligence claims, some of which may invite the use of expert testimony.  But its overarching contention, that a Howell employee caused the Moonlight Fire when the bulldozer he was driving struck a rock[14] and that this employee and his coworker were negligent in not conducting a fire inspection as required by statute, does not implicate the employees' actions as professionals.  (*See* Second Am. Compl.¶¶ 14-16.)  Moreover, defendants have not demonstrated that the determination of whether Crismon and Bush violated § 938.8 is one that cannot be reached by laypeople.  *See Chaplis v. County of Monterey*, 97 Cal. App. 3d 249, 264 (1979) ("If the matter in issue is one within the knowledge of experts *only* and not within the common knowledge of laymen, it is necessary for the plaintiff to introduce expert opinion evidence in order to establish a prima facie case." (emphasis in original)); *see also* FED. R. EVID. 702 ("If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise . . . .").  Accordingly, the court does not consider the qualifications of plaintiff's proposed experts Garland and Burton at this juncture; defendants may submit their objections via *Daubert* motions.

/////

_____

[14]  Plaintiff has not pled that Crismon's operation of the bulldozer was negligent.

1    Defendants' motion for summary judgment is denied as to common law

2  negligence.

3            4.      Prima Facie Negligence

4    Defendants contend California Public Resources Code § 4435 is inapplicable to

5  this case as it only applies to devices that may kindle a fire and bulldozers are not such devices.

6  (Mot. at 28.)  Defendants also contend plaintiff's negligence claim is not based on how Crismon

7  operated the bulldozer but on his failure to inspect for fire after its use.  (*Id.* at 29.)

8    Plaintiff contends "proof that a defendant started a fire by the use of a device

9  which may kindle a fire satisfies the plaintiff's burden and shifts the burden to the defendant to

10  prove by a preponderance of the evidence that he or she was not negligent."  (Opp'n at 6

11  (emphasis omitted).)  Plaintiff maintains California courts hold that bulldozers are devices that

12  are likely to kindle a fire as defined by § 4435.  (*Id.*)  Plaintiff contends defendants were

13  negligent in operating the bulldozer on an extreme fire hazard day, allowing their employees to

14  do so unsupervised in contravention of Howell's policy, and not inspecting the area as required

15  by said policy.  (*Id.*)

16    California Public Resource Code § 4435 provides: "If any fire originates from the

17  operation or use of any engine, machine . . . or any other device which may kindle a fire, the

18  occurrence of the fire is prima facie evidence of the negligence in the maintenance, operation, or

19  use of such engine, machine . . . or other device. If such fire escapes from the place where it

20  originated and it can be determined which person's negligence caused such fire, such person is

21  guilty of a misdemeanor."  Contrary to defendants' suggestion, the relevant question is not

22  whether Crismon could have avoided striking rocks while on the bulldozer, nor is the relevant

23  question on what activity plaintiff's negligence claim is based.  Rather, the language of the

24  statute is clear:  where a fire originates from the use of a covered device, negligence is assumed

25  from the very fact that the fire started.  It is not plaintiff's responsibility to allege negligence led

26  /////

1  to the origination of the fire.  Defendants provide no support for finding that the statute requires

2  otherwise.

3         Plaintiff maintains that the Moonlight Fire started when Crismon's bulldozer

4  struck rocks.  Plaintiff contends that a bulldozer is a device that may kindle a fire.  (Opp'n at 5,

5  citing *Roddiscraft, Inc. v. Skelton Logging Co.*, 212 Cal. App. 2d 784, 796 (1963)).  The court

6  will not read an "implicit assumption" that, properly operated, the device in question will not

7  start a fire, into the clear language of § 4435.  *See People v. S. Pac. Co.*, 139 Cal. App. 3d 627,

8  633 (1983) (§ 4435 applies to the operation or use of "machinery having an inherent tendency to

9  create fires").

10        Defendants' motion for summary judgment as to prima facie negligence is denied.

11  It will be defendants' burden at trial to present sufficient evidence that the bulldozer was not

12  negligently maintained, operated, or used.  *See S. Pac. Co.*, 139 Cal. App. 3d at 632-33.

