IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Plaintiff,

NO. CIV S-09-2445 KJM-EFB

    v.

SIERRA PACIFIC INDUSTRIES; et al.,

ORDER

    Defendants.

_____/

This matter comes before the court upon the motion for summary judgment filed by the Landowner defendants' ("Landowners").[1] (ECF 321.) This matter was heard on February

---

[1] Landowners refers to the following defendants: Anne McKeever Hatch, individually and as trustee of the Hatch 1987 Revocable Trust, Richard L. Greene, individually and as trustee of the Hatch Irrevocable Trust, Brooks Walker, Jr., individually and as trustee of the Brooks Walker, Jr. Revocable Trust and the Della Walker Van Loben Sels Trust for the Issue of Brooks Walker, Jr., Brooks Walker III, individually and as trustee of the Clayton Brooks Danielsen Trust, the Myles Walker Danielsen Trust, the Margaret Charlotte Burlock Trust, and the Benjamin Walker Burlock Trust, Leslie Walker, individually and as trustee of the Brooks Thomas Walker Trust, the Susie Kate Walker Trust, and the Della Grace Walker Trust, Wellington Smith Henderson, Jr., individually and as trustee of the Henderson Revocable Trust, Elena D. Henderson, Mark W. Henderson, individually and as trustee of the Mark W. Henderson Revocable Trust, John C. Walker, individually and as trustee of the Della Walker Van Loben Sels Trust for the Issue of John C. Walker, James A. Henderson, Charles C. Henderson, individually and as trustee of the Charles C. and Kirsten Henderson Revocable Trust, Joan H. Henderson, Jennifer Walker, individually and as trustee of the Emma Walker Silverman Trust and the Max Walker Silverman Trust, Kirby Walker, Lindsey Walker (a.k.a. Lindsey Walker-Silverman), individually and as trustee of the Reilly Hudson Keenan Trust and the Madison

1

10, 2012; Glen Dorgan and Richard Elias appeared for plaintiff and John Keker appeared for Landowners.  As explained below, Landowners' motion is generally denied.

I. <u>FACTS AND PROCEDURAL HISTORY</u>

On or about May 1, 1983, Landowners and W.M. Beaty and Associates, Inc. ("Beaty") entered into a Management Contract whereby Beaty agreed to manage property owned by Landowners, including the land at issue in this case.  (Statement of Undisputed Facts ¶ 1, ECF 394 (hereinafter, "ECF 394").)  On or about March 15, 2007, Sierra Pacific Industries ("SPI") hired Howell's Forest Harvesting Company to log the timber SPI planned to purchase from Landowners.  (*Id.* ¶ 8.)  On June 7, 2007, Landowners and SPI entered into a Timber Sales Agreement whereby SPI purchased timber from Landowners on property covered by the Cooks Creek Timber Harvesting Plan ("THP"), prepared by Beaty on October 12, 2005.  (*Id.* ¶¶ 13, 4.) Beaty prepared the 2007 Fire Plan on or around July 12, 2007.  (*Id.* ¶ 34.)  The Moonlight Fire ignited on September 3, 2007.  (*Id.* ¶ 24.)

Plaintiff filed the original complaint in this case on August 31, 2009.  (ECF 1.) On May 26, 2010, plaintiff filed the operative second amended complaint against defendants SPI; Beaty; Eunice E. Howell individually and doing business as Howell's Forest Harvesting Company (together, "Howell"); and Landowners.  (ECF 53 ¶¶ 5-8.)  The second amended complaint alleges seven (7) causes of action: 1) negligence against all defendants; 2) liability under the Fire Liability Law, California Health & Safety Code §§ 13007-13009.1 & Civil Code §§ 3287 & 3288 against all defendants; 3) negligence and negligence per se under 14 Cal. Code Regs. § 938.8 & the Fire Protection Plan against all defendants; 4) trespass by fire against all defendants; 5) negligent supervision against SPI, Beaty, Landowners, and Eunice Howell; 6) negligent hiring against SPI, Beaty, and Landowners; and 7) interest and penalties against all defendants.  (*Id.*)

---

Flanders Keenan Trust.

