DOWNEY BRAND LLP
WILLIAM R. WARNE (SBN 141280)
MICHAEL J. THOMAS (SBN 172326)
ANNIE S. AMARAL (SBN 238189)
MEGHAN M. BAKER (SBN 243765)
621 Capitol Mall, 18th Floor
Sacramento, CA 95814-4731
Telephone: (916) 444-1000
Facsimile: (916) 444-2100
bwarne@downeybrand.com
mthomas@downeybrand.com
aamaral@downeybrand.com
mbaker@downeybrand.com

BRACEWELL & GIULIANI LLP
RICHARD W. BECKLER
D.C. Bar No. 262246
(*Pro Hac Vice Application Pending*)
JENNIFER T. LIAS
Virginia Bar No. 85608
(*Pro Hac Vice Application Pending*)
2000 K Street NW, Suite 500
Washington, DC 20006-1809
Telephone: (202) 828-5874
Facsimile: (800) 404-3970
richard.beckler@bgllp.com
jennifer.lias@bgllp.com

Attorneys for Defendant/Cross-Defendant
SIERRA PACIFIC INDUSTRIES

MATHENY SEARS LINKERT & JAIME, LLP
RICHARD S. LINKERT (SBN 88756)
JULIA M. REEVES (SBN 241198)
3638 American River Drive
Sacramento, CA 95864
Telephone: (916) 978-3434
Facsimile: (916) 978-3430

Attorneys For Defendants W.M. BEATY &
ASSOCIATES, INC. AND ANN MCKEEVER
HATCH, as Trustee of the Hatch 1987
Revocable Trust, et al.

RUSHFORD & BONOTTO, LLP
PHILLIP R. BONOTTO (SBN 109257)
DEREK VANDEVIVER (SBN 227902)
1010 Hurley Way, Suite 410
Sacramento, CA 95825
Telephone: (916) 565-0590

Attorneys for Defendant, EUNICE E.
HOWELL, INDIVIDUALLY and d/b/a
HOWELL'S FOREST HARVESTING

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SIERRA PACIFIC INDUSTRIES, ET AL.,<br><br>Defendants.<br><br>AND ALL RELATED CROSS-ACTIONS. | Case No.  2:09-CV-02445-KJM-EFB<br><br>**DECLARATION OF WILLIAM WARNE IN SUPPORT OF RULE 60(d)(3) MOTION TO SET ASIDE A JUDGMENT FOR FRAUD ON THE COURT**<br><br>Date:  November 21, 2014<br>Time: 10:00 a.m.<br>Dept:  Courtroom 3, 15th floor<br>Judge: Hon. Kimberly J. Mueller |

DOWNEY BRAND LLP

1    I, WILLIAM R. WARNE, declare as follows:

2         1.    I am an attorney licensed to practice law in the State of California, and I am a

3    partner at Downey Brand LLP, attorney of record for defendant Sierra Pacific Industries ("Sierra

4    Pacific") in the Moonlight Fire federal action in the Eastern District of California ("Federal

5    Action") as well as the six consolidated state actions in Plumas County Superior Court ("State

6    Actions").  I have personal knowledge of the facts set forth herein, except those matters stated

7    upon information and belief.  If called to testify, I could and would testify competently to the

8    contents herein.

9    **A.    The Moonlight Fire Federal and State Actions**

10        2.    By way of background, I am informed and believe that the Moonlight Fire began

11   on a Monday, Labor Day, September 3, 2007, on private property owned by members of the

12   Walker family ("Landowner Defendants") and managed by W.M. Beaty and Associates

13   ("Beaty").  The United States Forest Service ("USFS") and the California Department of Forestry

14   and Fire Protection ("Cal Fire") jointly fought the Moonlight Fire, conducted a joint investigation

15   into the origin and cause of the Moonlight Fire, and jointly authored and issued an Origin and

16   Cause Investigation Report ("Joint Report").

17        3.    Within several weeks of the release of the Joint Report, both the United States and

18   Cal Fire filed actions seeking recovery of fire suppression expenses and/or damages.  Each suit

19   named essentially the same Defendants and was premised on the same causation theory.

20        4.    On August 7, 2009, the Office of the California Attorney General initiated its

21   action in Plumas County Superior Court on behalf of Cal Fire ("Cal Fire Action").  Therein, Cal

22   Fire sought reimbursement of fire suppression expenses of $8.1 million, plus attorney fees and

23   costs.  A true and correct copy of the Complaint filed by Cal Fire is attached hereto as **Exhibit 1**.

24   Supervising Deputy Attorney General Tracy Winsor served as lead counsel for Cal Fire, and was

25   primarily assisted by Deputy Attorney General Daniel Fuchs.

26   / / /

27   / / /

28   / / /

DOWNEY BRAND LLP

1

5.     Five other lawsuits were filed in Plumas County Superior Court by private parties seeking damages related to the Moonlight Fire; these lawsuits were consolidated with the Cal Fire Action (collectively "State Actions").  Combined, the State Actions involved claims of over $60 million in damages.

6.     On August 31, 2009, the United States filed its action in the Eastern District of California, Sacramento ("Federal Action").  A true and correct copy of the Complaint is attached hereto as **Exhibit 2** (ECF 1).  Assistant U.S. Attorney ("AUSA") Robert Wright initially served as lead counsel for the United States.  He was replaced by AUSA Kelli Taylor sometime in or around January 2010.  Ms. Taylor served as lead counsel through the remainder of the litigation.  At different points throughout the case, she was assisted by AUSAs Todd Pickles, Glen Dorgan, Neil MacDonald, Richard Elias, and Eric Overby.  Ultimately, it was my sense that Richard Elias eventually served as co-lead counsel.

7.     On April 15, 2010, the United States served initial disclosures in the Federal Action claiming damages of over $791 million.  With interest and the attorney fees that were expected to accumulate by the time of trial, the total damages claim was approximately $1 billion. Attached hereto as **Exhibit 3** is a true and correct copy of this disclosure.

8.     On October 21, 2011, the United States supplemented its initial disclosures, reducing its purported damages to approximately $662 million.  However, in that disclosure, the United States also reserved its right to seek a jury instruction that would permit the jury to assess environmental damages in an amount "significantly higher than the number listed herein."  As a result, the Moonlight Fire actions continued to pose catastrophic damages for Defendants. Attached hereto as **Exhibit 4** is a true and correct copy of this supplemental disclosure.

**B.**     **The Cooperation and Collaboration between the Federal and State Prosecutors**

9.     The lawyers for the United States (from the U.S. Attorney's Office) and the lawyers for Cal Fire (from the California Attorney General's Office) worked closely together throughout the Moonlight Fire litigation.  I witnessed firsthand the collaboration between the federal and state attorneys as they prosecuted their two-front litigation.  For example, the federal and state prosecutors coordinated deposition scheduling so that testimony from certain witnesses

DECLARATION OF W. WARNE IN SUPPORT OF RULE 60(d)(3) MOTION

DOWNEY BRAND LLP

1  could be used in both of their actions, or would be limited to only one action.  A federal

2  prosecutor would often attend a deposition noticed only in the State Action, and similarly, a state

3  prosecutor would often attend a deposition noticed only in the Federal Action.  Also indicative of

4  their cooperation, the federal and state prosecutors jointly retained and disclosed many of the

5  same expert witnesses, including but not limited to, Joshua White, David Reynolds, Les

6  Hendrickson, Christopher Curtis, Patrick Shires, John Wallace, Erik Christiansen, and Larry

7  Dodds.  As one example of just how closely the state and federal attorneys worked to prosecute

8  their two-front litigation, expert Christopher Curtis prepared his federal expert rebuttal report at

9  the behest of the state prosecutor Tracy Winsor.  The federal and state prosecutors also jointly

10  worked with the two primary origin and cause investigators/experts on the Moonlight Fire, Joshua

11  White (a Cal Fire employee) and David Reynolds (a former USFS employee) to prepare them for

12  their depositions.

13        10.     The United States and Cal Fire had a Joint Prosecution Agreement for the

14  Moonlight Fire.  I was aware of this Agreement because the federal and state prosecutors cited

15  this Agreement throughout discovery and motion practice in both the Federal Action and State

16  Actions as the basis for allowing them to shield their communications with each other, with their

17  employees, their witnesses, their consultants and their experts.  Counsel for the United States

18  confirmed the existence of this Joint Prosecution Agreement to this Court.  According to a

19  declaration filed by one federal prosecutor, Richard Elias, the federal and state governments

20  entered into the joint prosecution agreement because "of the joint nature of the investigation" into

21  the Moonlight Fire and because the USFS and Cal Fire had a "common interest in prosecuting

22  their respective cases against Defendants."  In that same declaration, Mr. Elias confirmed the

23  collaboration between the federal and state attorneys and the investigators on the Moonlight Fire,

24  stating in his declaration that the USAO "had several conversations with White, all of which

25  occurred in the presence of counsel for Cal Fire."  Mr. Elias stated that these "communications

26  related directly" to the investigation of the Moonlight Fire, and were protected from disclosure as

27  "attorney-client communications and core attorney work product, as extended by the common

28  / / /

DOWNEY BRAND LLP

3

1     interest doctrine." A true and correct copy of the declaration from Mr. Elias containing these

2     statements is attached hereto as **Exhibit 5** (ECF 178-1).

3         11.     During joint depositions, the federal and state prosecutors invoked their Joint

4     Prosecution Agreement as a basis for instructing the Moonlight Fire investigators to not answer

5     questions. As an example of this, attached hereto as **Exhibit 6** is a true and correct copy of

6     deposition excerpts in which the attorneys instructed the witness to not answer on this basis.

7         12.     Attached hereto as **Exhibit 7** (ECF 178) is an opposition filed by the United States

8     to a motion to compel the disclosure of documents and communications between the United

9     States, Cal Fire, and investigators/experts Josh White and Dave Reynolds regarding the

10     Moonlight Fire, which the United States claimed were protected under its Joint Prosecution

11     Agreement with Cal Fire. A true and correct copy of the order granting the motion to compel is

12     attached hereto as **Exhibit 8** (ECF 210). A related order is attached hereto as **Exhibit 9** (ECF

13     318).

14     **C.**     **Eric Overby's Participation in the Federal Action**

15         13.     It is my understanding that Eric Overby, a visiting AUSA from Salt Lake City,

16     first became involved in the Federal Action on behalf of the United States sometime in the late

17     winter or early spring of 2011. I first met him on March 21, 2011, at the deposition of USFS

18     Special Agent Diane Welton, which took place at USFS Region 5 headquarters on the old Mare

19     Island naval base in Vallejo. Although this deposition was defended by AUSA Kelli Taylor, my

20     recollection is that Mr. Overby arrived at the deposition at some point after it started, perhaps

21     after lunch, and introduced himself as "the new kid on the block," or words to that effect. He

22     pleasantly informed us that he had joined the federal Moonlight Fire prosecution team, and then

23     sat down on the United States' side of the deposition table.

24         14.     Over March, April, and May of 2011, Mr. Overby and I developed a professional

25     and cordial relationship while taking and defending various depositions and working together on

26     discovery issues. I found him to be tough but fair, a lawyer working hard for his client the United

27     States but doing so within all ethical bounds.

28     / / /

DOWNEY BRAND LLP

DECLARATION OF W. WARNE IN SUPPORT OF RULE 60(d)(3) MOTION

15.     On Friday, May 6, 2011, I was taking the deposition of Cal Fire Battalion Chief Dave Harp in Anderson, California. It was noticed to run concurrently in the State and Federal Actions. Mr. Overby defended the deposition on behalf of the United States. During one of the breaks in the deposition (I believe it was over the lunch break), I met and conferred with Mr. Overby regarding some concerns I had about the number of remaining percipient depositions and the timing of upcoming expert disclosures. We discussed the matter cordially but did not reach any firm resolution on how to handle these calendaring issues. Shortly thereafter, at 2:08 p.m., while I continued to examine the witness, Ms. Taylor emailed me, openly copying Mr. Overby and another AUSA who had worked on the case, Todd Pickles, stating: "I heard you just approached Eric Overby regarding a request for more depositions and to extend the expert disclosures. All discussions regarding these topics must occur only with me. Please do not approach others from my office regarding these topics and know that I am the only one who can grant authority for such changes."

16.     I responded to Ms. Taylor and explained that, due to the size, complexity, and fast-paced nature of the litigation, I would not be able to refrain from communicating with the several other members of her team who might be present when she was unavailable, and that efficiency was the primary concern. Specifically, I wrote: "Ms. Taylor, I cannot abide by your rather strange instructions. This case is moving too rapidly and the issues are too numerous for us to direct all such communications to you. There are numerous depositions wherein you are not present, and so face to face discussions with AUSAs who are present are critical. You seek input and continuance[s] from all members of the Downey Brand team, and you are welcome to continue to do so. If there is something they cannot handle on their own or without my approval, then they seek input from me. I suggest that you do the same, as we will continue speaking with all AUSAs working on behalf of the USFS regarding this matter. Please feel free to contact me if you have any questions."

