| | |
|---|---|
| DOWNEY BRAND LLP<br>WILLIAM R. WARNE (SBN 141280)<br>MICHAEL J. THOMAS (SBN 172326)<br>ANNIE S. AMARAL (SBN 238189)<br>MEGHAN M. BAKER (SBN 243765)<br>621 Capitol Mall, 18th Floor<br>Sacramento, CA 95814-4731<br>Telephone: (916) 444-1000<br>Facsimile: (916) 444-2100<br>bwarne@downeybrand.com<br>mthomas@downeybrand.com<br>aamaral@downeybrand.com<br>mbaker@downeybrand.com | MATHENY SEARS LINKERT & JAIME, LLP<br>RICHARD S. LINKERT (SBN 88756)<br>JULIA M. REEVES (SBN 241198)<br>3638 American River Drive<br>Sacramento, CA 95864<br>Telephone: (916) 978-3434<br>Facsimile: (916) 978-3430<br><br>Attorneys For Defendants W.M. BEATY &<br>ASSOCIATES, INC. AND ANN MCKEEVER<br>HATCH, as Trustee of the Hatch 1987 Revocable<br>Trust, et al. |
| BRACEWELL & GIULIANI LLP<br>RICHARD W. BECKLER<br>D.C. Bar No. 262246<br>(*Pro Hac Vice Application Pending*)<br>JENNIFER T. LIAS<br>Virginia Bar No. 85608<br>(*Pro Hac Vice Application Pending*)<br>2000 K Street NW, Suite 500<br>Washington, DC 20006-1809<br>Telephone: (202) 828-5874<br>Facsimile: (800) 404-3970<br>richard.beckler@bgllp.com<br>jennifer.lias@bgllp.com<br><br>Attorneys for Defendant/Cross-Defendant<br>SIERRA PACIFIC INDUSTRIES | RUSHFORD & BONOTTO, LLP<br>PHILLIP R. BONOTTO (SBN 109257)<br>DEREK VANDEVIVER (SBN 227902)<br>1010 Hurley Way, Suite 410<br>Sacramento, CA 95825<br>Telephone: (916) 565-0590<br><br>Attorneys for Defendant, EUNICE E. HOWELL,<br>INDIVIDUALLY and d/b/a HOWELL'S FOREST<br>HARVESTING |

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>SIERRA PACIFIC INDUSTRIES, ET AL.,<br><br>        Defendants.<br><br>AND ALL RELATED CROSS-ACTIONS. | Case No. 2:09-CV-02445-KJM-EFB<br><br>**DEFENDANTS' REPLY IN SUPPORT OF REQUEST FOR LEAVE TO EXCEED PAGE LIMITS WITH RESPECT TO DEFENDANTS' RULE 60(d)(3) MOTION**<br><br>Date: November 21, 2014<br>Time: 10:00 a.m.<br>Dept: Courtroom 3, 15th floor<br>Judge: Hon. Kimberly J. Mueller |

## Introduction

Earlier today, the United States filed an Opposition to the Request for Leave to Exceed Page Limits ("Request") that Defendants filed in connection with their Rule 60(d) Motion to Set Aside a Judgment for Fraud on the Court ("Rule 60(d) motion"). (ECF 593-1.) In its Opposition brief, the United States essentially accuses two former Assistant United States Attorneys and Defendants of violating various ethical obligations. But this effort to brand anyone aligned against them as unethical is not only ironic and baseless, it also does nothing to address the merits of whether Defendants should be given a full and fair opportunity to provide and describe clear and convincing evidence that a fraud has been worked upon this Court. In light of the breadth of the corruption and prosecutorial misconduct asserted, there is simply no way to provide this Court all that it needs to make an informed decision within the confines of the standard page limits that the United States, perhaps understandably, would like to impose. Accordingly, for the reasons set forth in their moving papers, and for those additional reasons detailed below, Defendants respectfully request that the Court grant their Request.

