DOWNEY BRAND LLP
WILLIAM R. WARNE (SBN 141280)
MICHAEL J. THOMAS (SBN 172326)
ANNIE S. AMARAL (SBN 238189)
MEGHAN M. BAKER (SBN 243765)
621 Capitol Mall, 18th Floor
Sacramento, CA  95814-4731
Telephone: (916) 444-1000
Facsimile: (916) 444-2100
bwarne@downeybrand.com
mthomas@downeybrand.com
aamaral@downeybrand.com
mbaker@downeybrand.com

BENJAMIN B. WAGNER
UNITED STATES ATTORNEY
DAVID T. SHELLEDY
KELLI L. TAYLOR
Assistant U.S. Attorneys
501 "I" Street, Suite 10-100
Sacramento, California 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900
Attorneys for Plaintiff
THE UNITED STATES

BRACEWELL & GIULIANI LLP
RICHARD W. BECKLER
D.C. Bar No. 262246
(*Pro Hac Vice*)
JENNIFER T. LIAS
Virginia Bar No. 85608
(*Pro Hac Vice*)
2000 K Street NW, Suite 500
Washington, DC 20006-1809
Telephone: (202) 828-5874
Facsimile:  (800) 404-3970
richard.beckler@bgllp.com
jennifer.lias@bgllp.com

*ADDITIONAL COUNSEL AND PARTIES LISTED ON FOLLOWING PAGE*

Attorneys for Defendant/Cross-Defendant
SIERRA PACIFIC INDUSTRIES

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SIERRA PACIFIC INDUSTRIES, ET AL.,<br><br>Defendants.<br><br>AND ALL RELATED CROSS-ACTIONS. | Case No.  2:09-CV-02445-WBS-AC<br><br>**JOINT STATUS REPORT**<br><br>Date:          November 24, 2014<br>Time:          2:00 p.m.<br>Courtroom:  5<br>Judge:         Hon. William B. Shubb |

DOWNEY BRAND LLP

1
   MATHENY SEARS LINKERT & JAIME, LLP
   RICHARD S. LINKERT (SBN 88756)
2
   JULIA M. REEVES (SBN 241198)
   3638 American River Drive
3
   Sacramento, CA 95864
   Telephone: (916) 978-3434
4
   Facsimile: (916) 978-3430

5
   Attorneys For Defendants W.M. BEATY &
   ASSOCIATES, INC. AND ANN MCKEEVER
6
   HATCH, as Trustee of the Hatch 1987 Revocable
   Trust, et al.

7

8
   RUSHFORD & BONOTTO, LLP
   PHILLIP R. BONOTTO (SBN 109257)
9
   DEREK VANDEVIVER (SBN 227902)
   1010 Hurley Way, Suite 410
10
   Sacramento, CA 95825
   Telephone: (916) 565-0590
11

12
   Attorneys for Defendant, EUNICE E. HOWELL,
   INDIVIDUALLY and d/b/a HOWELL'S FOREST
   HARVESTING

13

14

15

16

17

18

19

20

21

22
      Pursuant to the October 24, 2014, Order Setting Status Conference (ECF Docket No. 608),
23
the Parties hereby submit the following Status Report.  The parties fundamentally disagree on
24
what the Court is presently seeking, what issues are properly before the Court, and how the case
25
should now proceed.  The Defendants and United States' respective positions in response to the
26
Court's Order Setting Status Conference are set forth below.  Defendants' Position is set forth on
27
Pages 1 – 7, and the United States' Position is set forth on Pages 8 – 21.
28

DOWNEY BRAND LLP

**DEFENDANTS' POSITION**

**A.    Preliminary Statement**

Defendants understood the Court's October 24, 2014, Order Setting Status Conference (ECF Docket No. 608) to require a coordinated effort by the Parties to identify the procedure by which the Court should address Defendants' Rule 60(d)(3) Motion concerning the United States' Fraud Upon the Court.  In particular, the Court ordered the parties to "submit a Joint Status Report proposing *how* the court should handle [the Defendants'] motion to set aside the judgment." (emphasis added).  The Court's order did not seek or permit polemics on *why* the Court should do anything. The United States has chosen to disregard the Court's order.  Instead of just providing input, as ordered, on how the Court should handle this matter, the United States has instead decided to use this Joint Status Report to argue the merits of the Rule 60(d)(3) Motion, argue the merits of their threatened disqualification motion, and argue the merits of their threatened motion to strike.  The United States has even chosen to argue the merits of the underlying case itself.  Defendants object to the United States' improper efforts to do so and move that those portions be stricken as irrelevant and improper.

While there is much to be said about the United States' improper stratagem and most recent misrepresentations, Defendants will not use this Joint Status Report to respond to the entirety of the United States' 13 pages of factual and legal arguments regarding the merits of various motions.  Defendants will do so at the appropriate time as authorized by the Court, in a manner consistent with whatever Scheduling Order the Court enters.  Here, in light of the nature of the United States' improper accusations and argument, Defendants briefly respond by stating that they believe this Court, after it fully considers the merits of their Rule 60(d)(3) Motion and the evidence regarding the jointly prosecuted state and federal Moonlight Fire actions, will reach conclusions similar to those reached by the only other neutral arbiter to consider these facts, wherein on February 4, 2014, the Hon. Leslie C. Nichols issued over 80 pages of Orders finding by "clear and convincing evidence" that the prosecution of the state Moonlight Fire action was "corrupt and tainted."  Judge Nichols' 26 page February 4, 2014, Order may be found at ECF

1

DOWNEY BRAND LLP

1  Docket No. 596-25.[1]  Contrary to the United States' representations, as contained in its portion of

2  this Joint Statement, Judge Nichols' Orders pertain to the same joint investigation, the same joint

3  investigators, the same Origin and Cause Report issued jointly by the United States and Cal Fire,

4  the same jointly prosecuted and proffered evidence, and the same joint preparation by both

5  federal and state prosecutors of a federal investigator, who then gave the same false deposition

6  testimony in both the state and the federal actions.  (*Id.* at 22.)

7      There is a reason why the United States engaged in a failed effort to strike Defendants'

8  opening brief, why it now threatens to disqualify defense counsel, and why it now threatens to

9  have the Rule 60(d)(3) Motion stricken altogether.  These acts collectively demonstrate an effort

10  on the part of these same federal prosecutors to bury evidence of serious malfeasance brought

11  forward by a federal whistleblower and to avoid at all cost any discovery of their misconduct, any

12  evidentiary hearing regarding their misconduct, and any ruling on the merits of the Defendants'

13  Rule 60(d)(3) Motion so as to leave intact the fraud worked upon this Court.  In short, the United

14  States' submission is an act of deflection filed in an effort to prevent this Court's examination of

15  the conduct of certain prosecutors and the consequences of their poor choices.