13        5.     Strict Liability

14        California Health and Safety Code § 13007 provides: "Any person who

15  personally or through another willfully, negligently, or in violation of law, sets fire to, allows fire

16  to be set to, or allows a fire kindled or attended by him to escape to, the property of another,

17  whether privately or publicly owned, is liable to the owner of such property for any damages to

18  the property caused by the fire."  Defendants address § 13007's "violation of law" provision,

19  contending plaintiff cannot establish a violation of 36 C.F.R. § 261.5 and therefore strict liability

20  is not implicated.[15]  (Mot. at 30.)  Plaintiff contends that defendants are strictly liable because

21  they violated 36 C.F.R. §§ 261.5(c), (d) and (e), which all apply to non-federal land.  (Opp'n at

22  35-36.)

23  /////

24

25  _____

       [15] The court here addresses only defendants' arguments regarding § 261.5.  Defendants
   acknowledge that plaintiff's operative complaint also pleads defendants' violated other laws.

26  (Mot. at 30 n.15; Second Am. Compl. ¶ 29.)  Accordingly, this other claim survives this grant of
   partial summary judgment.

1    36 C.F.R. § 261.5(c) prohibits "[c]ausing timber, trees, slash, brush or grass to

2    burn except as authorized by permit."  Defendants, citing *United States v. Mendez Concrete*, No.

3    CR 07-767-RCF, 2009 U.S. Dist. LEXIS 30036 (C.D. Cal. Mar. 16, 2009), contend § 261.5(c)

4    applies only to fires ignited on federally owned property.  (Mot. at 30-31.)  Plaintiff contends

5    *Mendez Concrete* was incorrectly decided and in any event is not binding on this court.  (Opp'n

6    at 37.)  Even recognizing the non-binding nature of *Mendez Concrete*, the court agrees with its

7    holding, that § 261.5(c) does not apply to fires ignited on non-federal land.  The *Mendez*

8    *Concrete* court found that "[t]he permit exception in § 261.5(c) supports the conclusion that the

9    regulation is intended to apply to conduct occurring on forest lands, and is not intended to apply

10   to conduct on adjacent non-federal property."  *Mendez Concrete*, 2009 U.S. Dist. LEXIS 30036,

11   at *9.  A "permit" is an "authorization in writing by a forest officer."  36 C.F.R. § 261.2.  A

12   "forest officer" is "an employee of the Forest Service" and can accordingly only issue permits on

13   federal land.  *Id.*  The implication of § 261.5 is that one is permitted to cause timber, trees, slash,

14   brush or grass to burn if authorized by a forest officer; one cannot be so authorized on private

15   land because a forest officer does not have the power to issue such an authorization.  Moreover,

16   the *Mendez Concrete* court's attempt to distinguish *United States v. Lindsey*, 595 F.2d 5 (9th Cir.

17   1979), upon which plaintiff relies, is persuasive.  The court in *Mendez Concrete* found "it is

18   apparent that the result in Lindsey was dependent on the fact specific nature of the property at

19   issue in that case . . . ."  *Mendez Concrete*, 2009 U.S. Dist. LEXIS 30036, at *12.  Indeed, the

20   *Lindsey* court was concerned with the fact that the district court had found that "the alleged

21   activities occurred on state property beyond the jurisdiction of the United States," not with the

22   permit requirement of two of the regulations underlying the complaint; the court did not consider

23   the permit language at all.  *See generally Lindsey*, 595 F.2d at 6.  Moreover, *Lindsey* did not hold

24   that the federal government can regulate all conduct on all private land; only that it can regulate

25   "conduct on non-federal land when reasonably necessary to protect adjacent federal property or

26   navigable waters."  *Id.*  Accordingly, defendants are entitled to summary judgment on plaintiff's

1   claim for violation of Health and Safety Code §§ 13007, 13009, and 13009.1 insofar as plaintiff

2   relies on 36 C.F.R. § 261.5(c) for the underlying violation of law.