Beaty and Landowners filed their answers to the second amended complaint on June 10, 2010 (ECF 54 & 55 respectively); Howell and SPI filed their answers to the second amended complaint on June 15, 2010 (ECF 56 & 57 respectively).

Landowners filed their present motion for summary judgment on November 16, 2011.  (ECF 321.)  Plaintiff filed its opposition on January 27, 2012.  (ECF 381.)  Landowners filed their reply on February 3, 2012.  (ECF 393.)

II.  ANALYSIS

    A.  Standard

A court will grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  The "threshold inquiry" is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).[2]

The moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The burden then shifts to the nonmoving party, which "must establish that there is a genuine issue of material fact . . . ."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986).  In carrying their burdens, both parties must "[cite] to particular parts of materials in the record [or show] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support that fact."  FED. R. CIV. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[the nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts").  Moreover, "the requirement is that there be no *genuine* issue of *material*

---

[2] Rule 56 was amended, effective December 1, 2010.  However, it is appropriate to rely on cases decided before the amendment took effect, as "[t]he standard for granting summary judgment remains unchanged."  FED. R. CIV. P. 56, Notes of Advisory Comm. on 2010 amendments.

fact . . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247-48.

In deciding a motion for summary judgment, the court draws all inferences and views all evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

B.   Application

Landowners contend plaintiff must prove they were negligent as there is no basis for holding them strictly liable for the Moonlight Fire. (Mot. at 5.) They contend plaintiff does not allege that Landowners themselves were negligent. (*Id.* at 7.) Moreover, they cannot be held vicariously liable because neither SPI nor Howell was their agent and while Beaty was their independent contractor, its alleged negligence cannot be imputed to them. (*Id.*) Specifically, neither the peculiar risk doctrine nor the doctrine of non-delegable duties is applicable. (*Id.* at 8-10.) Landowners further contend they cannot be held liable for SPI's or Howell's alleged negligence because Landowners were vendors and servient tenement owners. (*Id.* at 10-15.)

Plaintiff contends Landowners are liable for direct negligence as owners of the land. (Opp'n at 6-7.) Plaintiff also contends Landowners are vicariously liable for Beaty's negligence. (*Id.* at 8-9.) Even if Beaty was Landowners' independent contractor, Landowners are vicariously liable for its negligence through the inherent risk, peculiar risk, trespass and non-delegability exceptions. (*Id.* at 9-14.) Plaintiff further contends Landowners' characterization of their relationship with SPI as vendor/vendee or servient tenement owner/easement owner is irrelevant. (*Id.* at 15.)

/////

/////

4

1. Direct Liability

The elements of negligence are "duty, breach of duty, causation, and damages." *Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc.*, 48 Cal. 3d 583, 588 (1989). "Liability for negligent conduct may only be imposed where there is a duty of care owed by the defendant to the plaintiff or to a class of which the plaintiff is a member. A duty of care may arise through statute or by contract. Alternatively, a duty may be premised upon the general character of the activity in which the defendant engaged, the relationship between the parties or even the interdependent nature of human society. Whether a duty is owed is simply a shorthand way of phrasing what is the essential question – whether the plaintiff's interests are entitled to legal protection against the defendant's conduct." *J'Aire Corp. v. Gregory*, 24 Cal. 3d 799, 803 (1979) (internal quotations and citations omitted). Criteria for determining whether defendants owe plaintiffs a duty of care include: "(1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct and (6) the policy of preventing future harm." *Id.* at 804 (citing *Biakanja v. Irving*, 49 Cal. 2d 647, 650 (1958)); *see also Marlene F.*, 48 Cal. 3d at 588 ("'Whether a defendant owes a duty of care is a question of law. Its existence depends upon the foreseeability of the risk and upon a weighing of policy consideration for and against imposition of liability.'" (quoting *Slaughter v. Legal Process & Courier Serv.*, 162 Cal. App. 3d 1236, 1249 (1984))). "Although foreseeability is most often a question of fact for the jury, when there is no room for a reasonable difference of opinion it may be decided as a question of law." *Hedlund v. Superior Court*, 34 Cal. 3d 695, 705 (1983).