17.     Ms. Taylor responded, this time saying: "Mr. Warne - You are on notice that I am the only one with authority to make decisions in this case. Thus, if you choose to talk with others understand that they have no authority to make the decisions and you will still need to set a time

5

DOWNEY BRAND LLP

1    to meet and confer directly with me.  I am readily available by cell and email and always happy to

2    set up a specific time to meet and confer on these topics.  I anticipate that we will always be able

3    to talk within 24 hours so you are welcome to send an email anytime indicating that you would

4    like to do so.  With respect to the deposition and schedule issues you raised today I already

5    suggested we talk Monday at 9.  If that time is inconvenient please suggest an alternative.  I am

6    even willing to talk on weekends and after hours so just let me know."

7         18.    Ms. Taylor and I continued to exchange a few additional emails on the topic.  As

8    can be seen, Ms. Taylor continued to take the position that no one else from the United States had

9    authority to make any decisions on the Moonlight Fire litigation on behalf of the government and

10   that the defense attorneys were to deal exclusively with her.  She continued to openly copy

11   AUSAs Overby and Pickles on all these exchanges, and I did as well.  A true and correct copy of

12   our email exchange is attached hereto as **Exhibit 10**.

13        19.    I found Ms. Taylor's instructions odd in light of Mr. Overby's seniority and

14   experience regarding wildland fire litigation, and felt badly about the fact that Ms. Taylor openly

15   copied him on her emails to me.  I saw her decision to do so as insulting to him, as it appeared to

16   be her way of telling him too that he had no authority to make any decisions of any kind,

17   including simple calendaring decisions.

18        20.    When I finished deposing Mr. Harp sometime after 5:00 p.m. that evening, I

19   approached Mr. Overby, who was standing in a room next to where I had taken Harp's

20   deposition, reviewing information on his phone.  I decided to approach him, and said something

21   like, "Obviously, you must have been watching that email exchange between Ms. Taylor and

22   me."  He was angry and said, "Yes, and her emails are untenable."  He also said, "I will either be

23   in charge of this matter by early next week, or I will be gone," or very similar words to that effect.

24        21.    As I continued my discussion that evening with Mr. Overby, I told him of my

25   experience as a federal law clerk with Judge Raul Ramirez just out of law school, discussed the

26   numerous interactions I had with very fine federal prosecutors within the Eastern District during

27   my clerkship and thereafter, and broadly discussed my respect for that office.  I told him that I

28   had such a high regard for that office that I had seriously considered accepting an offer from

6

1    former United States Attorney David Levi to join the Eastern District team in about 1990.  I then

2    told him my experience on the Moonlight Fire matter was at odds with my perception of the high

3    professional character of the office and that it was affecting my thoughts regarding the office.  In

4    response, Mr. Overby said, "Don't allow one inexperienced and misguided AUSA to affect your

5    impression of the Department of Justice and that office," or words very similar to that effect.  We

6    said goodbye, and he indicated he would be in touch soon.

7          22.     The following week, on Thursday, May 12, 2011, I was deposing Cal Fire's lead

8    investigator Josh White at my office.  After lunch, Mr. Overby contacted my associate, Annie

9    Amaral, via email and asked if he might stop by the office near the end of the deposition.  Mr.

10   Overby then contacted me by phone later that afternoon to ask if he could come over and say

11   goodbye.  When the deposition concluded, I met with Mr. Overby on the 18th floor of our office

12   in a private room.  We spoke for about twenty minutes.  He confirmed that he was leaving the

13   Moonlight Fire litigation team and was planning to leave Sacramento as early as that weekend.

14   He said he was sorry and told me that, "if I thought there was anything positive that would result

15   from me staying, then I would stay."  He said that it was a physics problem, and that, "if I am

16   banging my head against a brick wall, then my head loses."  He also said, "In my entire career -

17   yes, my entire career - I have never seen anything like this.  Never."  He said he had told someone

18   a few days earlier (presumably someone on the Moonlight Fire case) that "it's called the

19   Department of Justice.  It's not called the Department of Revenue."  And then he said, "Since we

20   are the Department of Justice, we win if justice wins."

21         23.     I thanked Mr. Overby and complimented him on the work he had done on the case.

22   And I asked for insight into how I might correct the problem.  He suggested that I might take it to

23   the Deputy Attorney General in Washington D.C., and said that sending a letter to the Deputy

24   Attorney General would potentially open an investigation within the Executive Office of the

25   United States' Attorney.  He indicated that this suggestion was one of the reasons he had come to

26   say goodbye, and he remarked "everyone has a boss."  I raised the issue of whether he thought it

27   might be appropriate to raise the issue first with the United States Attorney of the Eastern District

28   of California, Benjamin Wagner.  He thought about it and said, "If it were me, I would probably

7

DOWNEY BRAND LLP

1   do that first." He discussed problems and mistakes within the United States Forest Service, but

2   then said the problem was with Ms. Taylor and the head of the office's civil unit, David Shelledy.

3        24.     I told Mr. Overby that losing him was disappointing, that he had been a breath of

4   fresh air on the matter, and that he had been a reminder of what I and others had come to expect

5   from lawyers we had worked with in the office. He said that he would rejoin the matter if things

6   changed and he could make a difference. We agreed to stay in touch, but did not talk thereafter

7   until I saw him at a wildland fire conference in Sacramento in the spring of 2012. We said hello,

8   spoke only briefly about family, and he asked, "How is the case going?" I smiled and said, "It's

9   going," or words to that effect. I never saw him again before he passed away.

10  **D.     Resolution of the Federal Action**

11       25.     Defendants filed a motion for summary adjudication, which the United States

12  opposed. Attached hereto as **Exhibit 11** (ECF 435-1) is a true and correct copy of the Separate

13  Statement of Undisputed Facts filed by the United States in opposition to this motion. Attached

14  hereto as **Exhibit 12** (ECF 437) is a true and correct copy of a Declaration from Josh White

15  submitted by the United States in support of its opposition. A true and correct copy of the order

16  issued by the Court on this motion is attached hereto as **Exhibit 13** (ECF 485).

17       26.     Sierra Pacific and the other Defendants intended to defend themselves at trial by

18  highlighting the absence of any credible evidence that Howell's Forest Harvesting ("Howell")

19  had started the Moonlight Fire and the compelling evidence showing that the fire was most likely

20  started by a third party. The United States filed a motion in limine with this Court attempting to

21  prevent Defendants from advancing this defense at trial. Additionally, the United States opposed

22  a motion in limine seeking to exclude any evidence or argument suggesting that Defendants could

23  be held responsible even if they did not start the Moonlight Fire. Attached hereto as **Exhibit 14**

24  (ECF 487) and **Exhibit 15** (ECF 534) are true and correct copies of briefing submitted by the

25  United States in connection with these motions in limine.

26       27.     Attached hereto as **Exhibit 16** (ECF 561) is a true and correct copy of the trial

27  brief the United States filed shortly after the motion in limine briefing was completed. Attached

28  hereto as **Exhibit 17** (ECF 573-2) is a true and correct copy of the trial exhibit list filed by the

DOWNEY BRAND LLP

8

1    United States, and attached hereto as **Exhibit 18** (ECF 573-1) is a true and correct copy of an

2    amended witness list filed by the United States.

3          28.    On July 2, 2012, at the urging of the United States, this Court issued tentative

4    pretrial orders holding, among other things, that Defendants could not elicit any evidence to argue

5    that someone else started the fire.  Also, the Court tentatively held that, under state forestry

6    regulation 14 California Code of Regulation, section 938.8, Defendants could be liable even if a

7    third party started the fire.  Attached hereto as **Exhibit 19** (ECF 573) is a true and correct copy of

8    the Order issued by this Court with its tentative rulings on the motions in limine.

9          29.    With one of their primary defenses gone, and because Defendants were facing an

10   economic death penalty case against federal prosecutors who had shown a willingness to breach

11   their ethics and engage in misconduct, Defendants agreed to settle by collectively paying the

12   United States $55 million over time and by Sierra Pacific conveying to the United States 22,500

13   acres of its land over time as well.  Because the Settlement Agreement contemplated performance

14   over a period of years, the parties expressly agreed that this Court would retain jurisdiction over

15   the enforcement of the Agreement.  In connection with that agreement, the Court issued an order

16   confirming its ongoing jurisdiction.  A true and correct copy of the settlement agreement and

17   order is attached hereto as **Exhibit 20** (Docket No. 590, 592).

18   **E.    Sierra Pacific Learns of the Alleged "Bribe"**

19         30.    On November 18, 2013, after the settlement of the Federal Action, I received a

20   phone call from Eddie Bauer, the father of Ryan Bauer, a Westwood resident who had been seen

21   leaving the fire area shortly after the Moonlight Fire was reported.  My associates, Annie Amaral

22   and Meghan Baker, and my partner, Michael Thomas, listened in on this phone call with Eddie

23   Bauer.  At the outset of my conversation, Mr. Bauer confirmed that he was not represented by

24   counsel.  He complained that his identity had been stolen.  Mr. Bauer suggested to me that his

25   identity was stolen because Downey Brand possessed files containing "his personal information."

26   He asked me to return his personal information.

27         31.    I told Mr. Bauer that I was sorry, but that people have their identity stolen every

28   day.  I told him I did not believe the theft of his identity had anything to do with the documents

·9

DOWNEY BRAND LLP

DECLARATION OF W. WARNE IN SUPPORT OF RULE 60(d)(3) MOTION

1  possessed by Downey Brand. I explained that whatever personal information we had of his, if

2  any, was secure in our litigation files. I told him that I was not sure I could return copies of his

3  information just yet because the State Actions were not yet final, but that I would review what

4  information we had and get back to him if there was anything to report.

5        32.     The limited information that Downey Brand had, and currently has, about Mr.

6  Bauer came to us through our discovery efforts in the context of defending Sierra Pacific in the

7  Moonlight Fire litigation. On behalf of Sierra Pacific, Downey Brand sought certain documents

8  residing on the hard drive of Mr. Bauer's computer. Our discovery requests resulted in a

9  stipulation with attorney Joseph C. Polockow, Mr. Bauer's attorney at the time, who agreed to

10  allow a retained expert to conduct a search of Mr. Bauer's hard drive for relevant information so

11  long as he did so under an agreed upon protocol. Ultimately, and despite the stipulation, motions

12  were filed on this issue and there was a hearing before Judge Kaufman in the Plumas County

13  Superior Court, which resulted in a court order. The state court ruled that Sierra Pacific was

14  entitled to review certain documents as they were potentially relevant to Sierra Pacific's defense

15  in the Moonlight Fire litigation.

16        33.     During my conversation with Mr. Bauer on November 18, 2013, Mr. Bauer made a

17  comment that surprised me and my colleagues listening to the conversation. Mr. Bauer

18  mentioned something about a $2 million offer to have his son, Ryan Bauer, admit to starting the

19  Moonlight Fire. Because this comment caught me off guard, I asked Mr. Bauer to repeat what he

20  had just said. Mr. Bauer responded with a question along the lines of, "what, you don't know

21  about that?" I said, "know about what?" Mr. Bauer then told me that Susanville attorney Eugene

22  Chittock told him that Downey Brand was willing to give Mr. Bauer's son, Ryan Bauer, $2

23  million in exchange for his son admitting that he started the Moonlight Fire.

24        34.     I then pressed Mr. Bauer for more details. Mr. Bauer told me that Mr. Chittock

25  had communicated the bribe to Mr. Bauer while they were in Mr. Chittock's office, with Mr.

26  Bauer's wife present, during one of their conferences. Mr. Bauer then told me that he was

27  shocked that I did not know about the bribe, because he had filed a police report, and he had been

28  / / /

DOWNEY BRAND LLP

10

1    interviewed by the FBI and others about the bribe, and Mr. Chittock had also been interviewed.

2    Mr. Bauer kept asking, "you really don't know?" or words to that effect.

3         35.    Because Downey Brand and Sierra Pacific never made such an offer, never would

4    make such an offer, and would never contemplate making such an offer, and because I was

5    disgusted by his suggestion that we had done so, I continued to seek more information about Mr.

6    Bauer's statements and about the consequences of any investigation into his charges.  Mr. Bauer

7    informed me that he had first revealed this information to AUSAs Kelli Taylor and Richard Elias

8    when they hand-delivered a trial subpoena to him the year before, in 2012.  It was unclear to me

9    why Mr. Bauer did not say something about this alleged bribe to me previously.  Mr. Bauer said

10   something to the effect that he had been told by another attorney not to say anything.  Mr. Bauer

11   also said that when he told Ms. Taylor and Mr. Elias about the bribe, they were very interested.

12   He said that both he and Mr. Chittock were interviewed by the Federal Bureau of Investigations.

13        36.    Mr. Bauer also stated that he was told by the Assistant United States Attorneys or

14   the investigators that Mr. Chittock denied ever communicating the bribe.  Mr. Bauer then said

15   something like, "but I was also told that Chittock said something like, 'it could have happened,'"

16   or words to that effect.