## Argument

In its Opposition, the United States fails to discuss any of the law Defendants cited in their Request. As explained in their moving papers, a party may seek relief under Rule 60(d) by filing either a motion or by filing a complaint. *See Appling v. State Farm Mut. Auto Ins. Co.*, 340 F.3d 769, 780 (9th Cir. 2003) (discussing district court's right to hear independent action to set aside judgment for fraud upon the court). Although either format is allowed, the format ultimately used is largely irrelevant because "the substance of the relief sought is what controls, not the label of the submissions." *See Zone Sports Center Inc. LLC v. Red Head, Inc.*, No. 11-CV-00634-JST, 2013 WL 2252016, at *6 (N.D. Cal. May 22, 2013). Here, Defendants chose to title their submission as a motion, which they coupled with a request to exceed the standard page limits as required by the Local Rules. But Defendants could have just as easily formatted their submission as a complaint, which would have been subject to no page limitation whatsoever. In light of that, there is no principled reason to apply the standard twenty or twenty-five page limitation to the Rule 60(d) motion. Indeed, should it choose to do so, the Court could construe the submission as

a complaint, in which case no page limits would apply. *See Zone Sports*, 2013 WL 2252016, at *6 ("The Court has the authority to construe Plaintiff's request as either a motion brought under Rule 60(b) or as an independent action under Rule 60(d) because the substance of the relief sought is what controls, not the label of the submissions.") The Court could also construe the filing as the special motion that it is, hold that the motion is not constrained by a page limitation associated with typical pretrial motions, and grant the Request for additional pages.

The Request and the accompanying Rule 60(d) motion easily establish good cause for the lengthier filing. A cursory review of the Rule 60(d) motion reveals that the document is tightly-written, tackling numerous complex factual and legal issues within the confines of ninety-three pages of briefing.[1] A four page introduction, followed by a four page executive summary, precedes a background section fifteen pages long (not twenty-four pages as the United States represents). The United States suggests that this background section "runs on," but a fair reading reveals that the section provides necessary context for the Rule 60(d) motion. Among other things, Defendants provide an overview of the Moonlight Fire; describe the investigation into the cause and origin; review the procedural history associated with seven separate lawsuits, including this federal action as well as six state court actions; and summarize the sanctions orders issued by Judge Leslie C. Nichols that collectively total more than eighty-six pages.

Following this background, Defendants utilized forty-six pages of their briefing to detail selected examples of misconduct by the government investigators and prosecutors, all of which serve as the centerpiece of their Rule 60(d) motion. Tellingly, the United States levies no criticisms towards the length of this section of the brief, other than to describe this aspect of the briefing as "scandal mongering." After these selected examples of misconduct, Defendants provide two pages briefly explaining the Rule 60(d) legal standard, and after that, twelve pages of legal analysis. The United States suggests that one subsection of the multi-subsection legal analysis repeats some of misconduct detailed in prior sections of the brief, but even a cursory review of that subsection reveals that the misconduct is referenced only in summary form and

---

[1] The United States characterizes the Rule 60(d) motion as 100 pages long (Oppo. at 1:24), but its count includes the caption page, the lengthy table of contents, a lengthier table of authorizes, and a page of signatures for the three different law firms joining in the filing. The actual briefing is ninety-three pages long. (ECF 593.)

2

REPLY ISO REQUEST FOR LEAVE TO EXCEED PAGE LIMITS ISO RULE 60(d)(3) MOTION

only for the purpose of either tying the alleged misconduct to the legal standard or analogizing the misconduct to that in other cases. The brief ends with a conclusion that is approximately one page long, which is more than appropriate in light of the issues addressed. The United States does not suggest otherwise. Thus, while the brief may be long on substance, all of the sections are necessary and integral components of the requested relief under Rule 60(d).

Rather than address the legal basis for the Request, or Rule 60(d) motion structure or overall content, the United States instead devotes much of its Opposition to accusing Defendants and two former U.S. Attorneys of impropriety. This transparent attempt to deflect attention from the serious charges laid out in the Rule 60(d) motion fails on the merits and ultimately provides no basis for the Court to deny the Request for additional pages.