16  **B.**    **Proposed Briefing Schedule**

17      Defendants filed and served their Rule 60(d)(3) Motion and supporting materials on

18  October 9, 2014.  Defendants propose the following briefing schedule.

19          1.  December 17, 2014 – last day to file opposition papers.

20          2.  March 28, 2015 – last day to file reply papers.  As noted below, Defendants

21              propose this later reply date to ensure sufficient time to complete discovery after

22              receipt of the United States' opposition.

23  **C.**    **Proposed Hearing Date and Related Procedures**

24      In its October 24, 2014 Order, the Court directed the parties to provide a suggested

25  hearing date and an estimated duration of any hearing, including an indication as to whether one

26  or both parties anticipate the need for an evidentiary hearing and, if so, the anticipated scope and

27  ---

[1]  Of course, Judge Leslie C. Nichols did not have the benefit when issuing these orders of information from
28  whistleblower E. Robert Wright, who, in response to reviewing Judge Nichols' orders, came forward with pattern and
practice revelations and his own experiences on the Moonlight Fire matter.

1  duration of any evidentiary hearing.  The United States has refused to propose any hearing date.

2  Accordingly, Defendants request a hearing in June 2015 at a time available on the Court's

3  calendar.

4          Defendants request an evidentiary hearing before this Court wherein the Court will

5  receive evidence from a number of sources, including live witnesses, written discovery responses,

6  and videotaped depositions.  Defendants intend to use high resolution photographs, videos and

7  demonstrative exhibits.  Consequently, with this Court's permission and in order to facilitate the

8  Court's review of critical evidence in this matter, Defendants seek to bring high-resolution large

9  format screens into the courtroom because there is significant and critical high resolution

10  photographic evidence supporting the claims of false testimony and prosecutorial misconduct in

11  support of that testimony.

12          Defendants presently anticipate that the hearing will require approximately ten court days.

13  The scope of the hearing will include presentation of the evidence and argument concerning the

14  bases for relief set forth in Defendants' Rule 60(d)(3) Motion and will be further supported

15  through evidence developed through discovery.  In this regard, Defendants' motion for fraud

16  upon the Court is not an exhaustive list of the investigative and prosecutorial abuses in this action.

17  Defendants therefore intend to use the evidentiary hearing to present additional evidence in

18  support of the Defendants' Rule 60(d)(3) Motion.

19  **D.      Discovery Procedures**

20          Defendants request leave to conduct discovery to commence immediately on the issues

21  raised in the Rule 60(d)(3) Motion, including written discovery and depositions, both with respect

22  to the parties and third-parties under FRCP Rule 45.  In this regard, Defendants request

23  permission from this Court to conduct depositions of certain witnesses regarding prosecutorial

24  misconduct, to request related documents from the United States, to subpoena documents from

25  third parties, and to conduct certain third-party depositions.  In particular, and as more fully

26  discussed in Defendants' Rule 60(d)(3) Motion and the orders of the Honorable Leslie C. Nichols

27  in the jointly prosecuted Moonlight Fire state cases, there is evidence that the prosecution

28  encouraged and/or permitted dishonesty on the part of witnesses and that federal prosecutors were

DOWNEY BRAND LLP

3

1   asked to operate in such a fashion by their supervisor, as evidenced by AUSA Wright's verified

2   testimony that Shelledy pressured him to hide a $10 million dollar mistakes so as to defraud other

3   defendants.  Defendants request that all depositions be conducted before a judicial officer

4   appointed by the Court.

5        With respect to the permissible scope of discovery, Defendants request that the Court

6   enter an order allowing discovery on certain matters raised in the Rule 60(d)(3) Motion.

7   Defendants also request an early ruling that any of the United States' communications and

8   documents relevant to the Rule 60(d)(3) Motion are not protected under the attorney-client

9   privilege or the attorney work product doctrine, or any other privilege.  Defendants' believe that

10  grounds supporting such a ruling from this Court include:

11       (1) the nature of the allegations, the weight of the evidence already submitted in support

12  of the Rule 60(d)(3) Motion, and the fact that the Honorable Leslie C. Nichols found by the

13  higher "clear and convincing evidence" standard that the Moonlight Fire investigation and

14  prosecution were "corrupt and tainted," establishing a prima facie showing sufficient for

15  application of the crime fraud exception.

16       (2) any work product privilege that may have been held by the relevant Assistant United

17  States Attorneys with respect to communications with certain experts under FRCP Rule 26 is not

18  available: a) in view of the crime fraud exception; b) because the United States' consented to

19  disclosure of many of these experts as state action witnesses, wherein protection for all work

20  product and attorney/expert communications was waived; c) with respect to any non-retained

21  experts disclosed by the United States, such as David Reynold and Joshua White, Magistrate

22  Judge Brennan ruled that the United States waived any privileges that might have applied; and, d)

23  by application of FRCP Rule 26(b)(3)(A)(ii).  To the extent the Court wishes to consider

24  additional evidence or argument on these issues, Defendants propose an early briefing and

25  hearing schedule to be completed before the commencement of depositions so as to avoid any

26  related disputes during depositions.

27       In order to streamline discovery, Defendants have created a preliminary list of documents

28  that they seek from the United States in hard copy format, as well as in native file format along

DOWNEY BRAND LLP

4

with all associated metadata. Specifically, Defendants preliminarily seek production of the following from the United States: communications between the United States and any expert or consultant retained for the Moonlight Fire litigation concerning the origin and cause of the Moonlight Fire; communications involving former AUSA Eric Overby regarding the prosecution of the Moonlight Fire; witness interview notes or FBI 302 form interview statements/reports regarding the Moonlight Fire; documents concerning the investigation of the alleged bribe referenced in Defendants' Rule 60(d)(3) Motion, which was concealed from Defendants by the United States; all communications involving PRAO (Professional Responsibility Advisory Office of the Department of Justice), OPR (Office of Professional Responsibility) or any other agency or office within the Department of Justice regarding the Moonlight Fire; all documents related to or comprising communications involving PRAO referenced in the Declaration of Robert Wright; and any and all documents or communications regarding any of the Moonlight Fire investigators' or prosecutors' concerns that the fire originated in a location other than the alleged points of origin.