3          Although the second amended complaint cites only to § 261.5(c), plaintiff seeks

4   leave to amend to include subsections d and e.  (Opp'n at 39 n.12.)  At hearing, plaintiff's

5   counsel maintained plaintiff does not need to seek leave to amend because it was not required to

6   plead specific legal theories.  (Transcript at 45:21-25, ECF 463.)  However, pleading a violation

7   of law here is not merely clarifying a theory; rather, pleading a violation of law is essential to

8   state a claim under § 13007.  *See* CAL. HEALTH & SAFETY CODE § 13007.  Contrary to plaintiff's

9   contention, its answer to defendants' interrogatory did not serve to put defendants on notice of

10  the expansion of this claim.  (*See* ECF 451 ¶ 119; Elias Decl. ¶ 33, Ex. LL, Amended Response

11  to Interrogatories, Set 7, No. 23, page 10, ECF 444-7.)  Although plaintiff referred generally to §

12  261.5, the language in the surrounding text of the discovery response clearly borrows language

13  from subsection c.  (*Id.*)  This response, combined with the fact that plaintiff pled § 261.5(c)

14  specifically in its complaint, as opposed to § 261.5 generally, deprived defendants of notice that

15  plaintiff would seek to bring this claim under subsections d and e.  (Second Am. Compl. ¶¶ 1,

16  29.)  Moreover, plaintiff has not shown that justice requires granting leave to amend at this stage

17  of the case, nor has plaintiff shown good cause.  *See* FED. R. CIV. P. 15(a)(2); FED. R. CIV. P.

18  16(b)(4).  Plaintiff may not here proceed on this claim by relying on subsections d and e.

19          6.     Res Ipsa Loquitur

20          "[C]ertain kinds of accidents are so likely to have been caused by the defendant's

21  negligence that one may fairly say 'the thing speaks for itself.' . . . In California, the doctrine of

22  res ipsa loquitur is defined by statute as 'a presumption affecting the burden of producing

23  evidence.' (CAL. EVID. CODE § 646, subd. (b).) The presumption arises when the evidence

24  satisfies three conditions: (1) the accident must be of a kind which ordinarily does not occur in

25  the absence of someone's negligence; (2) it must be caused by an agency or instrumentality

26  within the exclusive control of the defendant; (3) it must not have been due to any voluntary

1  action or contribution on the part of the plaintiff." *Brown v. Poway Unified Sch. Dist.*, 843 P.2d

2  624, 627 (1993) (internal quotation omitted).

3         Defendants contend that plaintiff bears the burden of establishing causation,

4  which requires the use of expert testimony.  (Mot. at 35.)  "Defendants argue that under

5  established California law, in a complex fire case such as this, any theory of origin and cause

6  upon which a plaintiff seeks to recover must be supported by expert testimony. [citations] If the

7  government's experts pointed to a number of possible causes for which Defendants were

8  potentially responsible, all of which they concluded might have caused the fire but none of

9  which they could say individually more likely than not did cause the fire, then the government

10  potentially could rely on res ipsa."  (Reply at 16.)  Where the experts however single out an

11  origin and cause, res ipsa loquitur is inapplicable.  (*Id.*)

12         Plaintiff contends res ispsa loquitur is not precluded where plaintiff has

13  introduced evidence of specific acts of negligence.  (Opp'n at 29.)  Moreover, res ipsa loquitur

14  can be used to prove causation in a fire case; "[t]here is not a single decision cited by Defendants

15  for the proposition that a [plaintiff] must choose either to present expert evidence or rely on res

16  ipsa loquitur but cannot do both."  (*Id.* at 30-31.)