"[A] duty to exercise due care can arise out of possession alone." *Sprecher v. Adamson Companies*, 30 Cal. 3d 358, 367 (1981) (also holding "mere possession with its attendant right to control conditions on the premises is a sufficient basis for the imposition of an

1  affirmative duty to act" (*id.* at 370)). "The law is well settled that an owner or occupier of land
2  is required to exercise ordinary care in the management of his property and the breach of such
3  duty constitutes actionable negligence." *Davert v. Larson*, 163 Cal. App. 407, 410 (1985).
4  Landowners' attempt to distinguish the holding in *Davert* by applying *Cody F. v. Falletti*, 92
5  Cal. App. 4th 1232 (2001) is unavailing. Rather, the situation here, where landowners own the
6  subject land, is more similar to the facts of *Davert* than to the facts of *Cody F.*, which involved
7  easement holders who did not own the subject land but only the right to pass over it. *See Cody*
8  *F.*, 92 Cal. App. 4th at 1241; *see also id.* at 1242 ("The owner of an easement is not the owner of
9  the property, but merely the possessor of a right to use someone's land for a specified purpose . .
10 . . The easement owner has no possessory right in the land beyond the limited use of the land
11 granted by the easement." (internal quotation marks and citations omitted). "The nature of the
12 duty owed by the owner of an interest in real property must have a relationship to the degree of
13 control conferred by the scope of the ownership interest itself." *Id.* at 1243.

14         Plaintiff has presented sufficient evidence to show Landowners owed it a duty of
15 care. Landowners at all relevant times owned record title to the land on which the Moonlight
16 Fire allegedly ignited. (ECF 394 ¶ 25.) Plaintiff presents evidence that Landowners exercised
17 control over the subject property by requiring Beaty to submit "[s]pecial programs designed to
18 prevent and control loss and damage on the Properties from fire," and inform them of
19 information pertinent to the properties, make periodic inspections of the properties, and
20 investigate and report to Landowners all accidents, the operation and management of the
21 properties, and destruction or loss to the properties. (ECF 394 ¶¶ 33, 80; Ragland Decl. ¶ 2, Ex.
22 A, Management Contract at 2-4, 6, ECF 323-1.) In addition, plaintiff presents evidence that
23 Landowners had the authority to preapprove SPI's fire plan. (ECF 394 ¶ 81; Ragland Decl. ¶ 8,
24 Ex. G, Timber Sale Agreement at 7-8, ECF 323-2.) Moreover, plaintiff presents evidence that
25 Landowners maintained the authority to approve of the equipment used by SPI as well as SPI's
26 methods of cutting and removing timber. (ECF 394 ¶ 82; Ragland Decl. ¶ 8, Ex. G, Timber Sale

1  Agreement at 4, 6-7, ECF 323-2.)  It is undisputed for purposes of this motion that it is
2  impossible to avoid rock strikes when operating a bulldozer like the one at issue in this case; it is
3  also undisputed that such rock strikes carry the risk of sparks that can ignite fires.  (ECF 394
4  ¶¶ 27, 28.)  Such risk of fire is heightened on red flag days; September 3, 2007, on which the
5  Moonlight Fire ignited, was a red flag day.  (*Id.* ¶¶ 30, 63.)  On August 31, 2007, Howell notified
6  Beaty it would be working on September 3, 2007.  (*Id.* ¶ 74.)  Accordingly, it was foreseeable
7  that Howell's bulldozer could strike a rock, which could ignite a fire that would harm plaintiff,
8  an adjacent landowner.  Moreover, it is undisputed that plaintiff suffered injury.  However,
9  "reasonable minds can differ" as to whether it was foreseeable that Landowners' alleged
10 negligence caused injury to plaintiff; accordingly, the question of foreseeability will be left for
11 the jury.  *See Gomez v. Ticor*, 145 Cal. App. 3d 622, 627 (1983); *see also Weirum v. RKO*
12 *General, Inc.*, 15 Cal. 3d 40, 46 (1975) ("While duty is a question of law, foreseeability is a
13 question of fact for the jury.").  Landowners are not entitled to summary judgment as to direct
14 liability.