17        37.    I had never heard anything about this alleged bribe before from anyone – not from

18   Mr. Bauer, not from my opposing counsel in the Office of the United States Attorney, nor anyone

19   else.  I was concerned that the FBI believed Mr. Bauer and possibly believed that Downey Brand,

20   a reputable and highly respected firm, would make such an offer.  I was concerned that the

21   AUSAs on the other side of the case had received such information and not provided it to me or

22   my firm, particularly after Mr. Chittock denied having made the bribe offer and since I thereafter

23   learned they immediately found no evidence of such conduct and thereafter never bothered to

24   search my records or the records of my client Sierra Pacific for such conduct.   I also was

25   concerned about the government's failure to disclose this critical information because I believe

26   any documents concerning any such investigation were responsive to discovery requests

27   propounded in the action, and that the United States was required to produce such documents

28   immediately by supplementing its earlier responses.  I also believe that counsel for the United

DOWNEY BRAND LLP

States was obligated to have disclosed the allegation to me and my firm given the prosecution team's arguments to the Court in motions *in limine* seeking exclusion of evidence concerning Ryan Bauer, and seeking to prevent Sierra Pacific from arguing that he may have been responsible for the fire. If the investigators found that Mr. Bauer lied about the bribe, I further believe that the federal prosecutors working the Moonlight Fire action were obligated to immediately disclose this information to all defense counsel and to the Court, as Mr. Bauer was one of the government's primary witnesses, and according to the undisputed testimony, he was found deep in the woods near the origin of the fire shortly after it was discovered, reportedly looking for his son. False reporting of a crime of any sort would obviously be relevant to Mr. Bauer's reliability and character for truthfulness, and we had a right to explore what his son knew about his father's efforts on this front. Mr. Bauer's false allegation of a multi-million dollar bribe in this case by me or my client can only have been made in an effort to falsely inculpate Sierra Pacific, and thus it actually has the opposite effect, and tends to incriminate Mr. Bauer and his son Ryan as a failed attempt to deflect focused attention from themselves and what role they had in starting the Moonlight Fire. But instead of receiving this information, which is harmful to the government's case, we heard and received nothing, just another instance of the government withholding harmful evidence.

38.   At the end of my call with Mr. Bauer, which lasted for almost an hour and a half, I told Mr. Bauer two things. First, I told him that I would look into whether I could, at this point in the litigation, return copies of his potentially relevant personal information. Second, I told him that I was going to call Mr. Chittock and get his side of this story.

39.   The following day, November 19, 2013, I called Mr. Chittock to discuss the allegations I had heard from Mr. Bauer the previous day. On the call with me were my associates, Ms. Baker and Ms. Amaral. My conversation with Mr. Chittock focused on this alleged bribe. Mr. Chittock denied ever communicating such an offer to Mr. Bauer, and confirmed that neither I, nor anyone at Downey Brand, or Sierra Pacific ever made such an offer to him. Mr. Chittock said "absolutely not" with regard to whether anyone at Downey Brand or Sierra Pacific had made such an offer.

12

DECLARATION OF W. WARNE IN SUPPORT OF RULE 60(d)(3) MOTION

40.     Mr. Chittock confirmed that he had been visited at his office by two federal investigators or attorneys, a man and a woman.  Mr. Chittock told me that he had told the federal employees to get to the point.  The federal employees then told Mr. Chittock what Mr. Bauer had said regarding the bribe.  Mr. Chittock informed the federal employees that it never happened.  That is, he told the investigators that neither Downey Brand nor Sierra Pacific ever extended such an offer to him, and he never communicated such an offer to Mr. Bauer.

41.     Mr. Chittock told me that the federal employees also asked if they could see his emails and phone records.  He said he readily agreed, and opened up his files.  According to Mr. Chittock, there was a record of a phone call with me.  However, Mr. Chittock told the investigators, "I've already told you I've had a conversation with Mr. Warne because we spoke when I was representing the Bauers in the context of a deposition in Susanville when Ryan was in prison" or words to that effect.  Mr. Chittock said that the federal employees then checked out the timing of that phone call in relationship to the deposition.  Mr. Chittock informed me that based on that information, the federal employees left his office.

42.     Mr. Chittock told me that the federal employees had not yet responded to his request that they let him know when they had closed their investigation.  Mr. Chittock also indicated that the Office of the California Attorney General, or someone associated with that Office, had contacted him more recently, seeking similar information.  Mr. Chittock told me that he directed that investigator to the federal employees he had spoken with, and all the information he had already provided to them.

43.     After speaking to Mr. Chittock for approximately a half hour, I thanked him and said that I would send him an email summarizing the phone conversation that we had just had.  That email, sent on November 19, 2013, at 6:15 p.m., is attached hereto as **Exhibit 21**.

44.     The federal prosecutors neither revealed to the Court nor to the Defendants nor to any of their counsel the fact that Mr. Bauer told them that his son Ryan Bauer's lawyer, Mr. Chittock, had communicated a $2 million bribe from Downey Brand or Sierra Pacific.  The prosecutors also did not reveal the fact that Mr. Chittock denied the allegation and that the federal investigators or attorneys could find no evidence that this bribe was actually made.  The AUSAs

13

DOWNEY BRAND LLP

1   prosecuting the case also never revealed the existence of any federal investigation concerning

2   these matters.

3        45.      Attached hereto as **Exhibit 22** is a true and correct copy of responses by the

4   United States to Requests for Production, Set One, propounded by Sierra Pacific.

5   **F.      Resolution of the State Actions**

6        46.      In the spring of 2013, the Plumas County Superior Court issued several rulings in

7   the State Actions departing from the pretrial rulings of this Court, and in particular, rejecting the

8   notion that a forestry regulation could serve to create a duty to suppress or detect third party fires.

9   Shortly thereafter, the Honorable Leslie C. Nichols, with over 25 years of experience on the

10  bench, was assigned to the State Actions for all purposes by the Chief Justice of California under

11  the Assigned Judges Program.

12       47.      On July 26, 2013, following a lengthy three day hearing, Judge Nichols issued

13  orders dismissing all six State Actions and entering judgment for Defendants on the ground that,

14  among other things, Plaintiffs were unable to present a prima facie case of causation.  A true and

15  correct copy of one of these orders is attached hereto as **Exhibit 23.**

16       48.      On October 4, 2013, Defendants filed Motions for Fees, Expenses and Sanctions in

17  the State Actions based upon, among other things, numerous discovery abuses and the fraud those

18  abuses had worked upon the Court (collectively, the "Motions").  These Motions began a lengthy

19  process involving the submission by all parties of thousands of pages of briefing, declarations

20  with evidence, deposition transcripts and deposition video.

21       49.      Judge Nichols heard oral argument on the Motions on February 3 and 4, 2014.  At

22  the conclusion of the hearing on February 4, 2014, Judge Nichols entered several orders granting

23  the Motions.  One order is 26-pages long and is an expression of the state court's conclusions

24  regarding Cal Fire's and its counsel's conduct as a whole.  A true and correct copy of this 26-page

25  order, entitled *Orders On Motions To Tax Costs And For Attorney Fees, Expenses, Sanctions And*

26  *Motions Re Privilege*, is attached hereto as **Exhibit 24**.  A companion 58-page order contains

27  detailed findings supported by references to evidence.  A true and correct copy of this 58-page

28  order, entitled *Order Granting Sierra Pacific's Motion For Fees, Expenses And Monetary and*

14

DOWNEY BRAND LLP

1  *Terminating Sanctions*, is attached hereto as **Exhibit 25.**  Judge Nichols also issued an order

2  correcting a typographical error in his 26-page order, a true and correct copy of which is attached

3  hereto as **Exhibit 26.**

4       50.      Below, I have provided some of the evidence submitted to Judge Nichols in

5  connection with his rulings on the Motions, as well as additional documentary evidence discussed

6  in the Rule 60(d) motion.

7  **G.**     **Fire Investigative Standards**

8       51.      In order to provide background and context regarding fire investigations, attached

9  hereto as **Exhibit 27** is a true and correct copy of relevant excerpts from the 2004 Edition of the

10  NFPA 921 Guide for Fire & Explosion Investigations.

11       52.      Attached hereto as **Exhibit 28** is a true and correct copy of relevant excerpts from

12  the 2011 Edition of the NFPA 921 Guide for Fire & Explosion Investigations.

13       53.      Attached hereto as **Exhibit 29** is a true and correct copy of relevant excerpts from

14  the Wildfire Origin & Cause Determination Handbook dated May 2005.

15  **H.**     **Moonlight Fire Investigation**

16       54.      By way of background, the Moonlight Fire was investigated primarily by three

17  individuals:  (1) Joshua ("Josh") White, a Cal Fire employee; (2) David ("Dave") Reynolds, a

18  former USFS employee; and (3) Diane Welton, a current USFS employee.  Marion Mathews, a

19  USFS employee, also visited the fire scene with Diane Welton and Josh White.  Alan Carlson

20  provided feedback to Josh White regarding the Joint Report.

21       55.      Attached hereto as **Exhibit 30** is a true and correct copy of the Origin and Cause

22  Investigation Report for the Moonlight Fire ("Joint Report"), produced by the United States in the

23  Federal Action (Bates No. US000001 through US000294), and by Cal Fire in the State Actions.[1]

24

25  [1] After the federal settlement, Sierra Pacific archived its database of the documents produced in the Federal Action in

26  order to save costs, but continued to maintain its database of the documents produced in the State Actions since that litigation was still ongoing.  Due to the cost associated with restoring the database of the documents from the Federal

27  Action, some of the documents attached to this declaration have been pulled from our state database, but were produced in the Federal Action too.  I have noted herein to the best of my ability and memory whether a document

28  was produced in the State Actions, the Federal Action, or both.

DOWNEY BRAND LLP

15

The United States identified this Joint Report (and corresponding Bates range) as its Trial Exhibit No. 1.  Versions of the Joint Report are signed by White and Welton, but also include some work by Reynolds.

56.    Attached hereto as **Exhibit 31** are true and correct copies of photographs taken by Josh White during his investigation of the Moonlight Fire.  These photographs were produced by Cal Fire in the State Actions as part of Exhibit F-178A and 178B during Joshua White's March 8, 2011 deposition.  Also appended to Exhibit 31 is a relevant excerpt from Mr. White's March 8, 2011, deposition wherein he confirms that Exhibit F.-178A and 178B constitute the Moonlight Fire investigation photos.

57.    Attached hereto as **Exhibit 32** is a CD which contains true and correct digital copies of photographs produced by Cal Fire in the State Actions on or around March 5, 2010.  Cal Fire produced these photographs on Disc 2 of 2 entitled "Native JPEG and Video Files."

58.    Attached hereto as **Exhibit 33** is a true and correct copy of a document dated September 7, 2007, entitled "Wild Fire Investigation, Origin & Cause," which was prepared by Dave Reynolds and produced by the United States in the Federal Action.  Also appended to Exhibit 33 is a true and correct excerpt from Mr. Reynolds' March 22, 2011, deposition wherein he authenticates this document.

59.    Attached hereto as **Exhibit 34** is a true and correct copy of a document entitled "Plumas National Forest Fire Origin Investigation Report," which was drafted by Dave Reynolds and produced by the United States in the Federal Action.   Also appended to Exhibit 34 is a true and correct excerpt from Mr. Reynold's March 23, 2011, deposition wherein he authenticates this document.

60.    Attached hereto as **Exhibit 35** is a true and correct copy of a "Wildland Fire Investigation, Origin & Cause" report, which was produced by the United States in the Federal Action (Bates No. US000052 through US000058) as part of the Joint Report.

61.    On or about September 16, 2007, Alan Carlson sent an e-mail to Josh White discussing his review and suggested edits to the draft Joint Report.  A true and correct copy of this email correspondence, which was marked as Exhibit F-449 in the federal action and Exhibit

16

DOWNEY BRAND LLP

1   551 in the state action during the deposition of Mr. Carlson in the Federal and State Actions, is

2   attached hereto as **Exhibit 36** Mr. Carlson's testimony authenticating the exhibit is attached as

3   part of Exhibit 51.

4       62.    Attached here to as **Exhibit 37** is a true and correct copy of a Moonlight Fire

5   progression map dated September 14, 2007, produced by the United States (Bates No. US000211)

6   as part of the Joint Report.  Also attached as part of **Exhibit 37** is a true and correct copy of the

7   same progression map produced by Cal Fire in the State Actions (Bates No. CDFMO0000211).

8   As indicated on both of these maps, the Moonlight Fire had spread to 22,041 acres by September

9   5, 2007.