First, the United States suggests that because of an order this Court issued long-ago in connection with motions for summary judgment that Defendants filed, this Court should look with disfavor on the current Rule 60(d) motion and Request to exceed the default page limit. Specifically, the United States asserts that this Court "previously struck . . . [Defendants'] over-length summary judgment motions *sua sponte* and required defendants to show cause why sanctions should not be issued." (Oppo. at 1:20-23.) The United States conveniently omits what prompted this ruling, as well as what transpired afterwards, including the fact that the Court ultimately discharged its order to show cause and allowed Defendants to file two separate summary judgment motions that did not collectively exceed seventy pages.[2] (*See* ECF 374, 379.) Nothing about "this history" suggests that Defendants should be denied the opportunity to fully brief the fraud committed upon the Court. (Oppo. at 1:25-16.)

---

[2] In 2012, Defendants filed and/or joined in the filing of nine separate motions for summary judgment. Each motion addressed a distinct issue, and each individually complied with a twenty-page limit. (*See* EFC 356-369.) In connection with these filings, Defendants did not submit a request to exceed the default page limits of this Court because, at that time, they did not understand such a request to be required. (*See* ECF 374.) Although the United States suggests that this Court acted *sua sponte* to strike these nine summary judgment motions, in actuality, the United States moved to strike these pleadings on the grounds that the filings collectively exceeded twenty pages. (ECF 370.) The Court granted this motion and issued an order to show cause why sanctions should not be imposed on Defendants. (ECF 372.) In response, Defendants explained that counsel thought the filings were permissible based on their reading and understanding of the scheduling and standing orders, and asked for leave to file briefs that exceeded the standard page limits. (*See* ECF 374.) After reviewing this submission, this Court discharged the order to show cause, granted Sierra Pacific and Howell permission to file a summary judgment brief not to exceed fifty pages, granted Beaty and the Landowners permission to file a separate summary judgment brief not to exceed twenty pages, and allowed Sierra Pacific and Howell to join in this motion. (ECF 379.)

REPLY ISO REQUEST FOR LEAVE TO EXCEED PAGE LIMITS ISO RULE 60(d)(3) MOTION

In the same vein, the United States suggests that Defendants acted improperly by concurrently filing their Request to exceed the page limit and their Rule 60(d) motion. But this argument overlooks the fact that litigants typically file their request and their motion in this fashion so as to allow the Court and the opposing party the opportunity to review the proposed filing, assess the complexity of the legal and factual issues involved, and analyze – within the full context of the motion and requested relief – whether good cause exists to exceed the standard page limitations. Defendants provided their brief to the Court for this very reason.

The United States then attacks its two of its former Assistant U.S. Attorneys, accusing them of ethical breaches. Specifically, the United States insinuates that the courageous declaration of former Assistant U.S. Attorney Robert Wright, the former lead attorney for the United States on the Moonlight Fire action, is somehow evidence that defense counsel "intentionally invaded privilege and procured breaches of the duties of loyalty and confidentiality by former counsel for the United States." (Oppo. at 2, footnote 2.) Such a charge is baseless. Former prosecutor Wright volunteered the information presented to this Court through his declaration. (*See* Wright Decl. ¶ 34 ("I concluded it was my ethical obligation to do what I could within the contours of my ethical obligations to take corrective action . . . .").

Moreover, to the extent the United States suggests that what Moonlight Fire investigator Diane Welton told Robert Wright is attorney-client privileged, the United States has forgotten about the prior order from this Court finding that the United States had waived any privilege for any communications in the presence of lead Moonlight Fire investigator Joshua White. (ECF 210 at 19 ( "The court finds that by designating White and Reynolds as non-reporting expert witnesses, the United States waived otherwise applicable privilege and work-product protections.").)[3] As Mr. Wright makes clear, his conversation with Welton took place in the presence of White. Accordingly, to the extent that the conversation between Wright, Welton and White may at one time have been privileged, this Court has found that privilege was waived at the moment the United States named White as one of its experts. (ECF 210.)

---

[3] The federal prosecutors make no effort to defend the fact that Ms. Welton then testified falsely on that same issue while under oath during her deposition in the Moonlight Fire action, which further evidences the fraud worked upon this Court, and provides ample support for the full explication of Mr. Wright's declaration in the underlying motion.