With respect to the timing of discovery in relation to the briefing schedule, Defendants request permission to conduct limited and focused discovery both before and after the date of receipt of any opposition to the Rule 60(d)(3) Motion that the United States may submit. Defendants seek such an order from this Court in order to ensure that that any new evidence, argument, or issues raised by the United States in any opposition can be the subject of a full and fair hearing and because Defendants should be afforded a full and fair opportunity to investigate and respond thereto with discovery into additional evidence if necessary. To allow for this discovery, and sufficient time to address it in the briefing, Defendants have proposed a briefing schedule wherein Defendants' reply papers are due approximately 11 weeks following receipt of the United States' opposition.

**E.** **Other Matters**

    **1.** **Efforts to Narrow the Issues in Dispute**

Defendants contend that the facts set forth in support of the Rule 60(d)(3) Motion are not subject to reasonable dispute and that if taken as true, they easily satisfy Defendants' burden on

5

1  this Motion.  Defendants' seek the Court's guidance in securing the early identification of any

2  facts or evidence genuinely in dispute so as to ensure the efficient use of the Court's resources.

3  **2.     Further Statement Regarding Other Matters**

4  a.     <u>Motion To Stay Settlement</u>

5  Defendants anticipate filing a Motion to Temporarily Stay Settlement Agreement

6  Obligations.  Defendants request that, to the extent the Court conducts a hearing on that motion,

7  the hearing take place in December 2014 and that the briefing schedule proceed according to the

8  Eastern District Local Rules.

9  b.     <u>Early Identification of Evidentiary Objections by the United States</u>

10  The extent of necessary discovery and the duration of any hearing will be dependent, in

11  part, upon whether the Court applies the Federal Rules of Evidence, and if so, whether the United

12  States disputes or objects to any of evidence presented in support of Defendants' Rule 60(d)(3)

13  Motion.  Accordingly, Defendants request that the United States be ordered to file within twenty-

14  one days a detailed statement that identifies any bona fide objections it claims to have to any

15  evidence submitted in support of Defendants' Rule 60(d)(3) Motion; and that the statement set

16  forth with particularity the evidence to which any objection is made, the basis for the objection,

17  and why the United States contends that the evidence cannot be provided in a form that "would be

18  admissible" as permitted under FRCP Rule 56(c)(2), at any hearing conducted by the Court.

19  If, upon receipt of the United States' detailed statement, Defendants believe that the scope

20  or extent of discovery should be altered to address any of the United States' objections,

21  Defendants request that the Court permit Defendants to file an application to the Court for

22  modifications to the Court's Scheduling Order.  Defendants also request that they be permitted to

23  submit any written response to the United States' evidentiary objections either with their

24  application and/or with any reply briefing in support of Defendants' Rule 60(d)(3) Motion.

25  c.     <u>No Contact/Restraining Order/Preservation of Evidence</u>

26  Defendants request that the Court issue an Order prohibiting the United States or its

27  counsel, whether directly or indirectly, from communicating with any witnesses or potential

28  witnesses who are not active Assistant United States Attorneys presently serving as counsel of

6

DOWNEY BRAND LLP

1  record on the Rule 60(d)(3) Motion, including but not limited to all individuals, including experts,

2  identified in Defendants' Motion.  Defendants further request that this Court consider issuing an

3  order directing the United States to provide an itemized list identifying all communications with

4  all witnesses or potential witnesses since the filing of the Rule 60(d)(3) Motion, and to produce

5  any documents comprising or regarding any such communications.  Finally, Defendants ask for

6  an order preserving all relevant documents, including emails, and a listing of any documents

7  which may have been deleted, destroyed or otherwise rendered unavailable.

8          d.      Further Hearings

9          Defendants anticipate that, in the event the Rule 60(d)(3) Motion is granted such that the

10  judgment is set aside, terminating sanctions are imposed, and the Parties' Settlement Agreement

11  is set aside, a further briefing schedule and hearing(s) may be necessary to address all appropriate

12  remedies that flow from the Court's ruling, including reimbursement of all settlement proceeds

13  paid to date, re-conveyance of land transferred to date, and reimbursement of all defense expenses

14  incurred in the underlying action, and the instant Rule 60(d)(3) Motion.  In the interests of justice,

15  Defendants will also seek an order requiring the United States to retract defamatory statements

16  about Defendants being responsible for the fire currently published on government websites or

17  elsewhere, since it has refused to do so voluntarily.

18  //

19  //

20  //

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28  //

DOWNEY BRAND LLP

7

DOWNEY BRAND LLP

# UNITED STATES' POSITION

## A.     Background

The Moonlight Fire started on September 3 (Labor Day) 2007, on private property near the Plumas National Forest.  The fire spread to public land, where it burned 46 thousand acres of the Plumas and Lassen National Forests.  It burned for over two weeks before it could be suppressed, and the Forest Service incurred costs in excess of $20 million for fire suppression alone.

The government was prepared to prove with testimony of fact witnesses – including the defendants' agents – that the fire was started by two employees of defendant Howell's Forest Harvesting Company ("Howell's") named "JW" Bush and Kelly Crismon, while working on a timber harvest at a remote work site in the forest.  They used bulldozers to drag logs to a landing and to create soil berms to control erosion where logs were skidded.  Because it was Labor Day, Bush and Crismon operated alone and without supervision at the remote work site.  Neither of them saw another person at the work site all day.

Howell's established policy required special precautions that day because it was a "red flag warning day," indicating an extreme risk of ignition and spread of fire.  The policy required Bush and Crismon to perform a ground inspection or "fire walk" immediately after shutting down bulldozer operations, and to conduct a continuous "fire watch" for at least two hours after shutdown, before leaving the site.

Bush and Crismon violated Howell's fire-safety policy.  After shutting down their bulldozers at about 1:00 p.m., they did not conduct the mandatory fire walk, nor the mandatory two-hour fire watch.  Instead, as Bush and Crismon admitted in depositions, they just left the work site 15-30 minutes after shutdown.  Their supervisor (another Howell's employee named Damon Baker) admitted in deposition that Bush and Crismon violated Howell's fire-safety policy by doing so.

Bush drove to Howell's base camp, twenty minutes away, to get a soda.  When he tried to return, he could not reach the job site, because he encountered a wave of heat and a 100-foot wall of smoke emanating from the area where Crismon had operated his bulldozer earlier in the day.