17         Defendants' argument is wholly unsupported; while defendants have cited cases

18  discussing the use of expert testimony in complex cases and other cases discussing res ipsa

19  loquitur, they have presented no authority for their contention that res ipsa loquitur is

20  inapplicable in a complex case, assuming this is such a case.  The use of expert testimony is not

21  precluded by the applicability of res ipsa loquitur, nor is res ipsa loquitur precluded by the fact

22  that a case or a theory of causation may be complex.  *See Roddiscraft, Inc. v. Skelton Logging*

23  *Co.*, 212 Cal. App. 2d 784, 796 (1963) ("In determining whether an accident was of such a

24  nature that it probably was the negligence of someone, the courts have relied upon both common

25  knowledge and the testimony of expert witnesses . . . . [W]hile it may . . . be true that all of the

26  causes of forest fires are not within the common experience of men, but are subjects within the

1   special knowledge of experts, it may be safely said that on the basis of past experience it is a

2   matter of common knowledge that a forest fire does not ordinarily happen unless someone has

3   been negligent.").

4           Defendants also contend they have presented evidence to counter plaintiff's

5   contention that they were negligent and thus rebutted the res ipsa loquitur presumption.  (Mot. at

6   41.)  "[R]es ipsa loquitur authorizes an inference of negligence in the absence of a showing to

7   the contrary."  *Roddiscraft*, 212 Cal. App. 2d at 793.  Once the inference attaches, it is the

8   defendants' burden to produce evidence that they were in fact not negligent.  *See Brown*, 4 Cal.

9   4th at 826.  If defendants produce such evidence, then "the trier of fact determines whether

10  defendant[s were] negligent without regard to the presumption, simply by weighing the

11  evidence."  *Id.*; *Slater v. Kehoe*, 38 Cal. App. 3d 819, 833 (1974) ("[T]he mere introduction of

12  evidence sufficient to sustain a finding of the nonexistence of the presumed fact causes the

13  presumption, as a matter of law, to disappear. . . . [T]his determination is to be made by the trial

14  judge; if [she] finds there is evidence which, if believed, would rebut the presumption, [she]

15  cannot [instruct the jury on res ipsa].").  The court will not determine at this stage whether

16  defendants have presented evidence to rebut the res ipsa loquitur presumption; although

17  defendants state several times in their motion that they have evidence they did not cause the

18  Moonlight Fire, the present motion does not concern causation.  The court has not considered

19  any of defendants' proffered evidence countering plaintiff's theory of causation and will not find

20  the presumption rebutted here based on defendants' statement that they have such evidence.

21          Defendants' motion for summary judgment is denied as to res ipsa loquitur.

22          7.      Double Damages

23          California Civil Code § 3346(a) provides: "For wrongful injuries to timber, trees,

24  or underwood upon the land of another, or removal thereof, . . . where the trespass was casual or

25  involuntary . . . the measure of damages shall be twice the sum as would compensate for the

26  actual detriment . . . ."  Defendants contend that § 3346 does not apply to damages caused by

22

1   fires.  (Mot. at 42.)  Rather, when the section was enacted, it applied to timber theft and the

2   crime of trespass by fire did not exist.  (*Id.* at 43.)  Plaintiff contends § 3346 is unambiguous and

3   includes damages stemming from trespass.  (Opp'n at 39, 42.)

4           Two California appellate courts have reached contrary decisions in considering

5   this question, and the California Supreme Court has been silent.[16]  *See Gould v. Madonna*, 5 Cal.

6   App. 3d 404 (1970); *Kelly v. CB&I Constructors, Inc.*, 179 Cal. App. 4th 442 (2009).  The court

7   in *Gould* found that § 3346 is not applicable to negligently caused fire damage, 5 Cal. App. 3d at

8   408, while the court in *Kelly* found that § 3346 applies to negligently caused fire damage, 179

9   Cal. 4th at 463.  "When interpreting state law, [this court is] bound by the decision of a

10   state's highest court.  In the absence of such a decision, a federal court must predict how the

11   highest state court would decide the issue using intermediate appellate court decisions, decisions

12   from other jurisdictions, statutes, treatises, and restatements as guidance."  *Nat'l Labor Relations*

13   *Bd. v. Calkins*, 187 F.3d 1080, 1089 (9th Cir. 1999) (internal quotation and citation omitted).