                2.        Liability for Beaty

16         Whether one is an independent contractor or an agent is a question of fact.
17 *Estrada v. FedEx Ground Package Sys., Inc.*, 154 Cal. App. 4th 1, 11 (2007).  "[T]here is no
18 shorthand formula or magic phrase that can be applied to find [whether Beaty is an agent or
19 independent contractor], but all of the incidents of the relationship must be assessed and weighed
20 with no one factor being decisive."  *Nat'l Labor Relations Bd. v. United Ins. Co.*, 390 U.S. 254,
21 258 (1968).  Factors to be considered in determining whether one is an agent include: "(a) the
22 extent of control which, by the agreement, the master may exercise over the details of the work;
23 (b) whether or not the one employed is engaged in a distinct occupation or business; (c) the kind
24 of occupation, with reference to whether, in the locality, the work is usually done under the
25 direction of the employer or by a specialist without supervision; (d) the skill required in the
26 particular occupation; (e) whether the employer or the workman supplies the instrumentalities,

tools, and the place of work for the person doing the work; (f) the length of time for which the person is employed; (g) the method of payment, whether by the time or by the job; (h) whether or not the work is a part of the regular business of the employer; (i) whether or not the parties believe they are creating the relation of master and servant; and (j) whether the principal is or is not in business." *Toyota Motor Sales U.S.A. v. Superior Court*, 220 Cal. App. 3d 864, 874-75 (1990) (quotation omitted). "The right to control the means by which the work is accomplished is clearly the most significant test of the employment relationship . . . ." *Tieberg v. Unemployment Ins. Appeals Bd.*, 2 Cal. 3d 943, 950 (1970); *see also Carnation Co. v. Nat'l Labor Relations Bd.*, 429 F.2d 1130, 1134 (9th Cir. 1970) ("It is the right and not the exercise of control which is the determining element." (quotation omitted)). "An independent contractor is one who renders service in the course of an independent employment or occupation, following his employer's desires only as to the results of the work, and not as to the means whereby it is to be accomplished." *McDonald v. Shell Oil Co.*, 44 Cal. 2d 785, 788 (1955). "One of the means of ascertaining whether or not this right to control exists is the determination of whether or not, if instructions were given, they would have to be obeyed." *Toyota Motor Sales*, 220 Cal. App. 3d at 875 (quotation omitted). "[Landowners] may retain a broad general power of supervision and control as to the results of the work so as to insure satisfactory performance of the independent contract – including the right to inspect, the right to stop the work, the right to make suggestions or recommendations as to details of the work, the right to prescribe alterations or deviations in the work – without changing the relationship from that of owner and independent contractor or the duties arising from that relationship." *McDonald*, 44 Cal. 2d at 790 (internal citations omitted).

The Management Contract between Beaty and Landowners provides Beaty is an independent contractor. (Ragland Decl. ¶ 2, Ex. A at 1, ECF 323-1.) "Although the language of the governing contract is one factor to be considered in determining the nature of the employment relationship, it is not controlling." *Bradley v. Dep't of Corr. & Rehab.*, 158 Cal.

App. 4th 1612, 1628 (2008). However, plaintiff has presented insufficient evidence to counter this contractual characterization. Rather, in relevant part, plaintiff has presented evidence establishing only that Beaty referred to itself as Landowners' agent in the Cooks Creek THP, had a long, uninterrupted relationship with Landowners, provided an integral service to Landowners' timber business, and had power to pre-approve the buyer's fire plan. (Opp'n at 8-9.) Although plaintiff has presented evidence that plaintiff retained control over Beaty's fire safety implementation (*see supra* page 6), plaintiff has presented no evidence of Landowners' control over the means by which Beaty accomplished its work. Plaintiff has not established a triable issue of fact as to Beaty's status as an independent contractor.

"It has long been said to be the general rule that there is no vicarious liability upon the employer for the torts of an independent contractor. American courts have continued to repeat the general rule of non-liability with exceptions, whose very number is sufficient to case doubt upon the validity of the rule. These exceptions are of such wide scope that they leave only a small area in which the so-called general rule operates." *Henderson Bros. Stores, Inc. v. Smiley*, 120 Cal. App. 3d 903, 910 (1981) (internal quotations and alterations omitted).