10   **I.**    **Sketches and Diagrams of the Alleged Origin**

11       63.    Attached hereto as **Exhibit 38** is a true and correct copy of a sketch prepared by

12   Dave Reynolds regarding the Moonlight Fire, marked as Exhibit 795 during the November 1,

13   2012, deposition of Mr. Reynolds.  The sketch contains distance and bearing measurements to an

14   alleged P.O. defined as the "Point of Origin" in the legend of the sketch, which according to

15   experts for both Cal Fire, the United States, and Defendants, corresponds to the location where a

16   white flag was placed (the "Reynolds Sketch").  The Reynolds Sketch is the second page of

17   Exhibit 34 attached hereto.  Also appended to Exhibit 38 is a true and correct excerpt from Dave

18   Reynolds' November 1, 2012, deposition wherein Mr. Reynolds authenticates this document.

19       64.    I am informed and believe that Diane Welton replaced Dave Reynolds on the

20   Moonlight Fire investigation on or about September 8, 2006, and visited the fire area that day.

21   Attached hereto as **Exhibit 39** is a true and correct copy of an origin sketch prepared by Diane

22   Welton that was included by the federal and state governments in the Joint Report (the "Official

23   Sketch").  The Official Sketch reflects two alleged points of origin, labeled E-2 and E-3.  The

24   Official Sketch was marked as Exhibit F-231 during the March 21, 2011, deposition of Diane

25   Welton.  Also appended to Exhibit 39 is a true and correct excerpt from Ms. Welton's March 21,

26   2011, deposition wherein Ms. Welton authenticates the Official Sketch.

27       65.    Attached hereto as **Exhibit 40** is a true and correct copy of a revised scene

28   diagram prepared by United States expert Christopher Curtis, and produced by Cal Fire in the

17

DOWNEY BRAND LLP

1   State Actions during the deposition of Josh White in early February 2011 ("Revised Diagram").

2   The Revised Diagram reflects the same two points of origin, E-2 and E-3, as the Official Sketch.

3   However, the Revised Diagram shows the direction of the fire advancing out of the alleged area

4   of origin to the northwest, while the Official Sketch shows the direction of the fire advancing out

5   of the alleged area of origin to the northeast.  Consequently, the Revised Diagram reflects an

6   approximately 90 degree change in the direction of the advancing fire spread.  This Revised

7   Diagram was marked as Exhibit 352 during the February 9, 2011, deposition of Joshua White,

8   and as Exhibit F-10159 during the November 7, 2011, federal deposition of Christopher Curtis.

9   Also appended to Exhibit 40 are true and correct excerpts of the February 9, 2011, deposition of

10  Joshua White, and the November 7, 2011, deposition of Christopher Curtis, wherein each

11  individual authenticates this document.

12  **J.**      **Deposition Testimony of the Investigators and Related Witnesses**

13          66.     The deposition of Josh White was taken in the State Actions on November 15,

14  2010, November 16, 2010, November 17, 2010, November 18, 2010, November 19, 2010,

15  November 22, 2010, February 7, 2011, February 8, 2011, February 9, 2011, May 11, 2011, May

16  12, 2011, May 17, 2011 and May 18, 2011.  True and correct copies of relevant excerpts from this

17  deposition are attached hereto as **Exhibit 41.**

18          67.     The deposition of Josh White was taken in the Federal Action on March 7 and 9,

19  2011.  True and correct copies of relevant excerpts from this deposition are attached hereto as

20  **Exhibit 42.**

21          68.     Josh White provided a declaration in the Federal Action in support of a Motion to

22  Quash Subpoena and for Protective Order filed by the California Attorney General and Cal Fire.

23  A true and correct copy of this declaration is attached hereto as **Exhibit 43** (Docket No. 289).

24          69.     The deposition of Josh White was taken in connection with the case captioned

25  *California Department of Forestry and Fire Protection v. Dustin White, dba Norcal Forest*

26  *Resources, et al.*, Lassen County Superior Court Case No. 43654, on or about August 8, 2008.

27  Attached hereto as **Exhibit 44** is a true and correct copy of excerpts from this deposition.

28  / / /

DOWNEY BRAND LLP

DECLARATION OF W. WARNE IN SUPPORT OF RULE 60(d)(3) MOTION

70.     The deposition of Dave Reynolds was taken in connection with the State Actions and the Federal Action on March 22, 2011, March 23, 2011, and March 24, 2011.  True and correct copies of relevant excerpts from this deposition are attached hereto as **Exhibit 45**.

71.     The deposition of Dave Reynolds was taken in connection with the Federal Action on November 15, 2011.  True and correct copies of relevant excerpts from this deposition are attached hereto as **Exhibit 46**.

72.     The deposition of Dave Reynolds was taken in connection with the State Actions on November 1, 2012.  True and correct copies of relevant excerpts from this deposition are attached hereto as **Exhibit 47**.

73.     The deposition of Diane Welton was taken in connection with the Federal Action on March 21 and August 15, 2011.  True and correct copies of relevant excerpts from this deposition are attached hereto as **Exhibit 48**, and a video of that deposition is attached hereto as **Exhibit 49**.

74.     The deposition of Marion Mathews was taken in connection with the Federal Action on April 26, 2011.  True a true and correct copies of relevant excerpts from this deposition are attached hereto as **Exhibit 50**.

75.     The deposition of Alan Carlson was taken in connection with the State Actions and the Federal Action on August 3, 2011, and August 4, 2011.  True and correct copies of relevant excerpts from this deposition are attached hereto as **Exhibit 51**.

K.      **White Flag Origin**

76.     The United States designated Larry Dodds as an expert witness in the Federal Action, and Cal Fire similarly designated Larry Dodds as an expert witness in the State Actions.  On or about January 29, 2013, January 30, 2013, April 8, 2013, April 9, 2013, and April 10, 2013, Mr. Dodds was deposed in the State Actions.  True and correct copies of relevant excerpts from this deposition are attached hereto is **Exhibit 52**.

77.     The United States designated David Woolley as an expert witness in the Federal Action.  On or about October 21, 2011, Mr. Woolley was deposed in the Federal Action.  True and correct copies of relevant excerpts from this deposition are attached hereto is **Exhibit 53**.

19

DOWNEY BRAND LLP

78.     The United States designated Christopher Curtis as an expert witness in the Federal Action, and Cal Fire similarly designated Mr. Curtis as an expert witness in the State Actions.  On or about January 30 and February 1, 2013, Mr. Curtis was deposed in the State Actions.  True and correct copies of relevant excerpts and exhibits from this deposition are attached hereto as **Exhibit 54**.

79.     Cal Fire designated Bernard F. Paul as an expert witness in connection with the State Actions.  Additionally, Cal Fire designed Mr. Paul as its Person Most Qualified on various categories.  On December 17, 2012, December 18, 2012, and January 15, 2013, Defendants deposed Mr. Paul in these capacities.  True and correct copies of relevant excerpts from his deposition are attached hereto as **Exhibit 55**.

80.     Initially, Defense counsel missed the white flag as they carefully reviewed the Joint Report as well as all of the naked photographs of the investigators' work on September 4 and 5, 2007.  In all of those photographs, especially the 9:16 a.m. overview photograph, the white flag easily fades into the background.  Eventually, however, defense counsel spotted the single white flag while reviewing the native photographic files on a computer screen with back-lit magnification.  After making this discovery, Defendants asked various witnesses questions about the white flag and its significance in the investigation.  Attached here to as **Exhibit 56** is a video montage of testimony that generally relates to the issue of the white flag of various individuals.

**L.     Reynolds Sketch**

81.     Attached hereto as **Exhibit 57** is a true and correct copy of a zoomed-in version of the Reynolds Sketch, which is attached hereto as Exhibit 38.

82.     Attached hereto as **Exhibit 58** is a true and correct copy of a photograph that Joshua White confirmed he took on September 5, 2007, at 10:02 a.m. of metal particles placed on top of his truck.  The photograph was produced by Cal Fire in the State Actions.  This image is located on Disc 2 of 2 entitled "Native JPEG and Video Files" produced by Cal Fire.  This image is also among those that were produced by Cal Fire in the State Actions as a part of Exhibit F-178A and 178B during Joshua White March 8, 2011 deposition at which he confirmed these exhibits constituted the Moonlight Fire investigation photos.  On the right side of this photograph,

20

DOWNEY BRAND LLP

marked as CDFMO00365, there is a ruler.  The middle of the photograph is a clean white piece of

paper upon which the investigators placed the metal fragment contents of a single plastic bag,

which they labeled E-1.  On the left upper side of the photograph, the shimmer of a portion of a

plastic bag appears underneath the white paper.  Just below that portion of that same photograph,

and still on the far left side, a different white piece of paper appears underneath, with a thin black

border running parallel to the edge of the paper on which the investigators took their photograph.

Two thirds of the way down, a black line can be seen intersecting the thin parallel black border at

90 degrees.  Just above that intersection, one can see two other black marks.

83.     Attached hereto as **Exhibit 59** is a true and correct copy of a demonstrative exhibit

that depicts the entirety of the document that the investigators placed underneath the white paper

on which they photographed their collected metal fragments.  By matching what can be seen on

the left side of this photograph – the thin black border which runs parallel, the intersecting line,

and the two black marks – with the same left portion of the Reynolds Sketch, one can see that

what sits underneath this paper is, in fact, the Reynolds Sketch.

84.     Attached hereto as **Exhibit 60** is a true and correct copy of the native/electronic

image IMG_0145.jpg produced by Cal Fire in the State Actions on or around March 5, 2010.

This image is located on Disc 2 of 2 entitled "Native JPEG and Video Files" produced by Cal

Fire.  When I view this native image in electronic format on a high resolution computer or

television screen, I am able to see the hand drawn horizontal lines that are located directly behind

the plastic baggie that also appears in the photo – the single plastic baggie into which Josh White

now claims he placed metal allegedly collected at two separate locations E-2 and E-3, neither of

which have any indicators or flags in the "overview of indicators" photo Mr. White took on the

morning of September 5, 2007, to memorialize the work he had done to process the alleged origin

scene of the Moonlight Fire.

85.     I requested the preparation of a series of demonstrative exhibits, in both .jpg and

.pdf format, which allow one to examine the IMG_0145.jpg under high resolution, and to

compare the location of the horizontal hand drawn lines beneath the plastic baggie and to confirm

that they appear exactly where they also appear in the Reynolds Sketch.  As labeled in the

DOWNEY BRAND LLP

21

1    demonstratives, the image is shown in high contrast.  In addition, I understand a filter was applied

2    to increase the contrast around edges and show color changes, which tended to further bring out

3    the edge demarcation of the hand drawn horizontal lines beneath the plastic baggie.  A true and

4    correct copy of these demonstrative exhibits is attached hereto as **Exhibit 61.**

5            86.     Attached hereto as **Exhibit 62** is a true and correct copy of a September 9, 2007,

6    email from Diane Welton to Dave Reynolds, which was marked as Exhibit 404 during the

7    deposition of Mr. Reynolds.  In this email, Reynolds claims that as of September 9, 2006, he had

8    not prepared a sketch for the Moonlight Fire, although the photographic evidence reveals that the

9    Reynolds Sketch existed as of the morning of September 5, 2006, as shown on Exhibit 58

10   attached hereto.   Mr. Reynolds' testimony authenticating this document is included within the

11   March 23, 2011, deposition testimony attached hereto as Exhibit 45.

12   **M.    Searching for Metal**

13          87.     The deposition of Frank Holbrook was taken in connection with the Federal

14   Action on May 31, 2011, and June 1, 2011.  True and correct copies of relevant excerpts from

15   these depositions, as well as a photograph marked as part of Exhibit 637 of his deposition, are

16   attached hereto as **Exhibit 63**.  Also appended to Exhibit 63 is a true and correct excerpt from

17   Frank Holbrook's April 5, 2012, deposition wherein Mr. Holbrook authenticates these

18   photographs.

19          88.     Attached hereto as **Exhibit 64** is a true and correct copy of various versions of the

20   photograph taken by Josh White on September 4, 2007, at 6:22 p.m.  This photograph was

21   produced by Cal Fire in the State Actions, is Bates stamped CDFMO00325, and was marked as

22   Exhibit 243 at the November 17, 201, deposition of Joshua White.

23          89.     Attached hereto as **Exhibit 65** is a true and correct copy of a photograph taken by

24   Frank Holbrook.  The photograph was marked as one of several photos on a CD containing digital

25   copies of all of Mr. Holbrook's photos, which was marked as Exhibit 637 at the deposition of Mr.

26   Holbrook on April 5, 2012.  Also appended to Exhibit 65 is a true and correct excerpt of Frank

27   Holbrook's April 5, 2012, deposition wherein Mr. Holbrook authenticates this document.

28

DOWNEY BRAND LLP

22

**N.**   **Ivan Houser**

90.     Attached hereto as **Exhibit 66** is a true and correct copy of a September 21, 2007, Supplementary Investigation Report for the Moonlight Fire prepared by Ivan J. Houser, produced by Cal Fire in the State Actions (Bates No. CDFMO017409 through CDFMO017410). The Report was marked as Exhibit 241 at the deposition of Josh White. Also attached as part of Exhibit 66 is testimony from the April 18, 2011, deposition of Ivan Houser taken in the State and Federal Actions wherein Mr. Houser confirms he prepared his supplementary report on September 21, 2007.

91.     The deposition of Ivan J. Houser was taken on April 18, 2011, April 19, 2011, and April 20, 2011, in connection with the State Actions and the Federal Action. True and correct copies of relevant excerpts from Mr. Houser's deposition are attached hereto as **Exhibit 67**.