4

REPLY ISO REQUEST FOR LEAVE TO EXCEED PAGE LIMITS ISO RULE 60(d)(3) MOTION

To the extent the United States contends that prosecutor Wright breached his ethics by exposing the fact that his supervisor attempted to pressure him into withholding a $10 million calculation error by the United States regarding its damages on another wildland fire, its claim is baseless. Anyone reading Wright's declaration on this issue will see that he is striking a blow for professional ethics, not breaching them. First, to the extent there was any work product protection for attorney thought processes about other cases, Wright as lead counsel in those other cases is the holder of that privilege and has the right to waive it. More importantly, any suggestion that the attorney work product doctrine protects an instruction by a governmental attorney to wrongfully suppress evidence in an effort to perpetrate a $10 million fraud upon a private citizen cannot be serious. As for the relevance of this particular set of transactions between former prosecutor Wright and his supervisor David Shelledy, there can be no question that they are evidence of a pattern and practice by certain Assistant U.S. Attorneys and their supervisor of withholding evidence, which also occurred in the Moonlight Fire litigation, and adds to the weight of what the Honorable Leslie C. Nichols has already found is clear and convincing evidence that the investigation and prosecution of the Moonlight Fire are "corrupt and tainted."

Next, the United States turns its sights on deceased former Assistant U.S. Attorney Eric Overby, charging that he "had an improper relationship" with defense counsel. (Opp. at 2:9-13.) But like former federal prosecutor Wright, Overby simply remained faithful to his obligation to seek justice. The suggestion by the United States that all five declarations from those attorneys to whom Mr. Overby reached out during his work on the matter are "putting their own self-serving statements in the mouth of the departed" is an unfortunate effort to besmirch Mr. Overby's stellar reputation. All five of these attorneys attest to what former prosecutor Overby said to each of them. Moreover, as statements by counsel of record for the United States, Mr. Overby's honest assessments of the Moonlight Fire prosecution are admissions by a party opponent, as well as statements against interest, and thus are most definitely not hearsay under Federal Rules of Evidence 801 and 804.[4] Overby's comments to defense counsel regarding what he experienced

---

[4] In any event, whether Mr. Overby's declarations are admissible should have no bearing on whether the Court's

5

REPLY ISO REQUEST FOR LEAVE TO EXCEED PAGE LIMITS ISO RULE 60(d)(3) MOTION

while working side-by-side with government investigators and prosecutors on the Moonlight Fire case provide further evidence of misconduct in this action, making them the proper subject of the Rule 60(d) motion.

Finally, the United States makes various bald accusations about the press and the Rule 60(d) motion. Defendants trust that the United States is not suggesting, through its extraneous comments, that parties seriously harmed by governmental corruption and prosecutorial misconduct are somehow precluded from disclosing such conduct to the press. The Supreme Court has recognized our "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *New York Times Co. v. Sullivan*, 376 U.S. 254, 269 (1964) (*citing Terminiello v. Chicago*, 337 U.S. 1, 4 (1949); *De Jonge v. Oregon*, 299 U.S. 353, 365 (1937)). The parties harmed by this misconduct have a First Amendment right to discuss this matter with anyone they choose, especially the press, and they will continue to do so. It is not only important that this Court have before it the conduct of certain prosecutors in this action, but it is also critically important, as noted by numerous cases, that the public does as well. Obviously, there are implications that go far beyond the concerns of these Defendants regarding the conduct alleged in the Rule 60(d) motion.

Additionally, the U.S. Attorney's Office has frequently used the press for its own purposes, and has done so specifically for the purpose making sure the press had its version of the story on specific legal occurrences. For instance, as it well knows, the U.S. Attorney's Office spoke to the press before its recent settlement with J.P. Morgan was finalized or announced. With respect to the Moonlight Fire action, not only did the U.S. Attorney's Office speak directly to the press regarding the Rule 65(d) filing, as quoted by the Sacramento Bee, but earlier in this case, the U.S. Attorney's Office set-up in advance a press conference regarding the ultimate settlement of this matter, invited the press into the U.S. Attorney's Office, and then told the press that the Defendants started the Moonlight Fire, a defamatory charge that the U.S. Attorney's Office also included in a press release issued the same day. In fact, to this day, that defamatory

typical page limitations should apply to the underlying Rule 60(d) motion.