8

1   The intense heat and smoke forced Bush to flee.  About eleven minutes later, he encountered a

2   fire engine that was already responding because the fire had been first reported by the Forest

3   Service's Red Rock Lookout, which was about ten miles away.

4         The United States filed a complaint in August 2009, with E. Robert Wright as counsel.

5   For reasons which will be explained after a protective order is entered, Wright was replaced in

6   January 2010.  Exhaustive discovery ensued for more than two years thereafter.  The United

7   States produced over 265 thousand pages of documents in response to more than a thousand

8   requests for production, and answered 185 interrogatories and 660 requests for admissions.  Fifty-

9   nine percipient witnesses and seventy-five expert witnesses were deposed.  Many witnesses were

10  deposed for multiple days; some were deposed for weeks.  Much of the extensive discovery

11  addressed the same claims now asserted as a fraud on the court:  (1) that a joint state-federal

12  investigation was biased and flawed and mis-identified the point of origin, (2) that sparks (both

13  generally and from bulldozer tracks) cannot start a fire, (3) that the Forest Service engaged in a

14  "cover up" to hide use of marijuana by an employee at the Red Rock Lookout, and (4) that

15  government witnesses manufactured evidence and testified falsely in deposition.

16        The defendants' cause-and-origin investigators criticized the government investigation

17  and made much of a white flag approximately ten feet from where government investigators

18  concluded the fire started.  But none of the defendants' cause-and-origin investigators concluded

19  that the fire started anywhere but in the same general area.  And none opined that the fire had a

20  different cause.  On the contrary, after independently reading burn indicators, an expert named

21  Frank Holbrook – working on behalf of defendant Howell's insurer – concluded that the fire

22  started where Howell's employees were working, about twenty-eight feet up the same skid trail

23  from where the government investigators said it started.  Gerald Quigley (working for a logging

24  co-op that includes the defendants) and Walt Wruble (retained as an expert for defendant W.M.

25  Beaty and Associates Inc. ("Beaty")) also both concluded that the fire started in the same general

26  area as the government investigators placed it.  The most helpful opinion Sierra Pacific could get

27  from a cause-and-origin investigator (for payment of approximately $850 thousand) is that the

28  fire started west of where the government investigators said – but even he put the origin in an area

9

DOWNEY BRAND LLP

1    that included Howell's work area.

2            The defendants also proffered an expert to say sparks from a bulldozer cannot start a fire.

3    But fact witnesses contradicted him.  Three witnesses designated to represent defendants Beaty

4    and Howell's in Rule 30(b)(6) depositions (Don Beaty, Eunice Howell, and Damon Baker) all

5    admitted that sparks from contact between bulldozers and rocks can start forest fires.  And both

6    Frank Holbrook (the investigator hired by Howell's insurer) and Howell's fire-watch employee

7    testified in deposition that on separate occasions, they actually saw sparks from bulldozer tracks

8    start fires in the forest.

9            The defendants' main focus, then as now, was to distract with claims of scandal.  They

10   spent days upon days in depositions trying to establish that a seasonal Forest Service employee

11   who manned the Red Rock Lookout Tower was high on marijuana and urinated on his toes (a folk

12   remedy for athlete's foot) shortly before another Forest Service employee at the same lookout

13   spotted the fire.  The defendants also used documents produced by the United States and

14   deposition testimony to argue (in court proceedings and in the press) that the Forest Service

15   sought to "cover up" marijuana at the lookout.

16           If the defendants' marijuana theory had been presented to the jury, it would have made

17   their agents seem more negligent, not less.  Bush and Crismon abandoned the job site where the

18   fire started without conducting the fire walk and fire watch required by established policy.  They

19   only learned of the fire when Bush encountered a wall of smoke and blistering heat, after the fire

20   had been reported from a Lookout manned by a supposed pot smoker.  And if the fire somehow

21   could have been spotted early enough to make a difference from the Red Rock Lookout ten miles

22   away, surely Bush and Crismon could have spotted it even earlier if they had stayed at the job site

23   where the incipient fire they had started erupted into open flame.

24           After two years of discovery on the same tired issues, the defendants could have attacked

25   the government investigation and presented their scandal defenses in a jury trial.  In fact, this

26   Court specifically ruled that they could try their claims about the Red Rock Lookout and, more

27   generally, that they could introduce evidence "that there was an attempt to conceal information

28   from the public or the defense."  Summ. Jmt. Order, Dkt. 522 at 8; Final Pretrial Order, Dkt. 573

DOWNEY BRAND LLP

10

1    at 17.

2         But when trial became imminent, the defendants all recognized that a settlement valued in

3    excess of $100 million better served their interests than a trial of their scandal defenses.  Thus, in

4    July 2012, the United States filed a settlement agreement (Dkt. 590) executed by counsel for all

5    parties.  The settlement agreement provides, *inter alia*:

6         (a) that the defendants "agree[d] to settle and compromise each and every claim of any

7    kind, known or unknown,"

8         (b) that the defendants released "any claims . . . arising out of or relating to the Moonlight

9    Fire or the allegations in [these] cases,"

10        (c) that the defendants expressly acknowledged that the facts and/or their potential claims

11   "may be different from facts now believed to be true or claims now believed to be available," and

12        (d) that the defendants specifically released "all Unknown Claims."  *Ibid.*

13        During the negotiations, Sierra Pacific insisted that the agreement not provide for the

14   Court to adopt the settlement terms as its order.  Thus, there is no consent decree or anything

15   similar in this case.  Instead, the Court only reserved jurisdiction to enforce the settlement

16   agreement while dismissing the complaint with prejudice.  Order, Dkt. 592.

17        The very day the settlement agreement was filed, Sierra Pacific's lead counsel, William

18   Warne, crowed to the press about the defendants' success in using discovery in this case to

19   expose cover up and scandal.[2]  In addition, he declared, "Typically, a settlement signifies the end

20   of a dispute, but this is just the beginning."[3]

21        Thus, Sierra Pacific and its counsel manifestly intended not to settle when they caused the

22   settlement agreement to be filed with the Court and jointly requested dismissal and judgment on

23   that basis.  In the government's view, if any fraud was committed here, it was by Sierra Pacific

24   and its counsel in requesting dismissal based on a settlement in order to avoid an imminent trial,

25   while concealing from the Court their present intent not to settle and to have the Court's judgment

26   set aside.  The United States defers to the Court on whether and what sanctions should be

27        [2] Sierra Pacific Press Release, available online at:  http://www.prnewswire.com/news-releases/sierra-pacific-corrects-misstatements-made-by-united-states-attorney-on-moonlight-fire-162790886.html.