14   "Where an intermediate appellate state court rests its considered judgment upon the rule of law

15   which it announces, that is a datum for ascertaining state law which is not to be disregarded by a

16   federal court unless it is convinced by other persuasive data that the highest court of the state

17   would decide otherwise."  *West v. American Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940).  The

18   court proceeds by considering statutory construction and legislative history in order to predict

19   which lower court decision the California Supreme Court would uphold.

20           The modern definition of trespass unambiguously includes the negligent spread of

21   fire, *Kelly*, 179 Cal. App. 4th at 460 (citing *Elton v Anheuser-Busch Beverage Group, Inc.*, 50

22   Cal. App. 4th 1301 (1996)), but the relevant definition for purposes of statutory interpretation is

23

24          [16] The court notes that the California Supreme Court has denied a request to depublish
   *Kelly*.  *Kelly v. CB&I Constructors, Inc.*, No. B205735, 2010 Cal. LEXIS 2769 (Mar. 10, 2010).

25   However, as "[a] Supreme Court order to depublish is not an expression of the court's opinion of
   the correctness of the result of the decision or of any law stated in the opinion," the court does

26   not rely on its order denying such a request as being a tacit affirmance.  2012 Cal. R. Court
   8.1125(d).

the definition of statutory language at the time of the statute's enactment.  *See, e.g., BP Am. Prod. Co. v. Burton*, 549 U.S. 84, 91 (2006); *Perrin v. U.S.*, 444 U.S. 37, 41-42 (1979) (holding that "bribery" must be given its ordinary meaning at the time of the enactment of the relevant statute); *Smiley v. Citibank*, 11 Cal. 4th 138, 152 (1995) (looking to the definition of "interest" at time when the relevant act was passed).  The goal of statutory interpretation is to "effectuate the law's purpose."  *Imperial Merch. Servs., Inc. v. Hunt*, 212 P.3d 736, 740 (2009).  To that end, the plain language of a statute is given deference because "it is the language of the statute itself that has 'successfully braved the legislative gauntlet.'"  *Wasatch Prop. Mgmt. v. Degrate*, 112 P.3d 647, 650 (2005) (quoting *Halbert's Lumber, Inc. v. Lucky Stores, Inc.*, 6 Cal. App. 4th 1233, 1238 (1992)).

Originally enacted in 1872, § 3346 was repealed and reenacted in its entirety by the California Legislature in 1957.  Act of 1957, ch. 2346, 1957 Cal. Stat. 4076.  Had the Legislature amended § 3346 rather than repealing it and enacting a new version, the 1872 meaning would likely be relevant.  *See Perrin*, 444 U.S. at 42 (discussing the 1961 definition of bribery despite the fact that the relevant statute had been amended twice between its 1961 enactment and the 1979 litigation).  But because the current statute "braved the gauntlet" of the 1957 Legislature, it is the 1957 meaning of trespass that must be considered.

Still, the historical backdrop of a word's meaning can provide useful perspective. In 1898 the California Supreme Court ruled there was no trespass where flood waters from a lawfully erected levee flowed onto a neighbor's land and damaged his property.  *Daneri v. S. Cal. Ry. Co.*, 122 Cal. 507, 509 (1898).  The court found that "[u]nless the damage was the natural, certain, and immediate consequence of the wrong complained of, then unquestionably the action of trespass did not lie."  *Id.*

By 1956, this distinction between types of harm had been eliminated from California law, and either direct or indirect injury could constitute a trespass.  *See Gallin v. Poulou*, 140 Cal. App. 2d 638, 641-42 (1956) (discussing *Coley v. Hecker*, 206 Cal. 22 (1928),

*McNeill v. Redington*, 104 Cal. App. 538 (1944), and *McKenna v. Pac. Elec. Ry. Co.*, 104 Cal. App. 538 (1930)).  For example, damage to property by vibration had been recognized as a trespass.  *McKenna*, 104 Cal. App. at 543.  The *McKenna* court found "no reason for differentiating between responsibility for damage done by physical projectiles or missiles and responsibility for damage done by vibration or concussion."  *Id.*  The disappearance of the earlier distinction between direct and indirect harm suggests that any barriers to the inclusion of the negligent spread of fire into the ordinary meaning of trespass had vanished by 1957.  *See Wilson v. Interlake Steel Co.*, 32 Cal. 3d 229, 232 (1982) ("The rule has evolved in California that trespass may be committed by consequential and indirect injury as well as by direct and forcible injury." (citing *Gallin*, 140 Cal. App. 2d 638 (1956) and *McNeill*, 67 Cal. App. 2d 315 (1944))).