The peculiar risk doctrine is "[a] well-recognized exception to the general rule of nonliability where the contractor is engaged in the performance of 'inherently dangerous' work." *Henderson Bros.*, 120 Cal. App. 3d at 910. It provides: "'One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise.'" *Id.* at 911-12 (quoting RESTATEMENT (SECOND) OF TORTS § 416). Likewise, the inherent risk doctrine provides: "'One who employs an independent contractor to do work involving a special danger to others which the employer knows or had reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate

9

when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger.'" *Id.* at 912 (quoting RESTATEMENT (SECOND) OF TORTS § 427). The trespass exception states: "One who employs an independent contractor to do work which the employer knows or has reason to know to be likely to involve a trespass upon the land of another . . . is subject to liability for harm resulting to others from such trespass . . . ." RESTATEMENT (SECOND) OF TORTS § 427B. Landowners hired Beaty to manage their property. (ECF 394 ¶ 1.) Beaty's tasks included "negotiating, administering, and supervising timber sales agreements," implementing programs to prevent and control loss and damage on the property from fire, preparing and securing fire plans, and following the progress of operations. (ECF 394 ¶¶ 3, 33, 34, 36, 39.) Plaintiff contends "that the escape of the Moonlight Fire to National Forest lands was a direct consequence of Beaty's failure to do its job in implementing effective fire precautions." (Opp'n at 11.) Whether the implementation of fire precautions carries with it an inherent risk[3] so as to render these exceptions applicable is a question of fact to be decided by the jury. *See McMillan v. United States*, 112 F.3d 1040, 1044 (9th Cir. 1997). Likewise, the applicability of the peculiar risk doctrine[4] is a question of fact; plaintiff has presented evidence that Beaty was required by

---

[3] For this exception to be applicable, "[i]t is sufficient that work of any kind involves a risk, recognizable in advance, of physical harm to others which is inherent in the work itself, or normally to be expected in the ordinary course of the usual or prescribed way of doing it, or that the employer had special reason to contemplate such a risk under the particular circumstances under which the work is to be done." RESTATEMENT (SECOND) OF TORTS § 427 cmt. b.

[4] For this exception to be applicable, "it is not essential that the work which the contractor is employed to do be in itself an extra-hazardous or abnormally dangerous activity, or that it involve a very high degree of risk to those in the vicinity. It is sufficient that it is likely to involve a peculiar risk of physical harm unless special precautions are taken, even though the risk is not abnormally great . . . [nor is it] essential that the peculiar risk be one which will necessarily and inevitably arise in the course of the work, no matter how it is done. It is sufficient that it is a risk which the employer should recognize as likely to arise in the course of the ordinary and usual method of doing the work . . . ." RESTATEMENT (SECOND) OF TORTS § 416 cmts. d and e; *see also Hughes v. Atl. Pac. Constr. Co.*, 194 Cal. App. 3d 987, 207 (1987) ("[T]he peculiar risk of harm must be inherent in the work itself, and arise out of its character."); *La Count*, 79 Cal. App. 3d at 764 ("'While it is not essential that the work which the contractor is employed to do be in itself extra hazardous or abnormally dangerous activity, or that it

Landowners to take special fire safety precautions. *See La Count v. Hensel Phelps Constr. Co.*, 79 Cal. App. 3d 754, 769 (1978). (ECF 394 ¶¶ 31, 33, 38, 39.) However, the trespass exception is inapplicable as a matter of law. *See* RESTATEMENT (SECOND) OF TORTS § 427B cmt. b ("This exception applies to work which involves a trespass on the land of another . . . where the contractor is directed or authorized by the employer to commit such a trespass . . . and where the trespass . . . is a necessary result of doing the work . . . . It is [however] sufficient that the employer has reason to recognize that, in the ordinary course of doing the work in the usual or prescribed manner, the trespass or nuisance is likely to result.").