92.     Attached hereto as **Exhibit 68** is a true and correct copy of a photograph identified by Cal Fire as having been taken by Josh White on September 5, 2007 at 10:43 a.m., labeled as IMG_0148. The photograph was produced in the State Actions (Bates No. CDFMO00368), and was also produced by Cal Fire in native format as part of Disc 2 of 2 entitled "Native JPEG and Video Files" on or around March 5, 2010.

93.     The deposition of Scott Packwood was taken on February 15, 2013, in the State Actions. During that deposition, a photograph taken by Josh White on September 4, 2007, at 7:05 a.m., and identified as IMG_0083 with Bates number CDFMO00303, was discussed. Attached hereto as **Exhibit 69** are true and correct copies of relevant excerpts from the deposition of Mr. Packwood as well as the relevant photograph discussed during his deposition.

**O.**   **J.W. Bush Interview**

94.     Attached hereto as **Exhibit 70** is a true and correct copy of the statement of J.W. Bush prepared by Dave Reynolds on September 3, 2007, which was produced in the Federal Action. This statement is contained a part of Exhibit 30 attached hereto.

95.     During its initial investigation of the Moonlight Fire, Cal Fire tape recorded some of the interviews it conducted with various witnesses. These tape recordings were produced by Cal Fire during discovery in the State Actions. Defendants then provided the tape recordings to a

23

DOWNEY BRAND LLP

1   court reporter in order to have them transcribed.  Attached hereto as **Exhibit 71** is a true and

2   correct copy of relevant excerpts from the September 10, 2007 interview of J.W. Bush.  In

3   addition, a true and correct copy of the original tape recording of J.W. Bush's September 10,

4   2007, interview is attached hereto as **Exhibit 170**.

5          96.     Attached hereto as **Exhibit 72** is a true and correct copy of a statement of J.W.

6   Bush prepared by Josh White on September 10, 2007.

7          97.     The deposition of J.W. Bush was taken on or about April 29, 2010, in the State

8   Actions.  True and correct copies of relevant excerpts from this deposition are attached hereto as

9   **Exhibit 73**.

10  **P.**    **Ryan Bauer**

11         98.     Attached hereto as **Exhibit 74** are true and correct copies of relevant excerpts from

12  the tape recorded interview of Ryan Bauer, which I am informed and believe took place on or

13  about September 7, 2007.  In addition, a true and correct copy of the original tape recording of

14  Ryan Bauer's September 7, 2007, interview is attached hereto as **Exhibit 171**.

15         99.     On September 23, 2010, the deposition of Andrea (Terry) Jackson was taken in

16  connection with the State Actions and the Federal Action.  True and correct copies of relevant

17  excerpts from this deposition are attached hereto as **Exhibit 75**.

18         100.    The deposition of Ryan Bauer was taken on or about December 7, 2010, in the

19  State Actions and Federal Action.  True and correct copies of relevant excerpts and exhibits from

20  this December 17, 2010, deposition are attached hereto as **Exhibit 76, portions of which are**

21  **submitted under seal**.  Mr. Bauer's deposition was also taken on March 29, 2010, in the State

22  Action.  True and correct copies of relevant excerpts from this March 29, 2010, deposition are

23  attached hereto as **Exhibit 172**.

24         101.    Attached hereto as **Exhibit 77** is a true and correct copy of a map marked as

25  Exhibit F-85 in the Federal Action during Ryan Bauer's December 7, 2010, deposition, with

26  markings by Mr. Bauer.  Also appended to Exhibit 77 is a true and correct excerpt of Ryan

27  Bauer's December 7, 2012, deposition wherein Mr. Bauer authenticates this document.

28  / / /

DOWNEY BRAND LLP

24

102.  The deposition of Sheriff Deputy Benny Wallace was taken on or about September 29, 2010, in the State Actions and Federal Action.  True and correct copies of relevant excerpts from this deposition are attached hereto as **Exhibit 78**.

103.  The deposition of Leo Whitlock was taken on or about May 23, 2011, in the State Actions and Federal Action.  True and correct copies of relevant excerpts from this deposition are attached hereto as **Exhibit 79**.

104.  The deposition of Gerald Quigley was taken on or about October 10, 2011, and February 23, 2012, in the State Actions.  True and correct copies of relevant excerpts from this deposition are attached hereto as **Exhibit 80**.

105.  The deposition of Steve Smith was taken on or about September 20, 2012, in the State Actions. True and correct copies of relevant excerpts from this deposition are attached hereto as **Exhibit 81**.

106.  The deposition of Russell DeMarce was taken on or about May 18, 2010 in the State Actions.  True and correct copies of relevant excerpts from this deposition are attached hereto as **Exhibit 82**.

**Q.    Michael Mc Neil**

107.  Attached hereto as **Exhibit 83** is a true and correct copy of a report prepared by Diane Welton entitled "Documentation of Events Pertaining to Pacific Southwest Region, Lassen National Forest, Eagle Lake Ranger District, Assistant Management Officer - Prevention Michael Karl McNeil," dated July 1, 2008.  This document was marked as exhibit F-493 during the August 15, 2011, deposition of Diane Welton.  Also appended to Exhibit 83 is a true and correct excerpt of the August 15, 2011, deposition of Diane Welton wherein Ms. Welton authenticates this document.

108.  Michael McNeil was deposed in the State Actions on February 14, 2013, and February 15, 2013.  True and correct copies of relevant excerpts from this deposition are attached hereto as **Exhibit 84**.

/ / /

/ / /

25

DECLARATION OF W. WARNE IN SUPPORT OF RULE 60(d)(3) MOTION

**R.**   **Red Rock Lookout**

109.   Attached hereto as **Exhibit 85** is a true and correct copy of a statement prepared by Diane Welton regarding Karen Juska's visit to Red Rock Lookout on September 3, 2007. This document was also included as part of the Joint Report attached hereto as Exhibit 30, and was marked as Exhibit F-144 during the January 26, 2011, deposition of Karen Juska. Also appended to Exhibit 85 is a true and correct excerpt of the January 26, 2011, deposition of Karen Juska wherein Ms. Juska authenticates this document.

110.   Attached hereto as **Exhibit 86, and submitted under seal,** is a true and correct copy of September 3, 2007, Document of Notes created by Karen Juska about the Moonlight Fire. The notes were marked as Exhibit F-148 at Ms. Juska's January 26, 2011, deposition in the Federal Action. Also appended to Exhibit 86 is a true and correct excerpt of the January 26, 2011, deposition of Karen Juska wherein Ms. Juska authenticates this document.

111.   Attached hereto as **Exhibit 87, and submitted under seal,** is a true and correct copy of Karen Juska's Statement of Facts detailing her visit to Red Rock Lookout on September 3, 2007. This statement was marked as Exhibit F-151 at Ms. Juska's January 26, 2011, deposition in the Federal Action. Also appended to Exhibit 87 is a true and correct excerpt of Karen Juska's January 26, 2011, deposition wherein Ms. Juska authenticates this document.

112.   Attached hereto as **Exhibit 88, and submitted under seal,** is a true and correct copy of Karen Juska's Statement of Facts detailing her visit to Red Rock Lookout on September 3, 2007. This statement was marked as Exhibit F-152 at Ms. Juska's January 26, 2011, deposition in the Federal Action. Also appended to Exhibit 88 is a true and correct excerpt of Karen Juska's January 26, 2011, deposition wherein Ms. Juska authenticates this document.

113.   Attached hereto as **Exhibit 89, and submitted under seal,** is a true and correct copy of an email from Ron Heinbockel to David E. Loomis dated September 21, 2007, with the subject line "Red Rock Lookout/Termination." The email was marked as Exhibit F-150 at Karen Juska's January 26, 2011, deposition in the Federal Action. During his May 16, 2011, deposition, Mr. Heinbockel confirmed that he wrote this email. (*See* Exhibit 98, attached hereto).

/ / /

DOWNEY BRAND LLP

DECLARATION OF W. WARNE IN SUPPORT OF RULE 60(d)(3) MOTION

1   114. Attached hereto as **Exhibit 90, and submitted under seal,** is a true and correct

2 copy of a "Fact Finding Interview" of Ron Heinbockel dated August 14, 2009, and produced by

3 the United States in the Federal Action (Bates No. US106621 through US106624).  The

4 document was marked as Exhibit F-153 at Karen Juska's January 26, 2011, deposition in the

5 Federal Action.  Also appended to Exhibit 90 is testimony from Mr. Heinbockel's May 16, 2011,

6 deposition wherein he confirms that he signed this document.

7   115. On or about June 7, 2010, Sierra Pacific served Interrogatories, Set One, on

8 Plaintiff United States of America in the Federal Action.  A true and correct copy of the

9 Interrogatories is attached hereto as **Exhibit 91**.

10   116. On or about July 9, 2010, the United States served Responses to Interrogatories,

11 Set One, propounded by Sierra Pacific.  A true and correct copy of the Responses is attached

12 hereto as **Exhibit 92**.

13   117. On or about July 16, 2010, the United States served Responses to Request for

14 Admission, Set One, propounded by Sierra Pacific.  A true and correct copy of the Responses is

15 attached hereto as **Exhibit 93**.

16   118. On or about January 5, 2012, the United States served Supplemental Responses to

17 Requests for Admission, Set One, propounded by Beaty and the Landowner Defendants.  A true

18 and correct copy of these responses is attached hereto as **Exhibit 94**.

19   119. Defendants have created a video montage containing testimony of various

20 individuals concerning the events taking place at the Red Rock Lookout.  A true and correct copy

21 of the video montage is attached hereto as **Exhibit 95, and submitted under seal**.

22   120. The deposition of Lawrence Craggs was taken in the Federal Action on April 7,

23 2011.  True and correct copies of relevant excerpts from this deposition are attached hereto as

24 **Exhibit 96, and submitted under seal**.

25   121. The deposition of Karen Juska was taken in the Federal Action on January 26,

26 2011.  Tue and correct copies of relevant excerpts from this deposition are attached hereto as

27 **Exhibit 97**.

28 / / /

DOWNEY BRAND LLP

DECLARATION OF W. WARNE IN SUPPORT OF RULE 60(d)(3) MOTION

122.    Defendants deposed Ron Heinbockel in the Federal Action on May 16, 2011.  True and correct copies of relevant excerpts from this deposition are attached hereto as **Exhibit 98**, **but submitted under seal**.

123.    Attached hereto as **Exhibit 99**, is a true and correct copy of the Court's May 20, 2011 Order (ECF 205) concerning Sierra Pacific's motion for reconsideration.

S.    **Lyman Fire**

124.    Attached hereto as **Exhibit 100** is a true and correct copy of a Letter of Demand dated September 24, 2007, from Cal Fire to Howell regarding the Lyman Fire.  This letter was marked as Exhibit 459/F-330 during the May 6, 2011, deposition of David Harp.  Also appended to Exhibit 100 is a true and correct copy of an excerpt of the May 6, 2011, deposition of David Harp wherein Mr. Harp authenticates this letter.

125.    Attached hereto as **Exhibit 101** are true and correct copies of two follow-up Letters of Demand dated December 10, 2007, and January 6, 2008, from Cal Fire to Howell regarding the Lyman Fire.  The December 10, 2007, letter was marked as Exhibit 461/F-332 during the May 6, 2011, deposition of David Harp.  The January 6, 2008, letter was marked as Exhibit 690 during the September 21, 2012, deposition of Gary Durden.  Also appended to Exhibit 101 is a true and correct excerpt from the May 6, 2011, deposition of David Harp wherein Mr. Harp authenticates the December 10, 2007, letter, as well as a true and correct excerpt from the September 21, 2012, deposition of Gary Durden wherein Mr. Durden authenticates the January 6, 2008, letter.

126.    Greg Gutierrez was deposed on October 19, 2011, in the Federal Action.  True and correct copies of relevant excerpts from this deposition are attached hereto as **Exhibit 102.**

127.    Les Anderson was deposed on July 14, 2011, in connection with the Federal Action and the State Actions.  True and correct copies of relevant excerpts from this deposition are attached hereto as **Exhibit 103**.

128.    Eunice Howell was deposed in the State Actions on September 10, 2010, and September 11, 2010.  True and correct copies of relevant excerpts from this deposition are attached hereto as **Exhibit 104**.

DOWNEY BRAND LLP

28

**T.     Greens Fire**

129.    Brigitte Foster was deposed on March 3, 2011, in the State Actions and the Federal Action.  True and correct copies of relevant excerpts from this deposition are attached hereto as **Exhibit 105**, and a video of that deposition is attached hereto as **Exhibit 166.**

130.    During discovery in the Federal Action, the United States produced two different but supposedly *final* versions of the Greens Fire Investigation Report.  One version is bates stamped US000247-000266, a true and correct copy of which is attached hereto as **Exhibit 106**. The other version is bates stamped US134000-134021, a true and correct copy of which is attached hereto as **Exhibit 107**.  Also appended to Exhibit 106 is a true and correct excerpt from the March 3, 2011, deposition of Bridget Foster wherein Ms. Foster authenticates these two supposedly final versions of the Greens Fire Investigation Report.