REPLY ISO REQUEST FOR LEAVE TO EXCEED PAGE LIMITS ISO RULE 60(d)(3) MOTION

charge remains on the USDA's website, in spite of the fact that these federal prosecutors long understood all that has been disclosed by the Rule 60(d) motion.[5]

### Conclusion

Defendants acknowledge that their Rule 60(d) motion is lengthy, and also acknowledge that in this extraordinarily busy district, this motion (due to its size, scope and requested relief) imposes an additional burden on this Court and its limited resources. But the burden occasioned by the fraud perpetrated by the government investigators and prosecutors is so much greater. To the extent this Rule 60(d) motion creates a burden, it is a burden not created by Defendants, but by those select few within the government who occasioned the fraud and necessitated the filing.

Defendants are cognizant that a careful assessment of their Rule 60(d) motion will require significant focused attention, and for that reason, already suggested that the Court may want to consider, in its sound discretion, the appointment of a special master to help alleviate the burden occasioned by this motion. (*See* ECF 593 at 4.) Using its inherent authority, this Court can certainly fashion additional or alterative procedures to facilitate these proceedings. Limiting the ability of Defendants to full and fairly brief the fraud that occurred here should not be the procedural mechanism this Court utilizes. Indeed, while page limitations serve a good and necessary purpose, they do not do so when the limitations circumscribe the ability of a litigant to expose, analyze and seek redress for fraudulent misconduct on a court, especially when such a submission can be structured as a complaint that has no page limitation whatsoever. At its essence, Defendants are merely seeking an opportunity to be heard, which cannot be achieved within the confines of twenty pages (or even fifty or seventy pages) in this complex case.

---

[5] Additionally, and equally importantly, the U.S. Attorney's Office itself continues to defame these Defendants by publically stating, without factual support and despite what they know about the underlying prosecution, that Defendants caused the Moonlight Fire. For instance, in the U.S. Attorney's Report to the District, Issue #37, dated April 2013, the U.S. Attorney publically states that the Moonlight Fire, "ignited as a result of logging operations by industry giant Sierra Pacific Industries and its contractor, and destroyed 65,000 acres, more than two-thirds of which was National Forest land."

Even under the Rules of Professional Conduct which restrict certain pre-trial publicity (which would be no restriction here since there is no trial) attorneys have the absolute right to correct the record so as to protect their clients' reputations. Rule 5-120(c). Defense counsel will continue to do so here.

7

REPLY ISO REQUEST FOR LEAVE TO EXCEED PAGE LIMITS ISO RULE 60(d)(3) MOTION

In sum, Defendants have worked diligently and to the best of their abilities to streamline the arguments presented in their Rule 60(d) motion, and assure the Court that they are seeking additional pages because there is simply no way to adequately present this lengthy, complex matter to the Court without the additional pages being requested herein. For this reason, and all of the reasons discussed herein and in their moving papers, Defendants respectfully request that the Court grant Defendants leave to exceed the applicable page limits in connection with their Rule 60(d)(3) Motion to Set Aside a Judgment for Fraud on the Court.

DATED: October 14, 2014　　　　　　DOWNEY BRAND LLP

By: /s/ William R. Warne
WILLIAM R. WARNE
Attorneys for Defendant/Cross-Defendant
SIERRA PACIFIC INDUSTRIES

DATED: October 14, 2014　　　　　　MATHENY SEARS LINKERT & JAIME

By: /s/ Richard Linkert (as auth'd on 10/14/14)
RICHARD LINKERT
Attorneys For Defendants W.M. BEATY &
ASSOCIATES, INC. AND ANN MCKEEVER
HATCH, as Trustee of the Hatch 1987 Revocable
Trust, et al.

DATED: October 14, 2014　　　　　　RUSHFORD & BONOTTO, LLP

By: /s/ Phillip Bonotto (as auth'd on 10/14/14)
PHILLIP BONOTTO
Attorneys for Defendant, EUNICE E. HOWELL,
INDIVIDUALLY and d/b/a HOWELL'S
FOREST HARVESTING

REPLY ISO REQUEST FOR LEAVE TO EXCEED PAGE LIMITS ISO RULE 60(d)(3) MOTION