28        [3] *Ibid.*

DOWNEY BRAND LLP

1    imposed for that fraud under the inherent authority recognized in *Chambers v. NASCO, Inc.,* 501

2    U.S. 32, 44, 111 S. Ct. 2123 (1991), and *Hazel-Atlas Glass Co. v. Hartford-Empire Co.,* 322 U.S.

3    238, 249-50, 64 S. Ct. 997, 1003 (1944).

4              **B.     The Motion to Disqualify Defense Counsel Should Be Decided First.**

5              The United States is today filing a motion to disqualify all counsel for the defendants

6    except those (if any) who can show they neither participated in procuring client confidences and

7    secrets from former Assistant U.S. Attorney Wright nor read his declaration (Dkt. 593-4) or the

8    defendants' memorandum of points and authorities (Dkt. 593-3) beyond the point where both

9    documents are replete with protected workproduct, privileged attorney-client communications,

10   and client confidences and secrets.[4]

11             As explained in the disqualification motion, the Wright declaration is not only a violation

12   of the duties of loyalty and confidentiality by Wright himself, but also an egregious violation of

13   professional responsibility by every lawyer who intentionally invaded privileges belonging to the

14   United States, either (for William Warne and unknown others) by procuring and abetting

15   Wright's unethical conduct or (for all the others) by failing to honor the established duty to stop

16   reading and notify the privilege holder as soon as the disclosure of privileged information was

17   apparent.  Cal. Bus. & Prof. Code § 6068(e); Cal. R. Prof. Cond. § 1-120; *Clark v. Sup. Ct.*

18   *(Verisign Inc.)*, 196 Cal. App. 4th 37, 49-56 (2011) (affirming disqualification of entire law firm

19   for reviewing information subject to attorney-client privilege which was improperly disclosed by

20   an attorney formerly employed by the opposing party).  All of the lawyers on brief for the

21   defendants then aggravated the violations by repeating in their moving papers privileged

22   information which was unethical for them even to read.  Under state law, applicable here by

23   virtue of Local Rule 180(e), disqualification of all lawyers and firms on the defendants' moving

24   papers (and any other lawyers who have read the Wright declaration or summary of it in the

---

[4] Obvious disclosures of workproduct in the Wright declaration begin at paragraphs 7-8, where it discusses work and conclusions of "consultants" (not just expert witnesses) hired to assist in litigation.  Later, paragraphs 13-17 purport to summarize discussions of legal strategy among attorneys for the United States (not just Wright) and confidential legal advice and requests for legal advice between the U.S. Attorney's Office (again, not just Wright) and the Justice Department's Professional Responsibility Advisory Office.  Pages 20-22 of the defendants' memorandum of points and authorities do the same.

12

1    defendants' motion) is required.

2           The disqualification motion must be decided before the motion to set aside the judgment,

3    to prevent the defendants from further exploiting the privileged information they wrongfully

4    gained by their attorneys.  *Cf. Trone v. Smith*, 621 F.2d 994, 999 (9th Cir. 1980).  The United

5    States therefore requests that the Court immediately forbid the defendants' attorneys from any

6    further work or consultation on the motion to set aside judgment until the motion to disqualify

7    them is decided.[5]  Certainly, the balance of hardships strongly supports such an order:  For the

8    defendants, having to wait a few weeks – after choosing to delay filing their motion for eight

9    months after procuring improper disclosures from Wright and four months after obtaining his

10   declaration[6] – would be trivial, whereas injury to the United States from further exploitation of its

11   confidences and secrets would be grave.

12                      **Proposed Schedule for Motion to Disqualify Counsel:**

13   Motion and Supporting Memorandum        Filed November 17, 2014

14   Defendants' Opposition                  December 1, 2014

15   United States' Reply                    December 8, 2014

16   Hearing                                 December 15, 2014, 2:00 p.m.

17   **C.      <u>Future Proceedings on the Motion to Set Aside Judgment</u>**

18          The United States proposes to file its response on December 17.  The response will rebut

19   each and every allegation of misconduct made by the defendants.

20          In addition, the United States plans to file a motion the same day to strike the defendants'

21   motion for at least two reasons:

22                      first, as a sanction for defense counsel's unethical conduct and violation of an

23   order specifically directing them "to comply with all applicable ethical rules," which the

24   Court entered after finding William Warne and Sierra Pacific's other attorneys repeatedly

25   violated the California Rules of Professional Conduct and deliberately evaded a prior

26

27          [5] In any event, all defendants are now on notice that any person tainted by communication with or
     workproduct of the offending attorneys may be subject to disqualification.

28          [6] *See* Wright Dec. (Dkt. 593-4) ¶ 34 (dated June 12, 2014 and discussing contacts last February).

DOWNEY BRAND LLP

13

1    order requiring compliance;[7] and

2          second, as specific enforcement of the Settlement Agreement (Dkt 590), which all

3    the defendants entered and caused to be filed with the Court, in which they agreed to settle

4    "every claim of any kind," released "any claims . . . arising out of or relating to the

5    Moonlight Fire or the allegations in [these] cases," acknowledged that the facts and their

6    potential claims "may be different from facts now believed to be true or claims now

7    believed to be available," and specifically released "all Unknown Claims."

8          Of course, even if the defendants' motion is stricken, the Court has authority to conduct its

9    own inquiry if it believes one is needed to protect the integrity of its proceedings.  *Chambers,* 501

10   U.S. at 44, 111 S. Ct. 2123.  But having settled the case and released all unknown claims, the

11   defendants have no proper role in such an inquiry.

12         The Supreme Court's decision in *Hazel-Atlas Glass Co. v. Hartford-Empire Co.,* 322 U.S.

13   238, 250, 64 S. Ct. 997, 1003 (1944), suggests appropriate procedures.  After reviewing affidavits

14   submitted *ex parte*, the Court found that counsel for one of the parties had obtained a favorable

15   judgment on a prior appeal through an elaborate scheme to deceive the circuit court.  In a

16   concurring opinion, Justice Jackson criticized the majority for departing from "the ordinary

17   course of trial of facts in open court."  322 U.S. at 254, 64 S. Ct. at 1005.  The Court, however,

18   held affidavits were sufficient because the *material* facts were undisputed.  322 U.S. at 249 n.5;

19   64 S. Ct. at 1003 n.5.