It also is reasonable to infer that the Legislature intended § 3346 to provide double damages for injury caused by the negligent spread of fire in light of the legislative history of the statute.[17]  The 1957 version of § 3346 increased the penalty for injury by negligent trespass from actual damages to double damages.  *See Gould*, 5 Cal. App. 3d at 407.  Because *McKenna* had been decided twenty-seven years prior to the legislation's passage, the increased protection would have been understood to provide double damages for injuries caused by trespasses that included vibration and concussion.  Thus, neither the removal of wood nor direct physical contact with wood was required by the Legislature in order for the double damages to apply.  This analysis is consistent with the conclusion in *Kelly*, and it is this analysis this court believes the California Supreme Court would approve.

---

[17] The court grants defendants' request for judicial notice of letters from G. Kelton Steele, a landowner, James Doyle, Area Administrator of the United States Department of the Interior Bureau of Land Management ("BLM"), and R.R. Beal, State Supervisor of the BLM, to Assemblyman Frank Belotti, who introduced the 1957 bill.  (ECF 418, Exs. R, T, and U.)  *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2005) (The court "may take judicial notice of . . . matters of public record.").  The court notes that while these letters indicate these individuals' understanding that the amended and reenacted § 3346 implicated timber theft, their understanding does not limit the applicability of § 3346; these letters merely show one area in which § 3346 applied in 1957.

1    In contrast, *Gould* held that the history of California Health & Safety Code §§

2    13007 and 13008 "indicates that the Legislature has set up a statutory scheme concerning timber

3    fires completely separate from the scheme to meet the situation of the cutting or other type of

4    injury to timber." 5 Cal. App. 3d at 407. However, §§ 13007 and 13008 are not specific to

5    injury to timber, but apply generally to any damages caused by the willful, negligent or unlawful

6    spread of fire. Because the doubling and trebling of damages required by § 3346 is specific to

7    injury to timber, trees or underwood, it is reasonable to conclude that, while the Legislature

8    intends that a party can recover damages for any injury caused by the negligent spread of fire, it

9    also intends that a party can recover double damages for injuries suffered by its timber, trees or

10   underwood. *Gould* fails to differentiate between a broad statute covering any injuries caused by

11   the negligent spread of fire and a narrow statute granting additional protection to timber, trees or

12   underwood.

13   The court further notes that California Assembly Bill (AB) 992, which sought to

14   amend § 3346 to explicitly provide that "[d]amage caused by an escaping fire, other than an

15   arson fire, shall not be deemed a trespass," was introduced on February 18, 2011 and amended

16   once on April 12, 2011. (Elias Decl., Ex. II, ECF 444-4.) The bill's author explained that the

17   purpose of the bill was to "follow a repudiated 1970 case, *Gould v. Madonna* . . . ." (*Id.*) AB

18   992 did not pass.[18] Defendants contend the bill did not pass for procedural reasons and that the

19   failure to enact proposed legislation does not necessarily indicate "approval of a judicial

20   construction of a statute." (Reply at 23-24 (internal quotation omitted)).

21   The court recognizes that "the idea cannot always be accepted that Congress, by

22   remaining silent and taking no affirmative action in repudiation, gives approval to judicial

23   misconstruction of its enactments. . . . [I]t would be going . . . beyond reason and common

24   experience to maintain . . . that in legislation . . . silence or nonaction always is acquiescence

25

26   [18]  The court takes judicial notice of the Current Bill Status available at the public website provided by California's Office of Legislative Counsel.