"The nondelegable duty doctrine addresses an affirmative duty imposed by reason of a person or entity's relationship with others. Such a duty cannot be avoided by entrusting it to an independent contractor. Nondelegable duties may arise when a statute provides specific safeguards or precautions to insure the safety of others." *Padilla v. Pomona Coll.*, 166 Cal. App. 4th 661, 671-72 (2008) (internal citations omitted). Plaintiff contends Landowners had a non-delegable duty imposed by California Civil Code section 1714(a) and California Health and Safety Code section 13007. (Opp'n at 12.) "Generally, the duty owed by a landowner is nondelegable." *Davert*, 163 Cal. App. 3d at 410. "The doctrine of nondelegable duty does not, however, create a duty where none would otherwise exist." *Chee v. Amanda Goldt Prop. Mgmt.*, 143 Cal. App. 4th 1360, 1375 (2006) (emphasis omitted). As discussed above, Landowners owed plaintiff a duty as owners of the land. Accordingly, the nondelegability exception is applicable.

    3.  Liability for SPI and Howell

Landowners contend they cannot be held liable for the alleged negligence of SPI and Howell as Landowners were vendors. (Reply at 1.) The Restatement (Second) of Torts

---

involves a high degree of risk to those in the immediate vicinity, it must involve some special hazard resulting from the nature of the work done which in turn calls for special precautions.'" (quoting *Holman v. State of California*, 53 Cal. App. 3d 317, 328 (1975))).

11

§ 351 provides: "A vendor of land is not subject to liability for physical harm caused to his vendee or others while upon the land by any dangerous condition, whether natural or artificial, which comes into existence after the vendee has taken possession." Moreover, the Restatement (Second) of Torts § 372 provides: "A vendor of land is not subject to liability to others outside of the land for physical harm caused by any natural or artificial condition thereon which comes into existence after his vendee has taken possession." The rationale for these rules is "[s]ince the vendor of land parts with possession of it, title, and all control over it, he ceases to be either an owner or an occupier, and his responsibility for the subsequent developments and events on the land is terminated." RESTATEMENT (SECOND) OF TORTS § 351 cmt. a; *see generally Copfer v. Golden*, 135 Cal. App. 2d 623, 631-34 (1955) (discussing cases applying these rules, stressing termination of ownership of property terminating duty). Here, Landowners retain title to the property. Thus, the operative question is the control exercised by the property owner; regardless of whether Landowners were vendors, their duty to others was not extinguished if they retained control of the land.

Landowners contend that as owners of a servient tenement, they had no duty to maintain the easement. (Opp'n at 12, Reply at 1-2.) "Ordinarily, the owner of the servient tenement is under no duty to maintain or repair the easement." *Herzog v. Grosso*, 41 Cal. 2d 219, 228 (1953); *see also McManus v. Sequoyah Land Ass'n*, 240 Cal. App. 2d 348, 356 (1966). However, considering the facts of this case, this general rule does not apply. The easement here was the right to log timber on Landowners' property. Landowners remained owners of the land itself. Accordingly, the relevant question is not whether Landowners could interfere with the rights of SPI as easement holder or whether they had a duty to maintain or repair the easement (Reply at 2); rather, the question remains whether Landowners owed a duty by virtue of their ownership of and control over the land. *See Alcaraz v. Vece*, 14 Cal. 4th 1149, 1156 (1997) (the "duty to maintain land in one's possession in a reasonably safe condition exists even where the dangerous condition on the land is caused by an instrumentality that the landowner does not own

or control"). Possession and control are determinative. *Id.* at 1158; *cf. O'Leary v. Herbert*, 5 Cal. 2d 416, 418 (1936) ("There is no evidence or finding showing the exercise or attempted exercise of any control or right of control over the lessee or the property; nor is there any finding that these appellants received any benefit from the mining operations carried on by the lessee. It therefore results that these appealing defendants are not liable for the alleged acts of negligence on the party of the [lessee]."); *see also Whalen v. Ruiz*, 40 Cal. 2d 294, 299-303 (1953) (considering servient tenement owner's control over property in question). Here, evidence supporting the conclusion Landowners still exercised control over the property and SPI's logging operation creates a triable issue of fact so as to defeat summary judgment. *See Contreras v. Anderson*, 59 Cal. App. 4th 188, 201 (1997); *see supra* p. 6.

III. CONCLUSION

For the foregoing reasons, Landowners' motion for summary judgment is denied; however, plaintiff has failed to raise a triable issue of fact as to Beaty's status as an independent contractor.

IT IS SO ORDERED.

DATED: June 4, 2012.

UNITED STATES DISTRICT JUDGE