**U.     Sheep Fire**

131.    David Harp was deposed on May 6, 2011, in the Federal Action and the State Actions.  True and correct copies of relevant excerpts from this deposition are attached hereto as **Exhibit 108**.

132.    Attached hereto as **Exhibit 109** is a true and correct copy of responses by the United States to Interrogatories, Set Six, propounded by Sierra Pacific.  In addition, a true and correct copy of the November 12, 2012, Declaration of Eunice Howell (ECF 361-25) is attached hereto as **Exhibit 173**.

**V.     Fire Spread and Fire Modeling**

133.    The United States designated Christopher Curtis as an expert witness in the Federal Action.  On or about November 7, 2011, Mr. Curtis was deposed in the Federal Action. True and correct copies of relevant excerpts and exhibits from this deposition are attached hereto as **Exhibit 110**.

134.    Attached hereto as **Exhibit 111** is a CD which contains true and correct copies of portions of an aerial video taken on September 3, 2007 taken by pilot Earl Johnson and produced in this Federal Action, and which also contains demonstrative exhibits prepared by Defendant's expert Jason Dorris using the aerial video showing the position of the government's alleged

DOWNEY BRAND LLP

29

points of origin on the hillside, and illustrating the difference between actual slope, and that used by the United States' expert Kelly Close.  A DVD containing the aerial video and images was marked as Exhibit 446/F-332 during the March 25, 2011, deposition of Earl Johnson.  Also appended to Exhibit 111 is a true and correct excerpt from the March 25, 2011, deposition of Earl Johnson wherein Mr. Johnson authenticates the DVD.

135.    The United States designated Kelly Close as an expert witness in the Federal Action.  On or about March 5, 2002, Mr. Close was deposed in the Federal Action.  True and correct copies of relevant excerpts from this deposition are attached hereto is **Exhibit 112**.

136.    During his deposition, Mr. Close testified that his fire modeling contained a data error, and that after discovering this error, he re-ran his modeling with the corrected data.  The United States never disclosed this data error to the Defendants, and never had Mr. Close produce a corrected report or his corrected fire modeling with the corrected data.

137.    Attached hereto as **Exhibit 113** is a true and correct copy of the expert rebuttal report of Dr. Christopher Lautenberger, an expert retained by my firm and who uncovered Mr. Close's use of an incorrect slope in his analysis, explaining the import of Mr. Close's slope error.  This document was marked as Exhibit F-10220 during the November 15, 2011, deposition of Christopher Lautenberger.  Also appended to Exhibit 113 is a true and correct excerpt of the November 15, 2011, deposition of Christopher Lautenberger wherein Mr. Lautenberger authenticates this document.  In addition, a true and correct copy of Mr. Lautenberger's First Report is attached hereto as **Exhibit 175**.

138.    On or about November 15, 2011, Dr. Lautenberger was deposed in the Federal Action.  True and correct copies of relevant excerpts from this deposition are attached hereto as **Exhibit 114**.

## W.    WiFITER

139.    Attached here to as **Exhibit 115** is a true and correct copy of a Letter of Demand produced in this action dated August 4, 2009, from Cal Fire to Sierra Pacific regarding the Moonlight Fire.  This letter was marked as Exhibit 801A during the November 5, 2012,

/ / /

DOWNEY BRAND LLP

DECLARATION OF W. WARNE IN SUPPORT OF RULE 60(d)(3) MOTION

1    deposition of Alan Carlson.  Also appended to Exhibit 115 is a true and correct excerpt of the

2    November 5, 2012, deposition of Alan Carlson wherein Mr. Carlson authenticates this letter.

3         140.    Attached hereto as **Exhibit 116** is a true and correct copy of an August 4, 2009,

4    Letter of Demand from Cal Fire to Brooks Walker III regarding the Moonlight Fire, which was

5    produced in this action by Defendant W.M Beaty (Bates No. WMBMO001379 through

6    WMBMO001381).

7         141.    Attached hereto as **Exhibit 117** is a true and correct copy of a Letter of Demand

8    produced in this action dated August 4, 2009, from Cal Fire to Eunice Howell regarding the

9    Moonlight Fire.  This document was marked as Exhibit 801 during the November 5, 2012,

10   deposition of Alan Carlson.  Also appended to Exhibit 117 is a true and correct excerpt of the

11   November 5, 2012, deposition of Alan Carlson wherein Mr. Carlson authenticates this document.

12        142.    Attached hereto as **Exhibit 118** is a true and correct copy of a spreadsheet

13   produced in the State Actions by the California District Attorneys Association (001054 through

14   001057) showing deposits made into the WiFITER account.  This spreadsheet was marked as

15   Exhibit 776 at the October 29, 2012, deposition of Clare Frank, as Cal Fire's Person Most

16   Qualified in the State Actions.  Also appended to Exhibit 118 is testimony from Ms. Frank

17   concerning the spreadsheet.

18        143.    Attached hereto as **Exhibit 119** is a true and correct copy of California State

19   Administrative Manual (SAM) Section 8002.

20        144.    Attached hereto as **Exhibit 120** is a true and correct copy of a "Draft Audit Report

21   California District Attorneys Association (CDAA) Wildland Fire Investigation Training and

22   Equipment Fund," dated March 2009.  It is my understanding that the Draft Audit was produced

23   by Cal Fire in response to a Public Records Act request.  The Draft Audit is Bates stamped Cal

24   Fire/PRAR Prod. 12/11/12 01595-01619, and was marked as Exhibit 1118 during the February 8,

25   2013, deposition of Anthony Favro.  Also appended to Exhibit 120 is a true and correct excerpt of

26   the February 8, 2013, deposition of Anthony Favro wherein Mr. Favro authenticates this

27   document.

28   / / /

DOWNEY BRAND LLP

31

145.     Attached hereto as **Exhibit 121** is a true and correct copy of an "Audit Report California District Attorneys Association (CDAA) Wildland Fire Investigation Training and Equipment Fund," dated September 2009.  It is my understanding that this Audit Report was produced by Cal Fire in response to a Public Records Act request.  The Audit Report is Bates stamped Cal Fire/PRAR Prod. 12/11/12 01664-01690, and was marked as Exhibit 1120 during the February 8, 2013, deposition of Anthony Favro.  Also appended to Exhibit 121 is a true and correct excerpt of the February 8, 2013, deposition of Anthony Favro wherein Mr. Favro authenticates this document.

146.     According to documents produced in the State Actions, on or about September 25, 2009, Cal Fire auditor Anthony Favro sent a copy of his then-final Auditor's Report concerning the WiFITER account to Cal Fire Director Del Walters, advising Walters that the funds were being diverted to the CDAA.  A true and correct copy of Mr. Favro's September 25, 2009, correspondence, and the associated thread, produced in the State Actions which was marked as Exhibit 1122 to Mr. Favro's February 8, 2013, deposition in the State Actions, is attached hereto as **Exhibit 122**.  Also appended to Exhibit 122 is a true and correct excerpt of the February 8, 2013, deposition of Anthony Favro wherein Mr. Favro authenticates this document.

147.     Attached hereto as **Exhibit 123** is a true and correct copy of an email my office received showing an exchange between Tony Favro, Chief of Program Accountability for Cal Fire, and Tonya Hoover, Acting State Fire Marshal for Cal Fire, dated September 29, 2009.  It is my understanding that this email chain was produced by Cal Fire in response to a Public Records Act request.  The email exchange is bates stamped Cal Fire/PRAR Prod. 12/11/12 02027, and was marked as Exhibit 1123 during the February 8, 2013, deposition of Anthony Favro.  Also appended to Exhibit 123 is a true and correct excerpt of the February 8, 2013, deposition of Anthony Favro wherein Mr. Favro authenticates this document.

148.     Attached hereto as **Exhibit 124** is a true and correct copy of an "Audit Report California District Attorneys Association (CDAA) Wildland Fire Investigation Training and Equipment Fund" dated November 2009.  This Audit Report was produced by Cal Fire in the State Actions as CDFMO020260-020285, and was marked as Exhibit 770 during the October 26,

32

DOWNEY BRAND LLP

2012, deposition of Anthony Favro.  Also appended to Exhibit 124 is a true and correct excerpt of the October 26, 2012, deposition of Anthony Favro wherein Mr. Favro authenticates this document.

149.     Attached hereto as **Exhibit 125** is a true and correct copy of an email chain which includes emails from Josh White in June 2007, produced by Cal Fire in the State Actions (Bates No. CDFMO168880 through CDFMO068886).

150.     Attached hereto as **Exhibit 126** is a true and correct copy of an email I received from Tom Hoffman, dated August 30, 2013, with the subject line "Civil cost recovery," addressed to undisclosed recipients, one of whom was me.

151.     Attached hereto as **Exhibit 127** is a true and correct copy of documents which relate to the purchase of 63 digital camera kits for various Cal Fire employees, including Josh White and Alan Carlson, which were produced by the California District Attorneys Association in the State Actions (Bates Nos. DB-CDAA_021057, DB-CDAA_021077, CDAA 10/12/12 000229-000234).  These documents were produced by the California District Attorney's Association in response to a subpoena served by Sierra Pacific in the State Actions.

152.     Attached hereto collectively as **Exhibit 128** are true and correct copies of documents produced in response to a Public Records Act request by Cal Fire (Cal Fire/PRAR Prod. 9/21/12 007831-007846), which relate to out-of-state travel by Josh White before September 2007, and documents produced in response to a Public Records Act request by Cal Fire (Cal Fire/PRAR Prod. 12/11/12 00769-00777), which is an excerpt of a document that relates to travel by Alan Carlson before September 2007.

153.     Attached hereto as **Exhibit 129** is a true and correct copy of an email sent by Josh White on September 10, 2007, in which he reveals that he was "a little crushed" when he learned that Cal Fire's share of the Moonlight Fire suppression expenses were much smaller than those of the United States Forest Service.  The email was produced in the State Actions as WHITE005601-005603.  When I asked Mr. White in his deposition why he had made this comment, he had no explanation and said "I don't know—I just don't remember."  Mr. White's September 10, 2007, email was marked as Exhibit 824 during the November 6, 2012, deposition

33

DOWNEY BRAND LLP

1   of Alan Carlson.  Also appended to Exhibit 129 is a true and correct excerpt of the November 6,

2   2012, deposition of Alan Carlson wherein Mr. Carlson authenticates this email.

3        154.   Attached hereto as **Exhibit 130** are true and correct copies of documents my office

4   received that show emails between Cal Fire Chief Josh White and Clare Frank dated March 16,

5   2010.  These documents were marked as Exhibit 928 at the deposition of Clare Frank in the State

6   Actions.  Also appended to Exhibit 130 is a true and correct excerpt of the February 13, 2013,

7   deposition of Clare Frank wherein Ms. Frank authenticates this document.

8        155.   Attached hereto as **Exhibit 131** is a true and correct copy of a document showing a

9   settlement agreement signed by Cal Fire Chief Josh White on August 3, 2009, wherein the

10  settlement requires over $10,000 payable to the WiFITER account, produced by Cal Fire in

11  response to a Public Records Act request (Cal Fire/PRAR Prod. 2/11/13 17271 through Cal

12  Fire/PRAR Prod. 2/11/13 17273).  The settlement agreement was also marked as Exhibit 5085 at

13  the February 13, 2013, deposition of Clare Frank in the State Actions, as Cal Fire's Person Most

14  Qualified.

15       156.   Attached hereto as **Exhibit 132** is a true and correct copy of a document showing a

16  settlement agreement signed by Cal Fire Chief Josh White on April 29, 2009.  The settlement

17  agreement was marked as Exhibit 5086 at the deposition of Clare Frank in the State Actions.

18  Also appended to Exhibit 132 is a true and correct excerpt from the February 13, 2013, deposition

19  of Clare Frank wherein Ms. Frank authenticates this document.

20       157.   Attached hereto as **Exhibit 133** is a true and correct copy of a document showing a

21  settlement agreement signed by Alan Carlson on June 18, 2008, wherein the settlement requires

22  $18,523 payable to the WiFITER account, produced by Cal Fire in response to a Public Records

23  Act request (Cal Fire/PRAR Prod. 2/11/13 17266 through Cal Fire/PRAR Prod. 2/11/13 17269).

24  The settlement agreement was also marked as Exhibit 5096 at the deposition of Clare Frank in the

25  State Actions.

26       158.   Attached hereto as **Exhibit 134** is a true and correct copy of a document showing a

27  settlement and release agreement signed by Alan Carlson on March 12, 2009, requiring payment

28  of over $9,000 to the WiFITER account, produced by Cal Fire in response to a Public Records

DOWNEY BRAND LLP

34

1    Act request (Cal Fire/PRAR Prod. 2/11/13 17252-17257).  According to the document, the

2    payment toward the WiFITER account (which the State Auditor found to be unlawful), was to be

3    mailed to Tracy L. Winsor, lead counsel for Cal Fire in the State Actions.