20         Likewise, here, the Court should allow the United States to respond to the accusations

21   with affidavits or declarations. The Court may then find no material facts are disputed, there was

22   no fraud on the court, and no further inquiry is needed.  Or, if it is not already persuaded, the

---

[7] *See* Order of November 16, 2010 (Dkt. 92) (Brennan, M.J.)  (finding counsel for Sierra Pacific violated Cal. Rule Prof. Conduct 2-100 and ABA Model Rule 4.2 by engaging in *ex parte* communications with employees of the United States in an effort to gather evidence against the United States in this case, without consent from government counsel); Order of January 11, 2011 (Dkt. 124) (Mendez, J.) (finding the same violations, and also that counsel for Sierra Pacific engaged in conduct degrading and impugning the integrity of the Court, interfering with the administration of justice, and involving dishonesty, fraud, deceit, or misrepresentation, in violation of Local Rule 180 and ABA Model Rule 8.4, when he misrepresented his identity when engaging in forbidden *ex parte* communications, as instructed by William Warne, lead counsel for Sierra Pacific); Order of November 18, 2011 (Dkt. 326) (Brennan, M.J.) (finding that counsel for Sierra Pacific again violated Rule 2-100 by engaging in forbidden *ex parte* communications through a retained expert, and intentionally evaded a protective order previously entered by the Court forbidding such conduct).

DOWNEY BRAND LLP

1   Court can identify any *material* disputes pertaining to specific accusations and question

2   government counsel about them.

3   **Proposed Schedule for Motion to Strike:**

4   Motion and Supporting Memorandum                December 17, 2014

5   Any further briefing to be scheduled after disqualification of counsel.

6   **Proposed Schedule for Motion to Set Aside Judgment:**

7   United States' Responsive Brief                December 17, 2014

8   No reply brief allowed.

9   Any further proceedings after Court identifies issues, if any, warranting further inquiry.

10   **D.      The Only Material Issue and the Corresponding Scope of Any Inquiry**

11   The government's responsive brief will rebut every accusation made by the defendants.

12   However, few if any of those accusations are material.  The defendants recognize as they must

13   that the time is long past when any fraud on them could matter.  FED. R. CIV. P. 60(c) (motion

14   alleging fraud on an opposing party may only be filed "no more than a year after the entry of the

15   judgment").  Therefore, the only question is whether a fraud was committed on the Court itself.

16   As defined by the Ninth Circuit, "[a] 'fraud on the court' is 'an unconscionable plan or

17   scheme which is designed to improperly influence the court'" in its "ultimate decision on the

18   merits."  *Phoceene Sous-Marine, S. A. v. U.S. Phosmarine, Inc.,* 682 F.2d 802, 805 (9th Cir.

19   1982) (quoting *England v. Doyle*, 281 F.2d 304, 309 (9th Cir. 1960)).  Over and over, the court

20   has firmly held to this definition.

21   *Pumphrey v. K.W. Thompson Tool Co.,* 62 F.3d 1128, 1131 (9th Cir. 1995) ("must

22   involve an unconscionable plan or scheme which is designed to improperly influence the court in

23   its decision"); *Abatti v. Commissioner,* 859 F.2d 115, 118 (9th Cir.1988) (same); *Latshaw v.*

24   *Trainer Wortham & Co.,* 452 F.3d 1097, 1104 (9th Cir. 2006) (same); *Alexander v. Robertson*,

25   882 F.2d 421, 425 (9th Cir. 1989) (same); *United States v. Buenrostro*, 638 F.3d 720, 722 (9th

26   Cir. 2011) (same).

27   Because of these stringent requirements, "only the most egregious misconduct, such as

28   bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an

DOWNEY BRAND LLP

15

1    attorney is implicated, will constitute a fraud on the court." *Valerio v. Boise Cascade Corp.,* 80

2    F.R.D. 626, 641 (N.D. Cal. 1978), *aff'd and adopted as opinion of the Ninth Circuit in* 645 F.2d

3    699 (9th Cir. 1981).  Accusations of conduct prejudicial only to the defendants are irrelevant.

4    *United States v. Estate of Stonehill,* 660 F.3d 415, 444 (9th Cir. 2011); *In re Levander,* 180 F.3d

5    1114, 1119 (9th Cir. 1999).

6          The motion to set aside judgment is not about bribery of a judge or jury, or fabrication of

7    evidence by counsel, or anything similar.  Because the defendants ran from a trial, all they can

8    claim is the government withheld evidence in discovery which supposedly might have helped

9    them and a witness supposedly gave false testimony in a deposition.  But the Ninth Circuit has

10   explicitly held that accusations of that sort cannot show a fraud on the court:  "A party's failure to

11   disclose information, or even a party's perjury, does not ordinarily constitute fraud on the court."

12   *In re Napster, Inc. Copyright Litig.,* 479 F.3d 1078, 1096 (9th Cir. 2007).  Nondisclosure and

13   perjury "should be exposed at trial," the court has insisted, not "after the fact" in proceedings

14   alleging fraud on the court.  *Ibid.; accord In re Levander,* 180 F.3d at 1119-20.  MOORE'S

15   FEDERAL PRACTICE states the same rules simply:

16         •  **"[p]erjury by a party or witness is not fraud on the court,"**

17         •  **"[f]alse answers to discovery requests are not fraud on the court,"** and

18         •  **"failure to disclose . . . is not a fraud on the court."**

19   12 J.W. Moore, MOORE'S FEDERAL PRACTICE § 60.21[4][c] (3d ed. 2009) (emphasis in

20   original).  The reason for all these rules is that "[t]he very purpose of a trial is to test the

21   credibility and veracity of the evidence." *Ibid.*

22         Thus, perjury can only be a fraud on the court if counsel committed or intentionally

23   suborned the perjury and presented it to the Court in an effort to influence its decision.  *See In re*

24   *Intermagnetics America, Inc.,* 926 F.2d 912, 916-17 (9th Cir. 1991) (explaining court must

25   determine whether declarant was acting as an officer of the court at the time he executed a false

26   declaration).  But no attorney for the United States testified in this case; nor did government

27   counsel offer or make any argument to the Court based on the deposition testimony that the

28   defendants claim was perjured.  The defendants' perjury accusations are therefore immaterial and

DOWNEY BRAND LLP

16

1    beyond the scope of appropriate inquiry.

2           More generally, counsel for the United States made no misrepresentations and presented

3    no false evidence to the Court.  But even if they had done so, it would not constitute a fraud on

4    the court unless it was intentionally done and "critical to the outcome of the case."  *Estate of*

5    *Stonehill,* 660 F.3d at 452; *accord In re Napster,* 479 F.3d at 1097 (fraud on the court requires

6    "an intentional, material misrepresentation directly aimed at the court") (internal punctuation

7    omitted); *Valerio*, 80 F.R.D. at 641 ("nondisclosure to the court of facts allegedly pertinent to the

8    matter before it, will not ordinarily rise to the level of fraud on the court").