26

1   equivalent to action." *Cleveland v. United States*, 329 U.S. 14, 22 (1946) (Rutledge, J.,

2   concurring).  In *County of Los Angeles v. Workers' Compensation Appeals Board*, 30 Cal. 3d

3   391 (1981), the California Supreme Court made the point that inaction is not always an

4   indication of approval; however, the court also stated that the significance of the inaction in that

5   case was lessened further where there was no evidence that the judicial interpretation in question

6   was brought to the legislature's attention.  30 Cal. 3d at 404; *see also People v. Daniels*, 71 Cal.

7   2d 1119, 1127-29 (1969) (the court found it had "both the power and the duty to" "revise [its

8   prior] interpretation" of a statute in spite of the fact that the legislature had not reacted to that

9   interpretation; in that case, there was no indication that the court's interpretation had been

10  brought to the legislature's attention).  This court does not speculate as to why the California

11  Legislature let AB 992 die.  However, it is the court's duty, as a federal court charged with

12  applying state law, to recognize that the Legislature was made aware of the conflicting case law

13  and *Gould* in particular, and subsequently chose not to pass a bill that would have stated that

14  trespass under § 3346 cannot be by fire.  Accordingly, for the reasons discussed, the court finds

15  § 3346 applicable to this case.

16          Having so found, the court turns to consider defendants' position that if § 3346

17  applies here, it applies only to damage caused to timber, trees or underwood. (Mot. at 48.)

18  Plaintiff contends the double damages provision of § 3346 applies "the full measure of

19  compensable damages" to timber, trees or underwood, which includes "the value of the lost

20  timber, reforestation costs, environmental and ecological losses, and suppression costs."  (Opp'n

21  at 44-45.)  Section 3346(a) specifies that "[f]or wrongful injuries to timber, trees, or underwood

22  . . . the measure of damages shall be twice the sum as would compensate for the actual

23  detriment."  There is no ambiguity in the language of the statute in this regard; it does not

24  provide for double damages for wrongful injuries to timber, trees, or underwood and damages

25  flowing from such injuries, but rather for the actual detriment caused by wrongful injuries to

26  timber, trees or underwood.  The case of *Heninger v. Dunn*, 101 Cal. App. 3d 858 (1980), relied

1    on by plaintiff, is inapposite.  In that case, the court determined that double damages should be

2    awarded for restoration costs where "restoration costs" was the measurement to be used to

3    determine the value of the lost trees and vegetative undergrowth.  101 Cal. App. 3d at 861, 869.

4    Likewise, the court in *Baker v. Ramirez* found that the proper measure of damages was the cost

5    of restoration of the subject orange grove and separately found that damages to be doubled were

6    "those determined by the trier of fact to constitute just compensation within the overall limits of

7    reasonableness, regardless of what specific measure of damages is used."  190 Cal. App. 3d

8    1123, 1138 (1987).  After the jury has decided on the reasonable damages award, if any, the

9    amount awarded for damage to timber, trees or underwood shall be doubled.  *See Kelly*, 179 Cal.

10   App. 4th at 463; *Heninger*, 101 Cal. App. 3d at 869 (holding that the court should determine

11   reasonable damages in accordance with § 3333 and then determine double damages in

12   accordance with § 3346).

13   III.   <u>CONCLUSION</u>

14          For the foregoing reasons, defendants' motion for summary judgment is denied as

15   to negligence per se, negligent supervision, common law negligence, prima facie negligence, res

16   ipsa loquitur, and double damages.  Defendants' motion for summary judgment is denied as

17   moot as to negligent hiring.  Defendants' motion is granted as to strict liability insofar as this

18   claim relies on violation of 36 C.F.R. § 261.5(c) as the underlying violation of law.  Double

19   damages shall be limited to damage to timber, trees or underwood.

20          IT IS SO ORDERED.

21   DATED:  May 31, 2012.

22

23                                                   _____
                                                     UNITED STATES DISTRICT JUDGE
24

25

26