4         159.    At the February 8, 2013, deposition of Katherine (Kay) Price in the State Actions,

5    a copy of WiFITER Trust Fund Training Project Proposal submitted by Ms. Price was marked as

6    Exhibit 5066.  It is my understanding that this project proposal, bates stamped Cal Fire/PRAR

7    Prod. 9/21/12 010217-010290, was produced by Cal Fire in response to a Public Records Act

8    request.  Attached hereto as **Exhibit 135** is a true and correct copy of the project proposal along

9    with relevant excerpts from Ms. Price's deposition testimony authenticating the exhibit.

10        160.    Attached hereto as **Exhibit 136** are true and correct copies of documents, produced

11   by the California District Attorneys Association in response to a subpoena in the State Actions

12   (Bates Nos. DB-CDAA_018453, DB-CDAA_18455, DB-CDAA_18456, DB-CDAA_004214,

13   DB-CDAA_004215, DB-CDAA_023886, DB-CDAA_023887, DB-CDAA_018210 through DB-

14   CDAA_018215, DB-CDAA_020929), showing transmission of checks pursuant to a settlement

15   agreement from the Regents of the University of California to Alan W. Carlson, including one

16   check in the amount of $13,470 made payable to the California District Attorneys Association.

17   These documents were also marked as Exhibit 1127 at the February 8, 2013, deposition of

18   Anthony Favro in the State Actions.  Also appended to Exhibit 136 is a true and correct copy of

19   an excerpt from Mr. Favro's February 8, 2013, deposition wherein Mr. Favro discusses his

20   awareness concerning the approximately $13,470 that was never deposited into the CDAA

21   account.  I am informed and believed that Cal Fire and/or the California Attorney General is

22   conducting an investigation with respect to the missing $13,470.  Also attached as part of Exhibit

23   136 is a September 29, 2014, letter from Cal Fire to counsel for Howell's Forest Harvesting

24   indicating that the "Department of Justice is conducting an investigation as to the whereabouts

25   and ultimate outcome of this check."

26        161.    Attached hereto as **Exhibit 137** is a true and correct copy of documents bates

27   labeled CDAA 10/12/12 006165-69 which I understand reflect that Alan Carlson received a

28   speaker fee from the WiFITER Fund when he was still employed by Cal Fire, produced by the

DOWNEY BRAND LLP

35

1   California District Attorney's Association in response to a subpoena served by Sierra Pacific in

2   the State actions.  I understand that these pages are an excerpt from a much larger document.

3   This document was also marked as Exhibit 881 during the November 28, 2012, deposition of

4   Andrea Guy.  Also appended to Exhibit 137 is a relevant excerpt from the November 28, 2012,

5   deposition of Andrea Guy wherein Ms. Guy authenticates this document.

6          162.    Attached hereto as **Exhibit 138** is a true and correct copy of a file entitled "CCR

7   Case Mgt Training 2011-15."  It is my understanding that this file was produced by Cal Fire in

8   response to a Public Records Act request.  It was marked as Exhibit 882 during the deposition of

9   Andrea Guy in the State Actions.  As indicated therein, this pertains to a program that was

10   approved wherein, according to the budget estimate, WiFITER money was to be spent to send

11   sixty (60) Cal Fire participants for a five-day, four-night so-called "training event" at the Cliffs

12   Resort in Pismo Beach, California.  Also appended to Exhibit 138 is a true and correct excerpt of

13   Andrea Guy's November 28, 2012, deposition wherein Ms. Guy authenticates this document.

14          163.    A true and correct copy of the Official Fact Sheet regarding the California State

15   Auditor's report dated October 15, 2013, is attached hereto as **Exhibit 139**.

16          164.    A true and correct copy of "WiFITER Project Detail" produced by Cal Fire in the

17   State Actions (Bates Nos. CDFMO060014 through CDFMO060016), is attached hereto as

18   **Exhibit 140.**

19          165.    A true and correct copy of three documents which reflect what are described as

20   WIFITER "Project Proposals" by Josh White, and which were produced by Cal Fire in the State

21   Actions (Bates Nos. CDFMO149353 through CDFMO149354, CDFMO061749 through

22   CDFMO061761, CDFMO098077 through CDFMO09879), are attached hereto as **Exhibit 141**.

23          166.    Attached hereto as is **Exhibit 142** are true and correct copies of emails produced

24   by Cal Fire in the State Actions, which include instances showing Josh White's involvement in

25   WiFITER project proposals and expenditures are.  (Bates Nos. CDFMO150520 through

26   CDFMO150522, CDFMO150603 though CDFMO150604, CDFMO098311 though

27   CDFMO098312, CDFMO150981 through CDFMO150983, CDFMO150913 through

28   / / /

DOWNEY BRAND LLP

36

1    CDFMO150914, CDFMO150936 through CDFMO150940, CDFMO061816 through

2    CDFMO060818, CDFMO182469 through CDFMO182471).

3    **X.    WiFITER Deposition Testimony**

4         167.    Defendants deposed Clare Frank in the State Actions on October 29-30, 2012,

5    December 3-4, 2012, and February 13-14, 2013.  Attached hereto as **Exhibit 143** are true and

6    correct copies of relevant excerpts from her deposition.

7         168.    Defendants deposed Anthony P. Favro in the State Actions on February 8, 2013.

8    Attached hereto as **Exhibit 144** are true and correct copies of relevant excerpts from his

9    deposition.

10         169.    Attached hereto as **Exhibit 145** is a true and correct copy of Thomas P. Hoffman's

11    complete deposition testimony taken on May 1, 2013, in the State Actions.

12         170.    Defendants deposed George Alves on January 17, 2013, in the State Actions.

13    Attached hereto as **Exhibit 146** are true and correct copies of relevant excerpts from his

14    deposition.

15         171.    Defendants deposed Chris Parker in the Federal Action on November 11, 2011.

16    Attached hereto as **Exhibit 147** are true and correct copies of relevant excerpts from Mr. Parker's

17    federal deposition.

18    **Y.    WiFITER Document Requests and Productions**

19         172.    In October 2010, Sierra Pacific propounded a request for production on Cal Fire in

20    the State Actions seeking "all documents evidencing the use of any money recovered from any

21    wildfire litigation to which you were a party in the last ten years."  Cal Fire served an amended

22    response on or about February 4, 2011.  A true and correct copy of this amended response is

23    attached hereto as **Exhibit 148**.

24         173.    On October 4, 2012, Defendants requested that Cal Fire produce WiFITER

25    documents pursuant to Notice of Cal Fire's Deposition with Request for Production calling for

26    production on or before October 19, 2012 ("WiFITER Requests").

27    / / /

28    / / /

DOWNEY BRAND LLP

37

174.     In the months that followed, the parties engaged in extensive motion practice before appointed discovery referee Honorable David Garcia (Ret.) regarding the production of documents responsive to these WiFITER Requests.

175.     Judge Garcia repeatedly confirmed WiFITER's discovery relevance, and issued detailed findings and recommendations which culminated in an April 10, 2013, order compelling Cal Fire to complete its WiFITER production on or before April 30, 2013.

176.     Notwithstanding Defendants' formal document requests calling for production of all WiFITER documents in 2010 and again on or before October 19, 2012, and extensive motion practice culminating in a state court order, i.e., requiring Cal Fire to produce all WiFITER documents on or before April 30, 2013, and the reaffirmation of that order on July 1, 2013, Cal Fire did not produce all of its WiFITER documents by the deadline, or for that matter, before trial.

177.     Defendants learned purely by chance by reviewing an audit published by the State Auditor on October 15, 2013, that Cal Fire and its counsel were in direct violation of the state court's orders. A true and correct copy of this audit report is attached hereto as **Exhibit 149**. The audit referenced an important Cal Fire internal email dated January 8, 2005, that identified its rational for forming WiFITER, which the State Auditor concluded was an effort at least in part to avoid state fiscal controls. But for the issuance of the State Auditor's report, Defendants would have never discovered this document.

178.     A few days later, my firm received from the State Auditor's office a copy of the January 8, 2005, Cal Fire email chain, that concluded the WiFITER account unlawful, and that Cal Fire never sought approval as required by law ("January 2005 email"), and which identified the purpose of housing the account outside of Cal Fire. We searched our records and concluded that Cal Fire did not produce this January 2005 email in discovery on or before April 30, 2012. Cal Fire has admitted the same. A true and correct copy of the January 2005 email my firm received from the State Auditor's office is attached hereto as **Exhibit 150**.

179.     When Defendants brought this disturbing revelation to Cal Fire's attention and demanded production, Cal Fire suddenly disclosed that it and its attorneys had failed to produce

38

DOWNEY BRAND LLP

1    not only the January 2005 email, but thousands of pages of additional WiFITER documents in

2    violation of the state court's orders.

3         180.   On or about October 30, 2013, the state court held a telephonic hearing. During

4    that hearing, the court ordered Cal Fire, yet again, to produce all WiFITER documents on or

5    before October 31, 2013. The order issued during the hearing was memorialized in the state

6    court's subsequent written order of November 7, 2013.

7         181.   On October 31, 2013, six months after the deadline, Cal Fire belatedly produced

8    approximately 2,378 documents (5,313 pages) of material relating to WiFITER. The documents

9    were a jumble of materials, produced a year after the documents were due under the Code, and six

10   months after a state court-order required Cal Fire to produce them. Attached hereto as

11   **Exhibit 151** is a true and correct copy of certain documents pertaining to WiFITER belatedly

12   produced by Cal Fire on or about October 30, 2013. (Bates Nos. CDFMO179558,

13   CDFMO172189, CDFMO169715, CDFMO172656, CDFMO170053, CDFMO172135,

14   CDFMO172180, CDFMO172183, CDFMO172186, CDFMO172124, CDFMO147002-

15   CDFMO147004, CDFMO147041, CDFMO147143 through CDFMO147144, CDFMO169713

16   through CDFMO169714, CDFMO169767, CDFMO169791, CDFMO169797, CDFMO169809

17   through CDFMO169811, CDFMO169836, CDFMO169854, CDFMO169919, CDFMO169927

18   through CDFMO169932, CDFMO169959, CDFMO170006, CDFMO170008 through

19   CDFMO170009, CDFMO170081 through CDFMO170082, CDFMO170084 through

20   CDFMO170086, CDFMO170107, CDFMO172138- CDFMO172139, CDFMO172144,

21   CDFMO172235, CDFMO172238 through CDFMO172239, CDFMO172277, CDFMO172294

22   through CDFMO172298, CDFMO172327, CDFMO172346, CDFMO172375, CDFMO172382,

23   CDFMO172393, CDFMO172417, CDFMO172430, CDFMO172465 through CDFMO172466,

24   CDFMO172529 through CDFMO172530, CDFMO172533 through CDFMO172535,

25   CDFMO172560 through CDFMO172561, CDFMO172573, CDFMO172587 through

26   CDFMO172588, CDFMO172611, CDFMO172628 through CDFMO172631, CDFMO172636,

27   CDFMO172652, CDFMO172685, CDFMO172705, CDFMO173054, CDFMO173058 through

28   CDFMO173061, CDFMO173087, CDFMO173095, CDFMO173124, CDFMO173385,

DOWNEY BRAND LLP

39

CDFMO173418, CDFMO173459, CDFMO173491-CDFMO173492, CDFMO173649,

CDFMO182212, CDFMO182251, CDFMO182325, CDFMO193666, CDFMO193860,

CDFMO185269 through CDFMO185270, CDFMO185316, CDFMO189424 through

CDFMO189425, CDFMO182313, CDFMO182325, CDFMO182459 through CDFMO182460,

CDFMO184684, CDFMO193666, CDFMO174339, CDFMO174342, CDFMO175161,

CDFMO175394, CDFMO175414, CDFMO175484, CDFMO175496, CDFMO175562,

CDFMO175566 CDFMO175739 through CDFMO175742, CDFMO176066, CDFMO176112,

CDFMO176137-CDFMO176140, CDFMO179146, CDFMO178030, CDFMO178288,

CDFMO178291, CDFMO178720, CDFMO179104, CDFMO179138, CDFMO179152,

CDFMO179545, CDFMO179553, CDFMO179998, CDFMO180022, CDFMO180199,

CDFMO180211, CDFMO180216, CDFMO181285, CDFMO181754, CDFMO181933,

CDFMO182049, CDFMO182059, CDFMO176312, CDFMO176363-CDFMO176366,

CDFMO177156 through CDFMO177157, CDFMO177259 through CDFMO177261,

CDFMO177517).

182.    Notwithstanding its previous representations, on or about November 22, 2013, and without warning or any advance notice, Cal Fire belatedly produced another 815 documents (2,089 pages) of WiFITER materials.

183.    Despite these two WiFITER productions, I remained concerned that Cal Fire still had not produced all WiFITER documents. Based on my review of Cal Fire declarations filed in the state action, it appears to me that Cal Fire has not produced as many as 46,327 potentially responsive WiFITER-related documents.