9           In sum, the only material issue is whether the United States, through the knowing and

10   intentional participation of its counsel, engaged in an unconscionable scheme which was "directly

11   aimed at the court," *In re Napster,* 479 F.3d at 1097, and "designed to influence the court" in its

12   "ultimate decision on the merits," *Phoceene Sous-Marine, S. A.,* 682 F.2d at 805.  It is difficult to

13   imagine how that standard could be satisfied in a case the Court did not even decide because the

14   defendants pretended to settle.[8]

15          After reviewing the government's responsive brief, the Court should tailor any future

16   proceedings to specific accusations, if any, that the Court finds could constitute a fraud on the

17   court.

18   **E.      Orders Are Needed to Allow Rebuttal While Preserving Attorney-Client**

19           **Privilege and Workproduct Protection.**

20          To rebut the false accusations made by the defendants, the United States plans to file

21   declarations of counsel showing:

22          1. that the Wright declaration falsely portrays the advice requested by the U.S.

23   Attorney's Office and its Civil Division Chief from the Justice Department's Professional

24   Responsibility Advisory Office, and the advice they received;

25   _____

26   [8] The defendants' memorandum does not cite a single case finding a fraud on the court in procuring a
settlement.  Although there was a settlement in *Hazel-Atlas Glass Co. v. Hartford-Empire Co.,* 322 U.S. 238, 64 S.
27   Ct. 997 (1944), the fraud there was in an earlier case – a case that was not settled -- in which one of the parties
secured *a judgment in its favor* from the court of appeals through an elaborate scheme of deception.  322 U.S. at 250,
28   64 S. Ct. at 1003.  In this case, the Court's ultimate decision was *a judgment against the United States* (dismissal of
the complaint with prejudice).  It makes no sense to say the United States secured a judgment against itself by fraud.

DOWNEY BRAND LLP

17

1        2.  that Wright was not relieved of responsibility for this case because he fancies

2    himself a crusader against misconduct by the government (Wright Dec. ¶ 32) or because

3    there "was or might be a problem" with the investigation (*ibid.*), but based on

4    performance issues;

5        3.  whether a personnel action was pending at the time of Wright's retirement

6    which explains his lashing out now in violation of the rules of professional conduct and

7    shows his accusations are unworthy of belief; and

8        4.  observations of the lead Assistant U.S. Attorney in this case correcting the

9    multitude of false accusations made by the defendants concerning the actions of the

10   United States' litigation team.

11       This information is essential to set the record straight with the Court.  But without a

12   protective order, the United States cannot provide the information without risking violation of the

13   Privacy Act[9] and broad subject-matter waivers of attorney-client privilege and workproduct

14   protection.  The United States should not be forced into such waivers by the unethical conduct of

15   the defendants' lawyers.  Accordingly, the United States requests an order authorizing it (a) to file

16   declarations responding to the defendants' accusations notwithstanding the Privacy Act, and (b)

17   to file the declarations in camera and under seal.[10]

18       After reviewing the declarations, the Court can decide whether an overriding public

19   interest requires the declarations (or portions thereof) to be on the public record.  In that event, the

20   Court should enter a protective order providing that the declarations and any discussion of them

21

22       [9] The Privacy Act of 1974, 5 U.S.C. § 552a, prohibits "nonconsensual disclosure of any information that has

23   been retrieved from a protected record," *Bartel v. FAA,* 725 F.2d 1403, 1408 (D.C.Cir.1984), subject to twelve statutory exceptions.  One exception specifically permits disclosure "pursuant to the order of a court of competent

24   jurisdiction."  5 U.S.C. § 552a(b)(11).  Generally, a court should authorize disclosure of information relevant to a pending judicial proceeding.  *Laxalt v. McClatchy*, 809 F.2d 885, 888-90 (D.C. Cir. 1987).

    [10] The use of in camera review and filing under seal to protect potentially privileged materials is common.

25   *See, e.g., United States v. Zolin*, 491 U.S. 554, 572, 109 S. Ct. 2619, 2631 (1989) (noting that *in camera* review "is a smaller intrusion upon the confidentiality of the attorney-client relationship than is public disclosure" and "does not

26   have the legal effect of terminating the privilege"); *In re Grand Jury Investigation*, 974 F.2d 1068, 1074 (9th Cir. 1992) (same); *Konig v. Dal Cerro*, No. C-04-2210 MJJ, 2009 WL 636518, at *1 (N.D. Cal. Mar. 11, 2009);

27   *Diversified Group, Inc. v. Daugerdas,* 217 F.R.D. 152, 161 n. 7 (S.D.N.Y. 2003) (where "disclosure of confidential communications was inevitable" due to the nature of the action, filing under seal of "privileged information" in

28   connection with a motion for summary judgment did not constitute waiver of privilege).

DOWNEY BRAND LLP

1   in future proceedings shall not waive attorney-client privilege or workproduct protection.[11]

2       **F.      No Discovery Should Be Allowed.**

3       For the reasons set forth above, the Court – not the defendants – should conduct any

4   inquiry to determine whether there was a fraud on the court.  In all events, however, discovery

5   should be denied.

6       Discovery generally is inappropriate when a party seeks to upset the finality of a judgment

7   with accusations of a fraud on the court.  *Valerio,* 80 F.R.D. at  645-46, *adopted as opinion of the*

8   *Ninth Circuit in* 645 F.2d 699  (rejecting post-judgment discovery and explaining that a party

9   seeking to upset a judgment for fraud on the court is expected to have supporting evidence

10  already); *United States v. Chapman*, 642 F.3d 1236, 1240 (9th Cir. 2011) (approving denial of

11  discovery on fraud on the court).