184.    My concerns with respect to Cal Fire's production of WiFITER documents were based on other factors as well. For instance, attached hereto as **Exhibit 152** is a true and correct copy of a March 17, 2009, email that Tom Hoffman of Cal Fire sent to Cal Fire's person most qualified on WiFITER, Ms. Clare Frank. That email addresses a number of issues including WiFITER/CDAA. Mr. Hoffman sent that email to an outside account used by Ms. Frank at clare.frank@chiefcounsel.net. This email was among the documents Cal Fire produced on October 31, 2013, at Bates Nos. CDFMO170805 through CDFMO170807. In view of this email,

DOWNEY BRAND LLP

40

1    it is apparent that at least Ms. Frank used a non-Cal Fire email address to conduct Cal Fire

2    business concerning WiFITER.  As a result, we requested that Cal Fire confirm what steps, if any,

3    it had taken to ensure that all such outside email accounts were searched for responsive

4    documents.  Cal Fire did not provide such assurances.

5         185.    In addition to my concern that Cal Fire had not produced all responsive

6    documents, Clare Frank and Josh White discussed a preference for using text messaging when

7    discussing CDAA/WiFITER issues.  Specifically, Ms. Frank writes in response to Mr. White's

8    email asking whether Ms. Frank received his text, "And yes I did get your text—thank you.  I

9    shouldn't have emailed you.  My bad.  Grr."  A true and correct copy of this email is attached

10   hereto as **Exhibit 153**, produced by Cal Fire as Bates Nos. CDFMO161605 through

11   CDFMO161607.  But, Cal Fire has never produced Mr. White or Ms. Frank's responsive text

12   messages.

13        186.    As reflected in other documents, it appears that Cal Fire's use of private email

14   accounts and text message for certain communications regarding WiFITER may reflect an effort

15   to comply with the advice of Cal Fire's then general counsel, who, according to email eventually

16   produced by Cal Fire, advised Cal Fire senior managers that as it pertained to the WiFITER fund

17   "the point is to keep a low profile."

18        187.    Attached hereto as **Exhibit 154** is a true and correct copy of an excerpt from

19   deposition exhibit number 5060, which was marked at the deposition of Katherine (Kay) Price in

20   the State Actions.  This excerpt was also produced by Cal Fire in response to a Public Records

21   Act Request (Bates No. Cal Fire/PRAR Prod 9/21/12 006656).

22        188.    Attached hereto as **Exhibit 155** is a true and correct copy of an excerpt from an

23   email chain involving Kay Price bearing Bates No. CDFMO175484, which was belatedly

24   produced by Cal Fire on October 31, 2013.  In reviewing this document, it is evident that Ms.

25   Price clearly understood that it was important that Cal Fire not admit to owning the money it had

26   diverted from the general fund into the illegal WiFITER account.  In this document, Ms. Price

27   admits that she had given so much thought to the issue, that it made her "head hurt" and she

28   echoed the absurd logic of Cal Fire's general counsel to the effect that, "the reason we are able to

DOWNEY BRAND LLP

41

1    have the fund is because we have no ownership over the fund," or words to that effect.

2          189.    To the extent the United States claimed there was no evidence of any conspiracy

3    concerning WiFITER, I am convinced that the withheld documents fill any alleged evidentiary

4    gap identified by the United States.  All of these documents are important and relevant to show

5    the motivational context driving Cal Fire investigations.  Some of them can be summarized as

6    follows (all of these documents can be found in Exhibit 151):

- Oct. 20, 2008 9:39 AM, Email from Melodie Durham to Pete Marquez, Tom Hoffman (Bates No. CDFMO172382):  "I would just hate to see further separation of north and south and it is disconcerting that Alan wants no oversight in the expenditure of this fund."  (Ex. 151 at   .)

- Feb. 26, 2008 9:16 PM, Email from Alan Carlson to Melodie Durham, et. al. (Bates No. CDFMO169715):  "I show the balance by July 1, 2008 being in the red…I do not expect any deposits to the fund between now and July 1, 2008 from the North unless someone is going to make a high % recovery in the South, we should not expect any funds from there either."  (Ex. 151 at   .)

- Feb. 25, 2009 9:05 PM, Email from Pete Marquez to Melodie Durham (Bates No. CDFMO172186):  "Depending on the balance, I recommend that we put everything on hold until we have more money in the account.  We might need it for training that is more critical."  (Ex. 151 at   .)

- Jun. 29, 2011 3:14 PM, Email from Anna Tigranyan to Candy Leffler (Bates No. CDFMO175414):  "Yay!!! That's the first we've received in a long time" (referring to the WiFITER check referenced in Candy Leffler's Jun. 29, 2011 2:49 PM email).  (Ex. 151 at   .)

- Oct. 18, 2008 8:37 PM, Email from Pete Marquez to Alan Carlson, et. al. (Bates No. CDFMO172652):  "I am recommending to my supervisor that the southern region not continue to contribute to the CDAA fund for the entire department.  Rather, I would like to see two separate funds, one for the north and one for the south.  We will then have the final say for the fund in the south being that we contribute eithty[sic] percent or greater to the fund."  (Ex. 151 at   .)

- Jan. 20, 2009 6:22 PM, Email from Alan Carlson to Melodie Durham, et. al (Bates No. CDFMO172529):  "While we have funds in the CDAA account, there are a number of outstanding issues to be addressed prior to funding a proposal such as this and more importantly, a long range plan to set training priorities consistent with income and expenditures to make sure we do not run out of funds for critical training needs."  (Ex. 151 at   .)

- Feb. 11, 2008 8:29 AM, Email from Mark Koenig to Melodie Durham (Bates No. CDFMO169797):  "Not sure about the funding issues, CDAA may have been tapped too much but I'll contact Alan to see if there is funding through FLETC that may be available."  (Ex. 151 at   .)

/ / /

/ / /

DECLARATION OF W. WARNE IN SUPPORT OF RULE 60(d)(3) MOTION

DOWNEY BRAND LLP

- Oct. 21, 2008 7:13 PM, Email from Pete Marquez to David Hillman (Bates No. CDFMO169714): "The amount of money in each fund will depend on the region's ability to recover funds in their region. Each region will contribute[sic] to only their fund." (Ex. 151 at  .)

190.   As the Court will readily appreciate, Defendants have long contended that, among other things, the Moonlight Fire investigators never properly considered other potential causes, including arson, and instead buried such evidence.  These documents demonstrate in my view a singular focus on collection of money, not better origin and cause determinations.  According to a single 2008 email produced by Cal Fire when Alan Carlson was considering drafts of the Moonlight Report, Mr. Carlson said the purpose of the fund was "specifically, to recover more civil cost dollars" and that "it is hard to see where our arson convictions are bringing in additional cost recovery." (Ex. 151 at 2.)  In this regard, Mr. Carlson was specifically advocating that surveillance training not be undertaken, since that training was more relevant to arson investigation, rather than investigations that have a higher probability of generating civil cost recovery cash flow.  That same week, in another email he stated that WiFITER would be running "in the red."

191.   It is my view that these and all the rest of the documents present a compelling case that WiFITER created a strong financial bias working against open, honest and transparent investigations.

## Z.   Response to WiFITER

192.   Attached hereto as **Exhibit 156** is a true and correct copy of an article authored by Matthew Jacobs and printed in the Sacramento Bee on February 7, 2013, entitled "Money Shouldn't Be a Motive for Prosecutions."

193.   On January 25, 2013, the Los Angeles Times and the Wall Street Journal published articles about how Cal Fire kept $3.6 million in the WiFITER account rather than in the state treasury.  Attached hereto as **Exhibit 157** are true and correct copies of these articles.

194.   Attached hereto as **Exhibit 158** is a true and correct copy of a letter from Assembly Republican Leader Connie Conway and Senate Republican Leader Bob Huff to Kamala Harris dated January 31, 2013.

43

195. Attached hereto as **Exhibit 159** is a true and correct copy of a letter from Kamala Harris to Assembly Republican Leader Connie Conway and Senate Republican Leader Bob Huff dated May 3, 2013.

196. Attached hereto as **Exhibit 160** is a true and correct copy of a letter from Senator Ted Gaines to Kamala Harris dated January 30, 2013.

197. Attached hereto as **Exhibit 161** is a true and correct copy of a Memorandum from George Lolas, Chief Division of Accounting and Reporting, State Controller's Office, dated July 9, 2013, regarding report of accounts outside the state treasury.

198. Attached hereto as **Exhibit 162** is a true and correct copy of the complete bill history for SB 1074 regarding state funds.

199. Attached hereto as **Exhibit 163** is a true and correct copy of the complete bill history for SB 1075 regarding Cal Fire civil cost recovery.

200. Attached hereto as **Exhibit 164** are true and correct copies of excerpts from the deposition of former Cal Fire general counsel Ginevra King Chandler taken on August 26, 2013, in the action *Howell v. Pimlott et al.*, Tehama Court Case No. 66611.

201. Attached hereto as **Exhibit 165** is a true and correct copy of an article authored by Mary Jacoby posted on the website Main Justice on or about April 7, 2009, entitled "Brenden Sullivan Slams Ted Stevens Prosecutors."

## AA.   **WiFITER in the Federal Action**

202. As part of its pre-trial Omnibus Motion in Limine, the United States included a request styled "Motion to Exclude Argument of Government Conspiracy and Cover Up." In support of that Motion, the United States first attacked a straw man, arguing that Defendants' so-called conspiracy allegations were premised in part on the fact "that Cal Fire has a fire cost recovery program . . . ." Of course, the mere existence of a cost recovery program was never Defendants' real concern. Instead, Defendants were troubled by the possibility that, under its program, Cal Fire might be diverting a portion of the money it was recovering from those it accused of starting wildland fires into accounts controlled by wildland fire investigators.

/ / /

44

DOWNEY BRAND LLP

203.    By the time of the pretrial conference in the Federal Action, Defendants had limited evidence to prove a cover-up or conspiracy associated with WiFITER, or that the WiFITER account instilled any bias in those individuals controlling the Moonlight Fire investigation, including Joshua White and his supervisor and mentor Alan Carlson.

204.    The Court granted the government's motion with respect to conspiracy arguments as it pertained to the impact of Cal Fire's cost recovery program.  That ruling contributed to the increased risks of trial and the Defendants' settlement assessment.

205.    Although Defendants respectfully disagreed with the Court's ruling, it was not necessarily a surprise in view of the limited evidence then available to the Court.  Indeed, when initially confronted with a similar motion *in limine* in the state court action one year later, Judge Nichols issued a similar ruling, excluding from trial altogether evidence of Cal Fire's WiFITER program.  Judge Nichols eventually dismissed the state action on other grounds, including the fact that Cal Fire was unable to present a *prima facie* case of causation, but his tentative ruling on WiFITER remained intact at the time of his honors' dismissals in late July of 2013

**BB.**    **Investigation by the Office of Professional Responsibility**

206.    By way of background, I am informed an believe that the Office of Professional Responsibility ("OPR") is responsible for ensuring that Department of Justice attorneys and law enforcement personnel perform their duties in accordance with the highest professional standards expected of the nation's principal law enforcement agency.

207.    In July 2014, Defendants submitted a lengthy brief to OPR regarding what Defendants perceive as prosecutorial misconduct on the part of certain federal lawyers in the Federal Action.

**CC.**    **Miscellaneous**

208.    The deposition of Michael Mitzel occurred on October 10, 2012, in the State Actions.  True and correct copies of relevant excerpts from Mr. Mitzel's deposition are attached hereto as **Exhibit 167**.

/ / /

/ / /

DECLARATION OF W. WARNE IN SUPPORT OF RULE 60(d)(3) MOTION

DOWNEY BRAND LLP

209.   Attached hereto as **Exhibit 168** is a true and correct copy of a map marked as Exhibit 709 during the October 10, 2012, deposition of Michael Mitzel.  A true and correct copy of zoomed in version of this map is attached hereto as **Exhibit 169**.

210.   Attached hereto as **Exhibit 174** is a true and correct copy of an email chain dated February 24, 2009, between Joshua White and Alan Carlson entitled "Pine Fire – Release."  This email chain was marked as Exhibit 7 during the May 1, 2013, deposition of Tom Hoffman in the State Actions.

211.   The United States designated Philip Wang as an expert witness in the Federal Action.  The deposition of Mr. Wang occurred on October 20, 2011, in the Federal Action.  True and correct excerpts from Mr. Wang's deposition are attached hereto as **Exhibit 176**.

212.   Attached hereto as **Exhibit 177** is a DVD containing a demonstrative animation prepared by Defendant's expert Jason Dorris illustrating that Mr. Wang's animation incorrectly places the path of the bulldozer through a tree that existed at the time.

213.   Attached hereto as **Exhibit 178** is a true and correct copy of Defendant Sierra Pacific Industries' Motion for Reconsideration (ECF 142), filed on February 8, 2011, in the Federal Action.

214.   Attached hereto as **Exhibit 179** is a true and correct copy of the Court's June 4, 2012, Order in the Federal Action (ECF 522) granting in part and denying in part the United States' Motion for Partial Summary Judgment on Affirmative Defenses.

I declare under penalty of perjury pursuant to the laws of the State of California and the United States that the foregoing is true and correct and that this Declaration was executed on October 9, 2014, at Sacramento, California.

_____*/s/ William R. Warne*_____
William R. Warne

DOWNEY BRAND LLP

46