12      As the Sixth Circuit explained when affirming a denial of discovery, "a request for

13  discovery for the purpose of attacking a final judgment involves considerations not present in

14  pursuing discovery in a pending action prior to a judgment.  Primary among these considerations

15  is the public interest of the judiciary in protecting the finality of judgments.  Particularly is this

16  true in [a] long-drawn-out [case] where prior to judgment there had been extensive discovery.*"*

17  *H. K. Porter Co. v. Goodyear Tire & Rubber Co.,* 536 F.2d 1115, 1118 (6th Cir. 1976).  The

18  moving party "plainly [is] not entitled to discovery of documents it did not request in pretrial

19  discovery," because "post-judgment discovery [is not] a proper vehicle for reviewing the integrity

20  of pretrial discovery" and – contrary to the defendants' claims here – "[a]llegations of

21  nondisclosure during pretrial discovery are not sufficient to support an action for fraud on the

22  court.*" Ibid.*

23      Likewise here, to say the defendants already had extensive discovery would be an

24  understatement.  For this is surely one of the most over-discovered cases in this district in recent

25  times.  In the federal case alone, the United States produced over 265 thousand pages of

26

27      [11] On the use of protective orders to prevent waiver of privilege, *see, e.g., Bittaker v. Woodford,* 331 F.3d
    715, 717-18 (9th Cir. 2003) (en banc) (stating that it would have been an abuse of discretion for the district court to
    deny a protective order preserving attorney-client privilege); *Kintera, Inc. v. Convio, Inc.,* 219 F.R.D. 503, 509 n.2
28  (S.D. Cal. 2003); *Holt v. Wong,* No. CV F-97-6210-AWI, 2006 WL 1889945, at *3-4 (E.D. Cal. July 10, 2006).

DOWNEY BRAND LLP

1   documents in response to more than a thousand requests for production, and answered 185

2   interrogatories and 660 requests for admissions.  Fifty-nine percipient witnesses and seventy-five

3   expert witnesses were deposed – many of them for multiple days.  Having already conducted

4   discovery beyond all reason, for the defendants to claim now that they still need more discovery

5   only reflects that that their motion lacks merit.  Discovery should therefore be denied.

6       If the Court does not deny discovery altogether, it should at least narrow the issues first to

7   specific accusations (if any) that could conceivably constitute a fraud on the court, after reviewing

8   the United States' responsive brief and declarations.  The Court can then direct the United States

9   to submit whatever documents or information it considers necessary.  No depositions should be

10  allowed; the Court itself should conduct any examination necessary to protect the integrity of its

11  proceedings.

12      Depositions of counsel certainly should be denied:  "Taking the deposition of opposing

13  counsel not only disrupts the adversarial system and lowers the standards of the profession, but it

14  also adds to the already burdensome time and costs of litigation. It is not hard to imagine

15  additional pretrial delays to resolve work-product and attorney-client objections, as well as delays

16  to resolve collateral issues raised by the attorney's testimony. Finally, the practice of deposing

17  opposing counsel detracts from the quality of client representation. Counsel should be free to

18  devote his or her time and efforts to preparing the client's case without fear of being interrogated

19  by his or her opponent. Moreover, the 'chilling effect' that such practice will have on the truthful

20  communications from the client to the attorney is obvious." *Shelton v. Am. Motors Corp.,* 805

21  F.2d 1323, 1327 (8th Cir. 1986).

22      All discovery should be denied for the reasons set forth above.  For purposes of

23  preservation, however, the United States objects to every request for documents in the

24  defendants' "preliminary list" above.  By their own terms, each category of documents set forth

25  there shows on its face that the requests seek confidential attorney-client communications and

26  protected workproduct of the United States.

27      In addition, as explained more fully in the motion to disqualify the defendants' attorneys

28  filed today, they fundamentally misapprehend the crime-fraud exception.  The false claim that a

DOWNEY BRAND LLP

20

1    fraud was committed does not effect a wholesale abrogation of privilege for all documents no

2    matter what their content.  The exception "applies only to communications in furtherance of

3    intended, or present, continuing illegality." *In re Grand Jury Proceedings*, 87 F.3d 377, 382 (9th

4    Cir. 1996) (punctuation omitted).  In addition, to abrogate attorney-client privilege, "[t]he

5    exception applies only when there is reasonable cause to believe that the attorney's services were

6    utilized in furtherance of the ongoing unlawful scheme." *United States v. Martin*, 278 F.3d 988,

7    1001 (9th Cir. 2002) (punctuation omitted).  In the circumstances here, that means the defendants

8    would have to show, for example, that the United States Attorney's Office requested legal advice

9    from the Justice Department's Professional Responsibility Advisory Office in order to further an

10   unlawful scheme.  The very suggestion is absurd.

11          In addition, the United States notes that the defendants' discovery proposal

12   mischaracterizes the order of the county judge in the companion state case.  That order does not

13   contain a single finding of misconduct by any Assistant U.S. Attorney, nor any finding of a fraud

14   on this Court.  Equally important, that order is just hearsay here.  The United States did not

15   participate in the state proceedings that led to the order, and the findings are without any effect.

16          Finally, there is no precedent and no authority for the defendants' request for an order

17   preventing the United States "from communicating with any witnesses or potential witnesses."

18   Like any other party, the United States is entitled to conduct investigations and prepare for

19   hearings.  And it cannot be ordered, as defendants propose, to disclose to its adversaries all

20   communications with potential witnesses and any documents regarding the same.

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

DOWNEY BRAND LLP

21

1

2

3      DATED:  November 17, 2014          DOWNEY BRAND LLP

4

5                                        By:_____/s/  William R. Warne_____
                                              WILLIAM R. WARNE
6                                        Attorneys for Defendant/Cross-Defendant
                                         SIERRA PACIFIC INDUSTRIES

7

8      DATED:  November 17, 2014          BRACEWELL & GIULIANI LLP

9

10                                       By:__/s/  Richard W. Beckler (as auth'd on 11/17/14)
                                              RICHARD W. BECKLER
11                                       Attorneys for Defendant/Cross-Defendant
                                         SIERRA PACIFIC INDUSTRIES

12     DATED:  November 17, 2014          MATHENY SEARS LINKERT & JAIME, LLP

13

14                                       By:__/s/ Richard S. Linkert (as auth'd on 11/17/14)
                                              RICHARD S. LINKERT
15                                       Attorneys for Defendant, W.M. BEATY &
                                         ASSOCIATES, INC. AND ANN MCKEEVER
16                                       HATCH, as Trustee of the Hatch 1987 Revocable
                                         Trust, et al.

17

18     DATED:  November 17, 2014          RUSHFORD & BONOTTO, LLP

19

20                                       By:__/s/ Phillip Bonotto (as auth'd on 11/17/14 )
                                              PHILLIP BONOTTO
21                                       Attorneys for Defendant, EUNICE E. HOWELL,
                                         INDIVIDUALLY and d/b/a HOWELL'S
22                                       FOREST HARVESTING

23

24     DATED:  November 17, 2014          BENJAMIN B. WAGNER
                                         United States Attorney
25

26                                       By:__/s/ David Shelledy (as authorized on 11/17/14)
                                              DAVID T. SHELLEDY
27                                       Assistant U.S. Attorney
                                         Attorneys for the United States

28

JOINT STATUS REPORT